LATHAM & WATKINS LLP
Elizabeth L. Deeley (CA Bar No. 230798)
  *elizabeth.deeley@lw.com*
Michael H. Rubin (CA Bar No. 214636)
  *michael.rubin@lw.com*
Melanie M. Blunschi (CA Bar No. 234264)
*melanie.blunschi@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
T: +1.415.391.0600/F: +1.415.395.8095

Andrew B. Clubok (appearance *pro hac vice*)
  *andrew.clubok@lw.com*
Susan E. Engel (appearance *pro hac vice*)
  *susan.engel@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
T: +1.202.637.2200/F: +1.202.637.2201

Serrin Turner (appearance *pro hac vice*)
  *serrin.turner@lw.com*
885 Third Avenue
New York, NY 10022-4834
T: +1.212.906.1200/F: +1.212.751.4864

*Attorneys for Defendant Facebook, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

JASPER SCHMIDT, an individual and
California resident, WILLIAM BASS JR.,
an individual and California resident, JILL
HERR, an individual and New York
resident, STEPHEN ADKINS, an
individual and Michigan resident, and
DENISE BROWN-WELLS, an individual
and Florida resident,

        Plaintiffs,

    v.

FACEBOOK, INC.,

        Defendant.

No. C 18-05982 WHA (JSC)
    *Consolidated Cases:*
No. C 18-06022 WHA (JSC)
No. C 18-06953 WHA (JSC)
No. C 19-00117 WHA

**DEFENDANT FACEBOOK, INC.'S NOTICE
OF MOTION AND MOTION TO DISMISS
THE CONSOLIDATED CLASS ACTION
COMPLAINT; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT**

Date: May 2, 2019
Time: 8:00 a.m.
Court: Courtroom 12, 19th Floor
Hon. William Alsup

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS CONS. COMPLAINT
CASE NO. C 18-05982 WHA (JSC)

**NOTICE OF MOTION AND MOTION TO DISMISS**

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on May 2, 2019, at 8:00 a.m., before the Honorable William Alsup of the United States District Court for the Northern District of California in the San Francisco Courthouse, Courtroom 12, 19th Floor, 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Facebook, Inc. ("Facebook") will and hereby does move this Court for an order dismissing Plaintiffs' Consolidated Class Action Complaint (Dkt. No. 76). By this Motion, Facebook seeks dismissal of all claims against it. This motion is brought on the grounds that: Plaintiffs lack Article III standing to assert any of their claims (*see, e.g.*, *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)), and statutory standing to assert certain claims (*see, e.g.*, *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir.), *amended by* No. 11-55793, 2013 U.S. App. LEXIS 13731 (July 8, 2013); *Letizia v. Facebook, Inc.*, 267 F. Supp. 3d 1235, 1243-44 (N.D. Cal. July 14, 2017)); Plaintiffs' common-law claims are barred by the contractual limitation on Facebook's liability (*see, e.g.*, *Darnaa, LLC v. Google Inc.*, 236 F. Supp. 3d 1116, 1123-24 (N.D. Cal. 2017), *aff'd*, ___ F. App'x ___, No. 17-16233, 2018 WL 6131133, at *2 (9th Cir. Nov. 21, 2018)); and Plaintiffs fail to state any claim (*see, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Facebook's Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declarations of Melanie M. Blunschi and Christopher Bream and all exhibits thereto, the concurrently filed Request for Incorporation by Reference, the concurrently filed Proposed Orders, any other matters of which the Court may take judicial notice, all other documents on file in this action, and any oral argument of counsel.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS CONS. COMPLAINT
CASE NO. C 18-05982 WHA (JSC)

# STATEMENT OF RELIEF SOUGHT

Facebook seeks an order pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) dismissing with prejudice Plaintiffs' Consolidated Class Action Complaint for lack of standing and failure to state a claim upon which relief can be granted.

DATED: March 14, 2019

Respectfully submitted,

LATHAM & WATKINS LLP

By:    /s/ Andrew B. Clubok

Andrew B. Clubok (appearance *pro hac vice*)
  *andrew.clubok@lw.com*
Susan E. Engel (appearance *pro hac vice*)
  *susan.engel@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C.  20004-1304
T:  +1.202.637.2200/F:  +1.202.637.2201

Elizabeth L. Deeley (CA Bar No. 230798)
  *elizabeth.deeley@lw.com*
Michael H. Rubin (CA Bar No. 214636)
  *michael.rubin@lw.com*
Melanie M. Blunschi (CA Bar No. 234264)
  *melanie.blunschi@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, CA  94111-6538
T:  +1.415.391.0600/F:  +1.415.395.8095

Serrin Turner (appearance *pro hac vice*)
  *serrin.turner@lw.com*
885 Third Avenue
New York, NY  10022-4834
T:  +1.212.906.1200/F:  +1.212.751.4864

*Attorneys for Defendant Facebook, Inc.*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS CONS. COMPLAINT
CASE NO. C 18-05982 WHA (JSC)

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................ 1

II.  BACKGROUND ......................................................................................... 3

    A.   Facebook Platform ........................................................................ 3

    B.   The Attack ..................................................................................... 4

    C.   Plaintiffs' Allegations ................................................................... 5

III. LEGAL STANDARD .................................................................................. 5

IV.  PLAINTIFFS DO NOT HAVE STANDING FOR ANY OF THEIR CLAIMS ................................................................................................... 6

    A.   Plaintiffs Whose Accounts Were Not Affected Lack Standing .......................... 7

    B.   No Plaintiff Alleges Any Particularized Injury ............................. 8

    C.   Plaintiffs' Hypothetical Allegations About Thefts And Uses Of Data That Did Not In Fact Occur Provide No Basis For Article III Standing .................................................................................... 12

V.   THE TERMS OF SERVICE BAR PLAINTIFFS' CONTRACT AND COMMON-LAW CLAIMS AND CERTAIN CATEGORIES OF DAMAGES .............................................................................................. 16

VI.  PLAINTIFFS FAIL TO STATE ANY CONTRACT-BASED CLAIM ....................... 18

    A.   Plaintiffs Fail To State The Elements Of Counts I To III ................ 19

    B.   The Implied Contract Claim Also Fails For Claim-Specific Reasons ...................................................................................... 21

    C.   The Implied Covenant Claim Also Fails For Claim-Specific Reasons ...................................................................................... 22

    D.   Plaintiffs Fail To State A Quasi-Contract Claim .......................... 22

VII. PLAINTIFFS FAIL TO STATE ANY NEGLIGENCE CLAIM ................................... 23

    A.   The Economic Loss Rule Bars Plaintiffs' Negligence Claims .......................... 23

    B.   Negligence Per Se Is Not A Standalone Cause Of Action .................. 24

    C.   Plaintiffs Fail To State Any Negligence Claim ............................. 24

VIII. PLAINTIFFS FAIL TO STATE A UCL OR CLRA CLAIM ...................................... 28

    A.   Plaintiffs Do Not Have Statutory Standing Under The UCL or CLRA .......................................................................................... 28

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
SAN FRANCISCO

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS CONS. COMPLAINT
CASE NO. C 18-05982 WHA (JSC)

| | B. | Plaintiffs Fail To State A Claim Under Any UCL Prong | 30 |
| | C. | Plaintiffs Fail to State A CLRA Claim | 33 |
| | D. | Plaintiffs Are Not Entitled To Equitable Relief Under The UCL Or CLRA | 33 |
| IX. | | PLAINTIFFS FAIL TO STATE A BREACH OF CONFIDENCE CLAIM | 33 |
| X. | | PLAINTIFFS' DECLARATORY JUDGMENT CLAIM MUST BE DISMISSED | 34 |
| XI. | | CONCLUSION | 35 |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS CONS. COMPLAINT
CASE NO. C 18-05982 WHA (JSC)

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re Adobe Sys., Inc. Privacy Litig.,*
  66 F. Supp. 3d 1197 (N.D. Cal. 2014) .......................................................................15, 30

*Aguilera v. Pirelli Armstrong Tire Corp.,*
  223 F.3d 1010 (9th Cir. 2000) ...................................................................................21, 27

*Antman v. Uber Techs., Inc.,*
  No. 15-cv-01175-LB, 2018 WL 2151231 (N.D. Cal. May 10, 2018), *appeal
  filed*, No. 18-16100 (9th Cir. June 14, 2018)........................................................14, 15, 28

*In re Arris Cable Modem Consumer Litig.,*
  No. 17-CV-01834-LHK, 2018 WL 288085 (N.D. Cal. Jan. 4, 2018) ...................................22

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)..........................................................................................................6

*Attias v. CareFirst, Inc.,*
  No. 15-cv-00882 (CRC), 2019 WL 367984 (D.D.C. Jan. 30, 2019).....................................25

*Baba v. Hewlett-Packard Co.,*
  No. C 09-05946 RS, 2010 WL 2486353 (N.D. Cal. June 16, 2010) .....................................31

*Baba v. Hewlett-Packard Co.,*
  No. C 09-05946 RS, 2011 WL 317650 (N.D. Cal. Jan. 28, 2011) ........................................32

*Be In, Inc. v. Google Inc.,*
  No. 12-CV-03373-LHK, 2013 WL 5568706 (N.D. Cal. Oct. 9, 2013).................................21

*Beaver v. Tarsadia Hotels,*
  816 F.3d 1170 (9th Cir. 2016) .........................................................................................30

*Beck v McDonald,*
  848 F.3d 262 (4th Cir. 2017) ...........................................................................................15

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)......................................................................................................6, 14

*Belli v. Nestlé USA, Inc.,*
  No. 5:14-CV-00286-PSG, 2015 WL 4197045 (N.D. Cal. July 10, 2015)...............................22

*Berkla v. Corel Corp.,*
  302 F.3d 909 (9th Cir. 2002) ........................................................................................21, 34

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS CONS. COMPLAINT
CASE NO. C 18-05982 WHA (JSC)

*Berryman v. Merit Prop. Mgmt., Inc.,*
    152 Cal. App. 4th 1544 (2007) ........................................................................31

*Birdsong v. Apple, Inc.,*
    590 F.3d 955 (9th Cir. 2009) ....................................................................6, 8, 13

*Block v. eBay, Inc.,*
    747 F.3d 1135 (9th Cir. 2014) .......................................................................19

*Blue Chip Stamps v. Manor Drug Stores,*
    421 U.S. 723 (1975), *abrogated on other grounds by Merrill Lynch v. Dabit,*
    547 U.S. 71 (2006) .........................................................................................31

*Body Jewelz, Inc. v. Valley Forge Ins. Co.,*
    241 F. Supp. 3d 1084 (C.D. Cal. 2017) .........................................................23

*Boland, Inc. v. Rolf C. Hagen (USA) Corp.,*
    685 F. Supp. 2d 1094 (E.D. Cal. 2010) .........................................................30

*Buckley v. Santander Consumer USA, Inc.,*
    No. C17-5813 BHS, 2018 WL 1532671 (W.D. Wash. Mar. 29, 2018) ...........25

*Burgess v. Eforce Media, Inc.,*
    No. 1:07-cv-231, 2007 WL 3355369 (W.D.N.C. Nov. 9, 2007) ......................10

*Burns v. Erving,*
    810 F. Supp. 2d 1167 (D. Nev. 2011) ............................................................34

*Cal. Serv. Station & Auto. Repair Ass'n v. Am. Home Assur. Co.,*
    62 Cal. App. 4th 1166 (1998) ........................................................................27

*Cal. Serv. Station & Auto. Repair Ass'n v. Union Oil Co.,*
    232 Cal. App. 3d 44 (1991) ...........................................................................33

*Caraccioli v. Facebook, Inc.,*
    167 F. Supp. 3d 1056 (N.D. Cal. 2016), *aff'd,* 700 F. App'x 588 (9th Cir.
    2017), *cert. denied,* 138 S. Ct. 1027 (2018) .................................................18

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.,*
    222 Cal. App. 3d 1371 (1990) ..................................................................18, 19

*Castillo v. Seagate Tech., LLC,*
    No. 16-cv-01958-RS, 2016 WL 9280242 (N.D. Cal. Sept. 14, 2016).........23, 24, 25

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,*
    20 Cal. 4th 163 (1999) ...................................................................................32

*Chambliss v. Carefirst, Inc.,*
    189 F. Supp. 3d 564 (D. Md. 2016) ...............................................................14

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013).................................................................................................. *passim*

*Claridge v. RockYou, Inc.*,
785 F. Supp. 2d 855 (N.D. Cal. 2011) .................................................................29, 33

*Clark v. City of Seattle*,
899 F.3d 802 (9th Cir. 2018) .......................................................................2, 9, 10, 16

*Coffen v. Home Depot U.S.A. Inc.*,
No. 16-03302-PJH, 2016 WL 4719273 (N.D. Cal. Sept. 9, 2016)...........................20

*Cont'l Cas. Co. v. Enodis Corp.*,
417 F. App'x 668 (9th Cir. 2011) ............................................................................22

*Corona v. Sony Pics. Entm't*,
No. 14-cv-09600 RGK, 2015 WL 3916744 (C.D. Cal. June 15, 2015) ............22, 24

*Daniel v. Nat'l Park Serv.*,
891 F.3d 762 (9th Cir. 2018) ...............................................................................7, 13

*Darnaa, LLC v. Google Inc.*,
___ F. App'x ___, No. 17-16233, 2018 WL 6131133 (9th Cir. Nov. 21, 2018).....18

*Darnaa, LLC v. Google Inc.*,
236 F. Supp. 3d 1116 (N.D. Cal. 2017), *aff'd*, ___ F. App'x ___, No. 17-
16233, 2018 WL 6131133 (9th Cir. Nov. 21, 2018)........................................3, 17

*Das v. Bank of Am., N.A.*,
186 Cal. App. 4th 727 (2010) ..................................................................................26

*Davidson v. Apple, Inc.*,
No. 16-16-CV-04942-LHK, 2017 WL 976048 (N.D. Cal. Mar. 14, 2017)......29, 30

*Davis v. HSBC Bank Nev., N.A.*,
691 F.3d 1152 (9th Cir. 2012) .................................................................................32

*Dent v. NFL*,
902 F.3d 1109 (9th Cir. 2018) ....................................................................24, 25, 26

*Diamond v. Grow*,
243 Cal. App. 2d 396 (1966) ...................................................................................26

*Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*,
No. 3:16-cv-00014 GPC-BLM, 2016 WL 6523428 S.D. Cal. Nov. 3, 2016) ................ *passim*

*Dunkel v. eBay Inc.*,
No. 5:12-CV-01452-EJD, 2014 WL 1117886 (N.D. Cal. Mar. 19, 2014) ........19, 20

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS CONS. COMPLAINT
CASE NO. C 18-05982 WHA (JSC)

*Dura Pharm., Inc. v. Broudo*,
    544 U.S. 336 (2005)................................................................................................14

*Ebner v. Fresh, Inc.*,
    838 F. 3d 958 (9th Cir. 2016) ...............................................................................33

