**VIA ECF**

July 29, 2019

Hon. Jacqueline Scott Corley, United States Magistrate Judge
United States District Court, Northern District of California
San Francisco Courthouse, Courtroom F – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *Adkins v. Facebook, Inc.*, No. 18-cv-05982-WHA (JSC) (N.D. Cal.)

Dear Judge Corley:

      In accordance with Your Honor's Civil Standing Order and Judge Alsup's Case Management Order (ECF No. 67), Plaintiffs and Defendant Facebook, Inc. ("Facebook") submit this letter regarding a discovery dispute concerning Facebook's Objections and Responses to 12 of the Requests in Plaintiffs' First Set of Requests for Production of Documents ("Objections"). After meeting and conferring in good faith, the parties have been unable to resolve the issues submitted herein.

      Exhibit I to the letter is a true and accurate copy of the Applicable General Objections section of Facebook's Objections and Responses to Plaintiffs' First Set of Requests for Production of Documents, and Plaintiffs' Requests Nos. 14, 15, 20, 44, 49, 64, 73, 74, 75, 76, 77, and 79 and Facebook's Objections and Responses thereto, along with a revised version of Request 79, which was conveyed to Facebook by email on June 13, 2019, and to which Facebook asserts the same objections as to the previous version.

Respectfully submitted,

<div style="column-count:2">

/s/ Henry J. Kelston
TADLER LAW LLP
Henry J. Kelston (Pro Hac Vice)
*hkelston@tadlerlaw.com*
Ariana J. Tadler (Pro Hac Vice)
*atadler@ tadlerlaw.com*
One Pennsylvania Plaza
New York, NY 10119
T: 929-207-3639 /F: 212-273-4375

MORGAN & MORGAN
COMPLEX LITIGATION GROUP
John A. Yanchunis (Pro Hac Vice)
*jyanchunis@ForThePeople.com*
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
T: 813-223-5505/F: 813-223-5402

COHEN MILSTEIN SELLERS & TOLL, PLLC
Andrew N. Friedman (Pro Hac Vice)
*afriedman@CohenMilstein.com*
1100 New York Ave, 5th Floor
Washington, DC 20005
T: 202-408-4600 /F: 202-408-4699

*Interim Co-Class Counsel*

/s/ Melanie M. Blunschi
LATHAM & WATKINS LLP
Elizabeth L. Deeley (CA Bar No. 230798)
  *elizabeth.deeley@lw.com*
Michael H. Rubin (CA Bar No. 214636)
  *michael.rubin@lw.com*
Melanie M. Blunschi (CA Bar No. 234264)
  *melanie.blunschi@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, CA  94111-6538
T:  +1.415.391.0600/F:  +1.415.395.8095

Andrew B. Clubok (appearance *pro hac vice*)
  *andrew.clubok@lw.com*
Susan E. Engel (appearance *pro hac vice*)
  *susan.engel@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C.  20004-1304
T:  +1.202.637.2200/F:  +1.202.637.2201

Serrin Turner (appearance *pro hac vice*)
  *serrin.turner@lw.com*
885 Third Avenue
New York, NY  10022-4834
T:  +1.212.906.1200/F:  +1.212.751.4864

*Attorneys for Defendant Facebook, Inc.*

</div>

## SIGNATURE ATTESTATION

I am the ECF User whose identification and password are being used to file the forgoing Joint Discovery Letter and pursuant to Civil Local Rule 5-1(i)(3), I, Henry J. Kelston, attest that concurrence in the filing of this document has been obtained from each of the signatories hereto.

Dated: July 29, 2019                                                              /s/ Henry J. Kelston
                                                                                            Henry J. Kelston

**PLAINTIFFS' POSITION**

This case involves a data breach (the "Breach") in which hackers gained access to the personally identifiable information ("PII") of 30 million Facebook user accounts by generating and stealing "user access tokens," which permit unlimited access to Facebook user accounts without the need to enter passwords. Facebook claims the vulnerability exploited by the hackers involved three code "bugs" that, when they appeared together, affected Facebook's "View As" feature, which allows users to see what their own profile looks like to someone else. The newest of the bugs was introduced in July 2017, meaning that hackers may have had full access to user accounts for over a year while Facebook failed to detect the vulnerability. Importantly, the "View As" feature and the other two bugs were introduced years earlier.

**Relevant Background**: At a conference on January 9, 2019, Judge Alsup informed the parties that Plaintiffs would be permitted to take "bone-crushing discovery" to test Facebook's factual claims about the Breach (ECF No. 71), and promptly ordered Plaintiffs to file a motion for class certification by August 15, 2019 and complete non-expert discovery by January 9, 2020 (ECF No. 67). Counsel for both parties recognized that this schedule required highly expedited discovery. On January 25, 2019, Plaintiffs served 85 Document Requests seeking, *inter alia*, documents related to the "View As" feature and the three bugs; Facebook's detection of the Breach, investigations of the causes, and remediation efforts, including logs reviewed in the investigation; Facebook's data security policies, practices and infrastructure that permitted the introduction of the bugs and failed to detect them for years, even after they ripened into an actual vulnerability in 2017; Board minutes and documents pertaining to the Breach; and financial information relating to Facebook's expenditures and staffing for data security.

