1   LATHAM & WATKINS LLP
    Elizabeth L. Deeley (CA Bar No. 230798)
2     elizabeth.deeley@lw.com
    Michael H. Rubin (CA Bar No. 214636)
3     michael.rubin@lw.com
    Melanie M. Blunschi (CA Bar No. 234264)
4     melanie.blunschi@lw.com
    505 Montgomery Street, Suite 2000
5   San Francisco, CA 94111-6538
    T: +1.415.391.0600/F: +1.415.395.8095
6
    Andrew B. Clubok (appearance *pro hac vice*)
7     andrew.clubok@lw.com
    Susan E. Engel (appearance *pro hac vice*)
8     susan.engel@lw.com
    555 Eleventh Street, NW, Suite 1000
9   Washington, D.C. 20004-1304
    T: +1.202.637.2200/F: +1.202.637.2201
10
    Serrin Turner (appearance *pro hac vice*)
11    serrin.turner@lw.com
    885 Third Avenue
12  New York, NY 10022-4834
    T: +1.212.906.1200/F: +1.212.751.4864
13
    *Attorneys for Defendant Facebook, Inc.*
14

15                 **UNITED STATES DISTRICT COURT**

16               **NORTHERN DISTRICT OF CALIFORNIA**

17                    **SAN FRANCISCO DIVISION**

18
    STEPHEN ADKINS, an individual and              No. C 18-05982 WHA (JSC)
19  Michigan resident, on behalf of himself and      *Consolidated Cases:*
    all others similarly situated,                 No. C 19-00117 WHA (JSC)
20
                              Plaintiff,           **DEFENDANT FACEBOOK, INC.'S**
21                                                 **MOTION TO EXCLUDE THE**
                  v.                               **DECLARATION AND OPINIONS OF**
22                                                 **PLAINTIFF'S EXPERT JAMES VAN**
    FACEBOOK, INC.,                                **DYKE**
23
                              Defendant.           Date: October 31, 2019
24                                                 Time: 8:00 a.m.
                                                   Court: Courtroom 12, 19th Floor
25                                                 Hon. William Alsup

26

27

28

FACEBOOK'S MOTION TO
                                                        EXCLUDE JAMES VAN DYKE
                                                   CASE NO. C 18-05982 WHA (JSC)

1         **NOTICE OF MOTION AND MOTION TO EXCLUDE**

2  **TO THE COURT, CLERK, PLAINTIFF, AND COUNSEL OF RECORD:**

3         PLEASE TAKE NOTICE that on October 31, 2019, at 8:00 am, before the Honorable

4  William Alsup, United States District Court, 450 Golden Gate Avenue, San Francisco, CA 94102,

5  Defendant Facebook, Inc. will and hereby does move this Court for an order to exclude the entire

6  expert declaration and opinions of James Van Dyke submitted in support of Plaintiff's Motion for

7  Class Certification (Dkt. 197-32; Dkt. 209-23).

8         Facebook's Motion is made pursuant to Rule 702 of the Federal Rules of Evidence and

9  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), on the grounds that Van

10  Dyke's entire report and opinions should be excluded because they are conjecture, untethered to

11  the facts at issue in this case, and not rooted in any reliable or relevant principles or methodology.

12         Facebook's Motion is based on this Notice of Motion, the accompanying Memorandum of

13  Points and Authorities, the concurrently filed Declaration of Melanie M. Blunschi and all exhibits

14  thereto, the concurrently filed Proposed Order, the complete files and records of this action, and

15  any matters and arguments as may come before the Court, including in connection with any oral

16  argument relating to this Motion.

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

FACEBOOK'S MOTION TO
EXCLUDE JAMES VAN DYKE
CASE NO. C 18-05982 WHA (JSC)

1

## STATEMENT OF RELIEF SOUGHT

2       Facebook seeks an order pursuant to Rule 702 of the Federal Rules of Evidence and

3   *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) to exclude the entire

4   declaration and opinions of James Van Dyke (Dkt. 197-32; Dkt. 209-23).

