John A. Yanchunis (*Pro Hac Vice*)
JYanchunis@ForThePeople.com
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
T: 813-223-5505
F: 813-223-5402

Ariana J. Tadler (*Pro Hac Vice*)
ATadler@Tadlerlaw.com
**TADLER LAW LLP**
One Penn Plaza
New York, New York
T: 212-946-9453
F: 212-273-4375

*Attorneys for Plaintiff*

Andrew N. Friedman (*Pro Hac Vice*)
AFriedman@CohenMilstein.com
**COHEN MILSTEIN SELLERS & TOLL,**
**PLLC**
1100 New York Ave, 5th Floor
Washington, DC 20005
T: 202-408-4600
F: 202-408-4699

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| STEPHEN ADKINS, an individual and Michigan resident, on behalf of himself and all others similarly situated,<br><br>                             Plaintiff,<br>v.<br><br>FACEBOOK, INC.,<br><br>                             Defendant. | No. C 18-05982 WHA<br>    *Consolidated Cases*:<br>No. C 18-06022 WHA<br>No. C 19-00117 WHA<br><br>**Plaintiff's Opposition to Facebook, Inc.'s Motion to Exclude the Declaration and Opinions of Plaintiff's Expert Ian Ratner**<br><br>Date:       November 6, 2019<br>Time:      8:00 a.m.<br>Courtroom:  12<br><br>Hon. William H. Alsup |

1   Facebook fundamentally misunderstands both the conclusions reached by Plaintiff's

2   damages expert, Ian Ratner, s*ee Declaration of Ian Ratner, ECF No. 198-29, (Pl. Ex. 26, "Ratner

3   Decl.") and the purpose of a *Daubert* motion. Facebook's Motion to Exclude misstates the

4   opinions Mr. Ratner is offering and then disputes the altered opinions on their merits. These attacks

5   are baseless. Mr. Ratner is an accomplished economist who uses sound and scientifically

6   acceptable methods for valuation. The motion should be denied. *See S. Indep. Bank v. Fre''s, Inc.*,

7   No. 2:15-CV-799-WKW, 2019 WL 1179396, at *9 (M.D. Ala. Mar. 13, 2019) ("Because Ian

8   Ratner is qualified under *Daubert* and the methodologies he employs to reach his conclusions are

9   reliable, Defendant's motion to exclude his testimony will be denied.").

10   Facebook spends most of its motion attempting to undermine "lost value of PII" as a valid

11   measure of damage in data breach cases. *See* Doc. 214 (Def. Mot. to Exclude Ian Ratner) at 4-8.

12   But Mr. Ratner's declaration does not define "lost value of PII" as the calculation of the reduction

13   of the PII value of what Plaintiff's and class members possessed before and after the breach. Ratner

14   was not asked to and did not calculate a "delta." Rather, he made a straightforward application of

15   basic economic methodologies to show that access to PII has market value, and that the hackers

16   taking the PII freely from Facebook is a value lost to the class members. Ratner Decl., ¶¶ 45 ("The

17   value of this privacy should be exclusively enjoyed by Facebook's users. However, as a result of

18   the Data Breach, Facebook essentially granted access to PII for free and conveyed value to

19   unauthorized third parties without compensation to the rightful owners of that information—its

20   users."). *Accord, Id.,* ¶¶ 46-49, 54, 58. He showed companies are willing to pay money (directly

21   or indirectly such as through targeted advertising) for access to someone's PII, and Facebook's

22   facilitating the data breach here deprived Plaintiff and the class members from being able to control

23   access to their PII and monetize it if desired. *Id.* Just as currency is not valuable on its own but has

24   value by virtue of enabling the currency-holder to purchase goods or services, so does the PII have

25   value by virtue of enabling the owner to pay with PII to get goods or services. Ratner is not opining

26   on how much less Breach victims could obtain for their PII if so disposed.

