Andrew N. Friedman (*pro hac vice*)
afriedman@cohenmilstein.com
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin St., 7th Floor
Tampa, FL  33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402

Ariana J. Tadler (*pro hac vice*)
atadler@tadlerlaw.com
**TADLER LAW LLP**
One Penn Plaza
36th Floor
New York, NY  10119
Telephone: (212) 946-9453
Facsimile: (212) 273-4375

*Appointed Class Counsel*

## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| STEPHEN ADKINS, an individual and Michigan resident, on behalf of himself and all others similarly situated,<br><br>                Plaintiffs,<br><br>    v.<br><br>FACEBOOK, INC.,<br><br>                Defendant. | No.  C 18-05982 WHA (JSC)<br><br>**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL AND TO DIRECT NOTICE OF SETTLEMENT**<br><br>Date: March 19, 2020<br>Time: 8:00 am<br>Courtroom: 12, 19th Floor<br>Hon. William Alsup |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT on March 19, 2020, at 8:00 a.m., or on a date selected by the Court, Plaintiff will and hereby does respectfully move the Court, in the courtroom of the Honorable William Alsup, Courtroom 12, 19th Floor of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, for an order preliminarily approving the proposed class action settlement and directing notice of settlement.

This motion is based on the notice of motion and motion for preliminary approval and permitting notice of the proposed settlement to the class, the following memorandum of points and authorities, the attached declarations and exhibits, the arguments of counsel, and any other matters in the record or that properly come before the Court.

Dated: February 7, 2020

_/s/ Andrew N. Friedman_
Andrew N. Friedman (*pro hac vice*)
afriedman@cohenmilstein.com
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin St., 7th Floor
Tampa, FL  33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402

Ariana J. Tadler (*pro hac vice*)
atadler@tadlerlaw.com
**TADLER LAW LLP**
One Penn Plaza
36th Floor
New York, NY  10119
Telephone: (212) 946-9453
Facsimile: (212) 273-4375

*Appointed Class Counsel*

## TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ..................................................................................1

I.      INTRODUCTION ................................................................................................1

II.     HISTORY OF THE LITIGATION ......................................................................2
        A.      Factual Background ..................................................................................2
        B.      The Complaints and Rule 12 Motion Practice .........................................3
        C.      Discovery ..................................................................................................4
        D.      Class Certification and *Daubert*..............................................................4
        E.      Settlement Negotiations ............................................................................5

III.    MATERIAL TERMS OF THE SETTLEMENT AGREEMENT ...........................6
        A.      Proposed Settlement Class .......................................................................6
        B.      Benefit to the Class ..................................................................................6
        C.      Notice ........................................................................................................6
        D.      Limited Release of Class Members' Claims .............................................7
        E.      Terms Regarding Attorneys' Fees and Costs, and Representative's Service
                Award ........................................................................................................8

IV.     THE SETTLEMENT AGREEMENT MERITS PRELIMINARILY APPROVAL .................8
        A.      Plaintiff and His Counsel Have Adequately Represented the Class...........8
                i.      The Class Representative ...............................................................9
                ii.     Class Counsel .................................................................................9
        B.      The Parties Negotiated the Proposed Settlement At Arm's Length ...........10
                i.      Courts Do Not Apply the Collusion Analysis to (b)(2) Settlements ...............10
                ii.     To the Extent the Collusion Analysis Applies, the Negotiations Were
                        At Arm's Length ............................................................................10
        C.      The Quality of Relief to the Class Weighs in Favor of Approval ...............12
                i.      The Settlement Provides Meaningful Injunctive Relief for the Class .............12
                ii.     Continued Litigation Would Entail Substantial Cost, Risk, and Delay...........14
                iii.    The Attorneys' Fees and Service Award Terms Also Support Approval........14
                iv.     The Parties Have No Other Agreements Pertaining to the Settlement .............15
        D.      The Settlement Treats All Class Members Equitably ...................................15

V.      THE COURT SHOULD SET A SCHEDULE FOR FINAL APPROVAL......................16

VI.     CONCLUSION......................................................................................................16

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*In re Bluetooth Headsets Litig.*,
    654 F.3d 935 (9th Cir. 2011) ...................................................... 10

*Campbell v. Facebook, Inc.*,
    2017 WL 3581179 (N.D. Cal. Aug. 18, 2017) ........................... 10, 13

*Chun–Hoon v. McKee Foods Corp.*,
    716 F. Supp. 2d 848 (N.D. Cal. 2010) ........................................ 14

*Haralson v. U.S. Aviation Servs. Corp.*,
    383 F. Supp. 3d 959 (N.D. Cal. 2019) ........................................ 10

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) ....................................................... 15

*Kim v. Space Pencil, Inc.*,
    2012 WL 5948951 (N.D. Cal. Nov. 28, 2012) ............................ 13

*Lilly v. Jamba Juice Co.*,
    2015 WL 2062858 (N.D. Cal. May 4, 2015) .............................. 14

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ..................................................... 14

*Moreno v. San Francisco Bay Area Rapid Transit Dist.*,
    2019 WL 343472 (N.D. Cal. Jan. 28, 2019) .......................... 10, 11

*Nat'l Rural Telecomm's Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ................................................ 12

*In re Omnivision*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...................................... 13

*Pederson v. Airport Terminal Servs.*,
    2018 WL 2138457 (C.D. Cal. April 5, 2018) ............................. 11