*Elias v. Hewlett-Packard Co.*,
    950 F. Supp. 2d 1123 (N.D. Cal. 2013) ................................................................32

*Ellis v. JPMorgan Chase & Co.*,
    No. 16-17005, 752 F. App'x 380, 2018 WL 4090102 (9th Cir. Aug. 28, 2018)....22

*Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*,
    753 F.3d 862 (9th Cir. 2014) ................................................................................14

*In re Facebook Internet Tracking Litig.*,
    140 F. Supp. 3d 922 (N.D. Cal. 2015) ..................................................................15

*In re Facebook Privacy Litig.*,
    791 F. Supp. 2d 705 (N.D. Cal. 2011), *aff'd in relevant part, rev'd in part*,
    572 F. App'x 494 (9th Cir. 2014) ....................................................................29, 33

*Fagerquist v. W. Sun Aviation, Inc.*,
    191 Cal. App. 3d 709 (1987) ................................................................................26

*Fernandez v. Leidos, Inc.*,
    127 F. Supp. 3d 1078 (E.D. Cal. 2015)................................................................10

*Fields v. Wise Media, LLC*,
    No. C 12-05160 WHA, 2013 WL 3812001 (N.D. Cal. July 19, 2013) ..................24

*Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*,
    209 Cal. App. 4th 1118 (2012) .............................................................................17

*Foster v. Essex Prop., Inc.*,
    No. 5:14-cv-05531-EJD, 2017 WL 264390 (N.D. Cal. Jan. 20, 2017) ...................8

*Friedman v. DirecTV*,
    262 F. Supp. 3d 1000 (C.D. Cal. 2015) ...............................................................34

*FTC v. D-Link Sys., Inc.*,
    No. 3:17-cv-00039-JD, 2017 WL 4150873 (N.D. Cal. Sept. 19, 2017)................26

*Garcia v. Sony Comp. Entm't Am., LLC*,
    859 F. Supp. 2d 1056 (N.D. Cal. 2012) ...............................................................32

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ................................................................................6

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Giroux v. Essex Prop. Trust, Inc.*,
   No. 16-cv-01722-HSG, 2017 WL 1549477 (N.D. Cal. May 1, 2017) ....................................13

*Gonzales v. Uber Techs., Inc.*,
   305 F. Supp. 3d 1078 (N.D. Cal. 2018) ..................................................................................29

*In re Google Android Consumer Privacy Litig.*,
   No. 11–MD–02264 JSW, 2013 WL 1283236 (N.D. Cal. Mar. 26, 2013)........................15, 29

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
   806 F.3d 125 (3d Cir. 2015)....................................................................................................33

*Greystone Homes, Inc. v. Midtec, Inc.*,
   168 Cal. App. 4th 1194 (2008) ..........................................................................................23, 24

*Heidelberg USA, Inc. v. PM Lithographers, Inc.*,
   No. CV 17-02223-AB, 2017 WL 7201872 (C.D. Cal. Oct. 19, 2017) ....................................23

*Hernandez v. Path, Inc.*,
   No. 12-cv-01515 YGR, 2012 WL 5194120 (N.D. Cal. 2012)...................................................9

*Hinojos v. Kohl's Corp.*,
   718 F.3d 1098 (9th Cir. 2013), *amended by* No. 11-55793, 2013 U.S. App.
   LEXIS 13731 (July 8, 2013)....................................................................................................28

*Hodsdon v. Mars, Inc.*,
   891 F.3d 857 (9th Cir. 2018) ............................................................................................31, 32

*Holguin v. Dish Network LLC*,
   229 Cal. App. 4th 1310 (2014) ...............................................................................................19

*ILWU-PMA Welfare Plan Bd. of Trs. v. Conn. Gen. Life Ins. Co.*,
   No. C 15-02965 WHA, 2015 WL 9300519 (N.D. Cal. Dec. 22, 2015) ............................19, 23

*In re iPhone App. Litig.*,
   6 F. Supp. 3d 1004 (N.D. Cal. 2013) ...................................................................................8, 29

*J'aire v. Gregory*,
   24 Cal. 3d 799 (1979) .............................................................................................................23

*Jack v. Pearson*,
   No. 1:17-CV-0520 AWI SAB, 2018 WL 1567796 (E.D. Cal. Mar. 30, 2018) ......................26

*Kalitta Air, L.L.C. v. Cent. Tex. Airborne Sys., Inc.*,
   315 F. App'x 603 (9th Cir. 2008) ...........................................................................................23

*Khan v. Children's Nat'l Health Sys.*,
   188 F. Supp. 3d 524 (D. Md. 2016) ........................................................................................12

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Kroetch v. BAC Home Loan Servs.*,
    No. C 11-2860 MEJ, 2011 WL 4502350 (N.D. Cal. Sept. 27, 2011)......................................19

*Krottner v. Starbucks Corp.*,
    406 F. App'x 129 (9th Cir. 2010) ...........................................................................................28

*Krottner v. Starbucks Corp.*,
    628 F.3d 1139 (9th Cir. 2010) ...................................................................................................9

*Kuhns v. Scottrade, Inc.*,
    868 F.3d 711 (8th Cir. 2017) ....................................................................................................21

*Kwikset Corp. v. Super. Ct.*,
    51 Cal. 4th 310 (2011) ..............................................................................................................28

*Lanovaz v. Twinings N. Am., Inc.*,
    No. 12-cv-02646-R, 2015 WL 729705 (N.D. Cal. Feb. 19, 2015) ............................................22

*Leite v. Crane Co.*,
    749 F.3d 1117 (9th Cir. 2014) .....................................................................................................5

*Letizia v. Facebook, Inc.*,
    267 F. Supp. 3d 1235 (N.D. Cal. July 14, 2017) ......................................................................29

*Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist.*,
    34 Cal. 4th 960 (2004) ..............................................................................................................18

*Lewis v. Casey*,
    518 U.S. 343 (1996)......................................................................................................................7

*Lewis v. YouTube, LLC*,
    244 Cal. App. 4th 118 (2015) ...................................................................................................18

*Lozano v. AT&T Wireless Servs., Inc.*,
    504 F.3d 718 (9th Cir. 2007) ....................................................................................................31

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992).......................................................................................................................7

*Mayes v. Bryan*,
    139 Cal. App. 4th 1075 (2006), *as modified* (June 21, 2006)................................................27

*Med. Sales & Consulting Grp. v. Plus Orthopedics USA, Inc.*,
    No. 08cv1595 BEN (BGS), 2010 WL 11432458 (S.D. Cal. Dec. 2, 2010) ..........................34

*Metrano v. Fox Broad. Co.*,
    No. CV-00-02279 CAS JWJX, 2000 WL 979664 (C.D. Cal. Apr. 24, 2000)........................34

*Monsanto Co. v. Geertson Seed Farms*,
    561 U.S. 139 (2010)......................................................................................................................6

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

vi

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS CONS. COMPLAINT
CASE NO. C 18-05982 WHA (JSC)

*Mountain View Surgical Ctr. v. Cigna Health Corp.*,
    No. CV 13-08083 DDP AGRx, 2015 WL 5456592 (C.D. Cal. Sept. 17, 2015) ....................21

*N. Am. Chem. Co. v. Super Ct.*,
    59 Cal. App. 4th 764 (1997) .............................................................................................23

*Newton v. Am. Debt Servs., Inc.*,
    75 F. Supp. 3d 1048 (N.D. Cal. 2014) .............................................................................31

*In re Nexus 6P Prods. Liability Litig.*,
    293 F. Supp. 3d 888 (N.D. Cal. 2018) .............................................................................32

*Noll v. eBay Inc.*,
    No. 5:11-CV-04585-EJD, 2013 WL 2384250 (N.D. Cal. May 30, 2013).............................30

*Paz v. State*,
    22 Cal. 4th 550 (2000) .....................................................................................................25

*Pica v. Delta Air Lines, Inc.*,
    No., CV 18-2876-MWF (Ex), 2018 WL 5861362 (C.D. Cal. Sept. 18, 2018 ......................27

*Pierce v. Pac. Gas & Elec. Co.*,
    166 Cal. App. 3d 68 (1985) .............................................................................................26

*Puentes v. Wells Fargo Home Mortg., Inc.*,
    160 Cal. App. 4th 638 (2008) ..........................................................................................31

*Quiroz v. Seventh Ave. Ctr.*,
    140 Cal. App. 4th 1256 (2006) ........................................................................................24

*Ramirez v. Nelson*,
    44 Cal. 4th 908 (2008) .....................................................................................................26

*Razuki v. Caliber Home Loans, Inc.*,
    No. 17CV1718-LAB (WVG), 2018 WL 6018361 (S.D. Cal. Nov. 15, 2018) ......................21

*Reid v. Johnson & Johnson*,
    780 F.3d 952 (9th Cir. 2015) ...........................................................................................28

*Reilly v. Ceridian Corp.*,
    664 F.3d 38 (3d Cir. 2011)...............................................................................................11

*Remijas v. Neiman Marcus Grp., LLC*,
    794 F.3d 688 (7th Cir. 2015) ...........................................................................................15

*Rowland v. Christian*,
    69 Cal. 2d 108 (1968) .....................................................................................................25

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Ruiz v. Gap, Inc.*,
    622 F. Supp. 2d 908 (N.D. Cal. Apr. 6, 2009), *aff'd*, 380 F. App'x 689 (9th
    Cir. 2010) ....................................................................................................................21

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004) ......................................................................................6

*In re Sci. Apps. Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*,
    45 F. Supp. 3d 14 (D.D.C. 2014) ...........................................................................10, 16

*Sharp v. Nationstar Mortg., LLC*,
    701 F. App'x 596 (9th Cir. 2017) ................................................................................22

*Sierra-Bay Fed. Land Bank Ass'n v. Sup. Ct.*,
    227 Cal. App. 3d 318 (1991) .......................................................................................27

*United States ex rel. Silingo v. WellPoint, Inc.*,
    904 F.3d 667 (9th Cir. 2018) .........................................................................................6

*Skaff v. Meridien N. Am. Beverly Hills, LLC*,
    506 F.3d 832 (9th Cir. 2007) (per curiam)................................................................9, 11

*Smith v. LG Elecs. U.S.A., Inc.*,
    No. C 13-4361, 2014 WL 989742 (N.D. Cal. Mar. 11, 2014)....................................31

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
    903 F. Supp. 2d 942 (S.D. Cal. 2012)..............................................................23, 28, 33

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
    996 F. Supp. 2d 942 (S.D. Cal. 2014), *amended by* 2014 WL 12603117 (Feb.
    10, 2014) ...........................................................................................23, 24, 25, 28

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016)......................................................................................6, 7, 13

*Svenson v. Google Inc.*,
    No. 13-cv-04080, 2016 WL 8943301 (N.D. Cal. Dec. 21, 2016)..............................12

*Total Coverage, Inc. v. Cendant Settlement Servs. Grp., Inc.*,
    252 F. App'x 123 (9th Cir. 2007) ................................................................................22

*Tunkl v. Regents of Univ. of Cal.*,
    60 Cal. 2d 92 (1963) ....................................................................................................17

*U.S. Ecology, Inc. v. State*,
    129 Cal. App. 4th 887 (2005) ......................................................................................20

*In re U.S. OPM Data Sec. Breach Litig.*,
    266 F. Supp. 3d 1 (D.D.C. 2017), *appeal filed, AFGE, AFL-CIO v. OPM*, No.
    18-1182 (D.C. Cir. Nov. 15, 2017).............................................................................16

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

viii

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS CONS. COMPLAINT
CASE NO. C 18-05982 WHA (JSC)

*United States v. AMC Entm't, Inc.,*
  549 F.3d 760 (9th Cir. 2008) ........................................................................................34

*Vaccarino v. Midland Nat'l Life Ins., Co.,*
  No. CV 11-05858-CAS, 2011 WL 5593883 (C.D. Cal. Nov. 14, 2011)...............................20

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State,*
  *Inc.,*
  454 U.S. 464 (1982)...........................................................................................................6

*In re Vioxx Class Cases,*
  180 Cal. App. 4th 116 (2009) .........................................................................................33

*White v. Lee,*
  227 F.3d 1214 (9th Cir. 2000) .........................................................................................5

*Wishnev v. Nw. Mut. Life Ins. Co.,*
  162 F. Supp. 3d 930 (N.D. Cal. 2016) ...........................................................................35

*Wolfe v. Strankman,*
  392 F.3d 358 (9th Cir. 2004) ...........................................................................................6

*Woods v. Google Inc.,*
  No 5:11-cv-1263-JF, 2011 WL 3501403 (N.D. Cal. Aug. 10, 2011)..................................19

*World Health & Educ. Found. v. Carolina Cas. Ins. Co.,*
  612 F. Supp. 2d 1089 (N.D. Cal. 2009) ..........................................................................20

*Worldwide Media, Inc. v. Twitter, Inc.,*
  No. 17-cv-07335-VKD, 2018 WL 5304852 (N.D. Cal. Oct. 24, 2018) .............................20

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.,*
  2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ...................................................16, 18, 29, 30

*Yari v. Producers Guild of Am., Inc.,*
  161 Cal. App. 4th 172 (2008) .........................................................................................18

*Young v. Facebook, Inc.,*
  790 F. Supp. 2d 1110 (N.D. Cal. 2011) ..........................................................................19

*Yunker v. Pandora Media, Inc.,*
  No. 11-CV-03113 JSW, 2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) ............................33

*In re Zappos.com, Inc.,*
  108 F. Supp. 3d 949 (D. Nev. 2015), *rev'd on other grounds*, 888 F.3d 1020
  (9th Cir. 2018)..................................................................................................................15

*In re Zappos.com, Inc.,*
  888 F.3d 1020 (9th Cir. 2018), *petition for cert. filed*, No. 18-225 (U.S. June
  29, 2018) ........................................................................................................2, 8, 12, 15

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS CONS. COMPLAINT
CASE NO. C 18-05982 WHA (JSC)

## STATUTES

15 U.S.C. § 45(a)(1) ...................................................................................26

15 U.S.C. § 45(n) ................................................................................26, 27

Cal. Civ. Code § 1709 ......................................................................25, 27

Cal. Civ. Code § 1761(d) ..............................................................................33

Cal. Civ. Code § 1798.81.5(a)(1) ..................................................................27

Cal. Civ. Code § 1798.81.5(b) ......................................................................27

Cal. Civ. Code § 1798.81.5(d) ......................................................................27

Cal. Civ. Code § 1798.81.5(d)(1)(A) ............................................................27

Cal. Civ. Code § 1798.81.5(d)(1)(B) ............................................................27

Cal. Civ. Code § 1798.84(b) ........................................................................27

Cal. Civ. Prac. Bus. Litig § 68.28 ................................................................34

Cal. Evid. Code § 669(a)(1)-(4) ....................................................................26

California Civil Code § 1668 ........................................................................17

Consumer Legal Remedies Act (CLRA) ................................................ passim

Customer Records Act (CRA) ............................................................27, 30, 31

FTC Act ............................................................................26, 27, 30, 31