Shortly after Plaintiffs served the Document Requests, Facebook agreed, in informal discussions, that it would promptly begin producing documents it knew to be relevant and responsive to the Requests. Notwithstanding Facebook's stated intent, discovery has been anything but expeditious since January. As recently as June 20, 2019, Facebook had produced a total of 322 documents (2,035 pages), including documents from only one named custodian, no emails, no log data, no Board documents, and no accounting data. (The motion to dismiss was granted in part and denied in part on June 21, 2019.) Even now, with the depositions of Facebook employees ongoing—after months of efforts to accelerate Facebook's document production, Plaintiffs elected to proceed with depositions (reserving their rights) despite the lack of substantive production—Facebook has produced a total of 6,022 documents (15,453 pages) in response to Plaintiff's requests directed at Facebook, a small fraction of the anticipated production in this case which, as recently as late June, Facebook estimated could reach 50,000 documents and 250,000 pages. While Facebook claims to have produced over 57,000 pages, Facebook's total includes 41,696 pages of printouts of the named Plaintiffs' Facebook profiles and other social media that Facebook produced in connection with Plaintiffs' depositions and in response to Plaintiffs' Requests.) Moreover, most of the produced documents are near-duplicates containing no unique substantive information (*e.g.,* identical emails to dozens of different recipients, and incomplete portions of chats produced in full in other documents).

Plaintiffs have repeatedly expressed great concern about Facebook's severely delayed production. On April 22, and several times since, Facebook set its own target date for substantial completion of document production of July 15, 2019. (On April 25, 2019, and thereafter, Plaintiffs strenuously objected and demanded substantial completion by June 15, 2019.) Even Facebook's own target date has passed and Facebook's production remains woefully incomplete. This is not the discovery Judge Alsup ordered.

**Plaintiffs' Motion**: On March 15, 2019, Facebook served Objections to Plaintiffs' Requests rife with pervasive violations of Federal Rule of Civil Procedure 34, including: (i) improper General Objections; (ii) boilerplate objections to Requests as "overly broad, unduly burdensome, not relevant

to any party's claim or defense, and not proportional to the needs of this case," with no support for claims of burden or analysis of the Rule 26(b)(1) proportionality factors; and (iii) objections to Requests as "vague and ambiguous" where the Requests can be reasonably understood and answered. Facebook did not identify any parts of Requests as not objectionable, and none of the objections stated whether responsive materials were being withheld on the basis of the objection (including privilege objections) as required by Rule 34(b)(2)(C). Facebook also objected to Plaintiffs' definition of the relevant time period for documents as July 1, 2013 to the present, and sought to limit discovery to documents created during the two-week period from September 14 to September 28, 2018.

The parties have met and conferred extensively on Plaintiffs' Requests and Facebook's Objections; some disputes have been resolved, interim agreements have been reached on some Requests, and discussions are continuing on certain Requests. Facebook attempted to address Plaintiffs' concerns, at least in part, by limiting its objections and describing the search methodologies it proposed to use in responding to each of 45 individual Requests. Plaintiffs anticipate that they may need to raise additional discovery disputes regarding, *e.g.*, the adequacy of Facebook's production (for those Requests for which Facebook has produced documents) and the adequacy of the search methodologies (for those RFPs for which Facebook has identified certain, inadequate, search terms and custodians), but Plaintiffs are endeavoring to resolve as much as possible via the meet-and-confer process.

As to the other 40 Requests, Facebook said it would stand on its objections and refused to produce any documents at all. The parties have reached at least interim agreements for 28 of these Requests; impasse has been reached on 12 Requests with Facebook refusing to produce any documents.

Plaintiffs raise this matter with the Court now because, six months after Judge Alsup's directive about bone-crushing discovery, Plaintiffs have received a grossly inadequate production from Facebook, with Facebook refusing to produce documents in response to certain requests, and Plaintiffs are left assessing Facebook's position based on non-compliant Responses and Objections. Vague, boilerplate objections that fail to state whether, or why, documents are being withheld make it impossible for Plaintiffs to assess Defendant's objections, Defendant's production status or adequacy, or the need for motion practice to compel additional searches or production. Below, Defendant provides certain detail about the Requests at issue in this letter, but this crucial information is absent from its Responses and Objections. Given Facebook's material delay despite the need for expedited discovery in this case, Plaintiffs need to alert the Court to the status of discovery progress and seek relief requiring Facebook to adequately state its objections, state whether it is withholding documents on the basis of those objections, produce relevant and responsive documents that fall outside of its objections, specify the Requests for which it contends production is complete, and set and comply with a date certain by which it will complete production.

Despite its blunderbuss objections, Facebook's justifications for its refusal to produce any documents in response to Requests 14, 15, 20, 44, 49, 64, 73, 74, 75, 76, 77, and 79 focus solely on the relevance of those Requests to Facebook's official version of the Breach. Plaintiffs believe, and evidence shows that the roots of the Breach ran deeper, and the impacts of the Breach were wider, than Facebook has disclosed.