5   DATED: September 26, 2019          Respectfully submitted,

6                                      LATHAM & WATKINS LLP

7                                      By: */s/ Andrew B. Clubok*
                                           Andrew B. Clubok (appearance *pro hac vice*)
8                                          andrew.clubok@lw.com
                                           Susan E. Engel (appearance *pro hac vice*)
9                                          susan.engel@lw.com
                                           555 Eleventh Street, NW, Suite 1000
10                                         Washington, D.C. 20004-1304
                                           T: +1.202.637.2200/F: +1.202.637.2201
11
                                           Elizabeth L. Deeley (CA Bar No. 230798)
12                                         elizabeth.deeley@lw.com
                                           Michael H. Rubin (CA Bar No. 214636)
13                                         michael.rubin@lw.com
                                           Melanie M. Blunschi (CA Bar No. 234264)
14                                         melanie.blunschi@lw.com
                                           505 Montgomery Street, Suite 2000
15                                         San Francisco, CA 94111-6538
                                           T: +1.415.391.0600/F: +1.415.395.8095
16
                                           Serrin Turner (appearance *pro hac vice*)
17                                         serrin.turner@lw.com
                                           885 Third Avenue
18                                         New York, NY 10022-4834
                                           T: +1.212.906.1200/F: +1.212.751.4864
19
                                       *Attorneys for Defendant Facebook, Inc.*
20

21

22

23

24

25

26

27

28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

FACEBOOK'S MOTION TO
EXCLUDE JAMES VAN DYKE
CASE NO. C 18-05982 WHA (JSC)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ..........................................................................................................1

II.    LEGAL STANDARD....................................................................................................2

III.   ARGUMENT ...............................................................................................................2

      A.    Van Dyke's Entire Report And Opinions Should Be Excluded Because
            They Are Not Based On The Facts Of This Case ....................................................2

            1.    Van Dyke Improperly Bases His Opinions On Irrelevant Prior
                    Reports ...........................................................................................2

            2.    Van Dyke Improperly Bases His Opinions On Abstract "Averages"
                    That "Deliberate[ly]" Ignore Individualized Issues ....................................5

            3.    Van Dyke's Opinions Regarding Increased Risk of Identity Theft
                    Are Pure Conjecture And Not The Product Of Reliable Principles
                    Or Methods ....................................................................................7

      B.    Van Dyke Has No Basis To Offer Any Opinions Regarding Users Outside
            The United States ..................................................................................................8

      C.    Van Dyke's Opinions On Lost Value Of PII Should Be Excluded ........................8

IV.   CONCLUSION............................................................................................................8

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

FACEBOOK'S MOTION TO
EXCLUDE JAMES VAN DYKE
CASE NO. C 18-05982 WHA (JSC)

# <u>TABLE OF AUTHORITIES</u>

Page(s)

## CASES

*Am. Nat'l Prop. & Cas. Co. v. Electrolux Home Prods., Inc.,*
    No. 11-cv-1340, 2013 WL 12321624 (S.D. Cal. May 1, 2013) ................................2

*Cholakyan v. Mercedes-Benz, USA, LLC,*
    281 F.R.D. 534 (C.D. Cal. 2012) ........................................................................2

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
    509 U.S. 579 (1993)............................................................................................2

*Ellis v. Costco Wholesale Corp.,*
    657 F.3d 970 (9th Cir. 2011) .............................................................................2

*In re Graphics Processing Units Antitrust Litig.,*
    253 F.R.D. 478 (N.D. Cal. 2008)........................................................................5

*Joya v. City of Hayward,*
    No. C 07-04739, 2010 WL 1460305 (N.D. Cal. Apr. 7, 2010) ...........................5

*Kumho Tire Co., Ltd. v. Carmichael,*
    526 U.S. 137 (1999)............................................................................................2

*Lust By & Through Lust v. Merrell Dow Pharms., Inc.,*
    89 F.3d 594 (9th Cir. 1996) ...............................................................................2

*Mariscal v. Graco, Inc.,*
    No. 13-cv-02548, 2014 WL 4245949 (N.D. Cal. Aug. 27, 2014) .......................7