27   Facebook's other critiques fare no better. Facebook criticizes Ratner for relying on

28

1

Plaintiff's Opposition ot Facebook's Motion to Exclude
Declaration and Opinions of Ian Ratner

secondary sources rather than visiting the "Dark Web" himself, even though expert reliance on secondary sources is common and entirely proper (and, in fact, Facebook's expert testified she ███████████████████████). Facebook also resists Ratner's valuation methodology because he was not able to unearth an exact match for the various categories of PII stolen in the Facebook data breach and instead based his calculations on comparable transactions. But that is how valuation works in the real world. For example, when assessing the value of a house, one looks at comparable sales (not sales of the exact same house) and then makes adjustments based on the particular assets of any given property—precisely what Mr. Ratner did here. Again, these are basic and well-accepted valuation principles. And Facebook's attempt to impeach Ratner with data from a different data breach totally ignores the facts of that case.

Finally, Facebook's attacks on Mr. Ratner's conclusions about how to calculate classwide damages for class members' risk and stress from the breach, time spent dealing with the consequences of it, and risk of identity theft are misguided. Facebook barely even bothers disputing the methodologies behind Mr. Ratner's straightforward and economically valid damage formulas and instead complains they "don't fit the facts of the case" because they provide a way to calculate damages for actions which may or may not have been taken by individual class members as part of Plaintiff's 23(c)(4) request. That is not a legitimate critique. Ratner provides a mean of calculating for lost time; to the extent individual class members in follow-on proceedings cannot show any such lost time or engagement in the activities Ratner recites, then his method wouldn't fit. That is not a basis to exclude his damages opinions for all class members for all purposes.

## ARGUMENT

### I. AT CLASS CERTIFICATION, THE TRIAL COURT'S ROLE IS LIMITED TO BROADLY DETERMINING IF CHALLENGED EXPERT TESTIMONY IS SUFFICIENTLY RELIABLE TO SUPPORT THE PLAINTIFF'S RULE 23 ARGUMENTS

"Formalistic evidentiary objections which might have merit at a successive stage of the litigation, such as a motion for summary judgment or trial, make little sense at the class certification stage." *McCurley v. Royal Seas Cruises, Inc.*, 331 F.R.D. 142, 154 (S.D. Cal. 2019);

1  *see also In re Zurn Pex Plumbing Prod. Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011) (observing

2  that a class certification decision "is far from a conclusive judgment on the merits of the case, it is

3  'of necessity ...' not accompanied by the traditional rules and procedure applicable to civil trials.").

4  "At class certification, district courts do not have to conduct a full *Daubert* analysis." *Moorer v.*

5  *StemGenex Med. Grp., Inc.*, No. 16-CV-2816-AJB-NLS, 2019 WL 2602536, at *2 (S.D. Cal. June

6  25, 2019). Instead, "district courts must conduct an analysis tailored to whether an expert's opinion

7  was sufficiently reliable to admit for the purpose of proving or disproving Rule 23 criteria, such

8  as commonality and predominance." *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 495

9  (C.D. Cal. Dec. 20, 2012).

10  In considering expert opinions offered at class certification, "the trial court must assure that

11  the expert testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" *City*

12  *of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043–44 (9th Cir. 2014) (quoting *Daubert,* 509

13  U.S. at 597). "Expert opinion testimony is relevant if the knowledge underlying it has a valid

14  connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable

15  basis in the knowledge and experience of the relevant discipline." *Primiano v. Cook,* 598 F.3d 558,

16  565 (9th Cir.2010) (citation and internal quotation marks omitted).

17  "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence,

18  and attention to the burden of proof, not exclusion." *Id.* at 564 (citation omitted). The judge is

19  "supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely

20  because they are impeachable." *Alaska Rent–A–Car, Inc. v. Avis Budget Grp., Inc.,* 738 F.3d 960,

21  969 (9th Cir.2013). "The district court is not tasked with deciding whether the expert is right or

22  wrong, just whether his testimony has substance such that it would be helpful to a jury." *Id.* at

23  969–70.