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) .................................................. 12, 13

*Stathakos v. Columbia Sportswear Co.*,
    2018 WL 582564 (N.D. Cal. Jan. 25, 2018) ............................. 7, 12

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
    895 F.3d 597 (9th Cir. 2018) ....................................................... 11

ii

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ................................................................................................ 7, 16

*Wannemacher v. Carrington Mortg.*,
    2014 WL 12586117 (C.D. Cal. Dec. 22, 2014) ............................................................ 11

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12 ....................................................................................................... 3, 4

Fed. R. Civ. P. 23 ...................................................................................................... *passim*

MOTION FOR PRELIMINARY APPROVAL AND TO DIRECT NOTICE OF SETTLEMENT
No.  C 18-05982 WHA (JSC)

1    **I.    INTRODUCTION**

2         After a year of intense litigation, and this Court's certification of a class pursuant to Fed. R.

3    Civ. P. 23(b)(2),[1] the parties, with the assistance and under the supervision of Chief Magistrate Judge

4    Joseph C. Spero, have: (i) negotiated a settlement to fully resolve this certified class action; and (ii)

5    finalized a proposed Settlement Agreement setting forth the terms of the settlement.  Plaintiff presents

6    the Settlement Agreement to the Court for preliminary approval of an injunctive relief settlement.

7    Further, though not required under Rule 23(b)(2), the parties seek to provide notice to the class to

8    apprise them of the result and permit an opportunity to object.

9         This action was initiated after Defendant Facebook, Inc. ("Facebook") experienced a data

10   breach and millions of Facebook users' personal information was stolen by attackers. Plaintiff alleges

11   that Facebook's negligence caused the breach in two ways. First, Plaintiff alleges that Facebook failed

12   to address known risks related to coding vulnerabilities and security risks relating to access tokens—

13   essentially, key cards that allow users to access their accounts. Second, Plaintiff alleges that after the

14   attack became visible, Facebook did not timely escalate the suspicious activity seen by "growth"

15   engineers to security personnel. Facebook adamantly denies any negligence or fault in either respect,

16   and strongly maintains that the breach was a result of an unknown and unforeseeable vulnerability and

17   that the company responded quickly to the attack.

18        While Plaintiff believes that the facts and the law ultimately favor his position, the proposed

19   Settlement is posed to deliver meaningful relief without requiring further delay and expense. From the

20   onset of this case, one of Plaintiff's primary goals has been to ensure that Facebook has improved its

21   security practices in response to the attack in order to better protect against future data breaches

22   involving consumers' personal information, and to independently assess Facebook's implementation

23   of those security improvements. Plaintiff has achieved these goals: Facebook has committed to making

24   concrete improvements to its security practices that specifically address risks relevant to the attack,

25   and to undergo annual independent third-party assessments to ensure compliance with these

26

27   _____

28   [1]  *See* ECF No. 260, at 14–16.

1  commitments.  This relief will help to protect not only the four million U.S. class members implicated

2  in this suit, but most of Facebook's estimated 2.38 billion users.[2]

3          In support of this motion, Plaintiff attaches a copy of the parties' Settlement Agreement. *See*

4  Exhibit A; *see also* Exhibit B (Joint Declaration of Class Counsel John A. Yanchunis, Andrew N.

5  Friedman, and Ariana J. Tadler) ("Joint Decl."), at ¶ 15. The Settlement was reached after significant

6  adversarial proceedings, and arm's-length negotiations. Specifically, prior to any settlement

7  negotiations, the parties engaged in extensive discovery and dispositive motion practice—including a

8  motion to dismiss and a successful motion for class certification of an injunctive relief litigation class

9  pursuant to Fed. R. Civ. P. 23(b)(2). The parties reached their agreement in principle during a formal

10  settlement conference before Chief Magistrate Judge Spero, and left the matter of a service award and

11  attorneys' fees, costs, and expenses to the discretion of the Court. As explained below, the significant

12  injunctive relief (which includes a broad range of measures designed to prevent and detect security

13  issues relating to access tokens, and regular assessments of compliance by a third-party vendor

14  acceptable to both parties) provided by the Settlement is an excellent result for the Settlement Class—

15  especially in light of the risks of further litigation—and warrants preliminary approval.

16  **II.**    **HISTORY OF THE LITIGATION**

17       **A.**    **Factual Background**

18          On September 28, 2018 Facebook disclosed a data breach ("Breach") affecting the personal

19  information of an estimated 29 million people. *See* First Amended Consolidated Complaint, ECF No.

20  263, at ¶¶ 6, 93; ECF No. 97 (Declaration of Facebook's Christopher Bream), ¶ 9.  The compromised

21  information included names, birthdates, current cities, hometowns, and other data points. *See* ECF No.

22  263, at ¶ 102; ECF No. 97, at ¶ 11. Attackers exploited vulnerabilities in Facebook's software that

23  allowed them to generate and use highly-permissioned access tokens. ECF No. 263, at ¶ 95; ECF No.

24  97, at ¶ 9. Facebook's access tokens are digital credentials that can be used to query data from a user's

25

26

---

27  [2] *See, e.g.,* Andrew Hutchinson, *Facebook Reaches 2.38 Billion Users, Beats Revenue Estimates in Latest Update*, Social Media Today, (Apr., 24, 2019),

28  https://www.socialmediatoday.com/news/facebook-reaches-238-billion-users-beats-revenue-estimates-in-latest-upda/553403/.

account without reentering their username and password. ECF No. 263, at ¶¶ 95, 97; ECF No. 97, at ¶¶ 10, 17 n.8.