FTC Act Section 5, 15 U.S.C. § 45, Section 1798.81.5 of the California Customer
    Records Act..............................................................................................25

Unfair Competition Law (UCL) .............................................................. passim

United States Constitution, Article III .................................................... passim

## RULES

Fed. Rule of Civ. P. 8....................................................................................14, 21

Fed. Rule of Civ. P. 9(b)..........................................................................6, 22, 32

Fed. Rule of Civ. P. 12(b)(1) ................................................................1, 5, 8

Fed. Rule of Civ. P. 12(b)(6) ................................................................1, 6

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

x

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS CONS. COMPLAINT
CASE NO. C 18-05982 WHA (JSC)

# OTHER AUTHORITIES

Dan B. Dobbs et al, *Law of Torts* § 150 (2d ed.) ............................................................26

Facebook, *Add Friends*,
https://www.facebook.com/help/246750422356731/?helpref=hc_fnav ....................................9

Facebook, *Control Who Can Friend and Follow You*,
https://www.facebook.com/help/273948399619967/?helpref=hc_fnav ..................................10

Graves, Tait, *Nonpublic Information and California Tort Law*, 2006 UCLA J.L.
& Tech. 1, 49 (2006) ....................................................................................................34

Scott Shane et al., *Security Breach and Spilled Secrets Have Shaken the N.S.A. to
its Core*, N.Y. Times (Nov. 12, 2017) ...........................................................................4

USGAO, *Data Protection: Actions Taken by Equifax and Federal Agencies in
Response to the 2017 Breach* (Aug. 30, 2018),
https://www.gao.gov/products/GAO-18-559 ..................................................................4

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

xi

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS CONS. COMPLAINT
CASE NO. C 18-05982 WHA (JSC)

# I. INTRODUCTION

This case arises out of a criminal attack on the Facebook platform ("Attack"). Unauthorized actors ("Attackers") exploited a previously unknown software vulnerability (the "Vulnerability") that allowed them to generate and then collect "access tokens" for Facebook accounts, which they used to steal information from affected users' Facebook profiles. That information included only name, basic contact information, and, for roughly half the affected users, certain information fields from their profiles such as workplace, education, and hometown. The Attackers could not access users' credit card numbers, bank account information, or passwords, and Facebook does not collect sensitive identifiers such as social security numbers from its users. After discovering the Attack, Facebook promptly patched the Vulnerability, invalidated the access tokens associated with all potentially affected accounts, and made an announcement explaining what had happened. A criminal investigation into the Attack is ongoing.

Thousands of data security vulnerabilities are identified every year, including vulnerabilities that if breached, could expose highly sensitive information like social security numbers and financial information that criminals can readily use to commit identity theft and financial fraud. Nothing of the sort happened—or is even alleged to have happened—in this case. The Consolidated Class Action Complaint ("Complaint") spins a speculative tale of what data *could in theory* be stolen by an attacker from an online account and what harmful actions an attacker *could in theory* perpetrate with that data. But the Complaint does not assert that such data was *actually* stolen from any Facebook user or that Plaintiffs *actually* suffered any cognizable harm in the wake of the Attack, let alone a harm traceable to Facebook's conduct.

The accounts of three of the named Plaintiffs were not even affected by the Attack. Decl. of Christopher Bream Supp. of Mot. to Dismiss Compl. ¶¶ 36-37 ("Bream Decl.").[1] And the *only* "injuries" the other two Plaintiffs allege are trivial, such as the time spent logging back onto Facebook's free service (which supposedly involved changing passwords) and time spent dealing

---

[1] In support of a factual attack on Plaintiffs' standing under Rule 12(b)(1), Facebook is submitting a declaration from Christopher Bream, a Facebook Security Engineering Director with personal knowledge of the types of data that were and were not obtained in the Attack. Bream Decl. ¶¶ 1, 4. Facebook does not rely on the facts in the Bream Declaration for purposes of its facial attack on Plaintiffs' standing or its Rule 12(b)(6) arguments.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS CONS. COMPLAINT
CASE NO. C 18-05982 WHA (JSC)

with unsolicited communications such as Facebook "friend" requests or spam email. As for passwords, they were unaffected by the Attack, but even if they had to be re-set, that would hardly constitute cognizable harm. As for Facebook friend requests or similar unsolicited communications, they can easily be deleted or ignored, and Plaintiffs do not plausibly tie any such communications to the Attack in any event. Plaintiffs' allegations do not come close to providing a basis for Article III standing, and tellingly Plaintiffs do not even attempt to make any individual showing that they face the kind of imminent risk of identity theft that has been found sufficient for standing in other data breach lawsuits. *Cf. In re Zappos.com, Inc.*, 888 F.3d 1020, 1027 (9th Cir. 2018), *petition for cert. filed*, No. 18-225 (U.S. June 29, 2018).

The Complaint should be dismissed in its entirety because on its face, it fails to articulate any cognizable Article III injury suffered by any Facebook user—let alone the named Plaintiffs themselves. *See Clark v. City of Seattle*, 899 F.3d 802, 810 (9th Cir. 2018) (affirming dismissal where complaint did not allege a "'risk of real harm'" to each plaintiff "'personal[ly] and individual[ly]'" (alteration in original) (citation omitted)). Moreover, as a factual matter, none of the harms the Complaint alleges *could* happen in a data breach *actually* happened here: no credit card or other payment information was taken, no passwords were taken, and the Attackers did not target more sensitive information such as the contents of user messages or photos. Bream Decl. ¶¶ 24-35. Plaintiffs ultimately are asking this Court to allow a class action to proceed on the mere fact of the Attack. Plaintiffs' theory would allow *any* Facebook user, regardless of whether their accounts were even accessed or whether they suffered any actual harm, to bring a claim. No Supreme Court or Ninth Circuit precedent allows such an action to proceed.

Beyond the lack of Article III standing, almost all of Plaintiffs' claims fail because, as Plaintiffs admit, they and every Facebook user are bound by Facebook's Terms of Service ("Terms"), Compl. ¶¶ 24, 31, 186 (recognizing Terms apply), which release Facebook from liability for users' contract and common-law claims (Counts I-VI, IX-X). Ex. A § 4.3.[2] California

---

[2] All Exhibit ("Ex.") references herein are to the exhibits attached to the concurrently filed Declaration of Melanie M. Blunschi in Support of Defendant Facebook, Inc.'s Motion to Dismiss the Consolidated Class Action Complaint. These exhibits are properly considered on Facebook's Motion because they are incorporated by reference into the Complaint, as explained in Facebook's concurrently filed Request for Incorporation by Reference.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS CONS. COMPLAINT
CASE NO. C 18-05982 WHA (JSC)

law upholds such limitation of liability provisions particularly where, as here, Plaintiffs do not pay for the defendant's service. *See Darnaa, LLC v. Google Inc.*, 236 F. Supp. 3d 1116, 1123-24 (N.D. Cal. 2017) (dismissing implied covenant claim under liability limitation clause), *aff'd*, ___ F. App'x ___, No. 17-16233, 2018 WL 6131133, at *2 (9th Cir. Nov. 21, 2018).

Each of Plaintiffs' claims, which Plaintiffs plead in cursory fashion with barely a nod to well-settled pleading requirements, also fail on the merits. Their contract claims fail because they do not allege a single contractual provision Facebook purportedly breached, and their implied and quasi-contract claims are superfluous. Their negligence claims fail because the economic loss rule bars them and because Plaintiffs have not sufficiently pled a single element. Their Unfair Competition Law ("UCL") and Consumer Legal Remedies Act ("CLRA") claims cannot proceed because Plaintiffs fail to plead economic injury or actual reliance, and omit critical substantive elements of each claim. Plaintiffs' unorthodox breach of confidence claim is impermissibly duplicative of their contract claim and fatally flawed in its own right. Finally, Plaintiffs have no standing for their sweeping and unfounded declaratory judgment request.

## II. BACKGROUND

### A. Facebook Platform

Facebook is a social networking site that allows people to stay in touch with family and friends, share their thoughts, and connect with each other. Compl. ¶¶ 1, 32. Facebook provides this connectivity free of charge to its 2.3 billion users (as of December 31, 2018). *Id.* ¶¶ 1, 40. Facebook requires that users share only their "name, email address or mobile phone number, date of birth, and gender," *id.* ¶ 26; *see also* Bream Decl. ¶ 7, which Facebook uses to "connect" individuals with their "friends." Compl. ¶ 28. Users have a "Profile," where they can choose to share more information about themselves and a "Timeline," where they can share their experiences by posting various forms of content, including comments, photos, and videos. Bream Decl. ¶¶ 7-8.

Facebook is committed to safeguarding user information, yet it is technologically infeasible to guarantee perfect security. Plaintiffs acknowledged and agreed to this common-sense point: Facebook "make[s] no guarantees" about security because it "cannot predict when issues might

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

arise" or control the conduct of third parties.  Ex. A § 4.3.  This is consistent with the well-known fact that even the most technologically sophisticated enterprises—including the National Security Agency—cannot prevent all attacks all the time.[3]  As the GAO recognizes, "[d]ata breaches have occurred at all types of organizations, including private, nonprofit, and federal and state entities."[4]

## B.    The Attack

The Attackers exploited a previously unknown Vulnerability that, as explained in the Bream Declaration, was triggered only in a narrow set of circumstances and involved the interaction of multiple software features.  Bream Decl. ¶¶ 13-14.  The Attackers used the Vulnerability to generate and collect access tokens for approximately 29 million users worldwide (including approximately 4 million users in the United States).  Compl. ¶¶ 86-88; Bream Decl. ¶¶ 11, 14-16.  The Attackers used the tokens in turn to run queries on a public-facing Facebook application programming interface ("API") that retrieved data from those users' accounts.  *Id.* ¶ 11.

For approximately 2.7 million U.S. users ("Group 1"), the Attackers obtained only a user's name and basic contact information (phone number and/or email address, depending on which users had chosen to provide to Facebook).  Bream Decl. ¶¶ 11.c, 17; *see also* Compl. ¶ 95.  For the other approximately 1.2 million U.S. users ("Group 2"), the attackers obtained the same information as for Group 1 and additional categories of information from their Facebook Profiles including username, gender, date of birth, and (if users had chosen to share it) workplace, education, relationship status, religious views, hometown, self-reported current city, and website, as well as the user's locale/language, the types of devices used to access Facebook, the last ten places the user "checked into" or was "tagged" in on Facebook; the people or pages on Facebook "followed" by the user; and the user's 15 most recent searches using the Facebook search bar.  Bream Decl. ¶¶ 11.d, 17; *see also* Compl. ¶ 95.  The breach was limited to information stored on the Facebook platform.  Bream Decl. ¶¶ 22-23, 35.

---

[3] *See, e.g.*, Scott Shane et al., *Security Breach and Spilled Secrets Have Shaken the N.S.A. to its Core*, N.Y. Times (Nov. 12, 2017), https://www.nytimes.com/2017/11/12/us/nsa-shadow-brokers.html.

[4] *See, e.g.*, USGAO, *Data Protection: Actions Taken by Equifax and Federal Agencies in Response to the 2017 Breach* (Aug. 30, 2018), *https://www.gao.gov/products/GAO-18-559*, and cited in Compl. ¶ 230 n.81.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS CONS. COMPLAINT
CASE NO. C 18-05982 WHA (JSC)

For a small subset—approximately one percent—of the affected users (including approximately 69 thousand U.S. users) ("Group 3" or "Seed Users"), the Attackers incidentally accessed information from their Timelines in order to generate access tokens for the Seed Users' friends—*i.e.*, the Group 1 and Group 2 Users. Plaintiffs do not allege, and there is no reason to believe that the Attackers targeted any Timeline data for its own sake, rather than accessing it incidentally as a means of generating access tokens. Bream Decl. ¶¶ 18-21; *cf.* Compl. ¶ 110 (speculating what a "malicious actor" "*could*" have done with the access tokens (emphasis added)).

Within three days of identifying the Attack, Facebook contained it (by invalidating access tokens for all potentially affected users[5]), patched the Vulnerability, and promptly notified potentially affected users. *Id.* ¶¶ 87, 91-92; Bream Decl. ¶ 23.a n.11. By invalidating access tokens, Facebook effected a "forced logout" of all potentially affected users that "requir[ed] them to reenter their passwords" to access their accounts. *Id.* ¶¶ 23.a n.11, 27. But Facebook did not require users to change their passwords, which were not compromised in the Attack. *Id.* ¶ 27. Facebook immediately launched an investigation to determine which users were actually affected by the Attack and what user information was accessed from their accounts. *Id.* ¶ 37.

## C.    Plaintiffs' Allegations

Plaintiffs assert claims on behalf of a class of Facebook users in the United States "whose PII was compromised in the data breach announced by Facebook on September 28, 2018." Compl. ¶¶ 13, 179. The statutory claims are brought under the UCL and CLRA. The common-law claims are breach of contract, implied contract, implied covenant of good faith and fair dealing, quasi-contract, negligence, negligence per se, and confidence. Plaintiffs seek a declaratory judgment.

## III.    LEGAL STANDARD

**Rule 12(b)(1).** A court must dismiss claims where a plaintiff fails to establish Article III standing. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, the defendant "accepts the truth of the plaintiff's allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citation

---

[5] As a precaution, Facebook invalidated tokens for 90 million worldwide users, consisting of all users potentially subject to the Vulnerability, before it was able to determine the approximately 29 million users actually affected by the Attack. Bream Decl. ¶¶ 23.a n.11, 37.

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS CONS. COMPLAINT
CASE NO. C 18-05982 WHA (JSC)

omitted). In a factual attack, the defendant introduces affidavits or other evidence challenging jurisdictional facts, *see Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004), and "the party opposing [the 12(b)(1) motion] must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004) (citation omitted).

**Rule 12(b)(6).** A complaint must be dismissed unless it pleads "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). Taking only "well-pleaded factual allegations" as true, a court "determine[s] whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

**Rule 9(b).** Claims based on allegations of fraud are subject to a heightened pleading standard. "To satisfy this requirement, a pleading must identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *United States ex rel. Silingo v. WellPoint, Inc.*, 904 F.3d 667, 677 (9th Cir. 2018) (alteration in original) (citation omitted).

## IV. PLAINTIFFS DO NOT HAVE STANDING FOR ANY OF THEIR CLAIMS

"To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (citation omitted). That is, each Plaintiff must show that he or she "personally has suffered" some harm because of Facebook's conduct. *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982) (citation omitted); *see also Birdsong v. Apple, Inc.*, 590 F.3d 955, 960-61 (9th Cir. 2009) (no standing where plaintiffs' injury was not "particularized *as to themselves*"). And that harm must rise to the level of a "concrete" injury, *i.e.*, "it must actually

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS CONS. COMPLAINT
CASE NO. C 18-05982 WHA (JSC)

exist" and be "'real,' and not 'abstract.'" *Spokeo*, 136 S. Ct. at 1548 (citations omitted). For the injury to be fairly traceable, there must be a "causal connection between the injury and the conduct complained of," and the injury must not be the result of "the independent action of some third party not before the Court." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted).