Plaintiffs are entitled to conduct discovery on these issues:

<u>Third party apps and information-sharing (Reqs. 14 and 15):</u> The compromise of a highly permissioned access token provided the ability for third parties to exchange consumer profile, activity and other information and allowed the attackers to access multiple third-party applications. Plaintiffs seek to investigate security and privacy mechanisms and practices relating to compromised users in connection with third-party applications. <u>Security Practices (Req. 20)</u>: Because highly permissioned tokens were

known security issues at Facebook long before the breach Plaintiffs seek documents relating to senior management's knowledge of the issue, and the lax security culture that failed to address these issues. <u>View As (Req. 44)</u>: Plaintiffs seek to investigate design parameters and the security of the View As feature when it was created, any security risks discovered in maintaining View As, and how the code was reviewed prior to release to consumers (in particular integration and regression testing). <u>Compromise Resilience (Req. 49)</u>: Plaintiffs seek to investigate Facebook's security tools and practices and why those systems failed to detect and prevent the Breach. <u>Website References (Req. 64)</u>: Security and privacy blogs, articles, and terms of use have evolved over the years and Plaintiffs are unable to recreate articles and artifacts that would be relevant prior to, during and after the Breach, including information relating to the security and privacy validation of changes to various code modules implicated in the Breach. <u>Access to PII, User Expectations and Value of PII (Reqs. 73-77)</u>: Facebook's public statements regarding the importance of privacy and security, the company's efforts to safeguard PII, the monetary value to Facebook users of data security, and the loss of value of PII due to the Breach are relevant to Plaintiffs' contract claims and damages. <u>Financial Data (Req. 79)</u>: Changes in Facebook's spending on data security as compared to changes in spending in other areas are indicators of the level of priority and adequacy of the company's security practices.

**DEFENDANT'S POSITION**

Since Plaintiff served Facebook with 85 RFPs—most overbroad, many untethered to the issues in the case—Facebook has worked to "salvage some narrower element lurking within" the RFPs in order to bridge the divide between the parties. Suppl. Order to Order Setting Initial Case Mgmt. Conf. (Alsup, J.) at ¶ 17 (cautioning against "ask[ing] for more than you deserve with the expectation that the judge will cut it back to what you deserve"). Facebook prioritized the production of key materials related to Plaintiff's claims, including: submissions to regulators; detailed records of Facebook's response to the Attack; and key technical documents regarding the vulnerability that was exploited in the Attack. Facebook has diligently collected and reviewed documents from numerous custodians and sources, having produced over 57,000 pages of materials to date, with additional rolling productions occurring on a weekly basis. And Facebook has specifically staged its document production to facilitate the depositions of Facebook witnesses as Plaintiff has scheduled them. (Plaintiff has deposed six Facebook witnesses to date and two more are scheduled.) Plaintiff criticizes Facebook for not meeting its goal of substantial completion of document production by July 15 but fails to mention that Facebook prioritized—at Plaintiff's request—reviewing and producing documents for 8 *additional* custodians beyond those Facebook had agreed to when it provided the July 15 estimate; as of now, Facebook expects substantial completion within a few weeks. Against this record, Plaintiff's accusations of delay ring hollow, especially given that Facebook served its Objections in March 2019 but did not hear substantively from Plaintiff about the 12 RFPs at issue until June 2019. Nor is there any sudden urgency that is apparent: Plaintiff claims to be ready to move for class certification on the current record, and fact discovery does not close until January 2020 (ECF No. 67).

In any event, Plaintiff's motion is not about delay; it is about objections Facebook has lodged to 12 specific RFPs. Facebook stands on these objections because the 12 RFPs are unsalvageable and reflect fundamental misunderstandings about the issues in this case. During the parties' meet-and-confer sessions, Plaintiff's counsel could not articulate what ultimately is sought through these RFPs, why the RFPs are relevant or proportionate, or how Facebook could reasonably be expected to identify and produce responsive material. This letter is no different—Plaintiff continues to avoid the details of any specific dispute, and does not acknowledge Facebook's proposed compromises (or the information Facebook already provided), let alone offer any "final proposed compromise" with respect to each RFP. Civil Standing Order (Corley, J.) at 4. References to "bone-crushing" discovery do not excuse Plaintiff from the requirement that all discovery be relevant and proportionate to the case. And his

dismissively brief descriptions of the issues in dispute only raise further questions about the meaning and scope of the RFPs in question and their lack of connection to this case.

Facebook's objections to the RFPs are proper. "When the original request is overbroad or otherwise improper and the responding party timely, specifically and properly objects in writing, then the responding party need not produce anything in response to the request until the objections are overruled or a lesser scope is agreed-on (in writing)." Suppl. Order (Alsup, J.) at ¶ 17. Facebook timely lodged its objections in writing and has since explained them repeatedly in multiple meet-and-confers with Plaintiff's counsel, the substance of which is set forth below. Plaintiff's request should be denied.

**RFPs 14-15: Third Parties.** This case is about an Attack on Facebook by hackers who *stole* certain information, *not* whether Facebook affirmatively "shared" user information with third parties, such as advertisers, developers, or vendors. Thus, policies for sharing information with third parties are not relevant. To the extent Plaintiff seeks to explore the potential impact of the Attack on third-party *applications* that are accessible through Facebook Login, the RFPs are not tailored to that objective. Moreover, Facebook already produced documents concerning how it concluded that the Attackers did *not* access user accounts on third-party applications. To avoid wasting resources, Facebook proposed that Plaintiff review this investigative documentation, take the August 7 deposition of the person responsible for that investigation, and then identify any additional categories of documentation desired, if any. Plaintiff does not even acknowledge the proposal, let alone explain why it is not a more reasonable and proportional alternative to his misdirected and overbroad requests.