*McGlinchy v. Shell Chem Co.,*
    845 F.2d 802 (9th Cir. 1988) .............................................................................7

*Newkirk v. ConAgra Foods Inc.,*
    438 F. App'x 607 (9th Cir. 2011) ......................................................................2

*Oracle Am., Inc. v. Google Inc.,*
    798 F. Supp. 2d 1111 (N.D. Cal. 2011) .............................................................7

*Samuels v. Holland Am. Line-USA Inc.,*
    656 F.3d 948 (9th Cir. 2011) .............................................................................2

*Tietsworth v. Sears, Roebuck & Co.,*
    No. 5:09-cv-00288, 2012 WL 1595112 (N.D. Cal. May 4, 2012).........................4

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

FACEBOOK'S MOTION TO
EXCLUDE JAMES VAN DYKE
CASE NO. C 18-05982 WHA (JSC)

1

## RULES

2

Fed. R. Evid. 403 ........................................................................................................................2

Fed. R. Evid. 702 ....................................................................................................................2, 7

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FACEBOOK'S MOTION TO
EXCLUDE JAMES VAN DYKE
CASE NO. C 18-05982 WHA (JSC)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff's proposed "identity theft expert" James Van Dyke has submitted a report in this case that merely recycles his opinions from prior data breach cases involving entirely distinguishable facts.  Those prior breaches, and his prior reports, involved the disclosure of sensitive information like social security numbers, payment card and financial account information, and home addresses.  ***None of that information was taken here***.  But Van Dyke purposefully ignores those differences in order to reach the exact same conclusions as he did before:

> Q. [Y]ou're aware that paragraph 3(n) in your Facebook report is exactly the same as paragraph 19 from your Anthem report, except in the Facebook version you've taken out the words "with the Social Security number being the key foundational element," correct?  A. I'm aware of that, yes.

Blunschi Decl., Ex. 4 (Van Dyke Dep.) at 164:19-25.[1]  To be clear, in the prior cases, Van Dyke explained that SSNs were "the key foundational element" of identity theft.  *Id.*  Here, where no SSNs were disclosed, Van Dyke simply excised references to how critical SSNs are from his old reports but did not alter his conclusions about the supposed risk of identity theft related to this data breach.

Van Dyke has not done any meaningful analysis of the facts of this case.  Not only does he gloss over the significant differences between this attack and totally different breaches, he has made no effort to consider the individual or actual circumstances of affected users here.  Van Dyke admits that he does not analyze whether Group 1 users (for whom only names and email addresses or phone numbers were compromised) face any different risks of identity theft compared to Group 2 and 3 users (from whom other data, like education and hometowns, were compromised, to the extent the user provided it).  Nor has he considered whether the substantial portion of users who shared profile information with "Everyone" should be treated differently from users who applied more limited data-sharing settings.  And although he acknowledges that prior breaches affect whether this attack poses *any* incremental risk to users, Van Dyke ignores that Plaintiff (and likely

---

[1] All exhibit citations herein are to the Blunschi Decl.

FACEBOOK'S MOTION TO
EXCLUDE JAMES VAN DYKE
CASE NO. C 18-05982 WHA (JSC)

1    numerous other Facebook users) already had his email address, birthdate, and far more sensitive

2    data (including SSN and physical address history) exposed in multiple prior breaches.

3            Van Dyke's copy-and-paste methodology does not come close to a qualified expert

4    analysis under Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow*

5    *Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and his entire report and opinions should be excluded.

6    **II.     LEGAL STANDARD**

7            Rule 702 of the Federal Rules of Evidence "requires the expert witness's testimony [to] be

8    based on sufficient facts or data, be the product of reliable principles and methods, and that the

9    witness has applied the principles and methods reliably to the facts of the case." *Am. Nat'l Prop.*

10   *& Cas. Co. v. Electrolux Home Prods., Inc.*, No. 11-cv-1340, 2013 WL 12321624, at *1 (S.D. Cal.