24  **II.   MR.   RATNER'S   CONCLUSIONS   ARE   BASED   ON   RELIABLE**

25  **METHODOLOGIES AND FACEBOOK'S ATTACKS   MISS ENTIRELY OR**
    **MERELY  GO  TO  THE  WEIGHT  AND  NOT  ADMISSIBILITY  OF  HIS**

26  **CONCLUSIONS**

27  Facebook does not contest Mr. Ratner's qualifications to provide expert damage models

28

Plaintiff's Opposition ot Facebook's Motion to Exclude
Declaration and Opinions of Ian Ratner

1    and calculations, nor could it. *See In re Centaur, LLC*, 595 B.R. 686, 695 (Bankr. D. Del. 2018)

2    ("The Trustee's expert report was prepared by Ian Ratner, who has served as an expert witness in

3    more than 80 complex commercial litigation cases, fraud investigations, and solvency-related

4    valuations disputes."). Instead, Facebook resorts to manufacturing opinions not offered or twisting

5    Ratner's words to make it seem as if he is saying something different than what he said.

6         A.    **Mr. Ratner's Methodology for Calculating "PII-Based Damages" Is Valid and
              Reliable, And Facebook's Arguments to the Contrary Misconstrue the
7             Testimony**

8         Facebook's main complaint about Mr. Ratner's opinions flows from its belief that

9    "Ratner's 'PII-based damages' … appear to be a proxy for the lost or diminished value of 'PII'".

10    Doc. 214  at 1:5-6. Facebook then proceeds to argue at length about why it believes diminished

11    value of PII is an inappropriate measure and how Mr. Ratner's models do not actually calculate

12    "that purported loss." *Id*. at 4:2.

13        There is a clear reason why Mr. Ratner's models do no calculate diminished value of PII:

14    He is not opining that the market value of the class members' PII was diminished by the September

15    2018 breach ("Breach."). Nowhere in his discussion of "PII-Based Damages" does he Ratner

16    discuss calculating the delta in the market price of PII after the Breach. Ratner Decl., ¶¶ 45-59.[1]

17        Rather, his model focuses on something entirely different—the transfer value that

18    Facebook allowed by providing unauthorized access to otherwise private PII. *Id*., ¶¶ 45-46. It is

19    indisputable in today's data-driven age that PII has some market value. *Id*., ¶¶ 17-21. Indeed, as

20    Mr. Ratner notes, citing an article from *The Economist*, data has been called "the oil of the digital

21    era," and large companies dealing in data are some of the *most* profitable companies in the world.

22    *Id*., ¶ 19.

23        Facebook itself is a prime example of this. Facebook's users provide Facebook with their

24    PII in exchange for access to Facebook's social media platform and Facebook's promises to protect

25    the PII users want to remain private. *Id*., ¶¶ 20-21. The data provided by Facebook's users is the

26    _____

27    [1] While Plaintiff referred to diminished of value of the PII, Doc. 198 at 20, Plaintiff did not intend
      the term to suggest that Mr. Ratner had calculated a difference of how much Breach victims could
28    sell their PII for pre-Breach compared to post-Breach. Plaintiff cited to Mr. Ratner's report and
      paragraphs that explained his PII-Based Damages. *Id.*

currency in this transaction. *Id*. If Facebook does not abide by its promises it risks losing users and thus the ability to generate money from them through targeted advertising. *Id*. Thus, every class member has something Facebook wants and is willing to pay,  to acquire—their PII.

Mr. Ratner's PII damage model evaluates what happens when a data aggregator like Facebook permits that PII to be breached and stolen. There are two general categories of damage from that: (1) damages stemming from being at an increased risk of identity fraud and having to take mitigation measures to reduce that risk, and anxiety or stress from that risk; and (2) economic damages from having one's valuable PII stolen without consideration. The former is addressed in the next section; it is the latter that is at issue here.