### B.     The Complaints and Rule 12 Motion Practice

After Facebook announced the Breach, several plaintiffs filed suit in this Court. On January 9, 2019, at this Court's request, the parties held a tutorial to educate the Court and the public about the technical issues in this case. Joint Decl., at ¶ 4; *see* ECF Nos. 29, 38, 71. On January 10, 2019, the Court consolidated over a dozen actions, with February 7, 2019 as the date for Plaintiffs to file a Consolidated Amended Complaint ("CAC"). ECF No. 67.[3]

On February 7, 2019, Plaintiff Stephen Adkins, along with four other plaintiffs, filed the CAC. ECF No. 76. The CAC alleged causes of action for breach of express contract, implied contract, implied covenant of good faith and fair dealing, and quasi-contract; negligence and negligence per se; violation of California's Unfair Competition Law ("UCL") and California Consumer Legal Remedies Act ("CLRA"); breach of confidence; and for declaratory judgment. *Id.* On March 14, 2019, Facebook filed a Motion to Dismiss under Rules 12(b)(1) and 12(b)(6). ECF No. 96. In the interim, several plaintiffs voluntarily dismissed their case, leaving Plaintiff Stephen Adkins and Plaintiff William Bass as the proposed class representatives. ECF Nos. 87–94. On June 21, 2019, the Court granted Facebook's Motion to Dismiss in part, and denied it in part, with leave to amend. ECF No. 153. Among other things, the Court found that Plaintiff Adkins experienced an injury in fact (and thus standing) through plausible allegations of the increased risk of future identity theft and his loss of time, ECF No. 153, at 9–12, and denied Facebook's Motion to Dismiss Plaintiff's claims for negligence and declaratory judgment. *Id.* at 16–17, 19.

On July 18, 2019, pursuant to the June 21 Order, Plaintiff Adkins moved to amend and file a First Amended Consolidated Complaint ("FACC") to replead some of the claims rejected by the Court. ECF No. 160. On August 9, 2019, the Court granted in part and denied in part Plaintiff's Motion to

---

[3] Although the Court had yet to appoint interim lead counsel, the lawyers whom the Court ultimately appointed to serve in this capacity on behalf of the plaintiffs, Ariana J. Tadler, John A. Yanchunis, and Andrew N. Friedman led the charge in the Tutorial and in drafting and filing the CAC. Specifically, Mr. Yanchunis, Ms. Tadler, and Mr. Friedman (as well as lawyers from their respective firms) worked with experts Mary Frantz and Matt Strebe to present the Tutorial to the Court. Joint Decl., at ¶ 4; *see* ECF No. 71.

1    Amend and file the FACC, again permitting the negligence and declaratory relief claims to go forward.

2    ECF Nos. 185, 263.

3           **C.**    **Discovery**

4          During and after the Rule 12 motion practice the parties engaged in extensive discovery

5    pursuant to a rigorous schedule with trial scheduled for May 2020. To prepare class members' claims

6    for certification and trial, Plaintiff engaged in an independent investigation; negotiated with Facebook

7    as to the early production of certain core documents; and served 90 requests for production and four

8    interrogatories. Joint Decl., at ¶ 5. Moreover, Plaintiff's counsel reviewed tens of thousands of

9    documents (totaling over 139,000 pages) and took 16 depositions of current and former Facebook

10   employees, as well as two expert depositions. *Id*. Plaintiff's counsel also retained four experts to assist

11   with establishing liability and damages, whose efforts culminated in four declarations, three expert

12   reports and four depositions. *Id.*  Both sides actively pursued discovery and brought disputes to the

13   Magistrate Judge when necessary. *Id.* at ¶ 7; ECF Nos. 151, 170, 178.

14         Plaintiff developed a robust record of Facebook's practices before, leading up to, and following

15   the Breach. Joint Decl., at ¶ 8. Plaintiff used this information to assert in his class certification motion

16   that Facebook employees failed to correct coding vulnerabilities and security risks, and did not react

17   quickly enough once the attack became visible. ECF No. 268.

18         **D.**    **Class Certification and *Daubert***

19         Between August 29, 2019 and October 10, 2019, Plaintiff fully briefed Plaintiff's motion for

20   class certification pursuant to Rules 23(b)(3) (seeking a damages class for lost PII value and credit

21   monitoring); issue certification under 23(c)(4) (regarding common liability issues); and 23(b)(2)

22   (regarding injunctive relief on a host of Facebook's security procedures and authentication

23   infrastructure). Joint Decl., at ¶9; ECF No. 268. Facebook responded by opposing all class

24   certification, disputing Plaintiff's factual assertions, and revisiting its argument that Mr. Adkins lacked

25   Article III standing, and moving to strike two damage experts (Jim Van Dyke and Ian Ratner), but not

26   security expert, Mary Frantz. *Id.*; ECF Nos. 213-214, 242, 262, 264-267.[4] Due to the sensitive and

27   ───────────────

28   [4] Ms. Frantz is the Founder and Managing Partner of Enterprise Knowledge Partners, LLC which specializes in eDiscovery, Forensics, Cyber Security and Enterprise Architecture. A description of her qualifications can be found at ECF No. 268-2 at ¶¶ 8-13.