Plaintiffs do not have Article III standing to pursue this action. ***First***, at least three of the five named Plaintiffs suffered no injury at all because their accounts were not even subject to the Attack. ***Second***, the two remaining Plaintiffs do not allege that Facebook took any information from their accounts that created an imminent risk of identity theft or caused them any injury. ***Third***, while the Complaint speculates (baselessly) about various *potential* harms that might arise from the Attack, ranging from identity theft to lost value of information, Plaintiffs do not allege that they actually suffered any of those injuries. Plaintiffs' vague allegations about injuries that could have happened are divorced from reality in light of the data actually taken in the Attack, not well pled, and should be disregarded under well-settled Supreme Court and Ninth Circuit case law. *See Clapper*, 568 U.S. at 414 n.5 ("plaintiffs bear the burden of pleading and proving *concrete facts* showing" harm (emphasis added)); *Daniel v. Nat'l Park Serv.*, 891 F.3d 762, 767 (9th Cir. 2018) ("naked assertions" fail the "edict that a plaintiff may not 'rely on a bare legal conclusion to assert injury-in-fact, or engage in an ingenious academic exercise in the conceivable'" (citation omitted)). Not only are Plaintiffs' allegations facially deficient, the Bream Declaration confirms as a matter of fact that Plaintiffs' conjecture about what the Attackers could have done is unfounded. Bream Decl. ¶¶ 22-35.

### A. Plaintiffs Whose Accounts Were Not Affected Lack Standing

Plaintiffs Bass, Herr, and Brown-Wells lack standing because their accounts were not accessed in the Attack. *See Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("[N]amed plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" (citations omitted)).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS CONS. COMPLAINT
CASE NO. C 18-05982 WHA (JSC)

First, as a facial matter, these three Plaintiffs merely allege that they were logged out of their accounts following the Attack. Compl. ¶¶ 153, 160, 175. But their own allegations recognize that the majority of users logged out after the Attack were *not* actually affected by the Attack; they were logged out due to precautionary measures Facebook took as part of the remediation effort. *Id.* ¶¶ 4-6. Plaintiffs do not allege they subsequently received any notification that their accounts were actually accessed (like the notifications alleged by Plaintiffs Adkins and Schmidt, *id.* ¶¶ 145, 168). Nor do they (or can they) allege the Attackers obtained information from the accounts of users who did ***not*** receive a notification. Plaintiffs' allegations provide no basis for inferring their accounts were affected. *See Birdsong*, 590 F.3d at 960 (plaintiffs who never used iPods in the way they contended was unsafe lacked any concrete or particularized injury); *In re iPhone App. Litig.*, 6 F. Supp. 3d 1004, 1009 n.2 (N.D. Cal. 2013) (plaintiff lacked standing to bring claim based on alleged "geotagging" when evidence demonstrated that her iPhone never ran software version capable of geotagging).

Second, as a factual matter, the Facebook accounts of Plaintiffs Bass, Herr, and Brown-Wells were not affected by the Attack, Bream Decl. ¶¶ 36-37, and they therefore *cannot* establish their standing. *See Foster v. Essex Prop., Inc.*, No. 5:14-cv-05531-EJD, 2017 WL 264390, at *3-4 (N.D. Cal. Jan. 20, 2017) (dismissing complaint pursuant to a Rule 12(b)(1) factual attack where defendant's declarations showed plaintiffs' information was not compromised by the breach).

## B. No Plaintiff Alleges Any Particularized Injury

While data breaches involving social security numbers or sensitive financial information can result in identity theft or substantial financial losses, Plaintiffs' own allegations make clear that such consequences are not even potentially at issue in this case. None of the Plaintiffs allege they provided this information to Facebook. Only two of them—Mr. Schmidt and Mr. Adkins—allege that even limited categories of information, such as basic contact information, hometown, and relationship status, were accessed in the Attack. Compl. ¶¶ 145, 168.[6] But this is not the type of information that, if disclosed, creates a "credible threat" of identity theft. *In re Zappos.com*,

---

[6] Plaintiffs Bass, Herr, and Brown-Wells do not make any similar allegation that Facebook notified them that any of their information was accessed in the Attack.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

888 F.3d at 1027 (full credit card numbers); *see also Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1140 (9th Cir. 2010) (social security numbers). Plaintiffs do not allege any other actual harm or "risk of real harm" to themselves "personal[ly] and individual[ly]." *Clark v. City of Seattle*, 899 F.3d at 809-10 (citation omitted) (affirming dismissal of challenge to ordinance that would disclose drivers' personal information where "much of the same information" was publicly available and drivers did not allege a "risk of real harm" to themselves (citation omitted)).

Rather, the only injuries that Plaintiffs Schmidt and Adkins allege are the time they spent dealing with unsolicited communications, including friend requests on Facebook, and the time it took them to log back into their Facebook accounts after the Attack. Compl. ¶¶ 147-48, 169. These "injuries" are a world apart from the identity theft injuries alleged in, *e.g.*, *Zappos*, and are utterly insufficient to establish standing.

First, the allegation that Mr. Schmidt spent time dealing with "multiple friend requests from unknown persons," Compl. ¶¶ 147-48, is an absurd basis for Article III standing. A friend request is simply a message sent from one Facebook user to another inviting the other user to connect over Facebook. The recipient can easily ignore the request or spend a nanosecond deleting it by clicking on a "delete" button that shows up next to the request.[7] The same goes for the unspecified "'phishing' email and text messages," *id.* ¶¶ 169-70, that Mr. Adkins complains he received. Such communications can be deleted or ignored just as easily, and indeed Mr. Adkins does not claim that any harm came from these messages other than the fact that he "spent considerable time" dealing with them, *id.* The "time" spent "manag[ing]" unsolicited friend requests and messages, *id.* ¶¶ 148, 170, let alone their mere receipt, is not a cognizable injury. *See Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 839-40 (9th Cir. 2007) (per curiam) (invoking "ancient maxims of *de minimis non curat lex* and *lex non curat de minimis*, and holding that "mere delay during correction of the problem with the [accessibility of a] shower is too trifling of an injury to support constitutional standing"); *see also Hernandez v. Path, Inc.*, No. 12-cv-01515 YGR, 2012 WL 5194120, at *2 (N.D. Cal. 2012) (depletion of two to three seconds of

---

[7] The Facebook Help Center provides background on friend requests. *See* Facebook, *Add Friends*, https://www.facebook.com/help/246750422356731/?helpref=hc_fnav (last visited Mar. 14, 2019).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    battery capacity is de minimis harm that cannot establish standing); *Burgess v. Eforce Media, Inc.*,

2    No. 1:07-cv-231, 2007 WL 3355369, at *6 (W.D.N.C. Nov. 9, 2007) (recognizing that "end

3    internet user has no legal recourse for [the] frustration" of "unwanted and unwelcomed emails").

4            Moreover, Plaintiffs cannot trace any of the unsolicited communications they allegedly

5    received to Facebook's conduct.  The Attack did not somehow give the Attackers some special

6    ability to send Mr. Schmidt (or any other Facebook users) "friend requests."  *Any* Facebook user

7    can send any other user a friend request, so long as the receiving user does not restrict who can

8    send them friend requests in their settings.[8]  Like any other Facebook user, Mr. Schmidt was and

9    continues to be able to restrict who may send him friend requests by simply configuring his

10   settings; nothing about the Attack changed that.  As for Mr. Adkins' allegations of receiving

11   "'phishing' email and text messages," Compl. ¶ 169, anyone with an inbox may receive phishing

12   messages and other unsolicited communications from time to time.  Mr. Adkins pleads no facts

13   suggesting that the messages he supposedly received were somehow uniquely tied to the Attack.

14   Indeed, all that is required to send a phishing email or text message is an email address or phone

15   number, and Mr. Adkins does not claim that his email address or phone number is not publicly

16   available, or that it "would have been difficult for marketers to locate [his contact information]

17   absent the assistance of a data thief."  *In re Sci. Apps. Int'l Corp. (SAIC) Backup Tape Data Theft

18   Litig.*, 45 F. Supp. 3d 14, 33 (D.D.C. 2014); *see also Clark*, 899 F.3d at 810 & n.5 (drivers failed

19   to "identify the legal wellspring of their claimed privacy rights" where their "names, addresses,

20   and phone numbers [we]re publicly available"); *Fernandez v. Leidos, Inc.*, 127 F. Supp. 3d 1078,

21   1086 (E.D. Cal. 2015) (no standing where plaintiff alleged he received increased mail but did not

22   allege home address was not publicly available).

23           Second, Mr. Schmidt and Mr. Adkins also allege that, as a result of Facebook's remediation

24   of the Attack, they were "required to create a new password to log" back into their accounts, which

25   they claim took "considerable time."  Compl. ¶¶ 144, 166.  This allegation is simply confused on

26   the facts.  The remediation of the Attack did not involve resetting user passwords.  Facebook

27   _____

28   [8] *See* Facebook, *Control Who Can Friend and Follow You*,
     https://www.facebook.com/help/273948399619967/?helpref=hc_fnav (last visited Mar. 14,
     2019).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS CONS. COMPLAINT
CASE NO. C 18-05982 WHA (JSC)

merely invalidated access tokens for potentially affected users, which resulted in logging users out of their accounts, but users needed only to re-enter their existing passwords in order to log back in. Bream Decl. ¶ 27. But in any event, even if Plaintiffs had been required to change their passwords as a result of the Attack, changing a password is as simple as it is harmless. It takes only a moment and has no effect other than to *benefit* the user by ensuring the user's password is secure. This is hardly the stuff of Article III standing. *See Skaff*, 506 F.3d at 839-40.

Finally, while Mr. Schmidt does not identify any harm flowing from it, he separately alleges that the Attackers had "access to view his page as him—meaning all of his private photographs were accessible to unknown third parties," such as those on the "camera roll of his phone." Compl. ¶¶ 142, 146. But this allegation too is insufficient and incoherent. Mr. Schmidt does not allege any facts to suggest that the Attackers somehow gained access to photos from *his phone*—nor could he, since the Attack only affected Facebook's platform, not user devices. To the extent Mr. Schmidt is alleging that his *Timeline* (which could include photos shared with others) was accessed by the Attackers, there is no reason to believe—and Mr. Schmidt provides none—that the photos on Mr. Schmidt's Timeline were of any interest to the Attackers, let alone that any harm is likely to result from the mere fact that his photos may have been "accessible" during the Attack. As the Bream Declaration explains, the Attackers accessed the Timelines of Group 3 users as a *means* of conducting the Attack, not as an *objective* in and of itself. Bream Decl. ¶¶ 18-21. Because the Vulnerability was only triggered when users' Timelines were accessed in a certain manner, the Attackers *had* to access Timeline data in order to exploit the Vulnerability. *Id.* ¶ 18. Thus, while the computer script used by the Attackers loaded the Timelines of certain users in the course of exploiting the Vulnerability, this information "was not accessed manually in the course of the Attack—in the sense being viewed on a screen by a human being," and there is no reason to believe that the Attackers targeted or retained any photos. *Id.* ¶¶ 19-20.

Any claims of harm on these facts would amount to impermissible speculation. *See Clapper*, 568 U.S. at 410; *see also Reilly v. Ceridian Corp.*, 664 F.3d 38, 40, 44 (3d Cir. 2011) (no standing where "a firewall was penetrated" but "no identifiable taking occurred" and it was "not

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS CONS. COMPLAINT
CASE NO. C 18-05982 WHA (JSC)

known whether the hacker read, copied, or understood the data"); *Khan v. Children's Nat'l Health Sys.*, 188 F. Supp. 3d 524, 532-33 (D. Md. 2016) (no standing where there was "no indication that the [plaintiffs'] personal data was actually viewed, accessed, or copied, or was even the target of the phishing scheme" and accounts were only "potentially exposed in a way that may have allowed hackers to access information" (citation omitted)); *Svenson v. Google Inc.*, No. 13-cv-04080, 2016 WL 8943301, at *14 (N.D. Cal. Dec. 21, 2016) (no injury in fact where plaintiff's information was stored "in such a way that it *could* have been, but never was, viewed" by a third party); *cf. In re Zappos*, 888 F.3d at 1029 n.13 (explaining that hackers "specifically targeted" credit card information).

## C. Plaintiffs' Hypothetical Allegations About Thefts And Uses Of Data That Did Not In Fact Occur Provide No Basis For Article III Standing

Beyond any individualized allegations of injury, Plaintiffs also repeat a list of purely speculative injuries at the end of each cause of action, ranging from "actual identity theft" to "diminished value" of personal information and lost "benefit of the bargain." *E.g.*, Compl. ¶ 256. These possible injuries are premised on Plaintiffs' pure speculation about information that *could have* been taken and injuries that *could* happen in a *hypothetical* breach—but not the breach that actually happened here. Thus, Plaintiffs speculate that (i) the Attack *appears* to have "impacted Facebook Login," which "*could*" have allowed unauthorized users to take over users' accounts on distinct platforms (such as Netflix or Uber), *id.* ¶¶ 114-17; (ii) a Facebook account contains "security and login information" that *could* be used "to set[] up and break[] into accounts," *id.* ¶¶ 126-29; (iii) those engaged in "ransomware or blackmailing attacks" *could* use information from "users' private messages" to "extort money," *id.* ¶¶ 130-36; (iv) an attacker might use a compromised Facebook account to "send and request money" through Facebook Payments, *id.* ¶ 113; and (v) an attacker might use a compromised account to "impersonate the user" in order to "send messages from a user's account," *id.* Plaintiffs go further in speculating that—even though Facebook promptly patched the Vulnerability and fully contained and remediated the Attack, Compl. ¶ 120; Bream Decl. ¶¶ 23.a n.11, 27, 37—"further unauthorized disclosures" could happen *in the future* because of Facebook's purportedly inadequate security, Compl. ¶¶ 201(vii), 288. Such speculative imaginings provide no basis for standing, for several reasons.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS CONS. COMPLAINT
CASE NO. C 18-05982 WHA (JSC)

**First**, Plaintiffs do not allege that any of the potential injuries they envisage actually happened to *them*. *See Birdsong*, 590 F.3d at 960; *Giroux v. Essex Prop. Trust, Inc.*, No. 16-cv-01722-HSG, 2017 WL 1549477, at *2 (N.D. Cal. May 1, 2017) (granting motion to dismiss because plaintiff "combined allegations describing the harm she suffered with the harm the larger putative class ha[d] suffered," without specifying "which of these costs, if any, Plaintiff ha[d] personally incurred").

**Second**, Plaintiffs do not allege that any of the potential injuries they envisage actually happened to *anyone*. Plaintiffs instead make "naked assertions," with no "specific factual allegations" that any Facebook user suffered any of these injuries. *Daniel*, 891 F.3d at 767. Plaintiffs cannot establish standing by "engag[ing] in an ingenious academic exercise in the conceivable." *Id.* (citation omitted); *see also Spokeo*, 136 S. Ct. at 1548 (injury "must actually exist" and cannot be "conjectural or hypothetical" (citation omitted)); *Birdsong*, 590 F.3d at 961 (injury "hypothetical" where plaintiffs merely asserted that defendant's product *could* harm someone).