**RFP 20: Security Practices.** This RFP strays far from the issues in this case. With virtually boundless definitions of *PII*, *Data Security*, and *Computer Systems* (as detailed in the Objections), as well as the undefined term "senior managers or executives" (which could apply to many persons), this request essentially asks for documents covering all of Facebook's security operations. As such, it is neither relevant nor proportional to a case about a single attack involving a unique, previously unknown vulnerability on Facebook's web platform. Facebook asked Plaintiff to tailor this RFP to the issues in this case, but he refuses to do so. His assertion here that access tokens "were known security issues … long before the breach" is entirely conclusory, and, in any event, only highlights the fact that RFP 20 is in no way restricted to security issues concerning access tokens (let alone the type of access tokens actually at issue in the Attack).

**RFP 44: View As.** As Facebook has explained repeatedly to Plaintiff, the Attackers exploited a single, previously unknown vulnerability in this case, which was triggered in a narrow set of circumstances through the interaction of three different features. Although the View As feature was one of them, the vulnerability *required* the interaction of View As with two other features and thus did not exist until all three features were present on the Facebook platform, which did not occur until July 2017. As Facebook has likewise explained to Plaintiff, View As has been a Facebook feature for many years, since *before 2011*. Thus, the request made in this RFP for "all documents" relating to the release of or changes to View As, throughout the entire lifetime of the feature, is completely disproportionate and untailored to the vulnerability at issue. In particular, to the extent Plaintiff wants to show that the original testing of View As was inadequate, the RFP is pointless—the vulnerability did not exist until the other two features were in place, so no testing of View As could have unearthed it prior to July 2017. Plaintiff has no response.

**RFP 49: "Compromise Resilience."** During the parties' meet and confer, Facebook noted that it is unclear what "compromise resilience" means, but that the RFP appears to refer to resilience against a *network intrusion—i.e.*, the compromise of systems on a company's internal network—a security concept that is irrelevant to this case. This case does not involve any intrusion into Facebook's internal networks; it involves a vulnerability that existed on Facebook's *public-facing* web platform, which allowed the attackers to generate access tokens that they could use to query user profile data. No Facebook systems were "compromised" during the Attack. Plaintiff failed to clarify what he meant

by "compromise resilience" during the meet-and-confer. His response here attempts to substitute different language for the request, but it is still unacceptably vague. Plaintiff now states he seeks information concerning Facebook's "security tools and practices," but that request is impossibly broad and would encompass virtually every document concerning Facebook's security program. While Facebook is open to continued discussion of this request, it is ultimately Plaintiff's obligation—not Facebook's—to articulate the RFP in reasonably tailored, proportionate terms. He has failed to do so.

**RFP 64: Website.** This request is manifestly overbroad. In good faith, Facebook asked if Plaintiff was interested in specific policies (*e.g.*, the Terms of Service); no answer was given. Despite the lack of direction, Facebook identified a feature of its website that allows Plaintiff to search for all of Facebook's newsroom posts containing references to "security" and "privacy" (generating *hundreds* of results).[1] Plaintiff fails to acknowledge the proposed compromise. Facebook should not have to "recreate" the contents of its website over the past six years in order to respond to an indiscriminate RFP. Plaintiff claims that "blogs, articles, and terms of use have evolved over the years," but the search feature Facebook identified can search for past articles and blog posts, and Facebook already produced prior versions of the Terms going back to 2015.

**RFP 74: Access to PII.** This request fundamentally misunderstands how Facebook operates. The "importance of" security and "preventing unauthorized access" to user information cuts across everything Facebook does. As a result, this RFP would cover *countless* statements, made by many employees in many different contexts, over a six-year period. Making matters worse, the RFP uses a definition of *PII* that is far broader than the information at issue, *see* ECF No. 153 at 9, a definition of *Facebook Users* that is far broader than the set of persons whose data was compromised, and a similarly broad subject matter ("the importance of preventing unauthorized access") that is not tailored to the vulnerability. Plaintiff's conclusory assertion that "public" statements are "relevant" does nothing to cure these defects. The RFP is not even limited to "public" statements—which, by definition, Plaintiff should be able to locate on his own.

**RFPs 73, 75-77: User Expectations and Value.** The information sought is not relevant to the operative complaint given the dismissal of Plaintiff's contract and Section 17200/CLRA claims and the Court's rejection of Plaintiff's standing theories based on alleged loss of value of personal information and lost benefit of the bargain. ECF No. 153 at 15, 18. Because those claims and theories are no longer in the case, any RFPs aimed at substantiating those claims and theories (which is plainly the thrust of these RFPs) are not relevant. Moreover, even on their own terms, the RFPs are overbroad and disproportionate, including because of vague references to the "expectations of Facebook Users," and they prematurely seek expert materials (which Plaintiff has refused to produce).

**RFP 79: Financial Data.** The "income statements" Plaintiff seeks are detailed expense breakdowns (beyond the income statements in Facebook's public financial reports) showing "line item, or account level, detail" for "selling," "general & administrative," and "research & development" expenses. Plaintiff does not explain what "general & administrative" expenses have to do with a data breach. These categories are unrelated to data security and far exceed what is relevant to Plaintiff's claims. Plaintiff tried to "narrow" the RFP by essentially substituting a new RFP for the "top 5 departments" with the "highest percentage of expenses" for at least four years, but that formulation is no better. This case is about security practices, not accounting fraud or corporate spending. And Facebook already produced data about *security-related* expenses.

---

[1] *See* https://newsroom.fb.com/?s=security and https://newsroom.fb.com/?s=privacy.