11   May 1, 2013); *see* Fed. R. Evid. 702.  A district judge "must exclude" expert testimony if it fails

12   the requirements of the Federal Rules of Evidence, or if the underlying methodology is invalid or

13   irrelevant.  *See Newkirk v. ConAgra Foods Inc.*, 438 F. App'x 607, 608 (9th Cir. 2011) (citing

14   *Daubert*, 509 U.S. at 592-93); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 148-49

15   (1999); Fed. R. Evid. 403, 702.  That is also true at class certification.  *See Ellis v. Costco*

16   *Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011); *Cholakyan v. Mercedes-Benz, USA, LLC*, 281

17   F.R.D. 534, 547 (C.D. Cal. 2012).  The expert's proponent must prove admissibility, for which

18   reliability is the touchstone.  *See Kumho*, 526 U.S. at 149 (expert opinions must have "a reliable

19   basis in the knowledge and experience of [the] discipline") (quoting *Daubert,* 509 U.S. at 592);

20   *Lust By & Through Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).  "[T]he

21   word 'knowledge' connotes more than subjective belief or unsupported speculation." *Samuels v.*

22   *Holland Am. Line-USA Inc.*, 656 F.3d 948, 952 (9th Cir. 2011) (quoting *Daubert*, 509 U.S. at 590).

23   **III.    ARGUMENT**

24            **A.     Van Dyke's Entire Report And Opinions Should Be Excluded Because They
                        Are Not Based On The Facts Of This Case**

25

26                    1.    <u>Van Dyke Improperly Bases His Opinions On Irrelevant Prior Reports</u>

27            Van Dyke's primary opinion is that the individuals whose data was accessed in this attack

28   against Facebook uniformly face an increased risk of future identity crimes.  *See* Dkt. 209-23 at

**LATHAM&WATKINS**<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

2

FACEBOOK'S MOTION TO
EXCLUDE JAMES VAN DYKE
CASE NO. C 18-05982 WHA (JSC)

¶ 8(a). That opinion is not relevant or reliable because it is predicated on breaches of information that can directly be used to commit identity theft, in stark contrast to what was compromised here.

The cornerstone of Van Dyke's opinions in past cases was the exposure of SSNs, which were not disclosed here. Van Dyke admitted in his deposition that he selectively "cut and pasted" entire paragraphs from those prior reports. Ex. 4 (Van Dyke Dep.) at 14:17-15:2; 162:13-17, 163:12-164:9. But then he excised from his Facebook report any past reference to the importance of SSNs in order to downplay the fact that SSNs were *not* exposed in this breach. *See, e.g., id.* at 164:19-25; 89:8-22 (Q. "And is it still true today . . . that new account fraud is strongly correlated to Social Security number breaches?" A. "It is." Q. "And you did not, in your Facebook declaration, state in words or substance that new account fraud is strongly correlated to Social Security number breaches; is that correct?" A. "If you're asking if I did not include the words as I'm looking at them from the Equifax case, 'NAF is strongly correlated to Social Security number breaches,' no. I chose not to include that.").

This is deeply troubling because in his prior reports Van Dyke proclaimed that SSNs are *the* "key foundational element" in the "Holy Trinity" of "necessary" data for identity crimes. *See, e.g.,* Ex. 15 (J. Van Dyke Decl., *In re Anthem, Inc. Data Breach Litig.*) ¶¶ 19, 32(b) (SSNs are "a key foundational element" as criminals "amass[] more elements of any one consumer's data"); Ex. 14 (J. Van Dyke Decl., *In re: Equifax Inc. Consumer Data Security Breach Litig.*) ¶ 18 ("[N]ames, dates of birth, and Social Security numbers – are often termed 'The Holy Trinity,' because they so effectively (or even foundationally) work together as the basis for criminal identity misuse"), *id.* ¶ 24(a) ("The key to enable this type of fraudulent conduct, as with other types of fraud, is access to the consumer's SSN"); Ex. 16 (J. Van Dyke Decl., *In re: Yahoo! Inc. Customer Data Security Breach Litig.*) ¶ 53 ("necessary PII . . . includes name, SSN and DOB" for tax fraud). This is a critical failing: the very "foundation[]" of his prior opinions is absent here, leaving no basis to apply them to the facts of this case, yet he offers the very same conclusions as he did in prior cases about the identity-theft risks supposedly faced by the putative class members. Van Dyke admits that he did nothing to account for this difference:

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
SAN FRANCISCO

3

FACEBOOK'S MOTION TO
EXCLUDE JAMES VAN DYKE
CASE NO. C 18-05982 WHA (JSC)

1
2
> Q. And I take it, you've done nothing to analyze how the specific data that was compromised in the Facebook attack relatively increases the risk as compared to other data that was not compromised, like Social Security data; is that fair?

3
> A. Yeah, that's correct; I haven't done that kind of a research study.

4
Ex. 4 (Van Dyke Dep.) at 173:25-174:7. *See also id.* at 126:11-127:9 (same).[2]

5
6
7
Since he ignores the differences between this case and his prior litigation assignments, it is perhaps not surprising that he also ignores any differences between what information was compromised for different groups of users here:

8
9
> Q. [Y]ou made no effort to quantify how much the differences are amongst those in Group 1, correct?  A. That's correct.

10
> Q. [Y]ou made no effort to quantify what the actual differences are in increased risk of identity theft for those amongst Group 2, correct?  A. That is correct.

11
*Id.* at 39:16-24.  *See also id.* at 172:3-173:7; 204:10-205:2 (same).

12
13
14
15
16
17
18
19
Instead of showing how the data accessed *here* could *actually* lead to an increased risk of identity theft, Van Dyke offers far-fetched and factually flawed hypotheticals, discussed *infra*. *See, e.g.*, Dkt. 209-23 at ¶ 5(d) (mailbox pilfering), ¶ 5(e) (tricking employers to change deposit accounts), ¶ 5(k) (misleading IRS to obtain tax refunds).  His hypotheticals speculate that criminals could *start* with the data taken in the attack and then *might* find ways to steal or procure *additional* information that provides the *real* keys to committing identity theft—like SSNs, financial account information, and street addresses (which Van Dyke incorrectly assumes were accessed throughout his Facebook report even though Facebook does not even have a field for physical home address).

20
21
22
23
24
Van Dyke's entire report and opinions are untethered to the data actually taken in this case and instead depend on data that he imagines being taken in various conjured up scenarios that were not part of the attack here.  As such, his report and opinions should be excluded.  *See Tietsworth v. Sears, Roebuck & Co.*, No. 5:09-cv-00288, 2012 WL 1595112, at *9 (N.D. Cal. May 4, 2012) (excluding expert opinion where he "had not actually tested . . . [or] done any work to verify

25
26
27
28
[2] Similarly, Van Dyke declared in another case that "SSN, tax ID, employer information, DOB, and street address" are useful for committing tax refund fraud.  Ex. 17 (J. Van Dyke Decl., *Lavender v. Driveline Retail Merchandising, Inc.*) ¶ 78.  But, even as he posits (without any basis) that "Facebook breach victims now also face significant risk of tax refund fraud," he omits any reference to the fact that ***SSN, tax ID, and street address were not compromised in this attack***.  Dkt. 209-23 at ¶ 5(k).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

FACEBOOK'S MOTION TO
EXCLUDE JAMES VAN DYKE
CASE NO. C 18-05982 WHA (JSC)

whether his opinion was valid"); *Joya v. City of Hayward*, No. C 07-04739, 2010 WL 1460305, at *3 (N.D. Cal. Apr. 7, 2010) (excluding expert testimony that relied on conclusory statements and failed to consider the facts of the case); *see also* Ex. 4 (Van Dyke Dep.) at 274:20-23 (Van Dyke performed no analysis of whether the compromised data is on the dark web).