Mr. Ratner's "PII-Based Damages" model follows the well-established framework for evaluating damages when an intangible asset such as PII has been stolen or infringed. In such cases, if the victim can show access to the asset has value, the victim is entitled to the fair market value of a "license fee," or what the victim could have charged for use of the asset. *See, e.g.*, *On Davis v. The Gap, Inc.*, 246 F.3d 152, 164 (2d Cir. 2001) (eyeglass designer entitled to modest license fee for unauthorized use of picture of model wearing his eyewear); *Jarvis v. K2 Inc.*, 486 F.3d 526, 533 (9th Cir. 2007) (holding damages for infringement of an assets where the owner could have sold the right to access the asset, actual damages are "what a willing buyer would have been reasonably required to pay to a willing seller for [the asset]"); Ratner Decl., ¶ 46. This measure of damage is available even if the victim cannot show the breach "caused him lost sales, lost opportunities to license, or diminution in the value of the [asset]." *On Davis.*, 246 F.3d at 164.

The "market value approach is an objective, not a subjective, analysis." *Mackie v. Rieser*, 296 F.3d 909, 917 (9th Cir. 2002). Thus, Mr. Ratner calculated objectively what similar bundles of PII sell for on the "Dark Web," a black market where PII is regularly bought and sold. Ratner Decl., ¶¶ 50-59. Ratner acknowledges sales on the Dark Web are not an exact match given that it is not a legitimate market, but notes the prices reflect a floor for measuring the fair market value for access. *Id*., ¶¶ 51, 59.

Facebook assails Mr. Ratner's conclusions on a variety of grounds, but none supports

exclusion of them. First, Facebook largely concedes as it must the market approach is a valid methodology. Its only apparent objection to methodology is the one that comes from Facebook willfully ignoring Ratner's actual declaration. Claims that "Ratner does not even purport to show any impairment of Plaintiff's or class members' ability to participate in any market due to the data breach," or that "Ratner admits he made no effort to determine whether Plaintiff's information is worth less after the attack," Doc. 214 at 4:7-11 (internal punctuation omitted), are wholly irrelevant. Those choices were deliberate: Ratner's analysis measured the value of unauthorized access granted by Facebook, not any difference in  of market price of the PII.

Facebook's remaining complaints involve not methodology but rather conclusions or the inputs used in the damage model. These matters are not the proper subject of a *Daubert* motion. *Alaska Rent–A–Car,* 738 F.3d at 969-70.  "There is no need to evaluate an expert's underlying data or factual assumptions so long as there is a basis in the record supporting the expert's factual assumptions." *McCurley v. Royal Seas Cruises, Inc.*, 331 F.R.D. 142, 159 (S.D. Cal. 2019) (internal punctuation omitted). Claimed "errors" in an expert's analysis or factual information are not proper grounds for exclusion but rather are "fair ground for cross-examination….'[A] jury can assess the reliability of [the expert's] theories behind his calculations, and [defendant] may inquire into those theories on cross-examination.'" *Dial Corp. v. News Corp.*, No. 13CV6802, 2016 WL 690868, at *4 (S.D.N.Y. Feb. 17, 2016).

In any event, the criticisms as to inputs lack merit. Facebook takes issue with Ratner's calculations of Group 1 damages because he started with data sets that contained social security numbers, Doc. 214 at 4-5, but Ratner accounted for that concern by separately calculating a Dark Web market value for social security numbers (roughly around $2) and subtracted that amount from data sets that included date of birth, name and address, and social security number. Ratner Decl., ¶¶ 53-55. In other words, the combined data has a market value of $3.00-$4.41 per account, so subtracting the value of social security numbers yields a value range of $1.00 to $2.35 per class member. *Id.* This is simple arithmetic. Ratner, thus, controlled for identifiable data that was not at issue in this matter.

1    Facebook also suggests Ratner purposefully avoided "relevant" data that was available

2  because he didn't like the result it produced. Doc. 214 at 5:16-19. This is flat-out wrong. The data

3  to which Facebook refers, as Ratner explains in his deposition, are discredited sales figures at issue

4  in the Yahoo! data breach litigation. *See, e.g.*, Ratner Dep., Def. Ex. 5 at 120:4-8 (noting the sale

5  was years after the breach, meaning the data could have been worth little by that time, and that

6  there were a lot of questions about the validity of the data offered).