private nature of much of the evidence submitted in the class certification briefing, Plaintiff filed accompanying administrative motions to seal portions of the record. On November 6, 2019, the Court held oral arguments on class certification and the *Daubert* motions. ECF No. 253.  On November 26, 2019 this Court granted Facebook's motion to exclude Plaintiff's expert Jim Van Dyke, denied the motion to exclude Ian Ratner, and certified an injunctive relief only class pursuant to Fed. R. Civ. P. 23(b)(2). Joint Decl., at ¶ 10; ECF No. 260. On December 19, 2019, the parties filed a joint motion to modify the November 26 Order to narrow the certified class to US users only and alter the notice requirement to remove the requirement of first-class mail notification. ECF No. 270. On January 6, 2020, the Court granted the parties' motion. Joint Decl., at ¶ 10; ECF No. 271.

   **E.**  **Settlement Negotiations**

   On March 18, 2019, in compliance with this Court's rule, ECF No. 26, governing settlement prior to class certification, an initial mediation session was scheduled by the Court with Chief Magistrate Judge Spero for December 11, 2019. ECF No. 100. The December date was adjourned to January 8, 2020 to accommodate the Court's and the parties' respective schedules. ECF No. 258. With a class certified, and trial scheduled to begin on May 18, 2020, ECF No. 69, the parties engaged in preliminary settlement discussions, with Plaintiff sending a proposed term sheet. Joint Decl., at ¶ 11. After submitting to Chief Magistrate Judge Spero and exchanging mediation papers, the parties attended a settlement conference in San Francisco on January 8, 2020. *Id.* at ¶ 12. Mediated by Chief Magistrate Judge Spero, the parties discussed potential security commitments Facebook could make as part of a settlement of the case. *Id.* Based on these discussions, and with the assistance of Plaintiff's expert Mary Frantz, Plaintiff negotiated a set of security commitments that comprehensively address the security risks exposed in the Breach and provide strong protection against the risk of any similar attack in the future. *Id.* at ¶ 13. On January 17, 2020, the parties filed a joint motion for a continuance, ECF No. 276, in light of reaching an agreement in principle, with a detailed term sheet approved by the parties and signed by counsel. *Id.* at ¶ 14. Fact depositions continued in California and London while settlement discussions continued consistent with the Court's scheduling order. *Id.* The formal Settlement Agreement, now before the Court, is the result of extensive arm's length negotiations,

1  expert input, and cooperative efforts to finalize the terms, develop a notice plan, and prepare and

2  finalize the exhibits and this motion. *Id.* at ¶ 15; *see* Exhibit A.

3  ## III.   MATERIAL TERMS OF THE SETTLEMENT AGREEMENT

4  ### A.   Proposed Settlement Class

5  As noted in the Settlement Agreement, the proposed settlement class is comprised of "All

6  current Facebook users residing in the United States whose personal information was compromised in

7  the data breach announced by Facebook on September 28, 2018." ECF No. 271, at 1; *see* Exhibit A

8  § 1.24.

9  ### B.   Benefit to the Class

10  Under the Settlement Agreement, Facebook will certify that the vulnerability exploited in the

11  attack at issue has been eliminated, that it is no longer possible to generate access tokens in the

12  manner that was done in the attack, and that all access tokens generated through the vulnerability

13  have been invalidated.  Further, the Settlement Agreement requires Facebook to adopt, implement,

14  and/or maintain a detailed set of security commitments, which are laid out in Exhibit A-1 to the

15  Settlement Agreement. These include, inter alia, increased checks of user activity designed to detect

16  access token compromise, additional monitoring for suspicious patterns of user activity involving

17  access tokens, and improved logging to facilitate investigation of suspicious activity involving

18  access tokens. These commitments are designed to prevent any similar attacks in the future.

19  Facebook's compliance with the Security Commitments in the Settlement Agreement will be

20  assessed annually by an independent third-party vendor for 5 years, the results of which will be

21  provided to Class Counsel and a third-party expert to verify Facebook's compliance with the foregoing

22  terms. Exhibit A § 2.3.  A material term of the Settlement Agreement is that in the event that

23  technological or industry developments, or intervening changes in law, render any of the provisions

24  in the Agreement obsolete or make compliance unreasonable or technically impractical, Facebook will

25  notify Class Counsel. Exhibit A § 2.5. The parties will then either jointly petition the Court to eliminate

26  or modify such provision or, if the parties fail to reach an agreement, Facebook may petition the Court

27  and Class Counsel may offer its opposition. *Id.*

28  ### C.   Notice

Because this proposed Class Settlement would be certified under Rule 23(b)(2) (and not Rule 23(b)(3)), the parties *are not required* to provide the right to "opt out" to class members, nor are the parties required to provide notice. *See Stathakos v. Columbia Sportswear Co*., No. 4:15-CV-04543-YGR, 2018 WL 582564, at *3 (N.D. Cal. Jan. 25, 2018) ("In injunctive relief only class actions certified under Rule 23(b)(2), federal courts across the country have uniformly held that notice is not required.") (collecting cases); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011) (Rule 23 "provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action."). Nevertheless, notice may alert any potential claimants impacted by the September 2018 Breach that this proposed settlement will not resolve any damages claims. Notice also provides any potential objector an opportunity to address the Court regarding the proposed settlement. Thus, as per this Court's January 6, 2020 Order, ECF No. 271, the parties have included a proposed notice plan in their Settlement Agreement. The parties have selected Angeion Group as the Notice Administrator. Joint Decl., at ¶ 16; Exhibit A-3 (Declaration of Steven Weisbrot, notice administrator and accompanying notice plan). The class notice program includes the following methods of notification:

1. Electronic mail campaigns (using the email addresses that Facebook has for substantially most of the certified class members);
2. Reverse phone look-ups which allow identification of electronic mail addresses for the relatively small number of users who did not input into Facebook their electronic mail address;
3. A dedicated website;
4. Social media campaigns including Google and Facebook;
5. Internet banner advertisements; and
6. Traditional media campaigns to achieve broad and effective notice.