**Third**, as detailed in the Bream Declaration, Facebook investigated the very possibilities that Plaintiffs imagine and found that they did not in fact occur:

- Facebook Login was not impacted, and third-party accounts were not accessed, changed, or reset, Bream Decl. ¶¶ 22-23;
- user passwords were not accessed and security settings were not changed, *id.* ¶¶ 24-27;
- users' private messages were not targeted, *id.* ¶¶ 32-35;
- affected accounts were not used to "request or send money" through Facebook Payments, *id.* ¶¶ 28-31; and
- affected accounts were not used to "impersonate the user online" to communicate from any accounts, *id.* ¶ 33.

Particularly given these findings, Plaintiffs' speculation that these harms *could* have happened should not be credited and cannot supply a basis for standing.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS CONS. COMPLAINT
CASE NO. C 18-05982 WHA (JSC)

**Fourth**, Plaintiffs' allegations of a continued risk (*e.g.*, Compl. ¶¶ 201(vii), 288) do not approach the "imminent 'prospect of future injury'" necessary for standing to request prospective relief. *Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*, 753 F.3d 862, 868 (9th Cir. 2014) (citation omitted). In fact, Plaintiffs do not plead any factual basis for a continued risk. They recognize that Facebook invalidated access tokens for affected accounts and patched the Vulnerability. Compl. ¶¶ 91, 94; Bream Decl. ¶ 23.a n.11. To the extent Plaintiffs are asserting there could be a *future* breach based on a *different* software vulnerability, their theory is entirely lacking in factual basis and would allow *any* Facebook user to seek comparable relief. No case or principle supports such a sweeping theory.

At bottom, Plaintiffs' speculative allegations about information that could have been obtained and injuries that could have happened or could happen in the future to some hypothetical user do not come close to allowing this action to proceed. *Cf. Twombly*, 550 U.S. at 559-60 (requiring under Rule 8 plausible allegations of fact to warrant "the potentially enormous expense of discovery" in antitrust action); *see also Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005) (Rule 8 pleading standards prevent plaintiffs "with a largely groundless claim" from "tak[ing] up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value" (citation omitted)). But for completeness, even if they had happened to anyone, none of Plaintiffs' potential injuries alleges a *concrete* injury.

**Identity Theft**. Plaintiffs' allegations relating to identity theft and mitigation, *e.g.*, Compl. ¶¶ 201(i),(iii)-(viii), 268, are insufficient because Plaintiffs plead no facts alleging the Attackers obtained, let alone misused, the type of highly sensitive information sufficient to create a "certainly impending" risk of identity theft. *Clapper*, 568 U.S. at 409-10; *see also Antman v. Uber Techs., Inc.*, No. 15-cv-01175-LB, 2018 WL 2151231, at *10 (N.D. Cal. May 10, 2018) (no standing where hackers obtained driver's license numbers, bank account numbers, and routing information), *appeal filed*, No. 18-16100 (9th Cir. June 14, 2018); *Chambliss v. Carefirst, Inc.*, 189 F. Supp. 3d 564, 570 (D. Md. 2016) (no standing where breach compromised only "names, birthdates, email addresses, and [insurance] subscriber identification numbers, and not . . . social security numbers, credit card information, or any other similarly sensitive data").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS CONS. COMPLAINT
CASE NO. C 18-05982 WHA (JSC)

Rather, the Attackers obtained only the user's name plus basic contact information (email address and/or phone number), date of birth, gender, and *if* the user provided it, certain other limited categories of information, such as their religious views, hometown, or relationship status. Bream Decl. ¶¶ 11, 17; *see also supra* Section II.B. Plaintiffs do not allege they provided all of this optional information, but even if they had, the types of information at issue would not provide an attacker "all the information he needed to open accounts or spend money in the plaintiffs' names," *In re Zappos.com*, 888 F.3d at 1026, and do not plausibly create "a credible threat of identity theft that risks real, immediate injury," *Antman*, 2018 WL 2151231, at *10. It goes without saying that information like a person's religious views, hometown, or relationship status cannot be used to open a bank account, and is not comparable to sensitive financial information such as credit card or social security numbers, which can provide an identity thief with the direct ability to access an individual's funds or impersonate the individual to financial institutions. *See also Clapper*, 568 U.S. at 416 (plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending").[9]

**Diminution In Value**. Plaintiffs' allegations about the diminution in value of their information, *see, e.g.*, Compl. ¶ 201, are insufficient because Plaintiffs do not even specify *what* particular information has lost value, let alone that there is a market for this information, that they tried to sell it, or that it actually had—or lost—any value. *See, e.g.*, *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 932 (N.D. Cal. 2015); *In re Google Android Consumer Privacy Litig.*, No. 11–MD–02264 JSW, 2013 WL 1283236, at *4 (N.D. Cal. Mar. 26, 2013); *In re Zappos.com, Inc.*, 108 F. Supp. 3d 949, 954 (D. Nev. 2015), *rev'd on other grounds*, 888 F.3d 1020 (9th Cir. 2018). Indeed, an allegation that Plaintiffs attempted, or even *want*, to sell any of the information obtained by hackers would be implausible, given that Plaintiffs allege throughout the Complaint that they intended for their information to be kept private. *E.g.*, Compl. ¶ 273.

---

[9] So too for the alleged mitigation costs. *See, e.g.*, *Beck v McDonald*, 848 F.3d 262, 276-77 (4th Cir. 2017) (no injury-in-fact from purchase of credit monitoring services where there was no imminent risk of identity theft); *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 694 (7th Cir. 2015) ("Mitigation expenses do not qualify as actual injuries where the harm is not imminent."); *Antman*, 2018 WL 2151231, at *9 (same); *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1216-17 (N.D. Cal. 2014) (same).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS CONS. COMPLAINT
CASE NO. C 18-05982 WHA (JSC)

**Loss of the Benefit of the Bargain**. Plaintiffs' allegation about loss of the benefit of their bargain—which they assert is "secured data for a social networking experience," Compl. ¶ 256; *see also id.* ¶ 14—is insufficient because Plaintiffs did not *pay* for their "social networking experience," and thus do not and cannot allege they did not get what they *paid for. Cf. In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318, at *16-17 (N.D. Cal. Aug. 30, 2017) (finding standing based on "benefit of the bargain" losses for plaintiff who *paid for* services and alleged he would not have done so had he known the services were not secure).

**Other Alleged Injuries**. Plaintiffs allege a couple other injuries without elaboration, including the "loss of the opportunity to control how their PII is used" and the "compromise, publication, and/or theft of their PII." Compl. ¶¶ 14, 201(ii)-(iii). But Plaintiffs do not even allege what information is at issue or that the information they shared on Facebook was not already publicly available. *Cf. Clark*, 899 F.3d at 810 (risk of disclosure of personal information not a "concrete harm" where "much of the same information" was publicly available). The mere fact of the Attack—*i.e.*, the compromise of data from user Profiles—is not sufficient to satisfy Article III standing. *See In re U.S. OPM Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 20 (D.D.C. 2017) (plaintiffs cannot predicate standing "on the basis of [a] breach alone" without identifying "individualized consequences beyond the mere fact that a release took place"), *appeal filed, AFGE, AFL-CIO v. OPM*, No. 18-1182 (D.C. Cir. Nov. 15, 2017); *Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 3:16-cv-00014 GPC-BLM, 2016 WL 6523428, at *6 (S.D. Cal. Nov. 3, 2016) ("[A]lleging theft of PII, without more, is inadequate to demonstrate a harm that qualifies as an injury in fact for standing purposes."). Plaintiffs do not allege facts suggesting any "publication" of sensitive information—*i.e.*, actual review by a third party. *In re SAIC*, 45 F. Supp. 3d at 29 (harm "remains speculative" unless plaintiffs can "aver that their [medical] records have been viewed (or certainly will be viewed)").

## V. THE TERMS OF SERVICE BAR PLAINTIFFS' CONTRACT AND COMMON-LAW CLAIMS AND CERTAIN CATEGORIES OF DAMAGES

Even if Plaintiffs had standing, their non-statutory claims run headlong into the limitation of liability clause in the Terms. Plaintiffs do not dispute that the Terms are a binding agreement that covers their "use of Facebook," Ex. A at 1. Compl. ¶¶ 31, 192. That agreement contains a

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

limitation of liability clause that bars Plaintiffs' effort to hold Facebook liable through contract and common-law claims (Counts I-VI, IX-X). Section 4.3 of the Terms provides:

> We work hard to provide the best Products we can and to specify clear guidelines for everyone who uses them. Our Products, however, are provided "as is," and **we make no guarantees that they always will be safe, secure, or error-free**, or that they will function without disruptions, delays, or imperfections. … We do not control or direct what people and others do or say, and **we are not responsible for their actions or conduct (whether online or offline)** or any content they share (including offensive, inappropriate, obscene, unlawful, and other objectionable content).

> We cannot predict when issues might arise with our Products. **Accordingly, our liability shall be limited to the fullest extent permitted by applicable law**, and under no circumstance will we be liable to you for any lost profits, revenues, information, or data, or consequential, special, indirect, exemplary, punitive, or incidental damages arising out of or related to these Terms or the Facebook Products, even if we have been advised of the possibility of such damages … .

Ex. A § 4.3 (emphasis added). This broad and unequivocal language squarely encompasses Plaintiffs' claims and releases Facebook from *any* "liability," including specifically for third-party conduct, "to the fullest extent permitted by applicable law." *Id.* The "applicable law" here is California Civil Code § 1668, which establishes that, with the exception of their statutory claims, Plaintiffs cannot impose liability on Facebook for the conduct at issue. Cal. Civ. Code § 1668 (providing that contracts which "exempt anyone from responsibility for [1] his own fraud, or [2] willful injury . . . or [3] violation of law" are invalid under California law); *see also Darnaa*, 236 F. Supp. 3d at 1123-25 (dismissing implied covenant claim under liability limitation clause where plaintiff did not plead conduct that fell under Section 1668).

Plaintiffs do not set forth any allegation that would support finding the liability limitation unenforceable. For example, they do not plead a single fact suggesting the provision somehow violates public policy, *see Tunkl v. Regents of Univ. of Cal.*, 60 Cal. 2d 92, 98-101 (1963) (establishing criteria governing whether contractual liability waiver may be invalid under California public policy), or is unconscionable. And even if they had pled such a theory, it would fail. Limitation of liability clauses "have long been recognized as valid in California," *Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*, 209 Cal. App. 4th 1118, 1126 (2012) (citation omitted) (involving contract and negligence claims), and they are particularly "appropriate when one party

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS CONS. COMPLAINT
CASE NO. C 18-05982 WHA (JSC)

is offering a service for free to the public." *Lewis v. YouTube, LLC*, 244 Cal. App. 4th 118, 125 (2015); *see also Darnaa*, *LLC v. Google Inc.*, ___ F. App'x ___, No. 17-16233, 2018 WL 6131133, at *2 (9th Cir. Nov. 21, 2018) (rejecting unconscionability argument where "limitation of liability provision . . . provide[s] a 'margin of safety' that provides the party with superior bargaining strength a type of extra protection for which it has a legitimate commercial need without being unconscionable" (citation omitted)). They are also routinely applied where the conduct complained of was a third party's, as here. *See, e.g.*, *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1063 (N.D. Cal. 2016) (enforcing limitation of liability clause in Facebook's 2015 Terms that applied to claims arising out of third party conduct), *aff'd*, 700 F. App'x 588, 590 (9th Cir. 2017) (affirming dismissal of contract and UCL claim based on breach of contract, and rejecting argument that terms were unconscionable), *cert. denied*, 138 S. Ct. 1027 (2018).[10]

## VI.    PLAINTIFFS FAIL TO STATE ANY CONTRACT-BASED CLAIM

Section 4.3 aside, Plaintiffs' contract-based claims fail because Plaintiffs do not identify a specific contract provision that Facebook purportedly breached, or even the alleged contract upon which they base their claims. Counts I and II (express and implied contract) also have nearly identical allegations, and within both, Plaintiffs allude to a distinct claim for breach of an implied duty to perform with reasonable care ("implied duty"), Compl. ¶¶ 196, 209. Plaintiffs' implied covenant of good faith and fair dealing ("implied covenant") claim (Count III) is similarly premised on unidentified "express *and* "implied terms," *id.* ¶ 214. These confusing allegations fall short on each element of Counts I to III,[11] and certainly the claims are not "pled with

---

[10] Even if any claims survived, the Terms also bar "consequential, special, indirect, exemplary, punitive, or incidental damages"—the only damages at issue here. *See Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist.*, 34 Cal. 4th 960, 968 (2004) (damages that "do not arise directly and inevitably from any similar breach of any similar agreement" are "special damages"); *see also In re Yahoo!*, 2017 WL 3727318, at *45-46 (recognizing limitation of liability clause that barred, *inter alia*, consequential damages).

[11] The elements of a contract claim include (1) the contract, (2) defendant's breach, and (3) resulting damages to plaintiff. *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1388 (1990). So too for an implied contract claim "except that the promise is not expressed in words but is implied from the promisor's conduct." *Yari v. Producers Guild of Am., Inc.*, 161 Cal. App. 4th 172, 182 (2008). Implied duty and implied covenant claims also include the same elements, except the breach in the former is the "fail[ure] to use reasonable care in" performance of the contract, Jud. Council of Cal. Civ. Jury Instr. No. 328 (2019 ed.), and in the latter is the "failure or refusal to discharge contractual responsibilities" through a "conscious and deliberate

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS CONS. COMPLAINT
CASE NO. C 18-05982 WHA (JSC)

specificity." *ILWU-PMA Welfare Plan Bd. of Trs. v. Conn. Gen. Life Ins. Co.*, No. C 15-02965 WHA, 2015 WL 9300519, at *9 (N.D. Cal. Dec. 22, 2015). The implied contract, implied covenant, and quasi-contract claims (Counts II–IV) also fail for claim-specific reasons.

### A.    Plaintiffs Fail To State The Elements Of Counts I To III

**Plaintiffs Do Not Identify Any Specific Contractual Provision.** Plaintiffs fail to allege any "specific provisions in the contract creating the obligation [Facebook] is said to have breached." *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011) (dismissing breach of contract claim).[12] This is a glaring omission given that the Terms provide that Facebook makes "no guarantees that [its products] always will be safe, secure, or error-free." Ex. A § 4.3.