# EXHIBIT 1

## GENERALLY APPLICABLE OBJECTIONS

Facebook makes the following Objections. These Objections shall be incorporated into each of Facebook's responses as if fully rewritten therein, and each response shall be subject to and without waiver of these Objections. At the present time, Facebook has not identified any specific, responsive document(s) that it is withholding based solely on the Generally Applicable Objections. However, Facebook's identification of responsive documents is ongoing, and Parties intend to confer in an effort to reach agreement on document custodians, search terms, and the use of technology-assisted review tools, which together will substantially define the universe of responsive documents. If and when Facebook identifies any specific, responsive document(s) that it is withholding based solely on a Generally Applicable Objection, Facebook will notify Plaintiffs.

1. Facebook's responses to each Request shall not be deemed as an admission by Facebook that it acquiesces to Plaintiffs' characterizations of fact or law contained therein, or that Facebook agrees with the Definitions implicated by Plaintiffs' Requests.

2. Facebook's agreement to search for and make available certain documents does not constitute a representation that Facebook possesses any such documents or that such documents exist.

3. Facebook objects to the Requests to the extent that they seek the production of documents containing Facebook's proprietary, confidential, private, and/or competitively sensitive information or trade secrets. Facebook also objects to the Requests to the extent they seek confidential or proprietary information that would impinge on the right to privacy of individuals. Facebook will produce such documents only upon entry of a protective order assuring the protection of such information.

4. Facebook further objects to the Requests to the extent that they seek information about Facebook users who are not named Plaintiffs in this action, including prospective members of the putative class, users who are located outside of the United States, and all other Facebook users who are not prospective members of the putative class. Subject to and without waiving the objections stated herein, Facebook's production of documents otherwise covered by its responses will be limited to those that relate to users in the United States.

5. Facebook objects to the Requests to the extent they require the disclosure of information that would infringe upon the privacy rights of current or former employees, officers, or directors of Facebook, to the extent such privacy rights and expectations are protected by law, contract, or public policy.

6. Facebook objects to the Requests and Instructions to the extent they purport to require Facebook to formulate and compile information in manners which Facebook does not otherwise do in the ordinary course of its business. Facebook further objects to the Requests and Instructions to the extent they seek information not maintained in the ordinary course of business.

7. Facebook objects to the Requests to the extent they seek documents and information that law enforcement agents have requested that Facebook not disclose, including documents and information related to ongoing investigation and enforcement efforts regarding the Attack[2] and the identity or identities of the attacker(s). Such documents will only be provided for review on

---

[2] As used herein, the "Attack" refers to the attack that was publicly announced by Facebook on September 28, 2018 (and that is the subject of this litigation).

an attorneys' eyes only basis at Facebook's counsel's San Francisco, New York, or Washington, D.C., offices, and subject to a protective order assuring the adequate protection of these materials.

8. Facebook objects to the Requests to the extent they call for disclosure of material that is subject to the attorney-client privilege, the work product doctrine, a law enforcement privilege, or any other applicable privilege and/or immunity recognized by the Federal Rules of Civil Procedure or any other applicable federal or state rule or law. In particular, and without limitation, Facebook objects to collecting, searching for, or producing documents generated by in-house counsel or external lawyers in response to claims or lawsuits asserted against it, including in this litigation. Facebook does not intend to produce any privileged or protected information or documents, and any such production is inadvertent and should not be deemed a waiver of any privilege or protection from production, and is additionally subject to a protective order and any order relating to Federal Rule of Evidence 502(d).

9. Facebook objects to the Requests to the extent they seek documents that are publicly available, in the possession of Plaintiffs, or which Plaintiffs could more readily obtain from some other source that is more convenient, less burdensome, or less expensive pursuant to Fed. R. Civ. P. 26(b)(2)(C)(i).

10. Facebook objects to the definition of "Access Tokens" as vague, ambiguous, and overbroad, including to the extent it purports to include all access tokens utilized by Facebook, and because it is not limited to those access tokens involved in the Attack. Facebook will interpret this term as limited to the access tokens that were taken in the Attack.

11. Facebook objects to the definition of "API" as vague, ambiguous, and overbroad.

12. Facebook objects to the definition of "Class" as vague, ambiguous, and overbroad, including because it purports to include all "Persons whose PII was Compromised in The Breach" and is not limited to Plaintiffs, putative class members, or even persons within the United States. Facebook further objects to "Class" to the extent it assumes certification of the putative class; Facebook believes that there is no class that is appropriate for certification here. Facebook also objects to the definition of "Class" to the extent it is not consistent with Plaintiffs' Consolidated Class Action Complaint, filed on February 7, 2019, (hereinafter, the "Consolidated Complaint"). (See Dkt. 76.)

13. Facebook objects to the definition of "Compromise" as vague, ambiguous, overbroad, and confusing, including because it appears to enlarge that term beyond its plain English meaning.

14. Facebook objects to the definition of "Computer System" as vague, ambiguous, overbroad, and confusing, including because it appears to enlarge that term beyond its plain English meeting.

15. Facebook objects to the definition of "Data Security" as vague, ambiguous, and overbroad, including to the extent it is not related to the security of data obtained through the vulnerability exploited by the Attack.