> 2.   Van Dyke Improperly Bases His Opinions On Abstract "Averages" That "Deliberate[ly]" Ignore Individualized Issues

Because he has not analyzed the facts, Van Dyke couches his report as an analysis of the increased risk faced by an "average victim."  *See* Dkt. 209-23 at ¶¶ 3(h), 5(r); Ex. 4 (Van Dyke Dep.) at 37:3-21.  But the word "average" is misleading: Van Dyke has not actually calculated the average of anything.  *See* Ex. 4 (Van Dyke Dep.) at 99:20-101:6; 172:3-174:7.  Van Dyke did not examine the situation of *any* actual putative class member—not even the Plaintiff, whose name Van Dyke could not recall when asked,  *id*. at 197:16-22[3]—much less enough class members to "average."  Van Dyke's "average victim" is an abstracted hypothetical of his own imagination.  To develop this hypothetical, Van Dyke "deliberate[ly]" ignored factors that create different levels of risk among the putative class members.  *Id.* at 37:3-39:24.  Untethered from the facts here, Van Dyke's "average" is fundamentally irrelevant and unreliable, and it cannot establish class-wide proof.  *See In re Graphics Processing Units Antitrust Litig.* ("*GPU*"), 253 F.R.D. 478, 493-94 (N.D. Cal. 2008) (Alsup, J.) (Plaintiff must "show that individual differences . . . *could* be accounted for, *not* that individual differences could be ignored.").

Van Dyke's report is even worse than what this Court found deficient in *GPU*.  In that case, there was an underlying data set. 253 F.R.D. at 493.  Here, Van Dyke's "average victim" ignores the specific data compromised in this attack, Ex. 4 (Van Dyke Dep.) at 101:17-102:12, 114:13-19, 172:3-174:7, ignores the number and impact of any prior breaches, *id*. at 204:10-22, and ignores

---

[3] *See, e.g.,* Ex. 4 (Van Dyke Dep.) at 199:16-21 (Q. "What data breaches has Stephen Adkins been subjected to before the Facebook data breach?" A. "I don't know that." Q. "How many had Mr. Adkins been subject to before the data breach?" A. "That's not something I know either."); *id.* at 200:11-17 (Q. "[B]y the way, what information of Mr. Adkins was compromised as a result of the breach?" A. "I don't recall that." Q. "If Mr. Adkins -- do you know what group he was in?" A. "No. I don't recall."); *id.* at 200:21-24 (Q. "Do you know if Mr. Adkins' name, Social Security number, and date of birth are available on the dark web?" A. "No, I do not."); *id.* at 201:15-20 (Q. "Do you have any idea if the data, that was accessed as a result of the Facebook data breach, with respect to Mr. Adkins was publicly available prior to data breach?" A. "No.").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

FACEBOOK'S MOTION TO
EXCLUDE JAMES VAN DYKE
CASE NO. C 18-05982 WHA (JSC)

1    whether the data compromised was public or accurate, *id*. at 297:1-20, 310:2-311:2.  Ultimately,

2    at deposition, Van Dyke admitted that Group 1 users "would be at no increased risk of identity

3    theft as a result of the data breach" if their names, emails, and phone numbers were already

4    public—and, of course, it is common knowledge that many people share their contact information

5    on Facebook or post it on LinkedIn or other websites.  *Id*. at 70:1-21.  Van Dyke's admission is

6    also outright contrary to the conclusion in his report that, uniformly, "all these victims are now at

7    increased risk."  *See* Dkt. 209-23 at ¶ 4(c).

8          Van Dyke relies on his untested assumptions about the "average victim" to draw sweeping

9    conclusions with no basis in the facts.  He acknowledged that he "made no effort to quantify what

10   the actual differences are" and that he "recommend[ed] the exact same remedy, regardless of [class

11   members]' individual circumstances."  Ex. 4 (Van Dyke Dep.) at 39:16-24, 48:3-22.  But he admits

12   the "exact same remedy" does not fit for every class member.  Among other things, Van Dyke

13   recognized:

14   •    "[T]he more personal data a fraudster has, the stronger their ability" to
          perpetrate identity theft (Dkt. 209-23 at ¶ 6(n));

15

16   •    "More damaging forms of misuse often result from criminals amassing more
          elements of any one consumer's data" (Dkt. 209-23 at ¶ 3(n)); and