7    As for his calculation for Group 2, Facebook contends Ratner improperly compared the

8  breached Group 2 data to login credentials, Doc. 214 at 6:3-24, and twists his words to make it

9  seem like he believes the Group 2 PII data in the Facebook breach allows the hackers to access the

10  class members' Facebook login credentials. Not so.

11    As Ratner explains in his Declaration, he used the Dark Web value of a social media login

12  credential as a comparison figure because access to login credentials would permit a hacker to

13  access the same type of PII data at issue for the Group 2 members. Ratner Decl., ¶ 56. Based on

14  this comparison, Ratner calculates the value of the Group 2 class members' PII that was stolen in

15  the Facebook breach as being between $4.00 and $6.23 per class member, an eminently reasonable

16  figure. *Id.*, ¶¶ 57-58. Facebook is free to argue to the jury the comparison is inapt, but it is not a

17  proper argument at this stage. *See Virnetx, Inc. v. Cisco Sys., Inc.,* 767 F.3d 1308, 1331 (Fed.

18  Cir.2014) (explaining that "the degree of comparability" was a factual issue best addressed by

19  cross examination, rather than exclusion, and that the jury was "entitled to hear the expert

20  testimony and decide for itself what to accept or reject").

21    And Facebook's claim Ratner admits the Group 2 data would be worthless if the ability to

22  log in was not present is an outright untruth. In discussing the value of the log-in credential Mr.

23  Ratner was using as a stand-in for the Group 2 PII, Facebook's attorney asked Ratner if the

24  credential would have zero value if the password had been changed and the log in no longer

25  worked. Ratner Dep., Def. Ex. 5 at 215:19-216:216:11. Obviously, a log in that did not work would

26  have no black market value, and Ratner simply admitted as much because the hacker could not

27  access the valuable PII without the login information. *Id*. He was neither asked—nor did he

28

1    suggest—that the PII stolen from the Group 2 class members is worthless without the ability to

2    log into the Group 2 class members' Facebook accounts. Facebook's claim to the contrary is an

3    attempt to mislead this Court.

4         Finally, Facebook takes issue with Ratner's supposed failure to account for the particulars

5    of a given Group 2 class member's PII and his acknowledgment that he obtained the Dark Web

6    prices from secondary sources rather than attempting to find them himself. Neither criticism even

7    warrants much discussion. On the first point, Ratner's Declaration shows the damages *can be*

8    calculated on a classwide basis; he is not required at this stage to fully complete the calculations

9    (nor has Facebook provided him with all the evidence needed to do so). At class certification,

10   "[c]alculations need not be exact," nor is it necessary "to show that the method will work with

11   certainty at this time." *Maldonado v. Apple, Inc.*, No. 3:16-CV-04067-WHO, 2019 WL 4451028,

12   at *10 (N.D. Cal. Sept. 17, 2019).

13        Likewise, it is entirely proper for Mr. Ratner to rely on research conducted by other

14   organizations. "*Daubert* does not mandate that experts must rely on any particular source of

15   information." *Cottier v. City of Martin*, No. CIV. 02-5021-KES, 2004 WL 6036041, at *4 (D.S.D.

16   May 27, 2004). Mr. Ratner makes no claim to be an expert in navigating the "Dark Web," a

17   notoriously tricky and difficult area to explore. It is appropriate for him to rely on work performed

18   by other experts. *See e.g., Hernandez v. Crown Equip. Corp.*, 92 F.Supp.3d 1325 (M.D. Ga. 2015)

19   (permitting human factors expert in products liability case to rely on the conclusions of other

20   experts where "an expert in human factors and warnings would reasonably rely on the work done

21   by engineers and data analysis experts" and rejecting argument the expert must verify other experts

22   findings). Indeed, Facebook's own experts also both testified ████████████████████

23   ███████████. Pls. Ex. 43, Oct. 7, 2019 Deposition of Catherine Tucker at 289:16-25; Pls. Ex.

24   44, Oct. 8, 2019 Deposition of Austin Berglas at 37:18-23.