*Id.* The email notice will be staggered and sent in waves to avoid "volume triggers" on spam filters that might otherwise stop class members from getting notice. Weisbrot Decl. at ¶ 15 (explaining the need for 45 days to disseminate email notice).

### D. Limited Release of Class Members' Claims

7

Class members will ***only*** release claims for injunctive relief and declaratory relief against Facebook. Exhibit A §§ 8.1–8.2. Plaintiff Adkins will additionally release all claims for monetary damages against Facebook. *Id.* § 8.3. However, the Settlement Agreement does not release Facebook or any other party from any individual claims for damages that have been or may be brought on behalf of individuals other than attorneys' fees, costs, and expenses (for achieving injunctive relief) and Plaintiff Adkins's service award. *Id.*

**E.**    **Terms Regarding Attorneys' Fees and Costs, and Representative's Service Award**

Facebook agrees to pay a reasonable service award to Plaintiff Adkins as the Class Representative, which Class Counsel recommends be $5,000. *Id.* § 6.1. The Settlement Agreement does not expressly specify an amount for attorneys' fees and costs, leaving both at the sound discretion of this Court. *See id* § 7.  Facebook may object to the reasonableness of the requested attorneys' fees, costs and expenses—there is no "clear sailing" agreement. *Id.* § 7.2.

**IV.    THE SETTLEMENT AGREEMENT MERITS PRELIMINARILY APPROVAL**

A court will direct notice of a proposed settlement to class members only if it: (i) approves the proposal under Rule 23(e)(2); and (ii) certifies the class for purposes of judgment on the proposal. Fed. R. Civ. P. 23(e)(1)(B). Here, the Court has already certified a 23(b)(2) class. ECF Nos. 260, 271. Thus, the only outstanding question is whether the proposed Settlement Agreement merits approval under Rule 23(e)(2), which provides a checklist of factors to consider when assessing whether a proposed settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2).[5] As detailed below, the Rule 23(e)(2) factors weigh in favor of approving the settlement.

**A.    Plaintiff and His Counsel Have Adequately Represented the Class**

---

[5] "The central concern in reviewing a proposed class-action settlement is that it be fair, reasonable, and adequate. Courts have generated lists of factors to shed light on this concern. Overall, these factors focus on comparable considerations, but each circuit has developed its own vocabulary for expressing these concerns. In some circuits, these lists have remained essentially unchanged for thirty or forty years. **The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.**" *Advisory Committee Notes on Rules – 2018 Amendment, Subdivision (e)(2).* (Emphasis added.)

Under Rule 23(e)(2)(A), the first factor to be considered is the adequacy of representation by the class representatives and attorneys. This analysis includes "the nature and amount of discovery" undertaken in the litigation. Fed. R. Civ. P. 23(e)(2)(A), Advisory Committee's Notes.

### i. The Class Representative

Plaintiff Adkins has adequately represented the class. In the last year, Mr. Adkins responded to extensive discovery: he has answered 24 interrogatories, 56 requests for production, and 63 requests for admission. Joint Decl., at ¶ 6. He has also had his deposition taken twice and prepared extensively with Plaintiff's counsel both times. *Id.* Moreover, Mr. Adkins has produced a total of 7,142 pages of documents, which involved collecting records from third parties and considerable follow up. *Id.* Finally, Mr. Adkins attended the January 8, 2020 mediation. *Id.*

### ii. Class Counsel

Class Counsel have also adequately represented the class. Before the case was even consolidated, Class Counsel independently investigated the facts and law, coordinated with other plaintiffs' counsel who had filed complaints, and retained experts well in advance of and to conduct the January 9, 2019 Tutorial for the Court, to elucidate, from the onset, the technical aspects at issue in this case. Joint Decl., at ¶ 4. Class Counsel, with the assistance of other Plaintiffs' counsel, went on to vigorously prosecute this case, briefing a motion to dismiss, two discovery motions, class certification, and two *Daubert* motions—and in the end, successfully obtained certification of a Rule 23(b)(2) class. *Id.* at ¶¶ 4, 7–10; ECF Nos. 96, 108, 113, 122, 135, 153, 160, 173, 180, 185 (motion to dismiss and motion to amend briefing and Orders); 151, 155, 170, 178 (discovery dispute briefing and hearings); 213, 214, 231, 242, 260, 262, 264-268, (class certification and *Daubert* briefings, and Order). Given the sensitive nature of certain information addressed in the various motions, most motions were subject to motions to seal. Class Counsel engaged in extensive discovery, taking a total of 18 depositions (16 fact-based and 2 expert-based), and reviewing more than 139,000 of pages of documents. Joint Decl., at ¶ 5. Class Counsel engaged the services of four experts who wrote a total of four declarations and three expert reports. *Id.* As part of these efforts, Class Counsel have advanced hundreds of thousands of dollars in litigation expenses on behalf of the class, with no assurance that those expenses would be reimbursed. *Id.*