Plaintiffs point only to part of a statement about "top-rate security measures" that appears, not in the Terms, but on a "*Privacy Basics*" webpage. Compl. ¶ 195 & n.80. But that statement contains no "explicit promissory language" that would impose a *contractual obligation* on Facebook. *Block v. eBay, Inc.*, 747 F.3d 1135, 1138-39 (9th Cir. 2014) (affirming dismissal of contract claim based on "explanatory" statement that did not contain promissory language like other contract provisions); *see also* Ex. B ("We have top-rate security measures in place to help protect you and your data when you use Facebook."). Its language stands in contrast to other provisions of the Terms. *Cf.* Ex. A §§ 1-3 (prefacing user obligations with "you must," "you cannot," and "[y]ou may not"). Moreover, Plaintiffs also do not allege any facts showing the "top-rate" statement is part of their contract with Facebook. *See Dunkel v. eBay Inc.*, No. 5:12-CV-01452-EJD, 2014 WL 1117886, at *4 (N.D. Cal. Mar. 19, 2014) (plaintiffs failed to identify specific obligation where they failed to allege how "Help" articles were "included in the contract" or to "tie the other breaches they identif[ied] to any specific provision" of contract); *Woods v. Google Inc.*, No 5:11-cv-1263-JF, 2011 WL 3501403, at *3 (N.D. Cal. Aug. 10, 2011) (plaintiff failed to identify specific contractual obligation where he pointed to language on Help Center page

---

act, which unfairly frustrates the agreed common purposes" and "deprive[s] [the plaintiff] of the benefits of the agreement," *Careau*, 222 Cal. App. 3d at 1395.

[12] Implied duty and covenant claims similarly require identification of a contractual provision. *See Holguin v. Dish Network LLC*, 229 Cal. App. 4th 1310, 1324 (2014) (implied duty of reasonable care applies to performance of "the thing agreed to be done"); *Kroetch v. BAC Home Loan Servs.*, No. C 11-2860 MEJ, 2011 WL 4502350, at *3 (N.D. Cal. Sept. 27, 2011) (plaintiff must allege "specific contractual obligation from which the implied covenant" arose (citation omitted)).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

without "explain[ing] adequately why this language should be deemed to be incorporated into" contract and without pleading "adequately that the language created legal obligations").

**Plaintiffs Do Not Sufficiently Identify The Contract.**  Plaintiffs also fail to adequately identify the contract itself.  This should be simple.  Plaintiffs repeatedly acknowledge their agreement with Facebook, *i.e.*, the Terms.  Compl. ¶¶ 24 & n.10, 31-34, 37 & n.15, 186 & n.79, 192, 206.  And the Terms contain an integration clause, Ex. A § 4.5.1, which precludes reading in any additional or inconsistent provision.  *See World Health & Educ. Found. v. Carolina Cas. Ins. Co.*, 612 F. Supp. 2d 1089, 1097 (N.D. Cal. 2009) ("[E]xtrinsic evidence" cannot be used "to vary, alter or add to the terms of an integrated written instrument." (citation omitted)).

Yet in Counts I to III, Plaintiffs allege something beyond the Terms—an amorphous agreement the obligations of which "can be determined by reference to Facebook's course of dealing with the [putative] Class, industry practice, and from various webpages created by Facebook."  Compl. ¶¶ 192, 206; *see also id.* ¶ 214 (relying on both "express and implied terms of the agreements").  This is insufficient to allege the existence of an express contract, which required Plaintiffs to allege the contract's essential terms and facts showing how the "various webpages," *id.* ¶ 192, were "incorporated into the" contract or "themselves constitute a contract."  *Dunkel*, 2014 WL 1117886, at *4; *see also Vaccarino v. Midland Nat'l Life Ins., Co.*, No. CV 11-05858-CAS (MANx), 2011 WL 5593883, at *7 (C.D. Cal. Nov. 14, 2011).  It also is insufficient to allege an implied contract, which required Plaintiffs to allege "the facts from which" the conduct forming the purported promise is implied.  *Worldwide Media, Inc. v. Twitter, Inc.*, No. 17-cv-07335-VKD, 2018 WL 5304852, at *6-7 (N.D. Cal. Oct. 24, 2018).  Plaintiffs' reference to "course of dealing," "industry practice," and "various webpages," Compl. ¶ 206, does not even "make clear whether the breach is based on the terms of a written" or "implied-in-fact contract."  *Coffen v. Home Depot U.S.A. Inc.*, No. 16-03302-PJH, 2016 WL 4719273, at *5 (N.D. Cal. Sept. 9, 2016).

**Plaintiffs Do Not Allege With Specificity A Breach That Caused Injury.**  Plaintiffs do not plausibly or specifically allege that Facebook breached any purported contractual obligation or that any breach was a "substantial factor" in bringing about their alleged injuries.  *U.S. Ecology, Inc. v. State*, 129 Cal. App. 4th 887, 909 (2005).  The Complaint rests on an assumption that

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS CONS. COMPLAINT
CASE NO. C 18-05982 WHA (JSC)

because the Attack happened, Facebook must have failed an obligation to protect user information. But Plaintiffs' repeated claims of "unreasonable" security are no substitute for factual allegations.

That Facebook had security vulnerabilities—like any enterprise in the digital age—that were exploited by criminals cannot *alone* support an inference that its security was subpar. *See Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 717-18 (8th Cir. 2017) ("The implied premise that because data was hacked Scottrade's protections must have been inadequate is a 'naked assertion[] devoid of further factual enhancement' that cannot survive a motion to dismiss." (citation omitted)). Plaintiffs seek to embark on a putative class action on behalf of millions with the accompanying "potentially enormous expense of discovery." *Razuki v. Caliber Home Loans, Inc.*, No. 17CV1718-LAB (WVG), 2018 WL 6018361, at *2 (S.D. Cal. Nov. 15, 2018) (citation omitted). The plausibility of their claims should be assessed in light of these potential expenses, *id.*, and in light of the sophistication and resources of their counsel who recently represented that they have, *inter alia*, "[i]nvestigated the facts underlying the challenged conduct at issue here through the use of former FBI agents" and "[r]etained consulting experts in industry-standard information security practices." Mot. for Appt. As Interim Class Counsel at 6-7 (Jan. 15, 2019) (Dkt. No. 72).

**Plaintiffs Do Not Allege Damages.** As discussed *supra* Section IV, Plaintiffs have not alleged "appreciable and actual damage." *Ruiz v. Gap, Inc.*, 622 F. Supp. 2d 908, 917-18 (N.D. Cal. Apr. 6, 2009) (increased risk of identity theft and mitigation costs not "appreciable and actual damage"), *aff'd*, 380 F. App'x 689, 692 (9th Cir. 2010); *see also Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000).

**B.      The Implied Contract Claim Also Fails For Claim-Specific Reasons**

The implied contract claim also fails because (i) an undisputed "valid, express contract … embrac[es] the same subject matter," *Berkla v. Corel Corp.*, 302 F.3d 909, 918 (9th Cir. 2002) (citation omitted), and (ii) it is redundant of the contract claim, *see Mountain View Surgical Ctr. v. Cigna Health Corp.*, No. CV 13-08083 DDP AGRx, 2015 WL 5456592, at *2 (C.D. Cal. Sept. 17, 2015).[13]

---

[13] Rule 8 allows alternative pleading, but where, as here, "the parties do not dispute the existence of … an enforceable express contract … cover[ing] the same subject matter … there can be no cause of action" arising from either an alleged implied- or quasi-contract. *Be In, Inc. v. Google*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## C.     The Implied Covenant Claim Also Fails For Claim-Specific Reasons

Plaintiffs' implied covenant claim also fails because they do not allege any facts, much less plausible ones, showing Facebook (i) engaged in a "conscious" and "deliberate" "fail[ure] to provide adequate safeguards," Compl. ¶ 216, that (ii) "unfairly frustrate[d] the agreed common purpose of the agreement," *i.e.*, connecting Facebook users with others (Ex. A §§ 1, 2). *Corona v. Sony Pics. Entm't*, No. 14-cv-09600 RGK, 2015 WL 3916744, at *6 (C.D. Cal. June 15, 2015). It is also entirely redundant of the express contract claim. *See Sharp v. Nationstar Mortg., LLC*, 701 F. App'x 596, 598 (9th Cir. 2017).

## D.     Plaintiffs Fail To State A Quasi-Contract Claim

Plaintiff's quasi-contract claim fails for several reasons. First, it is undisputed that an enforceable "contract defines the rights of the parties." *Ellis v. JPMorgan Chase & Co.*, No. 16-17005, 752 F. App'x 380, 2018 WL 4090102, at *3 (9th Cir. Aug. 28, 2018). Second, either Plaintiffs fail to allege with particularity a false or misleading statement, Compl. ¶ 221; *see also infra* Section VIII.B; *In re Arris Cable Modem Consumer Litig.*, No. 17-CV-01834-LHK, 2018 WL 288085, at *10 (N.D. Cal. Jan. 4, 2018) (quasi-contract claim subject to Rule 9(b) where it "sounds in fraud"), or, if the claim is not premised on an alleged misrepresentation (it is not clear), then it is barred by Section 4.3, *see supra* Section V. Third, Plaintiffs fail to allege "'receipt of a benefit and unjust retention of that benefit at the expense of [Plaintiffs],'" *Cont'l Cas. Co. v. Enodis Corp.*, 417 F. App'x 668, 670 (9th Cir. 2011) (citation omitted), because they acknowledged Facebook could not guarantee security, Ex. A §§ 2, 4.3, and enjoyed access to a free social media platform. Fourth, Plaintiffs' request for non-restitutionary disgorgement of profits, Compl. ¶ 225, is off the mark. They do not allege a breach of fiduciary duty, *see Lanovaz v. Twinings N. Am., Inc.*, No. 12-cv-02646-R, 2015 WL 729705, at *1-2 (N.D. Cal. Feb. 19, 2015); courts have declined to extend non-restitutionary disgorgement to, *e.g.*, consumer-protection or product-labeling cases, *see, e.g.*, *id.*; *Belli v. Nestlé USA, Inc.*, No. 5:14-CV-00286-PSG, 2015 WL 4197045, at *3 (N.D. Cal. July 15, 2015); and Plaintiffs offer no reason to find differently here.

---

*Inc.*, No. 12-CV-03373-LHK, 2013 WL 5568706, at *5 (N.D. Cal. Oct. 9, 2013); *see also Total Coverage, Inc. v. Cendant Settlement Servs. Grp., Inc.*, 252 F. App'x 123, 126 (9th Cir. 2007).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS CONS. COMPLAINT
CASE NO. C 18-05982 WHA (JSC)

# VII. PLAINTIFFS FAIL TO STATE ANY NEGLIGENCE CLAIM

Again setting Section 4.3 aside, Plaintiffs' negligence claims founder because Plaintiffs may not recover in tort purely economic losses. Plaintiffs also do not sufficiently allege any element of a negligence claim, and negligence per se is not an independent cause of action.

## A. The Economic Loss Rule Bars Plaintiffs' Negligence Claims

Plaintiffs do not allege "physical harm (i.e., personal injury or property damage)," and therefore the "economic loss doctrine" bars their negligence claims "as a matter of law." *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 959-61 (S.D. Cal. 2012) ("*Sony I*"). Plaintiffs' alleged damages (Compl. ¶¶ 236, 247) are precisely the type of economic injuries that bar negligence claims in data breach cases. *See, e.g.*, *Castillo v. Seagate Tech., LLC*, No. 16-cv-01958-RS, 2016 WL 9280242, at *5-6 (N.D. Cal. Sept. 14, 2016).[14]

Nor do Plaintiffs allege any exception. The "special relationship" exception (Compl. ¶ 231) does not apply where, as here, the parties "are in privity of contract," and the claims fall within the scope of the contract. *Body Jewelz, Inc. v. Valley Forge Ins. Co.*, 241 F. Supp. 3d 1084, 1092-93 (C.D. Cal. 2017); *see also Kalitta Air, L.L.C. v. Cent. Tex. Airborne Sys., Inc.*, 315 F. App'x 603, 605-06 (9th Cir. 2008) (recognizing six-factor test set forth in *J'aire v. Gregory*, 24 Cal. 3d 799, 804 (1979), applies to "a plaintiff lacking privity with a defendant").[15]

It certainly does not apply here, where Plaintiffs are a handful of 2.3 billion Facebook users who have the *same* contractual relationship with Facebook. *See Greystone Homes, Inc. v. Midtec,*

---

[14] *See also Dugas*, 2016 WL 6523428, at *12 (same); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 962 (S.D. Cal. 2014), *amended by* 2014 WL 12603117 (Feb. 10, 2014) ("*Sony II*") (same).

[15] In *ILWU-PMA Welfare Plan Bd. of Trs. v. Conn. Gen. Life Ins. Co.*, No. C 15-02965 WHA, 2015 WL 9300519, at *11 (N.D. Cal. Dec. 22, 2015), this Court cited *North American Chemical Co. v. Superior Court*, 59 Cal. App. 4th 764 (1997), which held that the special relationship exception can be applied where the parties have a contract for services (as opposed to goods). *Id.* at 783. This Court addressed the distinct independent duty exception, however, and held that exception would allow a negligence claim only if the plaintiffs "alleged a specific professional duty" "*separate*" from "that established by contract." *ILWU-PMA*, 2015 WL 9300519, at *11. Plaintiffs do not allege the independent duty exception applies here, nor can they. *See infra* Section VII.C. Other courts have disagreed with *North American Chemical* in the context of the special relationship exception. *See Body Jewelz*, 241 F. Supp. 3d at 1093 & n.10; *Heidelberg USA, Inc. v. PM Lithographers, Inc.*, No. CV 17-02223-AB, 2017 WL 7201872, *9-10 (C.D. Cal. Oct. 19, 2017) (citing cases). *But see In re Sony I*, 903 F. Supp. 2d at 961-62.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS CONS. COMPLAINT
CASE NO. C 18-05982 WHA (JSC)

*Inc.*, 168 Cal. App. 4th 1194, 1230-31 (2008) (collecting cases and holding "ordinary buyers" of the "*same product*" do not have a special relationship with manufacturer); *see also Fields v. Wise Media, LLC*, No. C 12-05160 WHA, 2013 WL 3812001, at *5 (N.D. Cal. July 19, 2013) (recognizing case law holding that first *J'aire* factor requires a transaction that "affect[ed] the plaintiff[s] in particular as opposed to similarly situated purchasers" (alterations in original) (citation omitted)). If, as Plaintiffs suggest, sharing information creates a special relationship, then the "limited" special relationship exception, *Greystone Homes*, 168 Cal. App. 4th at 1228 (citation omitted), would swallow the economic loss rule. It is difficult to imagine *any* transaction with a service provider that does not involve sharing, *e.g.*, "name and contact details." Compl. ¶ 6.

Plaintiffs do not attempt to allege the *J'aire* factors for finding a special relationship. *See Fields*, 2013 WL 3812001, at *5 (dismissing negligence claim for failure to allege *J'aire* factors); *Dugas*, 2016 WL 6523428, at *12 (same). The test is *not* satisfied where, as here, plaintiffs do not adequately allege the defendant was aware of the security vulnerabilities, the certainty of any resulting injury, a connection between plaintiffs and defendant beyond that "envisioned in everyday consumer transactions," and morally blameworthy conduct. *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 969-73 (S.D. Cal. 2014), *amended by*, 2014 WL 12603117 (Feb. 10, 2014) ("*Sony II*"); *Castillo*, 2016 WL 9280242, at *6.[16]

### B.     Negligence Per Se Is Not A Standalone Cause Of Action

Plaintiffs assert a standalone "negligence per se" claim (Count VI), but negligence per se is a codified "evidentiary doctrine," *not* "an independent cause of action," and Count VI should thus be dismissed. *Quiroz v. Seventh Ave. Ctr.*, 140 Cal. App. 4th 1256, 1285-86 (2006); *see also Dent v. NFL*, 902 F.3d 1109, 1117 (9th Cir. 2018) (construing negligence per se claim as negligence claim that invokes negligence per se doctrine).