16. Facebook objects to Plaintiffs' definition of the term "PII" as vague, ambiguous, and overbroad, including to the extent it purports to encompass information that is not unique to a specific individual, not capable of use in identification of that individual, and/or because it encompasses a broader category of information than what was obtained by the Attack. For example, Plaintiffs' definition of "PII" includes, "audio, electronic, visual, thermal, and olfactory

information," which is not tailored to the issues that are at stake in this litigation. Facebook further objects to Plaintiffs' definition of "PII" because it expands beyond widely accepted definitions of that term. Facebook also objects to the definition of "PII" to the extent it seeks information that is not within Facebook's possession, custody, or control.

17. Facebook objects to the definition of "The Breach" to the extent that it presumes wrongdoing on the part of Facebook, implies that Facebook knew about the vulnerability as of some particular point in time, and/or implies that all of the "PII," as defined by Plaintiffs in their Requests, was actually obtained through the Attack.

18. Facebook objects to the definition of "User" as overbroad and vague and ambiguous, including to the extent it purports to include any "Person with a Facebook account" and is not limited to Plaintiffs, putative class members, or even persons within the United States.

19. Plaintiffs have not defined the term "Documents," and Facebook will interpret that term to be consistent with its meaning as provided by the Federal Rules of Civil Procedure.

20. Facebook objects to Instruction No. 1, and to Appendix A to Plaintiffs' Requests, because Plaintiffs attempt to require Facebook to make its document productions pursuant to certain "Technical Specifications" unilaterally set by Plaintiffs without meeting and conferring with Facebook. Facebook will meet and confer with Plaintiffs regarding a stipulated protocol to govern the production of electronically stored information in this action and will produce documents in compliance with that protocol.

21. Facebook's responses shall not in any way constitute an acceptance of Plaintiffs' proposed Instructions.

22. Facebook objects to the section in Plaintiffs' Requests titled "Relevant Time Period." Specifically, the purported "Relevant Time Period" articulated by Plaintiffs is arbitrary, overly broad, unduly burdensome, not relevant to any party's claim or defense, and not proportional to the needs of the case. Facebook is willing to meet and confer with Plaintiffs regarding establishing a reasonable time period for each Request. Except as otherwise stated, Facebook considers the Relevant Time Period for the Requests to be the period of the Attack.

23. Facebook's responses and objections and any documents or information produced thereto are provided without waiver of any objections as to the competency, relevance, materiality, privileged status, or admissibility of any document or information as evidence.

24. The failure to object on any particular ground or grounds shall not be construed as a waiver of Facebook's right to object on any additional ground(s).

\* \* \*

**REQUEST FOR PRODUCTION NO. 14:**

Document sufficient to describe Facebook's policies, security guidelines, operating procedures, and practices regarding the security architecture validation and testing prior to the deployment of third-party applications and services that that provide access to a User's actions, preferences, or profile information.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Facebook incorporates each of its Generally Applicable Objections as though fully set forth herein. Facebook further objects to this Request as overly broad, unduly burdensome, not relevant to any party's claim or defense, and not proportional to the needs of this case, including because third-party applications that access user information were not involved in

10

the Attack. Facebook also objects that this Request is vague and ambiguous, including with respect to the undefined terms "security guidelines," "operating procedures," "practices," "security architecture validation and testing," and "User's actions, preferences or profile information." Facebook also objects to this Request as unreasonably cumulative and/or duplicative of other Requests, including, but not limited to, Request No. 10. Facebook also objects that this Request calls for the production of information that includes certain highly sensitive technical and security-related materials, the disclosure of which could present security threats to Facebook and its users. Such documents will only be produced subject to a protective order.

**REQUEST FOR PRODUCTION NO. 15:**

Documents sufficient to describe Facebook's policies, security guidelines, operating procedures, and practices concerning the sharing of PII, with or without the permission of Facebook Users, with third-party advertisers, researchers, developers, and vendors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Facebook incorporates each of its Generally Applicable Objections as though fully set forth herein. Facebook objects to this Request as overly broad, unduly burdensome, not relevant to any party's claim or defense, and not proportional to the needs of this case, including because the Attack at issue here did not involve Facebook's sharing of user data with "third-party advertisers, researchers, developers, [or] vendors." Facebook also objects that this Request is vague and ambiguous, including with respect to the undefined terms "security guidelines," "operating procedures," and "practices," "permission," and the phrase "sharing of PII." Facebook further objects to this Request as unreasonably cumulative and/or duplicative of other Requests, including, but not limited to, Request No. 10. Facebook also objects that this Request calls for the production of information that includes certain highly sensitive technical and security-related materials, the disclosure of which could present security threats to Facebook and its users. Such documents will only be produced subject to a protective order.

\* \* \*

**REQUEST FOR PRODUCTION NO. 20:**

All communications, memoranda, executive summaries, analyses, and reports written by, at the direction of, or received by, Facebook's senior managers or executives concerning internal and external audits, assessments, and investigations of Facebook's Data Security practices and Computer Systems for protecting PII.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

Facebook incorporates each of its Generally Applicable Objections as though fully set forth herein. Facebook further objects to this Request as overly broad, unduly burdensome, not relevant to any party's claim or defense, and not proportional to the needs of this case, including because it is not limited to documents related to the Attack. Facebook also objects that this Request is vague and ambiguous, including with respect to the undefined terms "analyses," "reports," "assessments," and "investigations," and to the phrases "at the direction of," "internal and external audits," and "Data Security practices," especially when read in conjunction with Plaintiffs' overbroad definitions of "Data Security," "Computer Systems," and "PII." Facebook further objects to this Request as unreasonably cumulative and/or duplicative of other Requests, including, but not limited to, Request Nos. 51 and 59. Facebook further objects to the extent this Request seeks documents or information protected from disclosure by the attorney work product doctrine or another legal privilege. Facebook also objects that this Request calls for the production of information that includes certain highly sensitive technical and security-related materials, the

disclosure of which could present security threats to Facebook and its users. Such documents will only be produced subject to a protective order.