17   •    "[I]f you're asking if more information was exposed, am I more likely to
          recommend digital protection software service, then yes." (Ex. 4 (Van Dyke

18        Dep.) at 249:9-250:10).

19   Despite these concessions, Van Dyke concludes—for the sake of "simplicity"—*every* affected user

20   across Group 1 and Group 2 should receive the same call blocker services, digital security

21   software, and identity protection services, regardless of individual circumstance or what was

22   compromised.  *See* Dkt. 209-23 at ¶¶ 7(a)-(c); *see also* Ex. 4 (Van Dyke Dep.) at 49:2-50:2.  That

23   opinion is manifestly untailored to the facts.  Why, for example, should call blocker services be

24   purchased for *every* affected user (many of whom did not have their phone number compromised

25   in the attack), when Van Dyke admits that such services are only required after exposure of a

26   "personal phone number," Ex. 4 (Van Dyke Dep.) at 225:8-226:8, and merely "advisable" if the

27   phone number was already public, *id*. at 221:13-25?

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

FACEBOOK'S MOTION TO
EXCLUDE JAMES VAN DYKE
CASE NO. C 18-05982 WHA (JSC)

1    Van Dyke's one-size-fits-all conclusions are contradictory, unreliable, and not based in the

2    facts.  They fail Rule 702 and *Daubert*, and his entire report and opinions should be excluded.

3               3.    <u>Van Dyke's Opinions Regarding Increased Risk Of Identity Theft Are</u>
                       <u>Pure Conjecture And Not The Product Of Reliable Principles Or Methods</u>

4

5    Van Dyke offers no principles or methods to support his opinions regarding the increased

6    risk of identity crimes based on the data *actually compromised* here.  Instead, Van Dyke offers

7    speculative theories, supported only by his imagination, about how identity theft *could* occur.

8    For example, Van Dyke posits that one could start with an affected user's email address

9    ("assum[ing] it's a highly valuable" personal email address—how one is supposed to know is left

10   completely unexplained) in order to send phishing emails to elicit more valuable data (*e.g.*, SSNs),

11   which Van Dyke simply assumes will succeed in tricking the user to volunteer the data, and the

12   attacker could then combine that information with still other data from other breaches, in order to

13   compile a complete W-2 and commit tax fraud.  *Id.* at 133:8-137:6.  All that merely from *an email*

14   *address* – which an attacker hardly needs to obtain from the data stolen in the data breach at issue,

15   since they can be found *all over the Internet*.  Van Dyke also speculates that "criminal gangs"

16   lurking across the U.S. might send "bogus sweepstake" emails to solicit personal data, combine

17   any information received with other datasets until they locate the target's street address, and then

18   stake out the target's home to pilfer their mailbox for sensitive data.  *Id.* at 329:23-333:4.

19   These outlandish hypotheticals rely upon multi-link chains of speculative inferences

20   involving independent criminal acts unrelated to this case.  They do not satisfy *Daubert* or Rule

21   702's requirement of reliable principles or methods.  *See Mariscal v. Graco, Inc.*, No. 13-cv-

22   02548, 2014 WL 4245949, at *7 (N.D. Cal. Aug. 27, 2014) ("[I]t is a proper exercise of the Court's

23   discretion to exclude witness testimony that is based on 'unsupported assumptions and unsound

24   extrapolation.'") (internal citation omitted); *Oracle Am., Inc. v. Google Inc.*, 798 F. Supp. 2d 1111,

25   1115 (N.D. Cal. 2011) (Alsup, J.) (excluding expert testimony concerning hypothetical negotiation

26   regarding royalty payments because expert's analysis "was not tied to the specific patent claims at

27   issue . . . [and] did not even identify a single patent claim"); *see also McGlinchy v. Shell Chem*

28

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

FACEBOOK'S MOTION TO
EXCLUDE JAMES VAN DYKE
CASE NO. C 18-05982 WHA (JSC)

1   *Co.*, 845 F.2d 802, 807 (9th Cir. 1988) (excluding expert's "unsupported assumptions and unsound

2   extrapolations").  Van Dyke's report and opinions should be excluded.