25       **B.**    **Mr. Ratner's Methodology for Valuing "Time Spent Dealing with The Breach," And "Risk-Based Damages" Is Also Valid And Reliable**

26        Facebook also critiques Mr. Ratner's damage models used to calculate classwide damages

27   for class members' risk of future identity theft and corresponding distress as being based on

28

1   averages rather than addressing the characteristics of each class member. Doc. 214 at 8-9. But

2   Ratner's methodology is entirely proper. Several courts have considered—and approved—the

3   appropriate use of averages. *See, e.g., In re TFT–LCD (Flat Panel) Antitrust Litigation,* No. M 07–

4   1827 SI, 2012 WL 555090 at *8 (N.D. Cal., February 21, 2012); *In re Aftermarket Automotive*

5   *Lighting Products Antitrust Litigation,* 276 F.R.D. 364, 372–374 (C.D.Cal.2011) (method of

6   averaging across products not a basis to invalidate an expert's methodology). And, in any event,

7   assertions "that models were flawed owing to their failure to include this or that variable are

8   prototypical concerns that go to weight, not admissibility." *Grace v. Apple, Inc.*, 328 F.R.D. 320,

9   341 (N.D. Cal. 2018) (internal punctuation omitted); *see Bazemore v. Friday,* 478 U.S. 385, 400

10  (1986) ("Normally, failure to include variables will affect the analysis' probativeness, not its

11  admissibility").

12      Facebook's disagreement with Ratner's method of calculating damages for time spent

13  dealing with the attack fails for the same reason. Ratner has created a solid damages model based

14  on various actions a class member may have taken in response to the breach and calculated a value

15  for those actions based on the hourly rate one would have to pay someone else to perform the tasks.

16  Ratner Decl., ¶¶ 33-36. Facebook argues class members may not have taken one or more of those

17  actions, Doc. 214 at 9, but that is immaterial. The list of possible actions was not intended to be

18  exhaustive, rather it was meant to be representative. If class members did not take any of the

19  actions Mr. Ratner has valued, they will not receive compensation for damages in that category.

20  Facebook's complaint has nothing to do with Ratner's methodology; it is an argument over what

21  the evidence may ultimately show at trial. The same is true for the claim that there is no evidence

22  of identity theft. Simply put, if no class member suffers identity theft from the breach then no class

23  member will get compensated for identity theft. The issue Facebook raises "does not show flaws

24  in the methodology, but merely disagreements among the experts about what data should be." *In*

25  *re Packaged Seafood Prod. Antitrust Litig.*, No. 15-MD-2670 JLS (MDD), 2019 WL 3429174, at

26  *21 (S.D. Cal. July 30, 2019).

27

28

1

## CONCLUSION

2        Facebook's Motion to Exclude the Declaration and Opinions of Plaintiff's Expert Ian

3  Ratner should be denied. All of Facebook's arguments are either based on a misreading of Ratner's

4  conclusions or quibbles with the data he has used. The former is not a basis for exclusion and the

5  latter is an issue reserved for the trier of fact.

6

7  Dated: October 10, 2019           **COHEN MILSTEIN SELLERS & TOLL PLLC**

8

9                         By:    /s/ *Andrew N. Friedman*
                         Andrew N. Friedman (Pro Hac Vice)

10                        *AFriedman@CohenMilstein.com*
                        1100 New York Avenue NW, Suite 500

11                        Washington, DC 20005
                        Telephone: 202-408-4600

12                        Facsimile: 202-408-4699

13                        **MORGAN & MORGAN**
                        **COMPLEX LITIGATION GROUP**

14

15                        By:    /s/ *John A. Yanchunis*
                        John A. Yanchunis (Pro Hac Vice)

16                        *JYanchunis@ForThePeople.com*
                        201 N. Franklin Street, 7th Floor

17                        Tampa, Florida 33602
                        Telephone: 813-223-5505

18                        Facsimile: 813-223-5402

19                        **TADLER LAW LLP**

20                        By:*/s/ Ariana J. Tadler*
                        Ariana J. Tadler (Pro Hac Vice)

21                        *ATadler@Tadlerlaw.com*
                        One Penn Plaza