1    Class Counsel's efforts with respect to defensive discovery were not limited to the current class

2    representative. Starting in January 2019, Plaintiffs served initial disclosures for twenty plaintiffs based

3    on the Case Management Order entered in the case. *See* ECF No. 67. Five of these plaintiffs were

4    included in the CAC. *See* ECF No. 76. Before the Motion to Dismiss was decided, Class Counsel

5    coordinated responses to 41 requests for production and 4 interrogatories for the five named plaintiffs.[6]

6    ### B.    The Parties Negotiated the Proposed Settlement At Arm's Length

7    The second Rule 23(e)(2) factor asks the Court to confirm that the proposed settlement was

8    negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B). As with the preceding factor, this can be

9    "described as [a] 'procedural' concern[], looking to the conduct of the litigation and of the negotiations

10   leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2)(A) and (B) Advisory Committee's

11   Notes. Courts typically scrutinize the negotiated settlement "not only for explicit collusion, but also

12   for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of

13   certain class members to infect the negotiations." *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp.

14   3d 959, 966 (N.D. Cal. 2019) (quoting *In re Bluetooth Headsets Litig.*, 654 F.3d 935, 946–47 (9th Cir.

15   2011)).

16   ### i.    Courts Do Not Apply the Collusion Analysis to (b)(2) Settlements

17   Where, as here, the settlement is for injunctive relief purposes only and class members do not

18   release any monetary claims, the collusion analysis does not apply. *Moreno v. San Francisco Bay Area*

19   *Rapid Transit Dist.,* No. 17-CV-02911-JSC, 2019 WL 343472, at *3 n.2 (N.D. Cal. Jan. 28, 2019);

20   *see also Campbell v. Facebook, Inc.*, No. 13-CV-05996-PJH, 2017 WL 3581179 at *5 (N.D. Cal. Aug.

21   18,   2017)   ("Arguably,   [the]   *Bluetooth*   [collusion   analysis] is   not   even   applicable   to

22   this settlement because it does not involve a Rule 23(b)(3) damages class" because "there is no

23   common fund, 'constructive' or otherwise: the certified class is injunctive-relief-only, and monetary

24   damages claims are not at issue").

25   ### ii.   To the Extent the Collusion Analysis Applies, the Negotiations Were
     ###        At Arm's Length

26

27   ---
     [6] Aside from Mr. Adkins, four other plaintiffs were deposed and produced voluminous documents in
28   advance: plaintiff Bass produced 1,464 pages of documents; and plaintiff Brown-Wells produced 222
     pages of documents. Dr. Schmidt was not deposed but produced 1,179 pages of documents.

To the extent scrutiny is applied to this type of injunctive relief settlement, the Court can be confident of the arm's length nature of the negotiation process.

First, extensive discovery and motion practice are indicia of an arm's length process. *Wannemacher v. Carrington Mortg.*, No. 12-cv-2016, 2014 WL 12586117, at *8 (C.D. Cal. Dec. 22, 2014) (finding no signs of collusion where "significant … discovery [was] conducted"; "plaintiffs had already drafted a class certification brief"; and before "exploring settlement, the parties litigated the case for a year"); *see also Moreno*, 2019 WL 343472, at *5 (that the parties engaged in substantial motion practice and thus have had an opportunity to evaluate the strength and weaknesses of the relative claims and defenses weighs in favor of settlement approval). Settlement agreements that occur after class certification are also less likely to involve collusion. *Contra In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895 F.3d 597, 610–11 (9th Cir. 2018) (where the settlement is negotiated prior to class certification, there is a greater chance of breach of fiduciary duty by class counsel and thus the district court should undertake an additional search for signs of collusion). Here, per the Court's standing rules, the parties did not begin negotiations until *after* the Court certified a litigation class and they well understood the strengths and weaknesses of their respective positions. Joint Decl., at ¶ 11. Indeed, by the time the parties reached agreement, they had engaged in significant pretrial motion practice, conducted extensive discovery, worked with experts, and certified a litigation class under Rule 23(b)(2). The parties were preparing for a trial scheduled to begin on May 18, 2020. *Id.*; *see* ECF No. 69.[7]

Second, "[t]he involvement of a neutral or court-affiliated mediator or facilitator in [the parties'] negotiations may bear on whether they were conducted in a manner that would protect and further the class interests." Rule 23(e)(2)(B) Advisory Committee's Note; *accord Pederson v. Airport Terminal Servs.*, No. 15-cv-02400, 2018 WL 2138457, at *7 (C.D. Cal. April 5, 2018) (the oversight "of an experienced mediator" reflected non-collusive negotiations). Here, the parties conducted mediation under Chief Magistrate Judge Spero's guidance and supervision on January 8, 2020 and

---

[7] Indeed, in January 2020, per the Court's Order (ECF No. 67) the parties identified the experts anticipated for trial and Plaintiff served on Facebook three expert reports. Joint Decl. at ¶ 5.

MOTION FOR PRELIMINARY APPROVAL AND TO DIRECT NOTICE OF SETTLEMENT
No. C 18-05982 WHA (JSC)

were able to reach an understanding on the contours of an agreement, which was later finalized in a term sheet on January 17, 2020. Joint Decl., at ¶¶ 12, 14.