### C.     Plaintiffs Fail To State Any Negligence Claim

Apart from the economic loss rule, Plaintiffs fail to plausibly allege the elements of a

---

[16] In contrast, *Corona*, 2015 WL 3916744, at *4-5, found a special relationship where plaintiffs were *employees* of Sony and were required to provide PII in order to receive compensation and employment benefits, Sony already had prior breaches, and plaintiffs' PII, including social security numbers, employment files, financial and medical information, was publicly disclosed and copied.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS CONS. COMPLAINT
CASE NO. C 18-05982 WHA (JSC)

negligence claim: duty, breach, causation, and damages. *See Dent*, 902 F.3d at 1117.

**No Common-Law Duty To Conform To A Certain Standard.** Plaintiffs' bare allegations that Facebook owed them legal duties to protect their information and notify them in timely fashion about any data breach, Compl. ¶ 228, do not allege a common-law duty, which is a "question of law for the court." *Paz v. State*, 22 Cal. 4th 550, 557 (2000).

Plaintiffs have not alleged a duty of care based on "the general character of the activity in which the defendant engaged." *Dent*, 902 F.3d at 1118 (applying factors set forth in *Rowland v. Christian*, 69 Cal. 2d 108, 113 (1968) (citation omitted)). Here, Facebook offered Plaintiffs and 2.3 billion users a free social networking service; required Plaintiffs to share only minimal, largely publicly available personal information, namely, "name, email address or mobile phone number, date of birth, and gender," Compl. ¶ 26; represented that it could not guarantee the security of Plaintiffs' information, including because of third-party conduct, Ex. A § 4.3; and suffered a third-party criminal Attack. Plaintiffs do not allege a special relationship or that Facebook undertook affirmative acts to endanger their information, but instead rely on generally applicable allegations of omissions and nonfeasance. None of this gives rise to a common law duty of reasonable care. *See, e.g.*, *Attias v. CareFirst, Inc.*, No. 15-cv-00882 (CRC), 2019 WL 367984, at *14-17 (D.D.C. Jan. 30, 2019) (analyzing factors courts have found relevant to existence of common-law duty to provide reasonable data security, and finding no duty based on the parties' "typical commercial relationship"); *Buckley v. Santander Consumer USA, Inc.*, No. C17-5813 BHS, 2018 WL 1532671, at *5 (W.D. Wash. Mar. 29, 2018) (declining to find "common law legal duty" where plaintiff alleged "failure to maintain adequate security," but not affirmative acts or special relationship).[17]

Plaintiffs fare no better in their attempt to allege a duty or standard of care through the negligence per se doctrine and cursory references to Section 5 of the FTC Act, 15 U.S.C. § 45, Section 1798.81.5 of the California Customer Records Act ("CRA"), and the California statutory claim for deceit, Cal. Civ. Code § 1709; Compl. ¶¶ 229-30, 240-46.

---

[17] *Cf. Castillo*, 2016 WL 9280242, at *3 (finding a duty where "[a]s a condition of employment, employees disclosed the sort of information reasonable people guard closely"); *Sony II*, 996 F. Supp. 2d at 954, 966 (noting that neither party provided the court with case law but holding that plaintiffs sufficiently alleged a legal duty where they provided personal information, including credit card and log in information, as a part of a commercial transaction).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS CONS. COMPLAINT
CASE NO. C 18-05982 WHA (JSC)

To begin with, a Plaintiff may only "borrow" a statute to prove the "duty of care and standard of care" element of a negligence claim under specific circumstances. *Das v. Bank of Am., N.A.*, 186 Cal. App. 4th 727, 738  (2010).  The statute allegedly violated must proscribe a "*particular* course of conduct" that a defendant "must take, or refrain from taking." *Ramirez v. Nelson*, 44 Cal. 4th 908, 919 (2008) (emphasis added).  And the negligence per se doctrine, which is codified in section 669 of the California Evidence Code, can only be invoked to provide the standard of care where (1) a statutory violation (2) caused "death or injury to person or property," to (3) a "person[] for whose protection the statute . . . was adopted," *and* (4) the alleged injury was "of the nature which the statute was designed to prevent."  Cal. Evid. Code § 669(a)(1)-(4); *see also Dent*, 902 F.3d at 1118; *Jack v. Pearson*, No. 1:17-CV-0520 AWI SAB, 2018 WL 1567796, at *4 (E.D. Cal. Mar. 30, 2018) ("alleging negligence per se without allegations that plausibly indicate the presumption's applicability is grounds for dismissal").  Plaintiffs' allegations fail on all counts.  Their index of injury allegations do not plausibly allege injury to "person" or "property," and each set of statute-specific allegations fails as well.

First, in proscribing "unfair . . . acts or practices in or affecting commerce," 15 U.S.C. § 45(a)(1); Compl. ¶¶ 230, 241, the FTC Act speaks only in generalities and does not set forth a "*specific* standard of conduct," *Fagerquist v. W. Sun Aviation, Inc.*, 191 Cal. App. 3d 709, 722 (1987) (emphasis added).[18]  Plaintiffs also do not allege a violation of the FTC Act, because they have not plausibly alleged *any* injury, let alone a "substantial" one, nor have they connected their alleged injuries to any unreasonable security practice.  15 U.S.C. § 45(n); *see also FTC v. D-Link Sys., Inc.*, No. 3:17-cv-00039-JD, 2017 WL 4150873, at *5 (N.D. Cal. Sept. 19, 2017) (dismissing FTC unfairness claim where FTC did not "identify a single incident where a consumer's financial, medical or other sensitive personal information has been accessed, exposed or misused").  And Plaintiffs fail to allege that users' "countervailing benefit[]" of access to Facebook's free platform

---

[18] *See also, e.g.*, *Diamond v. Grow*, 243 Cal. App. 2d 396, 401 (1966) (operating practices requiring pilots to "[u]se reasonable restrain[t]," to "[b]e alert at all times," and to "give way" when another aircraft is "getting too close to you" were too vague to be asserted in negligence per se); *Pierce v. Pac. Gas & Elec. Co.*, 166 Cal. App. 3d 68, 88 (1985) (a rule that is "merely a statement of the common law rule of due care . . . cannot be the basis of negligence per se"); Dan B. Dobbs et al, *Law of Torts* § 150 (2d ed.) (negligence per se not applicable to "abstract statutes that require reasonableness or the like but that do not specify the particular conduct" required or prohibited).

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
SAN FRANCISCO

26

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS CONS. COMPLAINT
CASE NO. C 18-05982 WHA (JSC)

does not outweigh the risk that Facebook cannot always be safe and secure. 15 U.S.C. § 45(n).[19]

Second, Section 1798.81.5 of the CRA similarly speaks only in generalities—setting forth a duty to provide "reasonable security," Cal. Civ. Code § 1798.81.5(a)(1), (b)—and Plaintiffs fail to allege a violation. The CRA applies only to "personal information," Cal. Civ. Code § 1798.81.5(d), which can take the form of either of two statutorily-defined combinations,[20] neither of which is alleged here. Plaintiffs also set forth no allegations that they are members of the class the CRA was intended to protect, given that the CRA concerns only "personal information about California residents," *id.* § 1798.81.5(a)(1), (b), and applies only to "customers," *id.* § 1798.84(b).

Third, Plaintiffs' drive-by invocation of the deceit statute is deficient on all fronts. The entirety of Plaintiffs' allegation is that Facebook "violat[ed] Cal. Civ. Code § 1709." Compl. § 246. Plaintiffs do not even attempt to explain how they would borrow a *deceit* statute as the basis for a *negligence* claim. *See Cal. Serv. Station & Auto. Repair Ass'n v. Am. Home Assur. Co.*, 62 Cal. App. 4th 1166, 1178 (1998) (statutes that "prohibit misrepresentations" and are "analogous to the torts of fraud and deceit" do not "create a negligence duty of care"). Plaintiffs certainly do not allege a violation of § 1709, because they set forth no allegations as to any of its elements. *Aguilera*, 223 F.3d at 1016. And they allege nothing about the class the legislature intended to protect or the injuries the legislature intended to prevent.

**Plaintiffs Fail To Allege A Breach Or Resulting Damages.** Plaintiffs' allegations as to breach, causation, and damages in negligence are nearly identical to those in their contract-based claims, and they fail under the same standards and for the same reasons set forth *supra*. *See Mayes*

---

[19] Plaintiffs are effectively seeking to "pursu[e] a private cause of action for damages" under the FTC Act. *Sierra-Bay Fed. Land Bank Ass'n v. Sup. Ct.*, 227 Cal. App. 3d 318, 333 (1991). But the FTC Act contains no private cause of action, and Plaintiffs have alleged no facts to support the "anomaly" of state law recognition of a *de facto* private cause of action "where the federal government has refused to permit such an action." *Id.* at 335; *cf. Pica v. Delta Air Lines, Inc.*, No., CV 18-2876-MWF (Ex), 2018 WL 5861362, at *9 (C.D. Cal. Sept. 18, 2018) (dismissing negligence per se claim premised on FTC Act because it lacks a private cause of action).

[20] The first combination is: (1) name *and* (2) one of: (a) a social security number; (b) driver's license or California identification card number; (c) an account number, credit or debit card number, along with its security code, access code, or password; (d) medical information; or (e) health insurance information. Cal. Civ. Code § 1798.81.5(d)(1)(A). The second combination is: (1) a username or email address; *and* (2) its accompanying password or security question and answer. *Id.* § 1798.81.5(d)(1)(B).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS CONS. COMPLAINT
CASE NO. C 18-05982 WHA (JSC)

*v. Bryan*, 139 Cal. App. 4th 1075, 1092 (2006), *as modified* (June 21, 2006) ("The proper test for proving causation is the 'substantial factor' test."); *Sony I*, 903 F. Supp. 2d at 962 ("[A]ppreciable, nonspeculative present harm is an essential element of a negligence cause of action."); *Krottner v. Starbucks Corp.*, 406 F. App'x 129, 131 (9th Cir. 2010) (applying Washington law) (although data breach plaintiffs had pleaded a sufficient injury-in-fact for standing purposes, allegations were insufficient to "establish[ ] a cognizable injury for the purposes of negligence").

The only way in which the negligence allegations meaningfully differ from contract, is Plaintiffs' conclusory assertions that Facebook had a duty to, but did not, "promptly notify[ ] Plaintiffs" of the Attack. Compl. ¶¶ 228(c), 235(c). Plaintiffs set forth no support for the existence of such a duty, no parameters for a reasonable notification timeline, and certainly no allegations suggesting that Facebook's September 28, 2018 notification, *id.* ¶ 92, was at all unreasonable. In any event, Plaintiffs fail to allege any damages from the purported delayed notification. *See, e.g.*, *Antman*, 2018 WL 2151231, at *11; *Sony II*, 996 F. Supp. 2d at 965.

## VIII. PLAINTIFFS FAIL TO STATE A UCL OR CLRA CLAIM

The UCL and CLRA claims fail for lack of statutory standing and failure to state a claim.

### A. Plaintiffs Do Not Have Statutory Standing Under The UCL Or CLRA

Statutory standing under the UCL and CLRA is "substantially narrower" than standing under Article III, *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 324 (2011), and Plaintiffs' barebones allegations fall short.

**No Economic Injury.** Plaintiffs repeat the same list of injuries, Compl. ¶¶ 256, 268, with barely an acknowledgement that they must plead "lost money or property" (UCL) or "economic" damages (CLRA). *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013), *amended by* No. 11-55793, 2013 U.S. App. LEXIS 13731 (July 8, 2013) (citation omitted); *see also Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) ("To establish standing to bring a claim under [the UCL, FAL, and CLRA], plaintiffs must meet an economic injury-in-fact requirement.").

As discussed, Plaintiffs cannot establish economic injury based on costs to mitigate an unfounded and hypothetical risk of identity theft. *See Antman*, 2018 WL 2151231, at *9 (holding that mitigation costs could not establish injury in fact where the risk of identity theft was not "real

and imminent"). Nor can they rely on any diminution in value theory. PII is not "property under the UCL," *Dugas*, 2016 WL 6523428, at \*11; *see also In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 714 (N.D. Cal. 2011), *aff'd in relevant part, rev'd in part,* 572 F. App'x 494 (9th Cir. 2014); *see Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1093 (N.D. Cal. 2018) (Corley, M.J.) ("[T]he sharing of names, user IDs, location and other personal information does not constitute lost money or property for UCL standing purposes."), and in any event their theory is premised on conclusory allegations about unspecified information. *See In re Google Android Consumer Privacy Litig.*, 2013 WL 1283236, at \*4, \*9 (rejecting diminution-in-value theory of statutory standing where complaint included no specific allegations of how plaintiffs' information had become less valuable); *Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855, 862-63 (N.D. Cal. 2011) (rejecting theory that PII is lost money or property, where plaintiff failed to show PII did not cease to belong to him or pass beyond his control). And their "benefit of the bargain" theory fails for the simple reason they did not pay "money or property" to obtain Facebook's free services. *See In re Facebook Privacy Litig.*, 791 F. Supp. 2d at 715.

**No Actual Reliance.** Plaintiffs likewise disregard well-established case law requiring them to allege with particularity actual reliance on a misrepresentation or omission. *See Letizia v. Facebook, Inc.*, 267 F. Supp. 3d 1235, 1243-44 (N.D. Cal. July 14, 2017); *Davidson v. Apple, Inc.*, No. 16-16-CV-04942-LHK, 2017 WL 976048, at \*9 (N.D. Cal. Mar. 14, 2017).

First, their affirmative misrepresentation theory fails for the fundamental reason that Plaintiffs fail to identify any specific misrepresentation, much less allege with particularity that it was false and misleading. *In re Yahoo!*, 2017 WL 3727318, at \*28 (reciting statements in Complaint's "general factual allegations," without "explain[ing] why any of these statements are false and misleading" or referring to them in UCL claims is insufficient). They also fail to allege any "specific facts" showing they actually read any misstatements in using Facebook, let alone that they relied on an alleged misstatement. *In re iPhone App. Litig.*, 6 F. Supp. 3d 1004, 1019-20 (N.D. Cal. 2013) ("Plaintiffs must point to specific facts indicating that Plaintiffs actually saw the misrepresentations about which they complain, and that those misrepresentations were 'substantial

factor[s]' in Plaintiffs' decisions to purchase their iPhones." (alteration in original) (citation omitted)).