   \*   \*   \*

**REQUEST FOR PRODUCTION NO. 44:**

All documents concerning the release of the "View As" feature, including the client application authorization architecture, change management, release notes, and the results of any beta or regression testing.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 44:**

Facebook incorporates each of its Generally Applicable Objections as though fully set forth herein. Facebook further objects to this Request as overly broad, unduly burdensome, not relevant to any party's claim or defense, and not proportional to the needs of this case. The "View As" feature is one of those three features, but "View As" was launched years before the introduction of the vulnerability that was exploited by the Attack. As Facebook stated in its portion of the January 2, 2019 Case Management Statement, "[t]he Attack involved the exploitation of a highly obscure and previously unknown security vulnerability, resulting from a complex and unforeseen interaction of three distinct features of Facebook's service—none of which by itself created a vulnerability on Facebook's platform." (*See* Dkt. 61 at 5.) For this and other reasons, the information sought by this Request concerning the "release of 'View As'" is irrelevant. Further, this Request unnecessarily seeks "[a]ll documents" when "documents sufficient to show" would suffice. Facebook also objects that this Request is vague and ambiguous, including with respect to the phrases "client application authorization architecture," "change management," and "release notes." Facebook also objects to this Request as unreasonably cumulative and/or duplicative of other Requests, including, but not limited to, Request No. 50. Facebook also objects that this Request calls for the production of information that includes certain highly sensitive technical and security-related materials, the disclosure of which could present security threats to Facebook and its users. Such documents will only be produced subject to a protective order.

   \*   \*   \*

**REQUEST FOR PRODUCTION NO. 49:**

Documents sufficient to describe the implementation and testing of compromise resilience built into Facebook's Computer System.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 49:**

Facebook incorporates each of its Generally Applicable Objections as though fully set forth herein. Facebook further objects to this Request as overly broad, unduly burdensome, not relevant to any party's claim or defense, and not proportional to the needs of this case. For example, this Request seeks documents relating to Facebook's broadly defined "Computer System" generally and dating back nearly six years to July 1, 2013, rather than limiting the Request to the three features that led to the vulnerability exploited by the Attack. Additionally, this is not a case in which attackers compromised any "Computer System" or moved laterally within a computer network, making any maps, diagrams, or charts of such systems or networks irrelevant. Facebook also objects that this Request is vague and ambiguous, including with respect to the undefined terms "implementation" and "testing," and the phrases "compromise resilience" and "built into," especially when read in conjunction with Plaintiffs' overbroad definition of "Computer Systems." Facebook also objects that this Request calls for the production of information that includes certain highly sensitive technical and security-related materials, the disclosure of which could present security threats to Facebook and its users. Such documents will only be produced subject to a protective order.

* * *

**REQUEST FOR PRODUCTION NO. 64:**

Documents sufficient to show all references to security and privacy on Facebook's website from July 1, 2013, to the present, including, but not limited to, documents showing when and how those statements or references changed over time.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 64:**

Facebook incorporates each of its Generally Applicable Objections as though fully set forth herein. Facebook further objects to this Request as overly broad, unduly burdensome, not relevant to any party's claim or defense, and not proportional to the needs of this case. Facebook also objects that this Request is vague and ambiguous, including with respect to the undefined terms "security" and "privacy," and the phrase "how those statements or references changed over time." Facebook further objects that this Request calls for information that is publicly available. Facebook further objects to this Request as unreasonably cumulative and/or duplicative of other Requests, including, but not limited to, Request Nos. 74, 75, and 76.

* * *

**REQUEST FOR PRODUCTION NO. 73:**

All analyses, studies, or reports conducted, prepared, or received by Facebook assessing the importance or monetary value of Data Security to Facebook Users.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 73:**

Facebook incorporates each of its Generally Applicable Objections as though fully set forth herein. Facebook further objects to this Request as overly broad, unduly burdensome, not relevant to any party's claim or defense, and not proportional to the needs of this case. Facebook also objects that this Request is vague and ambiguous, including with respect to the undefined terms "analyses," "studies," "reports," and "importance," particularly when read in conjunction with Plaintiffs' overbroad definitions of "Data Security" and "Facebook Users." Facebook further objects that this Request is not limited to the persons whose information was compromised in the Attack. Facebook further objects to the phrase "importance or monetary value of Data Security to Facebook Users" to the extent it calls for speculation and/or the production of expert materials. Facebook further objects to this Request as unreasonably cumulative and/or duplicative of other Requests, including, but not limited to, Request No. 77.