3       **B.**    **Van Dyke Has No Basis To Offer Any Opinions Regarding Users Outside The United States**

4

5       Van Dyke's report and opinions also cannot support Plaintiff's half-hearted attempt to

6   represent a global class.  Van Dyke admits he did not consider non-U.S. Facebook users affected

7   by the attack.  Ex. 4 (Van Dyke Dep.) at 145:13-14 ("It's correct that I have not done a non-

8   U.S. analyses of risks.").  He admits there are "differences" for these users that he did not analyze,

9   even though they compose more than 85% of the putative class.  *Id.* at 140:23-141:4.  Indeed, Van

10  Dyke did not even *know* that non-U.S. users were affected by the attack.  *Id.* at 141:5-7 (Q. "Do

11  you know whether any of the affected users were outside the U.S.?" A. "I -- I don't know").  He

12  has not done the work to analyze whether affected non-U.S. users deserve class-wide treatment,

13  so any effort to extend his unreliable opinions across a global class must also fail.

14      **C.**    **Van Dyke's Opinions On Lost Value Of PII Should Be Excluded**

15      Van Dyke opines at the end of his report that "[a]s a direct result of the Facebook data

16  breach, victims now suffer reduced value of personal information[.]"  Dkt. 209-23 at ¶ 8(a).  The

17  Court should exclude this stray opinion for three reasons.  First, the Court already rejected

18  Plaintiff's "lost value of PII" theory twice, so it is not relevant.  Dkt. 153 at 18-19; Dkt. 185 at 3,

19  6.  Second, Van Dyke admits he is not "an expert on the loss of value of personal information," so

20  even he does not purport to be qualified to offer this opinion.  Ex. 4 (Van Dyke Dep.) at 373:22-

21  25.  Third, the sole mention of anything about lost value of information is literally on the last page

22  of his report.  Dkt. 209-23 at ¶ 8(a).  Van Dyke's report includes *zero* analysis or discussion about

23  affected Facebook users losing the value of their personal information, and that was not his

24  assignment.  *Cf. id.* at ¶ 2.  This too should be excluded.

25  **IV.**    **CONCLUSION**

26      For the foregoing reasons, Facebook respectfully requests that the Court exclude Van

27  Dyke's entire expert report and opinions submitted in support of Plaintiff's Motion for Class

28  Certification.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

FACEBOOK'S MOTION TO
EXCLUDE JAMES VAN DYKE
CASE NO. C 18-05982 WHA (JSC)

1    DATED: September 26, 2019          Respectfully submitted,

2                                        LATHAM & WATKINS LLP

3                                        By: /s/ Andrew B. Clubok
                                              Andrew B. Clubok (appearance pro hac vice)
4                                             andrew.clubok@lw.com
                                              Susan E. Engel (appearance pro hac vice)
5                                             susan.engel@lw.com
                                              555 Eleventh Street, NW, Suite 1000
6                                             Washington, D.C. 20004-1304
                                              T: +1.202.637.2200/F: +1.202.637.2201
7
                                              Elizabeth L. Deeley (CA Bar No. 230798)
8                                             elizabeth.deeley@lw.com
                                              Michael H. Rubin (CA Bar No. 214636)
9                                             michael.rubin@lw.com
                                              Melanie M. Blunschi (CA Bar No. 234264)
10                                            melanie.blunschi@lw.com
                                              505 Montgomery Street, Suite 2000
11                                            San Francisco, CA 94111-6538
                                              T: +1.415.391.0600/F: +1.415.395.8095
12
                                              Serrin Turner (appearance pro hac vice)
13                                            serrin.turner@lw.com
                                              885 Third Avenue
14                                            New York, NY 10022-4834
                                              T: +1.212.906.1200/F: +1.212.751.4864
15
                                              Attorneys for Defendant Facebook, Inc.
16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

FACEBOOK'S MOTION TO
EXCLUDE JAMES VAN DYKE
CASE NO. C 18-05982 WHA (JSC)