22                        New York, NY 10119
                        Telephone: 212-946-9453

23                        Facsimile: 212-273-4375

24

25                        *Counsel for Plaintiff*

26

27

28

*2586102 v1*

1

**CAPSTONE LAW, APC**
Tarek H. Zohdy (SBN 247775)
2
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
3
Cody.Padgett@capstonelawyers.com
Trisha K. Monesi (SBN 303512)
4
Trisha.Monesi@capstonelawyers.com
Capstone Law APC
5
1875 Century Park East, Suite 1000
Los Angeles, California 90067
6
Telephone: (310) 556-4811
Facsimile: (310) 943-0396
7

8
**CASEY GERRY SCHENK**
**FRANCAVILLA BLATT & PENFIELD,**
9
**LLP**
David S. Casey, Jr. (SBN 060768)
10
dcasey@cglaw.com
Gayle M. Blatt (SBN 122048)
11
gmb@cglaw.com
Jeremy Robinson (SBN 188325)
12
jrobinson@cglaw.com
110 Laurel Street
13
San Diego, California 92101
Telephone: (619) 238-1811
14
Facsimile: (619) 544-9232 fax
15

16
**CLAYEO C. ARNOLD, A**
**PROFESSIONAL LAW**
17
**CORPORATION**
Clayeo C. Arnold (SBN 65070)
18
carnold@justice4you.com
Joshua H. Watson (SBN 238058)
19
jwatson@justice4you.com
865 Howe Avenue
20
Sacramento, California 95825
Telephone: 916-777-7777
21
Facsimile: 916-924-1829
22

23
**COHEN MILSTEIN SELLERS & TOLL**
**PLLC**
24
Douglas J. McNamara
dmcnamara@cohenmilstein.com
25
Karina G. Puttieva (SBN 317702)
kputtieva@cohenmilstein.com
26
1100 New York Ave. NW
East Tower, 5th Floor
27

28

Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

**FINKELSTEIN, BLANKENSHIP, FREI-**
**PEARSON & GARBER LLP**
Jeremiah Frei-Pearson
Jfrei-pearson@fbfglaw.com
Andrew C. White
awhite@fbfglaw.com
445 Hamilton Ave., Suite 605
White Plains, New York 10601
Telephone: (914) 298-3281
Facsimile: (914) 908-6709

**FRANKLIN D. AZAR & ASSOCIATES**
Ivy Ngo (SBN 249860)
ngoi@fdazar.com
Kelly Hyman
hymank@fdazar.com
14426 East Evans Ave
Aurora, CO 80014
Telephone: 303-757-3300
Facsimile: 720-213-5131

**GIRARDI KEESE**
Thomas V. Girardi (SBN 36603)
Keith D. Griffin (SBN 204388)
1126 Wilshire Boulevard
Los Angeles, CA 90017
Telephone: 213-977-0211
Facsimile: 213-481-1554

**GLANCY PRONGAY & MURRAY LLP**
Marc Godino
mgodino@glancylaw.com
Brian Murray
bmurray@glancylaw.com
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: 310-201-9150
Facsimile: 310-432-1495

**JONES WARD PLC**
Jasper D. Ward
jasper@jonesward.com
1205 E Washington St, Suite 111

1

Plaintiff's Opposition to Facebook's Motion to Exclude
Declaration and Opinions of Ian Ratner

Louisville, Kentucky 40206
Telephone: 502-882-6000

**KANTROWITZ GOLDHAMER &
GRAIFMAN, P.C.**
Gary S. Graifman
ggraifman@kgglaw.com
Jay Brody
jbrody@kgglaw.com
747 Chestnut Ridge Road
Chestnut Ridge, New York 10977
Telephone: (845) 356-2570
Facsimile: (845) 356-4335

**KOHN, SWIFT & GRAF, P.C.**
Jonathan Shub (SBN 237708)
jshub@kohnswift.com
Kevin Laukaitis
klaukaitis@kohnswift.com
1600 Market Street, Suite 2500
Philadelphia, PA 19103-7225
Telephone: (215) 238-1700
Facsimile: (215) 238-1968