Finally, none of the potential warning signs of collusion are present. The Settlement Agreement states only that Class Counsel will file a motion for an award of attorneys' fees, costs and expenses, which Facebook may oppose. There is no "clear sailing" arrangement whereby Facebook has agreed not to contest the fee motion. *See* Exhibit A § 7.2.  Nor is there a settlement fund from which unawarded money will revert to Facebook. *See generally* Exhibit A.

### C.      The Quality of Relief to the Class Weighs in Favor of Approval

Next, courts must consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). Under this factor, the relief "to class members is a central concern." Fed. R. Civ. P. 23(e)(2)(C), Advisory Committee's Notes.

### i.      The Settlement Provides Meaningful Injunctive Relief for the Class

There is no "particular formula by which th[e] outcome must be tested." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Rather, the Court's assessment of the likelihood of success is "nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Id.* at 965 (internal quotation marks and citation omitted). Factors considered include "the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to a present value." *Id.* "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomm's Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quotation marks and citation omitted).

Courts routinely approve settlements for injunctive relief only. *kos*, 2018 WL 582564, at *4 (N.D. Cal. Jan. 25, 2018) (collecting cases granting final approval in injunctive relief only settlements). At least one court in this District has approved a settlement for injunctive relief where "[t]hrough the work of class counsel, the class has obtained essentially all of

declaratory and injunctive relief that they sought" even though "much of the relief obtained for the class was the result of [defendant's] changes in business practice in response to the litigation, rather than a result of the Settlement Agreement per se." *Campbell*, 2017 WL 3581179, at *4. Yet another court approved a settlement which "stop[ped] the allegedly unlawful practices, bar[red] Defendant from similar practices in the future, and d[id] not prevent the class members from seeking legal recourse." *Kim v. Space Pencil, Inc.*, No. C. 11-03796 LB, 2012 WL 5948951, at *6 (N.D. Cal. Nov. 28, 2012).

Here, the Settlement merits approval because Facebook has agreed to meaningful injunctive relief, including a broad range of sophisticated and detailed measures designed to prevent and detect security issues relating to access tokens, and regular assessments of compliance by an independent third party for 5 years, *inter alia*, all subject to confirmation by this Court and Class Counsel. Exhibit A at § 2.3. Without a doubt, Plaintiff's litigation helped prompt Facebook to improve its security practices meaningfully and expeditiously. Joint Decl., at ¶ 19; *see Campbell*, 2017 WL 3581179, at *4. Furthermore, although class members do not receive monetary relief as a result of the settlement, they remain free to bring individual damages claims. *See* Exhibit A at § 8.1; *see Kim*, 2012 WL 5948951, at *6. Thus, the Class will receive substantial injunctive relief without releasing any claims for damages.

Additionally, Courts in this Circuit have recognized that Class Counsel's endorsement weighs in favor of approving the settlement. *See, e.g., In re Omnivision*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.") (internal quotation marks and citations omitted); *Rodriguez*, 563 F.3d at 967 ("[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation[.]") (internal quotation marks and citations omitted). This is especially true where, as here, there is no indicia of collusion. *See* Section IV.B, *infra.* Class Counsel have significant experience in litigating some of the most significant data breach class actions to date, successfully resolving many of those in this District, and have brought that experience and knowledge to bear on behalf of the Class. Joint Decl., at ¶ 20; Exhibit

C (resumes of appointed class counsel). Class Counsel have also demonstrated that they are well informed of the facts, claims, and defenses in this action, as well as the risks of proceeding to trial.

### ii.         Continued Litigation Would Entail Substantial Cost, Risk, and Delay

Almost all class actions involve high levels of cost, risk, and lengthy duration, which supports the Ninth Circuit's "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998). Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case and risk losing relief. *Chun–Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010); *see also Lilly v. Jamba Juice Co.*, No. 13-CV-02998-JST, 2015 WL 2062858, at *3-4 (N.D. Cal. May 4, 2015) (approval warranted because without a settlement, Plaintiffs would face further litigation that would not be certain to result in injunctive relief).

Here, had the parties not settled, the litigation would have been risky, protracted, and costly—especially in light of the time and labor required to prepare for trial, set to begin on May 18, 2020. Plaintiff acknowledges that the case faced significant challenges. The Court had previously dismissed prior plaintiffs and all but two of Plaintiff's claims (negligence and declaratory relief). ECF Nos. 153, 185. The Court then declined to certify a Rule 23(b)(3) class, holding that neither the cost of a credit monitoring service nor the diminished value of PII stolen in the Breach represents a cognizable injury in a negligence claim. ECF No. 260, at 10–13. Facebook would likely have sought summary judgment on Mr. Adkins' claims.

Given the uncertainty of the recovery of injunctive relief at trial, this factor weighs in favor of approval.