Second, Plaintiffs' omission theory fares even worse. They fail to plead that "had the omitted information been disclosed," they each "would have been aware of it and behaved differently." *In re Yahoo!*, 2017 WL 3727318, at *30 (citation omitted). They do not allege they read *any* statements in using Facebook. *See id.*; *see also Davidson*, 2017 WL 976048, at *9 (plaintiff must plead with particularity "'what materials' they 'viewed'" prior to purchasing a product (citation omitted)). And they fail to allege with any particularity or plausibility that "had the omitted information been disclosed," they would have "behaved differently." *In re Yahoo!*, 2017 WL 3727318, at *30 (citation omitted); *cf.* Compl. ¶ 266 (conclusory allegation in CLRA claim). Plaintiffs do not allege they cancelled their accounts because of the Attack. To the contrary, Plaintiff Brown-Wells complains that, after she was logged out of her account, she somehow could not continue to use Facebook. *Id.* ¶ 176. The fact that Plaintiffs' "behavior after discovering the omission" is "exactly the same as their behavior before they knew of the omission, logically foreclos[es] any allegations of reliance" here, where Plaintiffs would not have faced any tangible costs in closing their accounts. *Adobe*, 66 F. Supp. 3d at 1231 n.14; *see also Noll v. eBay Inc.*, No. 5:11-CV-04585-EJD, 2013 WL 2384250, at *4 (N.D. Cal. May 30, 2013).

### B.     Plaintiffs Fail To State A Claim Under Any UCL Prong

**No "Unlawful" Conduct.** None of the violations Plaintiffs identify—(i) the Terms of Service, (ii) an FTC consent decree; (iii) the FTC Act; and (iv) the CRA, Compl. ¶ 253—are predicates for a claim under the UCL's unlawful prong. *See Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1177 (9th Cir. 2016) (explaining that "unlawful" prong "borrows violations of other laws and treats them as unlawful practices" that are "independently actionable" (citation omitted)).

To start, the limitation of liability clause bars any UCL claim based on the Terms, and in any event, Plaintiffs have not come close to alleging a breach of the Terms—they do not even identify the contract provision breached. Moreover, "California courts have held that a[ ] breach of contract is not itself 'unlawful' conduct for purposes of California's UCL." *Boland, Inc. v. Rolf*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

30

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS CONS. COMPLAINT
CASE NO. C 18-05982 WHA (JSC)

1  *C. Hagen (USA) Corp.*, 685 F. Supp. 2d 1094, 1110-11 (E.D. Cal. 2010) (citing, *inter alia, Puentes*
2  *v. Wells Fargo Home Mortg., Inc.*, 160 Cal. App. 4th 638, 645, (2008)).

3      Beyond the Terms, "[i]f [P]laintiffs wish to base a UCL 'unlawfulness' claim on any one
4  statute," they "must identify the particular section of the statute that was violated" and "plead with
5  particularity how the facts of this case pertain to that specific statute." *Baba v. Hewlett-Packard*
6  *Co.*, No. C 09-05946 RS, 2010 WL 2486353, at *6 (N.D. Cal. June 16, 2010). Plaintiffs'
7  conclusory references to a "business act[] or practice[] that w[as] proscribed by law," Compl.
8  ¶ 253(b), hardly suffice to allege a violation of the FTC Act or CRA. *See also supra* Section VII.C.
9  And conclusory or not, the consent decree cannot support Plaintiffs' UCL claim, because it is not
10  enforceable by a non-party (*i.e.*, Plaintiffs), *see Blue Chip Stamps v. Manor Drug Stores*, 421 U.S.
11  723, 750 (1975), *abrogated on other grounds by Merrill Lynch v. Dabit*, 547 U.S. 71 (2006), and
12  a UCL unlawful claim may only be premised on "a violation of another *law*." *Berryman v. Merit*
13  *Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007) (emphasis added); *see also Newton v. Am.*
14  *Debt Servs., Inc.*, 75 F. Supp. 3d 1048, 1062 (N.D. Cal. 2014) (FDIC cease and desist order
15  improper predicate for UCL "unlawful" claim).

16      **No "Unfair" Conduct.** Plaintiffs' bare allegations do not adequately plead "unfair"
17  conduct under either possible test: (i) the "*South Bay*" test, where the challenged business practice
18  must be "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers,"
19  or (ii) the "tethering" test, where the unfair conduct must be "tethered to specific constitutional,
20  statutory, or regulatory provisions." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 866 (9th Cir. 2018)
21  (citation omitted) (discussing both tests); *Smith v. LG Elecs. U.S.A., Inc.*, No. C 13-4361, 2014
22  WL 989742, at *9-10 (N.D. Cal. Mar. 11, 2014) (dismissing UCL unfairness claim under both
23  tests where plaintiffs failed to provide "factual support").[21]

24      Plaintiffs have not alleged any cognizable harm, *see supra* Section VIII.A, much less a
25  "substantially injurious" consumer injury under the "*South Bay*" test. And they offer no factual
26  support for their conclusory allegations of a purportedly unfair practice, namely, that Facebook

27
28  [21] Plaintiffs include conclusory allegations about the FTC unfairness test, Compl. ¶ 252(c), but the
Ninth Circuit has rejected application of the FTC test in consumer actions. *See Lozano v. AT&T*
*Wireless Servs., Inc.*, 504 F.3d 718, 736 (9th Cir. 2007).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

31

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS CONS. COMPLAINT
CASE NO. C 18-05982 WHA (JSC)

failed "to implement and maintain reasonabl[e] security measures." Compl. ¶ 252(a). In any event, Facebook expressly disclosed that it could not guarantee security, and its "failure to disclose" additional information that "it had no duty to disclose in the first place is not substantially injurious, immoral, or unethical." *Hodsdon*, 891 F.3d at 867; *see also Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1170 (9th Cir. 2012).

Plaintiffs' conclusory allegations (Compl. ¶ 252(b)) do not satisfy the "tethering" test because they do not plead with specificity how Facebook violated any "specific constitutional or statutory provision . . . or a regulation carrying out statutory policy." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 184 (1999).

**No "Fraudulent" Conduct.** Plaintiffs fare no better under the "fraud" prong because they do not identify a specific misrepresentation or omission, let alone plead under Rule 9(b) that a reasonable consumer would likely have been deceived. *See Davis*, 691 F.3d at 1169; *Garcia v. Sony Comp. Entm't Am., LLC*, 859 F. Supp. 2d 1056, 1065-66 (N.D. Cal. 2012). As noted, Facebook disclosed that it could not guarantee Facebook is safe and secure, Ex. A § 4.3, and Plaintiffs cannot show "a reasonable consumer" would have believed the opposite. *Davis*, 691 F.3d at 1169-70 (citation omitted).

Plaintiffs also fail to allege any basis for inferring that Facebook *knew* its security measures were inadequate. California recognizes the "common-sense notion that a defendant cannot 'disclose facts of which it was unaware.'" *In re Nexus 6P Prods. Liability Litig.*, 293 F. Supp. 3d 888, 927 (N.D. Cal. 2018) (citation omitted); *see also Baba v. Hewlett-Packard Co.*, No. C 09-05946 RS, 2011 WL 317650, at *4 (N.D. Cal. Jan. 28, 2011) (where "UCL claim" "arises out of alleged misrepresentations and omissions" plaintiff must "plead the company's knowledge of the putative defect"). Plaintiffs' "conclusory allegations of knowledge" are insufficient. *Elias v. Hewlett-Packard Co.*, 950 F. Supp. 2d 1123, 1138 (N.D. Cal. 2013) (citation omitted).

In addition, Plaintiffs' omission theory is a non-starter. The Ninth Circuit recently made clear that an omitted fact is not likely to deceive anyone *as a matter of law* unless it "relate[s] to the central functionality of the product," or is "contrary to a representation actually made by the defendant." *Hodsdon*, 891 F.3d at 863-65 (affirming dismissal and holding that "a failure to

disclose a fact one has no affirmative duty to disclose is [not] 'likely to deceive' anyone within the meaning of the UCL"). Plaintiffs do not and cannot allege either.

### C. Plaintiffs Fail To State A CLRA Claim

Plaintiffs' CLRA claims are insufficiently pled for the same reason as the UCL fraud prong. *Ebner v. Fresh, Inc.*, 838 F. 3d 958, 965 (9th Cir. 2016) (same "reasonable consumer" test). In addition, Plaintiffs' CLRA claim fails for the simple reason that the CLRA does not apply to Facebook's provision of a free service. Cal. Civ. Code § 1761(d) (requiring "purchase or lease"). The "generalized notion that the [CLRA] phrase 'purchase' or 'lease' contemplates any less than tangible form of payment[] finds no support under the specific statutory language." *Claridge*, 785 F. Supp. 2d at 864; *see also In re Facebook Privacy Litig.*, 791 F. Supp. 2d at 717 (dismissing CLRA claims because "Plaintiffs' contention that their personal information constitutes a form of 'payment' to [Facebook] is unsupported by law"); *Yunker v. Pandora Media, Inc.*, No. 11-CV-03113 JSW, 2013 WL 1282980, at *12 (N.D. Cal. Mar. 26, 2013) (same); *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 153 (3d Cir. 2015) (same).

### D. Plaintiffs Are Not Entitled To Equitable Relief Under The UCL Or CLRA

Plaintiffs are also not entitled to injunctive relief or restitution, the only remedies available to them under the UCL, and the only remedies requested under the CLRA, Compl. ¶ 269 & n.83. *See also In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 128-30 (2009). Plaintiffs have not alleged any basis for restitution given that Facebook "did not benefit financially from the [d]ata [b]reach." *Sony I*, 903 F. Supp. 2d at 970. And they are ineligible for injunctive relief because they have not plausibly pled a "realistic[] threat[]" of "repetition" of the breach. *Dugas*, 2016 WL 6523428, at *8 (citation omitted); *see also Cal. Serv. Station & Auto. Repair Ass'n v. Union Oil Co.*, 232 Cal. App. 3d 44, 56-57 (1991) (explaining UCL injunctive relief "will be denied if, at the time of the order of judgment, there is no reasonable probability that the past acts complained of will recur").

### IX. PLAINTIFFS FAIL TO STATE A BREACH OF CONFIDENCE CLAIM

Plaintiffs' "breach of confidence" claim fails right out of the gate because it is premised on the allegation that Plaintiffs provided alleged "PII to [Facebook] with the explicit and implicit understandings" that Facebook would protect it, and then the information was compromised in the

Attack.  Compl. ¶¶ 275-76, 278.  Plaintiffs rely on this identical allegation to support their *contract* claims, *see supra* Section VI, and thus cannot use it to support the "mutually exclusive" breach of confidence tort.  *Berkla*, 302 F.3d at 918; *see also Metrano v. Fox Broad. Co.*, No. CV–00–02279 CAS JWJX, 2000 WL 979664, at *8 (C.D. Cal. Apr. 24, 2000).  Likewise, and as explained *supra* Section VII.A, the economic loss doctrine bars this claim in the same way it bars Plaintiffs' negligence claim.  *See Med. Sales & Consulting Grp. v. Plus Orthopedics USA, Inc.*, No. 08cv1595 BEN (BGS), 2010 WL 11432458, at *3 (S.D. Cal. Dec. 2, 2010).

The claim also fails because Plaintiffs do not even attempt to plead several of its elements.  For one, they do not plead that *Facebook*, as opposed to the hackers, "disclos[ed] or use[d]" the information.  *Berkla*, 302 F.3d at 917 (citation omitted); *see also Burns v. Erving*, 810 F. Supp. 2d 1167, 1172 (D. Nev. 2011); Cal. Civ. Prac. Bus. Litig § 68.28 (model template for breach of confidence complaint showing plaintiff must allege "defendant *knowingly* used and distributed plaintiff's confidential idea").  And they do not identify anything close to the "confidential and novel" information required to state a claim.  *Berkla*, 302 F.3d at 917 (citation omitted); *Friedman v. DirecTV*, 262 F. Supp. 3d 1000, 1006-07 (C.D. Cal. 2015).  Nor could they in this completely alien setting for a breach of confidence claim.  *See* Tait Graves, *Nonpublic Information and California Tort Law*, 2006 UCLA J.L. & Tech. 1, 49 (2006) ("typical fact pattern" for this claim "almost always involves the entertainment industry—an individual disclosed a confidential script or idea for a movie or television show to a more powerful studio or agent, and then alleges that the defendant used the idea").

## X.  PLAINTIFFS' DECLARATORY JUDGMENT CLAIM MUST BE DISMISSED

Because Plaintiffs have not pled any cognizable "continued risk" they cannot seek the prospective relief they request in their declaratory judgment claim.  *See supra* at Section IV.C.  Beyond the lack of standing, Plaintiffs' request that this Court rewrite (and, presumably, superintend) Facebook's entire data security protocol, Compl. ¶ 290, is breathtakingly overbroad and would constitute a plain abuse of discretion.  *See United States v. AMC Entm't, Inc.*, 549 F.3d 760, 768 (9th Cir. 2008) (abuse of discretion to order movie theater chain to completely retrofit its arenas).  A declaratory judgment is likewise unavailable for backward looking relief because

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

34

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS CONS. COMPLAINT
CASE NO. C 18-05982 WHA (JSC)

Plaintiffs have alternative means of obtaining backward looking relief. *Wishnev v. Nw. Mut. Life Ins. Co.*, 162 F. Supp. 3d 930, 952-53 (N.D. Cal. 2016) ("Where a substantive cause of action already exists in the complaint, a plaintiff cannot assert a declaratory relief claim as a 'superfluous second cause of action for the determination of identical issues.'" (citation omitted)).

## XI. CONCLUSION

For these reasons, the Court should grant Facebook's motion to dismiss.


DATED:  March 14, 2019                     Respectfully submitted,

LATHAM & WATKINS LLP

By:   /s/ Andrew B. Clubok
      Andrew B. Clubok (appearance *pro hac vice*)
       *andrew.clubok@lw.com*
      Susan E. Engel (appearance *pro hac vice*)
       *susan.engel@lw.com*
      555 Eleventh Street, NW, Suite 1000
      Washington, D.C.  20004-1304
      T:  +1.202.637.2200/F:  +1.202.637.2201

      Elizabeth L. Deeley (CA Bar No. 230798)
       *elizabeth.deeley@lw.com*
      Michael H. Rubin (CA Bar No. 214636)
       *michael.rubin@lw.com*
      Melanie M. Blunschi (CA Bar No. 234264)
       *melanie.blunschi@lw.com*
      505 Montgomery Street, Suite 2000
      San Francisco, CA  94111-6538
      T:  +1.415.391.0600/F:  +1.415.395.8095

      Serrin Turner (appearance *pro hac vice*)
       *serrin.turner@lw.com*
      885 Third Avenue
      New York, NY  10022-4834
      T:  +1.212.906.1200/F:  +1.212.751.4864

      *Attorneys for Defendant Facebook, Inc.*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

35

FACEBOOK'S NOTICE OF MOT. AND
MOT. TO DISMISS CONS. COMPLAINT
CASE NO. C 18-05982 WHA (JSC)