**REQUEST FOR PRODUCTION NO. 74:**

All Written statements, or transcripts of oral statements, by Facebook concerning the importance of preventing unauthorized access to Facebook Users' PII.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 74:**

Facebook incorporates each of its Generally Applicable Objections as though fully set forth herein. Facebook further objects to this Request as overly broad, unduly burdensome, not relevant to any party's claim or defense, and not proportional to the needs of this case. For example, this Request unnecessarily seeks "[a]ll [w]ritten statements" about a wide-ranging category of information, which is especially burdensome when read in conjunction with Plaintiffs' overbroad definitions of "PII" and "Facebook Users," and it is not limited to persons whose data was compromised in the Attack. Facebook also objects that this Request is vague and ambiguous, including with respect to the undefined terms "statements," "importance," and "unauthorized." Further, it is not clear why the undefined term "Written" is capitalized in this Request. Facebook also objects to the extent that this Request seeks documents that are publicly

available, in the possession of Plaintiffs, or which Plaintiffs could more readily obtain from some other source that is more convenient, less burdensome, or less expensive. Facebook further objects to this Request as unreasonably cumulative and/or duplicative of other Requests, including, but not limited to, Request Nos. 64, 75, and 76.

**REQUEST FOR PRODUCTION NO. 75:**

All written statements, or transcripts of oral statements, by Facebook concerning the expectations of Facebook Users with regard to the security of the PII they provide to Facebook.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 75:**

Facebook incorporates each of its Generally Applicable Objections as though fully set forth herein. Facebook further objects to this Request as overly broad, unduly burdensome, not relevant to any party's claim or defense, and not proportional to the needs of this case. For example, this Request unnecessarily seeks "[a]ll written statements" about a wide-ranging category of information, which is especially burdensome when read in conjunction with Plaintiffs' overbroad definition of "PII" and "Facebook Users," and it is not limited to persons whose information was compromised in the Attack. Facebook also objects that this Request is vague and ambiguous, including with respect to the undefined phrases "expectations of Facebook Users with regard to security" and "provide to Facebook." Facebook further objects to the extent that this Request seeks documents that are publicly available, in the possession of Plaintiffs, or which Plaintiffs could more readily obtain from some other source that is more convenient, less burdensome, or less expensive. Facebook also objects to this Request as unreasonably cumulative and/or duplicative of other Requests, including, but not limited to, Request Nos. 64, 74, and 76.

 \* \* \*

**REQUEST FOR PRODUCTION NO. 76:**

All written statements, or transcripts of oral statements, by Facebook concerning the expectations of Facebook Users with regard to Facebook's Data Security and Computer Systems used to protect Facebook Users' PII.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 76:**

Facebook incorporates each of its Generally Applicable Objections as though fully set forth herein. Facebook further objects to this Request as overly broad, unduly burdensome, not relevant to any party's claim or defense, and not proportional to the needs of this case. For example, this Request unnecessarily seeks "[a]ll written statements" about a wide-ranging category of information, which is especially burdensome when read in conjunction with Plaintiffs' overbroad definitions of "Data Security," "Computer Systems," "PII," and "Facebook Users," and it is not limited to persons whose information was compromised in the Attack.

Facebook also objects that this Request is vague and ambiguous, including with respect to the undefined term "expectations of Facebook Users." Facebook further objects to the extent that this Request seeks documents that are publicly available, in the possession of Plaintiffs, or which Plaintiffs could more readily obtain from some other source that is more convenient, less burdensome, or less expensive. Facebook also objects to this Request as unreasonably cumulative and/or duplicative of other Requests, including, but not limited to, Request Nos. 64, 74, and 75.

 \* \* \*

**REQUEST FOR PRODUCTION NO. 77:**

All documents concerning the monetary value to Facebook of any PII provided to Facebook by its Users.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 77:**

Facebook incorporates each of its Generally Applicable Objections as though fully set forth herein. Facebook further objects to this Request as overly broad, unduly burdensome, not relevant to any party's claim or defense, and not proportional to the needs of this case, including because it seeks information about "any PII," without regard to whether such PII was compromised in the Attack. Facebook also objects that this Request is vague and ambiguous, including with respect to the phrase "monetary value…of any PII," and especially when read in conjunction with Plaintiffs' overbroad definition of "PII." Facebook objects to the implication that any or all user-provided PII has monetary value to Facebook. Facebook also objects to this phrase as premature to the extent it calls for the production of expert materials. Facebook further objects to this Request as unreasonably cumulative and/or duplicative of other Requests, including, but not limited to, Request No. 73.

*   *   *

**REQUEST FOR PRODUCTION NO. 79:**

Detailed income statements for Facebook from 2013 to present, at a level of detail sufficient to show line item, or account level, detail for the selling expenses, general & administrative expenses, and research & development expenses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 79:**

Facebook incorporates each of its Generally Applicable Objections as though fully set forth herein. Facebook further objects to this Request as overly broad, unduly burdensome, not relevant to any party's claim or defense, and not proportional to the needs of this case. Facebook also objects that this Request is vague and ambiguous, including with respect to the phrase "line item, or account level, detail," "the selling expenses," "general & administrative expenses," and "research & development expenses." Facebook further objects to the extent that this Request seeks documents that are publicly available, in the possession of Plaintiffs, or which Plaintiffs could more readily obtain from some other source that is more convenient, less burdensome, or less expensive, including but not limited to Facebook's quarterly and annual financial statements.

**PLAINTIFFS' PROPOSED REVISION TO REQUEST 79 (as conveyed by email on June 13, 2019)**

For each year 2015-2018, produce documents sufficient to show the annual expense totals for the 5 FB departments with the highest percentage of expenses compared to the aggregate FB expense total for each of those years ("Top 5 Departments"). For the same time period 2015-2018, produce documents sufficient to show the top 5 expense categories within each of the Top 5 Departments.