**LAW OFFICE OF PAUL C. WHALEN,
P.C.**
Paul C. Whalen
paul@paulwhelan.com
768 Plandome Road
Manhasset, NY 11030
Telephone: (516) 426-6870
Facsimile: (212) 658-9685

**LAW OFFICES OF CHARLES
REICHMANN**
Charles Reichmann
Cpreichmann@yahoo.com
16 Yale Circle
Kensington, CA 94708
Telephone: (415) 373-8849

**LIVINGSTON BAKHTIAR**
Ebby S. Bakhtiar (SBN 215032)
3435 Wilshire Boulevard, Suite 1669
Los Angeles, CA 90010
Telephone: 213-632-1550
Facsimile: 213-632-3100

**LOCKRIDGE GRINDAL
NAUEN PLLP**
Karen Hanson Riebel
khriebel@locklaw.com
Kate M. Baxter-Kauf
kmbaxter-kauf@locklaw.com
Arielle S. Wagner
aswagner@locklaw.com
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 596-4097
Facsimile: (612) 339-0981

**MIGLIACCIO & RATHOD LLP**
Nicholas A. Migliaccio
nmigliaccio@classlawdc.com
Jason S. Rathod
jrathos@classlawdc.com
412 H Street N.E., Ste. 302
Washington, DC 20002
Telephone: (202) 470-3520

**TADLER LAW LLP**
Henry J. Kelston
hkelston@tadlerlaw.com
Melissa Clark
mclark@tadlerlaw.com
One Pennsylvania Plaza, Suite 1920
New York, NY 10119
Telephone: (212) 594-5300
Facsimile: (212) 868-1229
A.J. de Bartolomeo
ajdebartolomeo@tadlerlaw.com
505 14th Street, Suite 1110
Oakland, CA 94612
Telephone: (212) 631-8689
Facsimile: (510) 350-9701

**MORGAN & MORGAN
COMPLEX LITIGATION GROUP**
Ryan J. McGee
rmcgee@ForThePeople.com
Jean S. Martin
jeanmartin@ForThePeople.com
Kenya J. Reddy
kreddy@forthepeople.com

2

Plaintiff's Opposition to Facebook's Motion to Exclude
Declaration and Opinions of Ian Ratner

1    201 N. Franklin Street, 7th Floor                    Facsimile: (949) 720-1292
     Tampa, Florida 33602
2    Telephone: (813) 223-5505                            **STULL, STULL & BRODY**
     Facsimile: (813) 223-5402                            Patrice L. Bishop (SBN 182256)
3                                                         pbishop@ssbla.com
4    **ROBINSON CALCAGNIE, INC.**                         Melissa R. Emert
     Daniel S. Robinson (SBN 244245)                      memert@ssbny.com
5    drobinson@robinsonfirm.com                           9430 W. Olympic Blvd., Suite 400
     Wesley K. Polischuk (SBM 254121)                     Beverly Hills, CA 90212
6    wpolischuk@robinsonfirm.com                          Telephone: (310) 209-2468
     Michael W. Olson (312857)                            Facsimile: (310) 209-2087
7    19 Corporate Plaza Drive
8    Newport Beach, California 92660                      *Other Plaintiff's Counsel*
     Telephone: (949) 720-1288
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                                    3
                                    Plaintiff's Opposition to Facebook's Motion to Exclude
                                    Declaration and Opinions of Ian Ratner

1

**SIGNATURE ATTESTATION**

2          I am the ECF User whose identification and password are being used to file Plaintiff's

3   Opposition to Facebook's Motion to Exclude Declaration and Opinions of Ian Ratner. I, Andrew

4   N. Friedman, attest that service has been effectuated via ECF.

5

6   DATED:  October 10, 2019                          _/s/ Andrew N. Friedman____

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff's Opposition to Facebook's Motion to Exclude
Declaration and Opinions of Ian Ratner

*2586102 v1*