### iii.         The Attorneys' Fees and Service Award Terms Also Support Approval

As discussed in Section III.E, *supra*, Class Counsel may seek a Service Award for the Settlement Class Representative not to exceed $5,000, but, of course, the decision to award any such Service Award—and the amount thereof—is at the discretion of the Court. The Settlement Agreement does not include a "clear sailing" provision, but states only that Class Counsel may file a motion for an award of attorneys' fees, costs, and expenses. Exhibit A at § 7.2. As of December 31, 2019, Class Counsel and those firms assisting class counsel have accrued a lodestar of approximately $7.3 million

14

(at historical rates). Joint Decl., at ¶ 17. That number will increase due to time spent litigating and settling the case in January and February, 2020. *Id.* Further, Class Counsel's lodestar will increase while securing final approval of settlement and then monitoring settlement compliance for up to five years. *Id.*, *see* also Exhibit A at § 2.2. Class Counsel will be seeking a lodestar multiplier but will request the Court for a fee of no more than $16 million. Class Counsel will also be seeking no more than $1.7 million in expenses (which includes expert's costs). *Id.*

Facebook is aware of, but has not agreed to, these requests. *Id.* at ¶ 18. Under the Settlement Agreement, Facebook may object to the reasonableness of those requested fees, costs and expenses. Exhibit A at § 7. Since there is no agreement on fees and expenses, and these amounts are left to the Court's discretion, the Agreement is not suggestive of collusion between the parties. *In re Hyundai & Kia Fuel Econ. Litig.,* 926 F.3d 539, 569 (9th Cir. 2019) (noting the absence of a clear sailing or kicker clause, and ability of defendant to litigate a reduction in fees contradicted any indicia of collusion).

### iv.      The Parties Have No Other Agreements Pertaining to the Settlement

The Court also must evaluate any agreement made in connection with the proposed settlement. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3). Here, the Settlement Agreement before the Court is the only existing agreement.

### D.      The Settlement Treats All Class Members Equitably

The final Rule 23(e)(2) factor turns on whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D), Advisory Committee's Notes.

Here, the Settlement treats all class members the same. It provides only for a request of $5,000 as a service award for Mr. Adkins (who produced thousands of pages of documents, sat for two depositions, and took time off from work to attend the mediation). Exhibit A § 6.1. Mr. Adkins also fully releases any potential damages claims. *Id.* § 8.3. Otherwise, the Settlement does not provide preferential treatment to any individual class member. As discussed above, the Settlement provides

15

1  uniform injunctive relief that applies equally to every Class Member such that each class member will

2  receive identical benefits—concrete and significant improvement of Facebook's security practices,

3  subject to third-party oversight, that will in turn protect class members' PII. In fact, the benefits of

4  increased cybersecurity will inure to the benefit of all of Facebook's billions of users.

5  **V.    THE COURT SHOULD SET A SCHEDULE FOR FINAL APPROVAL**

6          Once the Court directs notice of the settlement to the class, the next steps in the settlement

7  approval process are to schedule a final approval hearing, allow time for notice to be sent to the class.

8  Since the class has been certified under Rule 23(b)(2), there is no right to opt out. *Dukes*, 564 U.S. at

9  362. In light of this, Plaintiff proposes the following schedule:

| | |
|---|---|
| Deadline for disseminating class notice by Notice Administrator | Not later than 45 days following preliminary approval ("Notice Date") |
| Deadline for disseminating class notice by Defendant, pursuant to CAFA: | Within 10 days of filing motion for preliminary approval (February 17, 2020) |
| Deadline to object to the Settlement ("Objection Deadline"): | 60 days after the "Notice Date" |
| Deadline for filing Motion for Final Approval: | No more than 40 days after the Notice Date |
| Deadline for filing any motion for a service award and/or attorneys' fees, costs, and expenses: | No more than 40 days after the Notice Date |
| Deadline for filing of affidavit attesting that notice was disseminated as ordered: | At least 15 days before the Final Approval Hearing |
| Replies in Support of Final Approval and Fee Application: | No later than 20 days after the Objection Deadline |
| Final Approval hearing: | To be set by Court, but no earlier than 146 days from the date of Preliminary Approval |

**VI.    CONCLUSION**

        For the foregoing reasons, Plaintiff respectfully requests that the Court enter the accompanying

proposed order directing notice of the proposed settlement to the class and setting a hearing for the

purpose of deciding whether to grant final approval of the settlement.

16

1  DATED: February 7, 2020                    Respectfully submitted,

2                                             By: /s/ Andrew N. Friedman

3                                             Andrew N. Friedman (*pro hac vice*)
                                              **COHEN MILSTEIN SELLERS & TOLL PLLC**
4                                             1100 New York Ave. NW, Fifth Floor
                                              Washington, DC 20005
5                                             Telephone: (202) 408-4600
                                              Facsimile: (202) 408-4699
6                                             afriedman@cohenmilstein.com

7
                                              John A. Yanchunis (*pro hac vice*)
8                                             jyanchunis@forthepeople.com
                                              **MORGAN & MORGAN**
9                                             **COMPLEX LITIGATION GROUP**
                                              201 N. Franklin St., 7th Floor
10                                            Tampa, FL 33602
                                              Telephone: (813) 223-5505
11                                            Facsimile: (813) 2223-5402

12
                                              Ariana J. Tadler (*pro hac vice*)
13                                            atadler@tadlerlaw.com
                                              **TADLER LAW LLP**
14                                            36th Floor
                                              One Penn Plaza
15                                            New York, NY  10119
                                              Telephone: (212) 946-9453
16                                            Facsimile: (212) 273-4375

17
                                              *Appointed Class Counsel*
18

19

20

21

22

23

24

25

26

27

28

MOTION FOR PRELIMINARY APPROVAL AND TO DIRECT NOTICE OF SETTLEMENT
No.  C 18-05982 WHA (JSC)