Andrew N. Friedman (*pro hac vice*)
afriedman@cohenmilstein.com
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

Ariana J. Tadler (*pro hac vice*)
atadler@tadlerlaw.com
**TADLER LAW LLP**
One Penn Plaza
36th Floor
New York, NY  10119
Telephone: (212) 946-9453

*Appointed Class Counsel*

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
**MORGAN & MORGAN
COMPLEX LITIGATION GROUP**
201 N. Franklin St., 7th Floor
Tampa, FL  33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402

## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| STEPHEN ADKINS, an individual and Michigan resident, on behalf of himself and all others similarly situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>FACEBOOK, INC.,<br><br>     Defendant. | No.  C 18-05982 WHA (JSC)<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT**<br><br>Date: April 8, 2021<br>Time: 11:00 am<br>Courtroom: 12, 19th Floor<br>Hon. William Alsup |

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE THAT on April 8, 2020, at 11:00 a.m., or on a date selected by the Court, Plaintiff will and hereby does respectfully move the Court, in the courtroom of the Honorable William Alsup, Courtroom 12, 19th Floor of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, for a final order approving the proposed class action settlement.

This motion is based on the notice of motion and motion for final approval of settlement, the following memorandum of points and authorities, the attached declarations and exhibits, the arguments of counsel, and any other matters in the record or that properly come before the Court.

Dated: February 1, 2021

*/s/ Andrew N. Friedman*
Andrew N. Friedman (*pro hac vice*)
afriedman@cohenmilstein.com
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin St., 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402

Ariana J. Tadler (*pro hac vice*)
atadler@tadlerlaw.com
**TADLER LAW LLP**
One Penn Plaza
36th Floor
New York, NY 10119
Telephone: (212) 946-9453

*Appointed Class Counsel*

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ..................................................................................1

I.      INTRODUCTION ......................................................................................................1

II.     HISTORY OF THE LITIGATION ...........................................................................3
        A.      Factual Background ......................................................................................3
        B.      The Complaints and Rule 12 Motion Practice ............................................3
        C.      Discovery .....................................................................................................4
        D.      Class Certification and *Daubert*..................................................................5
        E.      Settlement Negotiations ...............................................................................6

III.    MATERIAL TERMS OF THE SETTLEMENT AGREEMENT ............................7
        A.      Proposed Settlement Class ...........................................................................7
        B.      Benefit to the Class ......................................................................................8
        C.      Limited Release of Class Members' Claims ...............................................9
        D.      Terms Regarding Attorneys' Fees and Costs, and Class Representative's
                Service Award ..............................................................................................9

IV.     THE SETTLEMENT AGREEMENT MERITS FINAL APPROVAL....................10
        A.      Plaintiff and His Counsel Have Adequately Represented the Class............10
                i.      The Class Representative ..................................................................11
                ii.     Class Counsel ...................................................................................11
        B.      The Parties Negotiated the Proposed Settlement at Arm's Length.............12
                i.      Courts Do Not Apply the Collusion Analysis to (b)(2) Settlements ...13
                ii.     To the Extent the Collusion Analysis Applies, the Negotiations Were at
                        Arm's Length ....................................................................................13
        C.      The Quality of Relief to the Class Weighs in Favor of Approval ...............15
                i.      The Settlement Provides Meaningful Injunctive Relief for the Class ...15
                ii.     Continued Litigation Would Entail Substantial Cost, Risk, and Delay...........17
                iii.    The Parties Have No Other Agreements Pertaining to the Settlement ...........18
        D.      The Settlement Treats All Class Members Equitably...................................18

V.      CONCLUSION.........................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ang v. Bimbo Bakeries USA, Inc.*,
   Case No. 13-cv-01196-HSG, 2020 WL 5798152 (N.D. Cal. Sept. 29, 2020) ............................... 15

*In re Bluetooth Headsets Litig.*,
   654 F.3d 935 (9th Cir. 2011) ................................................................................................. 12, 13

*Campbell v. Facebook, Inc.*,
   Case No. 13-CV-05996-PJH, 2017 WL 3581179 (N.D. Cal. Aug. 18, 2017).................. 13, 15, 16

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*,
   Case No. 07-cv-05944-JST*, WL 1873554 (N.D. Cal. Mar. 11, 2020) .................................. 10, 18

*Chun–Hoon v. McKee Foods Corp.*,
   716 F. Supp. 2d 848 (N.D. Cal. 2010) ......................................................................................... 18

*Goldkorn v. Cty. of San Bernardino*,
   Case No. EDCV 06–707–VAP, 2012 WL 476279 (C.D. Cal. Feb. 13, 2012) .............................. 15

*Haralson v. U.S. Aviation Servs. Corp.*,
   383 F. Supp. 3d 959 (N.D. Cal. 2019) ........................................................................................ 12

*Kim v. Space Pencil, Inc.*,
   Case No. C 11–03796 LB, 2012 WL 5948951 (N.D. Cal. Nov. 28, 2012) ...................... 15, 16, 17

*In re Lifelock, Inc. Mktg. & Sales Practices Litig.*,
   MDL Docket No. 08–1977–MHM, 2010 WL 3715138 (D. Ariz. Aug. 31, 2010) ...................... 15

*Lilly v. Jamba Juice Co.*,
   Case No. 13–cv–02998–JST, 2015 WL 2062858 (N.D. Cal. May 4, 2015) ........................... 15, 8

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ..................................................................................................... 17

*Littlejohn v. Copland*,
   819 F. App'x 491 (9th Cir. 2020) ........................................................................................... 16, 17

*Moreno v. San Francisco Bay Area Rapid Transit Dist.*,
   Case No. 17-CV-02911-JSC, 2019 WL 343472 (N.D. Cal. Jan. 28, 2019) .................................. 13

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950)...................................................................................................................... 19

*Nat'l Rural Telecomm's Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ................................................................................................. 15

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...................................................................... 17

*Pederson v. Airport Terminal Servs.*,
  Case No. 15-cv-02400, 2018 WL 2138457 (C.D. Cal. April 5, 2018) .......................... 14

*Rannis v. Recchia*,
  380 Fed.Appx. 646 (9th Cir. 2010) ............................................................................. 20

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ............................................................................... 15, 17

*Romero v. Securus Techs.*,
  Case No. 16-cv-1283 JM (MDD),2020 WL 6799401 (S.D. Cal. Nov. 19, 2020) .......... 15

*Silber v. Mabon*,
  18 F.3d 1449 (9th Cir. 1994) ............................................................................... 19, 20

*Stathakos v. Columbia Sportswear Co.*,
  Case No. 4:15-cv-04543-YGR, 2018 WL 582564 (N.D. Cal. Jan. 25, 2018) .......... 15, 19

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
  895 F.3d 597 (9th Cir. 2018) ..................................................................................... 13

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) .................................................................................................. 19

*Wannemacher v. Carrington Mortg.*,
  Case No. 12-cv-2016, 2014 WL 12586117 (C.D. Cal. Dec. 22, 2014) ........................ 13

**STATUTES**

Class Action Fairness Act of 2005, 28 U.S.C. §§ 1711-15 ............................................... 20

**RULES**

Fed. R. Civ. P. 23(a)(4) .................................................................................................. 10

Fed. R. Civ. P. 23(b)(2) ......................................................................................... *passim*

Fed. R. Civ. P. 23(c)(2) ........................................................................................... 19, 20

Fed. R. Civ. P. 23(e)(1) ........................................................................................... 10, 20

Fed. R. Civ. P. 23(e)(2) ....................................................................... 10, 12, 14, 15, 18

Fed. R. Civ. P. 23(e)(3) ........................................................................................... 15, 18

Fed. R. Civ. P. 23, advisory committee's note to 2018 amendment ........................... 10, 12, 14, 15, 18

## I.   INTRODUCTION

Plaintiff Stephen Adkins and Defendant Facebook, Inc. (the "Parties") first presented this proposed injunctive relief settlement to the Court on March 26, 2020. Because the Court had already certified a class under Rule 23(b)(2), the Parties only sought preliminary settlement approval of a settlement class under Rule 23(b)(2) and, though not required under Rule 23(b)(2), to provide notice to the class to apprise them of the result and permit an opportunity to object.  The Court granted preliminary approval and directed notice to the nationwide settlement class. With that notice having been disseminated, the Parties now formally request that the Court grant final approval of their settlement.  Importantly, this settlement only seeks approval of injunctive and declaratory relief and ***does not*** impact or release any Class Member's ability to pursue monetary damages against Facebook through separate litigation.

This settlement will fully resolve litigation that was initiated after Defendant Facebook, Inc. ("Facebook") experienced a data breach and millions of Facebook users' personal information was stolen by attackers. Plaintiff alleges that Facebook's negligence caused the breach in two ways. First, Plaintiff alleges that Facebook failed to address known risks related to coding vulnerabilities and security risks relating to access tokens—essentially, key cards that allow users to access their accounts. Second, Plaintiff alleges that after the attack became visible, Facebook did not timely escalate the suspicious activity seen by "growth" engineers to security personnel. Facebook adamantly denies any negligence or fault in either respect, and strongly maintains that the breach was a result of an unknown and unforeseeable vulnerability and that the company responded quickly to the attack.

While Plaintiff believes that the facts and the law ultimately favor his position, the proposed settlement is poised to deliver meaningful relief without requiring further delay and expense. From the onset of this case, one of Plaintiff's primary goals has been to ensure that Facebook has improved its security practices in response to the attack to better protect against future data breaches involving consumers' personal information, and to independently assess Facebook's implementation of those security improvements. Plaintiff has achieved these goals: Facebook has committed to making concrete improvements to its security practices that specifically address risks relevant to the attack, and to undergo annual independent third-party assessments for the next five years to ensure

1  compliance with these commitments.  This relief will help to protect not only the four million U.S.

2  Class Members implicated in this suit, but most of Facebook's estimated 2.38 billion users.[1]

3        In support of this motion, Plaintiff (re)submits a copy of the Parties' Amended Settlement

4  Agreement ("Settlement" or "Settlement Agreement"), as **Exhibit A** (*see also* ECF No. 297-7), the

5  Joint Declaration of Class Counsel John A. Yanchunis, Andrew N. Friedman, and Ariana J. Tadler

6  ("Joint Decl." filed separately as ECF. No 318), and the Declaration of Stephen Weisbrot (the

7  "Weisbrot Declaration"), as **Exhibit B**. The Settlement was reached after significant adversarial

8  proceedings, and arm's-length negotiations. Specifically, prior to any settlement negotiations, Plaintiff

9  engaged in an extensive investigation of the facts to investigate the events surrounding the data breach

10 and its effect on consumers; retained experts to analyze the technical components of Facebook's social

11 media platform and the vulnerabilities which were exploited and which led to the breach, as well as

12 theories of damages which the class had sustained; conducted extensive discovery involving the

13 review and  assessment of  a considerable number of documents produced by Facebook, the

14 depositions of Facebook employees in California, Massachusetts, New York, Washington, and the

15 UK; and engaged in dispositive motion practice, including a motion to dismiss and a successful motion

16 for class certification of an injunctive relief litigation class pursuant to Fed. R. Civ. P. 23(b)(2). The

17 Parties reached their agreement in principle during a formal settlement conference before Chief

18 Magistrate Judge Spero and left the matter of a service award and attorneys' fees, costs, and expenses

19 to the sole discretion of the Court. As explained below, the significant injunctive relief provided by

20 the Settlement (which includes a broad range of measures designed to prevent and detect security

21 issues relating to access tokens, and regular assessments of compliance by a third-party vendor

22 acceptable to both Parties) is an excellent result for the Settlement Class—especially considering the

23 risks of further litigation—and warrants final approval.

24

25

26

---

27 [1] *See, e.g.,* Andrew Hutchinson, *Facebook Reaches 2.38 Billion Users, Beats Revenue Estimates in Latest Update*, Social Media Today, (Apr., 24, 2019), available at
https://www.socialmediatoday.com/news/facebook-reaches-238-billion-users-beats-revenue-
28 estimates-in-latest-upda/553403/.

MOTION FOR FINAL APPROVAL OF SETTLEMENT
No.  C 18-05982 WHA (JSC)

## II.    HISTORY OF THE LITIGATION

### A.    Factual Background

On September 28, 2018 Facebook disclosed a data breach ("Attack" or "Breach") affecting the personal information of an estimated 29 million people. Joint Decl. at ¶ 4; First Amended Consolidated Complaint, ECF No. 263, at ¶¶ 6, 93; ECF No. 97 (Declaration of Facebook's Christopher Bream), ¶ 9. The compromised information included names, birthdates, current cities, hometowns, and other data points. Joint Decl. at ¶ 7; ECF No. 263, at ¶ 102; ECF No. 97, at ¶ 11. Attackers exploited vulnerabilities in Facebook's software that allowed them to generate and use highly-permissioned access tokens. Joint Decl. at ¶ 7; ECF No. 263, at ¶ 95; ECF No. 97, at ¶ 9. Facebook's access tokens are digital credentials that can be used to query data from a user's account without reentering their username and password.  Joint Decl. at ¶ 7; ECF No. 263, at ¶¶ 95, 97; ECF No. 97, at ¶¶ 10, 17 n.8. The attackers then used the access tokens to retrieve information for those estimated 29 million people. Joint Decl. at ¶ 7; ECF No. 263, at ¶¶ 95, 97; *see* ECF No. 97.

### B.    The Complaints and Rule 12 Motion Practice

After Facebook announced the Breach, a number of plaintiffs filed suit in this Court. Joint Decl. at ¶ 6. On January 9, 2019, at this Court's request, the Parties held a Tutorial, which included certain of Plaintiff's experts, to inform the Court and the public about the technical issues in this case. Joint Decl. at ¶¶ 12-15, 27-30; ECF Nos. 29, 38, 71. On January 10, 2019, the Court consolidated over a dozen actions, with February 7, 2019 as the date for Plaintiffs to file a Consolidated Amended Complaint ("CAC"). ECF No. 67.[2]

On February 7, 2019, Plaintiff Stephen Adkins, along with four other plaintiffs, filed the CAC. Joint Decl. at ¶ 50; ECF No. 76. The CAC alleged causes of action for breach of express contract, implied contract, implied covenant of good faith and fair dealing, and quasi-contract; negligence and negligence per se; violation of California's Unfair Competition Law ("UCL") and California

---

[2] Although the Court had yet to appoint interim lead counsel, the lawyers whom the Court ultimately appointed to serve in this capacity on behalf of the plaintiffs, Ariana Tadler, John Yanchunis, and Andrew Friedman, led Plaintiffs' team in preparing the Tutorial and in drafting and filing the CAC. Specifically, Mr. Yanchunis, Ms. Tadler, and Mr. Friedman (as well as lawyers from their respective firms) worked with experts Mary Frantz and Matt Strebe to present the Tutorial to the Court. Joint Decl. at ¶¶ 12-15, 27-30; ECF No. 71.

Consumer Legal Remedies Act ("CLRA"); breach of confidence; and for declaratory judgment. *See* ECF No. 76. On March 14, 2019, Facebook filed a Motion to Dismiss under Rules 12(b)(1) and 12(b)(6). Joint Decl. at ¶ 55; ECF No. 96. In the interim, several plaintiffs voluntarily dismissed their case, leaving Plaintiff Stephen Adkins and Plaintiff William Bass as the proposed class representatives. ECF Nos. 87–94. On June 21, 2019, the Court granted Facebook's Motion to Dismiss in part, and denied it in part, with leave to amend. Joint Decl. at ¶ 55; ECF No. 153. Among other things, the Court found that Plaintiff Adkins experienced an injury in fact (and thus standing) through plausible allegations of the increased risk of future identity theft and his loss of time, ECF No. 153, at 9–12, and denied Facebook's Motion to Dismiss Plaintiff's claims for negligence and declaratory judgment. *Id.* at 16–17, 19; Joint Decl. at ¶ 55. The Court granted Facebook's Motion to Dismiss the four contract claims (breach of express contract, implied contract, implied covenant of good faith and fair dealing, and quasi-contract), as well as the UCL and CLRA claims, with leave to amend. Joint Decl. at ¶ 55, ECF No. 153 at 19-20.

On July 18, 2019, pursuant to the June 21 Order, Plaintiff Adkins moved to amend and file a First Amended Consolidated Complaint ("FACC") to replead some of the claims rejected by the Court. *See* Joint Decl. at ¶ 55; ECF No. 160. On August 9, 2019, the Court granted in part and denied in part Plaintiff's Motion to Amend and file the FACC, again permitting the negligence and declaratory relief claims to proceed. Joint Decl. at ¶ 56; ECF Nos. 185, 263.

### C.   Discovery

During and after the Rule 12 motion practice, the Parties engaged in extensive discovery pursuant to a rigorous schedule with trial scheduled for May 2020. To prepare Class Members' claims for certification and trial, Plaintiff engaged in an independent investigation; vetted plaintiffs; retained experts; negotiated with Facebook as to the early production of certain core documents; and served 90 requests for production and four interrogatories. Joint Decl. at ¶¶ 8-11, 16-17, 20-26, 38-43, 44-49, 61. Moreover, Plaintiff's counsel reviewed tens of thousands of documents, including highly technical documents, many of which included source code and discussions related thereto). *Id.* at ¶ 62-63. Plaintiff's counsel also defended 9 depositions and took 18 depositions, including both fact and expert witnesses, which required travel to Menlo Park, CA, Detroit, MI, Seattle, WA, New York, NY, Boston,

MA, and London, UK. *Id*. at ¶¶ 71-83. Plaintiff's counsel retained four experts to assist with preparing for these offensive depositions and establishing liability and damages, whose efforts culminated in four declarations, three expert reports, and four depositions. *Id*. at ¶ 44-49. Both sides actively pursued discovery and brought disputes to the Magistrate Judge when necessary.  *Id.* at ¶ 64; ECF Nos. 151, 170, 178.

In this way, Plaintiff developed a robust record of Facebook's practices before, leading up to, and following the Breach, and used this information to assert in his class certification motion that Facebook employees failed to correct coding vulnerabilities and security risks and did not react quickly enough once the attack became visible. *See* ECF No. 268.

### D.    Class Certification and *Daubert*

Between August 29, 2019 and October 10, 2019, Plaintiff fully briefed Plaintiff's motion for class certification pursuant to Rules 23(b)(3) (seeking a damages class for lost value of personal information and credit monitoring); issue certification under 23(c)(4) (regarding common liability issues); and 23(b)(2) (regarding injunctive relief on a host of Facebook's security procedures and authentication infrastructure). Joint Decl. at ¶ 57; ECF No. 268. Facebook responded by opposing all class certification, disputing Plaintiff's factual assertions, and revisiting its argument that Mr. Adkins lacked Article III standing, as well as moving to strike Plaintiff's two damage experts (Jim Van Dyke and Ian Ratner), but not security expert, Mary Frantz. *Id.* at ¶ 57-58; ECF Nos. 213–215, 242, 247, 262, 264–267.[3] Due to the sensitive and private nature of much of the evidence submitted in the class certification briefing, Plaintiff filed accompanying administrative motions to seal portions of the record. Joint Decl. at ¶ 58; ECF Nos. 220, 228, 234, 238, 239. On November 6, 2019, the Court held oral arguments on class certification and the *Daubert* motions. ECF No. 253. On November 26, 2019, this Court granted Facebook's motion to exclude Plaintiff's expert Jim Van Dyke, and denied the motion to exclude Ian Ratner. Joint Decl., at ¶ 59; ECF No. 260. On the same day, the Court certified an injunctive relief only class pursuant to Fed. R. Civ. P. 23(b)(2) and appointed Interim Class Counsel as Class Counsel. *Id*. On December 19, 2019, the Parties filed a joint motion to modify the November

---

[3] Ms. Frantz is the Founder and Managing Partner of Enterprise Knowledge Partners, LLC which specializes in eDiscovery, Forensics, Cyber Security and Enterprise Architecture. A description of her qualifications can be found at ECF No. 197-6 at ¶¶ 8-13, and Ex. A to that declaration.

1    26 Order to narrow the certified class to U.S. users only and alter the notice to remove the requirement

2    of first-class mail notification. Joint Decl. at ¶ 60; ECF No. 270. On January 6, 2020, the Court granted

3    the Parties' motion and certified the following class:

> All current Facebook users residing in the United States whose personal
> information was compromised in the data breach announced by Facebook on
> September 28, 2018.

6    Joint Decl. at ¶ 60; ECF No. 271.

7          **E.**      **Settlement Negotiations**

8          On June 14, 2019, in compliance with this Court's rule, ECF No. 26, governing settlement

9    prior to class certification, an initial mediation session was scheduled by the Court with Chief

10   Magistrate Judge Spero for December 11, 2019. Joint Decl. at ¶ 93; ECF No. 100. The December date

11   was adjourned to January 8, 2020 to accommodate the Court's and the Parties' respective schedules.

12   *Id.*; ECF No. 258. With a class certified, and the Parties preparing for trial, which was scheduled to

13   begin on May 18, 2020, ECF No. 69, the Parties engaged in preliminary settlement discussions under

14   the supervision of Chief Magistrate Judge Spero, with Plaintiff sending a proposed term sheet. *Id*.

15   After submitting to Chief Magistrate Judge Spero and exchanging mediation papers, the Parties

16   attended a settlement conference in San Francisco on January 8, 2020. *Id.* at ¶ 94. Mediated by Chief

17   Magistrate Judge Spero, the Parties discussed potential security commitments Facebook could make

18   as part of a settlement of the case. *Id.* Based on these discussions, and with the assistance of Plaintiff's

19   expert, Mary Frantz, and in communication directly with Facebook's engineers and in-house counsel,

20   the Parties negotiated a set of security commitments that comprehensively address the security risks

21   exposed in the Breach and provide strong protection against the risk of any similar attack in the future.

22   *Id.* at ¶ 95. On January 17, 2020, the Parties filed a joint motion for a continuance, ECF No. 276,

23   having reached an agreement in principle, with a detailed term sheet approved by the Parties and

24   signed by counsel. *Id.* at ¶ 96. Fact depositions continued in California and London while settlement

25   discussions continued, consistent with the Court's scheduling order. *Id.* The Parties reached a formal

26   Settlement Agreement, as a result of extensive arm's length negotiations, expert input, and cooperative

27   efforts to finalize the terms, develop a notice plan, and prepare and finalize the motion for Preliminary

28   Approval. *Id*. at ¶ 97.

1    On February 7, 2020, Plaintiff Stephen Adkins filed a Motion for Preliminary Approval and to

2 Direct Notice of Settlement ("Motion for Preliminary Approval"). *Id.* at ¶ 98; ECF No. 281. On March

3 5, 2020, this Court held a hearing on the Motion for Preliminary Approval and ordered the Parties to

4 address certain points raised at the hearing. *Id.* at ¶ 99; ECF Nos. 289, 291. Specifically, the Court

5 ordered the following modifications and clarifications: (1) a sworn statement from Facebook regarding

6 the security commitments that are part of the proposed settlement; (2) a clarification as to whether the

7 Court will receive the results of the confidential, annual third-party assessments of Facebook's

8 security; (3) a revised (less onerous) procedure for objecting to the proposed Settlement; and (4) an

9 increase to twenty-eight (28) days for Class Members to object to Plaintiff's fee motion.[4] *Id.*; ECF No.

10 291; ECF No. 297-2, at 5:8-13, 7:2-14, 17:12–18:1. Accordingly, on March 26, 2020, Plaintiff filed

11 his Supplemental Brief and the Amended Settlement Agreement, which addressed the Court's

12 concerns, and Facebook also filed a declaration from Facebook's Security Engineering Director,

13 Christopher Bream, detailing security practices that Facebook implemented not because they are

14 required by any law or regulation but subsequent to the data breach and the instant litigation. Joint

15 Decl. at ¶ 100; ECF Nos. 297, 300. On November 4, 2020, the Court held a status conference and

16 further discussed the proposed Settlement. Joint Decl. at ¶ 102; ECF No. 310.

17    On November 15, 2020, the Court granted Preliminary Approval of the proposed Settlement

18 Agreement, and approved the settlement administrator and notice plan, directing the class notice to be

19 disseminated by December 30, 2020. Joint Decl. at ¶ 102; ECF No. 314. Class notice has since been

20 disseminated in compliance with the Court's deadline. Ex. B at ¶ 17.

21 **III.    MATERIAL TERMS OF THE SETTLEMENT AGREEMENT**

22        **A.    Proposed Settlement Class**

23    Per the Settlement Agreement, the settlement class is comprised of "All current Facebook users

24 residing in the United States whose personal information was compromised in the data breach

25 announced by Facebook on September 28, 2018." Ex. A at § 1.24.

26 ―――――――――――――――
[4] In abundance of caution, Plaintiffs are filing the instant Motion for Final Approval of Settlement on
27 February 1, 2021, to ensure that class members have at least thirty-five (35) days to object to the
settlement. *See* United States District Court, Northern District of California, "Procedural Guidance for
28 Class Action Settlements." Available at: https://www.cand.uscourts.gov/forms/procedural-guidance-
for-class-action-settlements/ (last accessed January 30, 2021).

**B.**     **Benefit to the Class**

Under the Settlement Agreement, Facebook will certify that the vulnerability exploited in the attack at issue has been eliminated, that it is no longer possible for outside actors to generate access tokens in the manner that was done in the attack, and that all access tokens generated through the vulnerability have been invalidated.  Further, the Settlement Agreement requires Facebook to adopt, implement, and/or maintain a detailed set of security commitments designed to prevent any similar attacks from occurring in the future.  The security commitments, which are laid out in Exhibit A-1 to the Settlement Agreement, include a series of specific and verifiable technical measures designed to prevent or detect security issues involving access tokens.  Among the commitments are increased checks of user activity designed to detect access token compromise, additional monitoring for suspicious patterns of user activity involving access tokens, and improved logging to facilitate investigation of suspicious activity involving access tokens. Facebook has also agreed to these security commitments for a period of 5 years from the effective date of the Settlement Agreement.  This 5-year period is a significant and material term of the settlement, and due to the length of time that Facebook is committed to comply with these measures, it is more likely that they will become part of the company's standard of conduct for years that follow.

Facebook's compliance with the Security Commitments in the Settlement Agreement will be assessed annually by an independent third-party vendor for 5 years, the results of which will be provided to the Court, Class Counsel, and a third-party expert to verify Facebook's compliance with the foregoing terms. Ex. A § 2.3.  A material term of the Settlement Agreement is that in the event that technological or industry developments, or intervening changes in law, render any of the provisions in the Agreement obsolete or make compliance unreasonable or technically impractical, Facebook will notify Class Counsel. *Id.* § 2.5. The Parties will then either jointly petition the Court to eliminate or modify such provision or, if the Parties fail to reach an agreement, Facebook may petition the Court, and Class Counsel may offer its opposition. *Id.*

Since the Court's order preliminarily approving the Settlement and permitting notice to the Class, the settlement administrator and the Parties disseminated class notice and established a case-

specific settlement website and toll-free hotline. Ex. B at ¶¶ 9-15. The notice program included the following methods of notification:

1.  Electronic mail campaigns (using the email addresses that Facebook has for substantially most of the certified Class Members);

2.  Reverse phone look-ups which allow identification of electronic mail addresses for the relatively small number of users who did not input into Facebook their electronic mail address;

3.  A dedicated website;

4.  A dedicated toll-free hotline;

5.  Digital media campaigns including Facebook and internet banner advertisements; and

6.  Traditional media campaigns to achieve broad and effective notice.

*Id.* ¶¶ 8-15.The email notice was staggered and sent in waves to avoid "volume triggers" on spam filters that might otherwise stop Class Members from getting notice. *Id.* at ¶ 11. The deadline for Class Members to object to the settlement is March 8, 2021. ECF No. 314 at 6.  To date, the notice administrator has not received any objections to the Settlement. Ex. B at ¶ 16.

## C.    Limited Release of Class Members' Claims

Class Members will *only* release claims for injunctive relief and declaratory relief against Facebook. Ex. A §§ 8.1–8.2. Plaintiff Adkins will additionally release all claims for monetary damages against Facebook. *Id.* § 8.3. However, the Settlement Agreement does not release Facebook or any other party from any individual claims for damages that have been or may be brought on behalf of individuals other than attorneys' fees, costs, and expenses (for achieving injunctive relief) and Plaintiff Adkins's service award. *Id.*

## D.    Terms Regarding Attorneys' Fees and Costs, and Class Representative's Service Award

Facebook agrees to pay a reasonable service award to Plaintiff Adkins as the Class Representative, which Class Counsel recommends be $5,000. *Id.* § 6.1. The Amended Settlement Agreement does not expressly specify an amount for attorneys' fees and costs, leaving both at the sound discretion of this Court. *See id.*  Facebook may object to the reasonableness of the requested attorneys' fees, costs, and expenses—there is no "clear sailing" agreement. *Id.* § 7.  Class Counsel

have provided expansive substantive bases for the service award and attorneys' fees and costs requests in their contemporaneously filed Motion for Attorneys' Fees, Litigation Costs, and Service Award (ECF No. 317).

## IV.   THE SETTLEMENT AGREEMENT MERITS FINAL APPROVAL

At the initial or "preliminary" stage, courts are asked to decide whether they "will likely be able" to approve the settlement and certify the settlement class. Fed. R. Civ. P. 23(e)(1)(B). If so, the settlement notice is provided to the class and the final approval stage follows several months later. Here, the Court has already certified a 23(b)(2) class. ECF Nos. 260, 271. On November 15, 2020, the Court granted Plaintiff's Motion for Preliminary Approval and to Direct Notice of Settlement. ECF No. 314. With the settlement class certified and notice now disseminated, the Parties request that the Court grant final approval of their settlement.

In its November 15, 2020 Order, the Court already concluded that the Parties' proposed Settlement appears "non-collusive and within the realm of approvable." ECF No. 314 at 1. Rule 23(e)(2) provides a checklist of factors to consider when assessing whether a proposed settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2).[5] As detailed below, the Rule 23(e)(2) factors continue to weigh in favor of final approval, as addressed below.

### A.   Plaintiff and His Counsel Have Adequately Represented the Class

Under Rule 23(e)(2)(A), the first factor to be considered is the adequacy of representation by the class representatives and attorneys. *Id.; see also In re: Cathode Ray Tube (CRT) Antitrust Litig.,* Case No. 07-cv-05944-JST, 2020 WL 1873554, at *8 (N.D. Cal. Mar. 11, 2020) (noting that adequacy under Rule 23(e)(2)(A) is addressed by the adequacy analysis at class certification under Rule 23(a)(4)). This analysis includes "the nature and amount of discovery" undertaken in the litigation. Fed. R. Civ. P. 23(e)(2)(A), advisory committee's note to 2018 amendment.

---

[5] "The central concern in reviewing a proposed class-action settlement is that it be fair, reasonable, and adequate. Courts have generated lists of factors to shed light on this concern. Overall, these factors focus on comparable considerations, but each circuit has developed its own vocabulary for expressing these concerns. In some circuits, these lists have remained essentially unchanged for thirty or forty years. The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."  Fed. R. Civ. P. 23, advisory committee's note to 2018 amendment.

### i. The Class Representative

Plaintiff Adkins has adequately represented the class. Over the course of a year Mr. Adkins responded to extensive discovery: he answered 24 interrogatories, 56 requests for production, and 63 requests for admission. Joint Decl. at ¶ 91. He also had his deposition taken *twice* and prepared extensively with Plaintiff's counsel both times. *Id.* Moreover, Mr. Adkins produced a total of 7,142 pages of documents, which involved collecting records from third Parties and considerable follow up. *Id.* Mr. Adkins also allowed his personal cell phone to be imaged. *Id.* Finally, Mr. Adkins traveled from Michigan to San Francisco, CA to attend the January 8, 2020 mediation. *Id.*

### ii. Class Counsel

Class Counsel have also adequately represented the Class. Before the case was even consolidated, Class Counsel independently investigated the facts and law, coordinated with other plaintiffs' counsel who had filed complaints, and retained experts well in advance of appointment and to conduct the January 9, 2019 Tutorial for the Court, to elucidate, from the onset, the technical aspects at issue in this case. Joint Decl. at ¶¶ 12-15, 27-30. Class Counsel, with the assistance of other plaintiffs' counsel, went on to vigorously prosecute this case, extensively briefing a motion to dismiss, including supplemental briefings, a motion to amend with further dismissal arguments, two discovery motions, class certification, and two *Daubert* motions—and in the end, successfully obtained certification of a Rule 23(b)(2) class. *Id.* at ¶¶ 50-60; ECF Nos. 96, 108, 113, 122, 135, 153, 160 & 188, 173 & 189, 180, 185 (motion to dismiss and motion to amend briefing and Orders); 151, 155, 170, 178 (discovery dispute briefing and hearings); 268, 213–215, 242, 247,  260 (class certification and *Daubert* briefings, and Order). Given the sensitive nature of certain information addressed in the various motions, most motions were subject to detailed motions to seal. Joint Decl. at ¶ 58. Class Counsel engaged in extensive discovery, taking a total of 18 depositions[6], and reviewing tens of thousands of documents containing highly technical and detailed information. Joint Decl. at ¶¶ 71-83, 62. Class Counsel engaged the services of four experts who wrote a total of four declarations and three expert reports. *Id.* at ¶¶ 44-49.

---

[6]All of these depositions took place in Menlo Park, CA, Seattle, WA, New York, NY, Boston, MA, and London, UK and required Plaintiff's counsel to travel out-of-state or overseas.

1          Class Counsel's efforts with respect to defensive discovery were not limited to the current class

2   representative. *See* Joint Decl. at ¶¶ 84-92. Starting in January 2019, Plaintiffs served initial

3   disclosures for twenty plaintiffs based on the Case Management Order entered in the case. *See* Joint

4   Decl. at ¶¶ 25, 36; ECF No. 67. Five of these plaintiffs were included in the CAC. Joint Decl. at ¶ 36;

5   ECF No. 76. The initial disclosures also required Class Counsel to work closely with Plaintiff's experts

6   to calculate approximate damages dollar amount for the purpose of the initial disclosures. Joint Decl.

7   at ¶ 37; ECF No. 71, Jan. 9, 2019 Tutorial and CMC Tr. at 101:2-23 (clarifying that Plaintiffs must

8   include a dollar amount when describing damages in the initial disclosures). Before the Motion to

9   Dismiss was decided, Class Counsel coordinated responses to 41 requests for production and 4

10  interrogatories for the five named plaintiffs.[7] Joint Decl. at ¶ 88. Class Counsel also successfully

11  defended against absent class member discovery. Joint Decl. at ¶ 88; *see also* ECF Nos. 151, 155, 158.

12          **B.      The Parties Negotiated the Proposed Settlement at Arm's Length**

13          The second Rule 23(e)(2) factor asks the Court to confirm that the proposed settlement was

14  negotiated at arm's-length. Fed. R. Civ. P. 23(e)(2)(B). As with the preceding factor, this can be

15  "described as [a] 'procedural' concern[], looking to the conduct of the litigation and of the negotiations

16  leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2)(A) and (B), advisory committee's note

17  to 2018 amendment. Courts typically scrutinize the negotiated settlement "not only for explicit

18  collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-

19  interests and that of certain class members to infect the negotiations." *Haralson v. U.S. Aviation Servs.*

20  *Corp.*, 383 F. Supp. 3d 959, 966 (N.D. Cal. 2019) (citing *In re Bluetooth Headsets Litig.*, 654 F.3d

21  935, 946–47 (9th Cir. 2011)).   No such concern of collusion exists here; the settlement was achieved

22  after hard-fought litigation which enabled  Plaintiff's counsel to develop well  informed assessments

23  of liability and the appropriate relief to address the vulnerabilities at issue in the case, and arms-length

24  negotiation, which was presided over by Chief Magistrate Judge Spero.

---

[7] Aside from Mr. Adkins, four other plaintiffs were deposed and produced voluminous documents in advance: plaintiff Bass produced 1464 pages of documents; and plaintiff Brown-Wells produced 222 pages of documents. Dr. Schmidt was not deposed but produced 1179 pages of documents. Joint Decl. at ¶ 89.

MOTION FOR FINAL APPROVAL OF SETTLEMENT
No.  C 18-05982 WHA (JSC)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

          **i.**         **Courts Do Not Apply the Collusion Analysis to (b)(2) Settlements**

Where, as here, the settlement is for injunctive relief purposes only and Class Members do not release any monetary claims, the collusion analysis does not apply. *Moreno v. San Francisco Bay Area Rapid Transit Dist.,* No. 17-CV-02911-JSC, 2019 WL 343472, at *3 (N.D. Cal. Jan. 28, 2019); *see also Campbell v. Facebook, Inc.*, No. 13-CV-05996-PJH, 2017 WL 3581179 at *5 (N.D. Cal. Aug. 18, 2017) ("Arguably, [the] *Bluetooth* [collusion analysis] is not even applicable to this settlement because it does not involve a Rule 23(b)(3) damages class" because "there is no common fund, 'constructive' or otherwise: the certified class is injunctive-relief-only, and monetary damages claims are not at issue").

          **ii.**         **To the Extent the Collusion Analysis Applies, the Negotiations Were at Arm's Length**

To the extent scrutiny is applied to this type of injunctive relief settlement, the Court can be confident of the arm's length nature of the negotiation process.

First, extensive discovery and motion practice are indicia of an arm's-length process. *Wannemacher v. Carrington Mortg.*, No. 12-cv-2016, 2014 WL 12586117, at *8 (C.D. Cal. Dec. 22, 2014) (finding no signs of collusion where "significant … discovery [was] conducted"; "plaintiffs had already drafted a class certification brief"; and before "exploring settlement, the parties litigated the case for a year"); *see also Moreno*, 2019 WL 343472, at *5 (that the parties engaged in substantial motion practice and thus have had an opportunity to evaluate the strength and weaknesses of the relative claims and defenses weighs in favor of settlement approval). Settlement agreements that occur after class certification are also less likely to involve collusion. *Contra In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895 F.3d 597, 610–11 (9th Cir. 2018) (where the settlement is negotiated prior to class certification, there is a greater chance of breach of fiduciary duty by class counsel and thus the district court should undertake an additional search for signs of collusion). Here, per the Court's standing rules, the Parties did not begin negotiations until *after* the Court certified a litigation class and they well understood the strengths and weaknesses of their respective positions. Joint Decl. at ¶ 93. Indeed, by the time the Parties reached agreement, they had engaged in significant pretrial motion practice, conducted extensive discovery, identified and secured

some of the most prominent experts in the areas of liability and damage assessments, and through consultant with these experts developed focused discovery to secure the information needed for class certification and trial , including the development of their respective opinions, worked closely and extensively with experts, and certified a litigation class under Rule 23(b)(2). The Parties were preparing for a trial scheduled to begin just a few months later, on May 18, 2020. *Id.*; *see* ECF No. 69[8].

Second, "[t]he involvement of a neutral or court-affiliated mediator or facilitator in [the parties'] negotiations may bear on whether they were conducted in a manner that would protect and further the class interests." Fed. R. Civ. P. 23(e)(2)(B), advisory committee's notes to 2018 amendment; *accord Pederson v. Airport Terminal Servs*., No. 15-cv-02400, 2018 WL 2138457, at *7 (C.D. Cal. April 5, 2018) (the oversight "of an experienced mediator" reflected non-collusive negotiations). Here, the Parties conducted mediation under Chief Magistrate Judge Spero's guidance and supervision on January 8, 2020 and were able to reach an understanding on the contours of an agreement, which was later finalized in a term sheet on January 17, 2020. Joint Decl. at ¶¶ 93-96. Between January 8th and January 17th, the Parties continued their negotiations to map out the details for the final agreement, with the assistance of Plaintiff's expert, Mary Frantz (and in communication with Facebook's engineers and in-house counsel), and arrived at a set of security commitments that comprehensively address the security risks exposed in the Breach and provide strong protection against the risk of any similar attack in the future. *Id.* at ¶ 95.

Finally, none of the potential warning signs of collusion are present. The Settlement Agreement states only that Class Counsel will file a motion for an award of attorneys' fees, costs and expenses, which Facebook may oppose. There is no "clear sailing" arrangement whereby Facebook has agreed not to contest the fee motion. *See* Ex. A § 7. Nor is there a settlement fund from which unawarded money will revert to Facebook. *See generally* Ex. A.

---

[8] Indeed, in January 2020, per the Court's Order (ECF No. 67) the Parties identified the experts anticipated for trial and Plaintiff served on Facebook three expert reports. Joint Decl. at ¶ 49.

### C.     The Quality of Relief to the Class Weighs in Favor of Approval

Next, courts must consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). Under this factor, the relief "to class members is a central concern." Fed. R. Civ. P. 23(e)(2)(C), advisory committee's note to 2018 amendment.

### i.     The Settlement Provides Meaningful Injunctive Relief for the Class

There is no "particular formula by which th[e] outcome must be tested." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Rather, the Court's assessment of the likelihood of success is "nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Id.* at 965 (internal quotation marks and citation omitted). Factors considered include "the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to a present value." *Id.* "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomm's Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quotation marks and citation omitted).

Courts routinely approve settlements for injunctive relief only. *Stathakos v. Columbia Sportswear Co.*, Case No. 4:15-cv-04543-YGR, 2018 WL 582564 (N.D. Cal. Jan. 25, 2018) (approving settlement providing solely injunctive relief); *Lilly v. Jamba Juice Co.*, Case No. 13–cv–02998–JST, 2015 WL 2062858 (N.D. Cal. May 4, 2015) (same); *Goldkorn v. Cty. of San Bernardino*, No. EDCV 06–707–VAP, 2012 WL 476279 (C.D. Cal. Feb. 13, 2012) (same); *In re Lifelock, Inc. Mktg. & Sales Practices Litig.*, MDL Docket No. 08–1977–MHM, 2010 WL 3715138 (D. Ariz. Aug. 31, 2010) (same); *Kim v. Space Pencil, Inc.*, No. C 11–03796 LB, 2012 WL 5948951 (N.D. Cal. Nov. 28, 2012) (same); *Romero v. Securus Techs.*, Inc., Case No.: 16cv1283 JM (MDD), 2020 WL 6799401 (S.D. Cal. Nov. 19, 2020); *Ang v. Bimbo Bakeries USA, Inc.*, Case No. 13-cv-01196-HSG, 2020 WL 5798152, (N.D. Cal. Sept. 29, 2020). As noted in *Campbell*, a settlement for injunctive relief can be

approved where "[t]hrough the work of class counsel, the class has obtained essentially all of declaratory and injunctive relief that they sought" even though "much of the relief obtained for the class was the result of [defendant's] changes in business practice in response to the litigation, rather than a result of the Settlement Agreement per se." *Campbell*, 2017 WL 3581179, at *4. Yet another court approved a settlement which "stop[ped] the allegedly unlawful practices, bar[red] Defendant from similar practices in the future, and d[id] not prevent the class members from seeking legal recourse." *Kim.*, 2012 WL 5948951, at *6. Most recently, in *Littlejohn v. Copland*, 819 F. App'x 491 (9th Cir. 2020), the Ninth Circuit affirmed the district court's approval of a (b)(2) settlement, noting that the class-wide injunctive relief squarely addressed the claims raised in Plaintiff's class complaint and there was "no evidence that [defendant] had already changed, or was planning to change, its […] practices prior to agreeing to the Settlement." *Id.* at 493.

Here, the Settlement merits approval because Facebook has agreed to meaningful injunctive relief, including a broad range of sophisticated and detailed measures designed to prevent and detect security issues relating to access tokens, and regular assessments of compliance by an independent third party for *5 years*, *inter alia*, all subject to scrutiny by this Court and Class Counsel. Ex. A at § 2.3. Facebook's Security Engineering Director, Christopher Bream, submitted a declaration affirming that the security commitments that are a key component of the settlement are *not* pre-existing security obligations required by law or agency action, and that most of them were instituted after the data breach and the filing of the underlying litigation. *See* ECF No. 300. These commitments included: (1) running "integrity checks" on session updates; (2) monitoring for suspicious patterns of access token generation and use; (3) tools for promptly containing a security incident involving the improper issuance of access tokens; (4) automatic alerts for suspicious activity observable in user growth metrics; (5) limiting capabilities of application that rely on access tokens, 6) eliminating "NoConfidence" authentication proofs; and (6) expanding logging of generation and use of access tokens. *Id.*; *see Littlejohn,* 819 F. App'x at 493. Moreover, while Facebook has previously conducted annual SOC2 Type II security assessments, under the Settlement Agreement these assessments will no longer be limited to internal review—instead for the next 5 years, these assessments will be conducted by an independent third-party auditor, and the results will be shared with Class Counsel,

Class Counsel's Expert, and the Court. Ex. A at § 2.3. This external audit will create meaningful oversight of Facebook's security practices, verify compliance, and help protect consumers' personal information from the types of security shortfalls that lead to this suit to begin with. The injunctive relief therefore "adequately addresses the very claims raised in Plaintiff's Complaint, provid[ing] value to the Class." *Littlejohn*, 819 F. App'x at 493. Thus, Plaintiff's litigation helped prompt Facebook to improve its security practices meaningfully and expeditiously. *See Campbell*, 2017 WL 3581179, at *4.

Furthermore, although Class Members do not receive monetary relief as a result of the settlement, they remain free to bring individual damages claims. *See* Ex. A § 8.1; *see Kim*, 2012 WL 5948951, at *6. Thus, the Class will receive substantial injunctive relief without releasing any individual claims for monetary damages.

Additionally, Courts in this Circuit have recognized that Class Counsel's endorsement weighs in favor of approving the settlement. *See, e.g.*, *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.") (internal quotation marks and citations omitted); *Rodriguez,* 563 F.3d at 967 ("[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation[.]") (internal quotation marks and citations omitted). This is especially true where, as here, there is no indicia of collusion. *See* Section IV.B, *infra.* Class Counsel have significant experience in litigating some of the most significant data breach class actions to date, successfully resolving many of those in this District, and have brought that experience and knowledge to bear on behalf of the Class. *See e.g.,* ECF No. 281-9 (resumes of appointed class counsel). Class Counsel have also demonstrated that they are well informed of the facts, claims, and defenses in this action, as well as the risks of proceeding to trial.

### ii.        Continued Litigation Would Entail Substantial Cost, Risk, and Delay

Almost all class actions involve high levels of cost, risk, and lengthy duration, which supports the Ninth Circuit's "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998). Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to

---

MOTION FOR FINAL APPROVAL OF SETTLEMENT
No.  C 18-05982 WHA (JSC)

1   make their case and risk losing relief. *Chun–Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851

2   (N.D. Cal. 2010); *see also Lilly,* 2015 WL 2062858, at *3-4 (approval warranted because without a

3   settlement, Plaintiffs would face further litigation that would not be certain to result in injunctive

4   relief).

5            Here, had the Parties not settled, the litigation would have been risky, protracted, and costly—

6   especially considering the time and labor required to prepare for trial, set to begin on May 18, 2020.

7   Plaintiff acknowledges that the case faced significant challenges. The Court had previously dismissed

8   prior plaintiffs and all but two of Plaintiff's claims (negligence and declaratory relief). ECF Nos. 153,

9   185. The Court then declined to certify a Rule 23(b)(3) class, holding that neither the cost of a credit

10  monitoring service nor the diminished value of personal information stolen in the Breach represents a

11  cognizable injury in a negligence claim. ECF No. 260, at 10–13. Facebook would likely have sought

12  summary judgment on Mr. Adkins' claims.

13           Given the uncertainty of the recovery of injunctive relief at trial, this factor weighs in favor of

14  approval.

15           **iii.        The Parties Have No Other Agreements Pertaining to the Settlement**

16           The Court also must evaluate any agreement made in connection with the proposed settlement.

17  *See* Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3). Here, the Settlement Agreement before the Court is the

18  only existing agreement.

19           **D.        The Settlement Treats All Class Members Equitably**

20           The final Rule 23(e)(2) factor turns on whether the proposed settlement "treats class members

21  equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D); *see also In re Cathode Ray Tube*, 2020

22  WL 1873554, at *10 (Rule 23(e)(2)(D) considers whether the Settlement "improperly grant[s]

23  preferential treatment to class representatives or segments of the class.") (internal citations omitted).

24  "Matters of concern could include whether the apportionment of relief among class members takes

25  appropriate account of differences among their claims, and whether the scope of the release may affect

26  class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D),

27  advisory committee's note to 2018 amendment.

28

Here, the Settlement treats all Class Members the same. It provides only for a request of $5,000 as a service award for Mr. Adkins, who assisted counsel in preparing the complaint, as amended and approving the complaint before it was filed, engaged on a regular basis in discussing the case and the pursuit of the litigation efforts which were made to ensure that Mr. Adkins remained at the helm of the litigation from the outset, produced thousands of pages of documents, sat for two depositions, and took time off from work to travel from his home in Michigan to attend the mediation held in San Francisco. Ex. A § 6.1; Joint Decl. ¶ 91. Mr. Adkins also fully releases any potential damages claims. The Settlement does not provide preferential treatment to any individual Class Member. Indeed, as discussed above, the Settlement provides uniform injunctive relief that applies equally to every Class Member such that each Class Member will receive identical benefits—concrete and significant improvement of Facebook's security practices, subject to third-party oversight, that will in turn protect Class Members' personal information. In fact, the benefits of increased cybersecurity will inure to the benefit of all of Facebook's billions of users.

### E.  The Notice Program Meets Due Process and Rule 23 Requirements

As a threshold matter, notice is not required for settlements pursuant to Rule 23(b)(2). *See Stathakos,* 2018 WL 582564, at *3 ("In injunctive relief only class actions certified under Rule 23(b)(2), federal courts across the country have uniformly held that notice is not required.") (collecting cases); *see also Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 362 (2011) (Rule 23 "provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action.").

Nonetheless, the notice program implemented as part of this Settlement satisfies due process and Rule 23 requirements. Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Silber v. Mabon,* 18 F.3d 1449, 1454 (9th Cir. 1994) (due process requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.") (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)). Such notice must "clearly and concisely state in plain, easily understood language," the nature of the action, the class

1   definition, and class members' right to exclude themselves from the class, among other things. Fed. R.

2   Civ. P. 23(c)(2)(B). Further, before granting final approval to a proposed class settlement, the court

3   must "direct notice in a reasonable manner to all class members who would be bound by the proposal."

4   Fed. R. Civ. P. 23(e)(1). While Rule 23 requires that reasonable efforts be made to reach all class

5   members, it does not require that each individual actually receive notice. *Silber*, 18 F.3d at 1454; *see*

6   *also Rannis v. Recchia*, 380 Fed.Appx. 646, 650 (9th Cir. 2010).

7       Here, the Court approved the notice plan set forth in the Settlement Agreement, which called

8   for a broad array of notice notifications, including direct notice by e-mail to all members of the

9   Settlement Class, the creation of a detailed settlement website,  a dedicated toll-free hotline, online

10  advertisements, as well as traditional media publications. Ex. B at ¶¶ 9-15. The settlement website

11  includes court deadlines, instructions for submitting objections and contacting the administrator, key

12  filings, and general information about this case. *Id.* at ¶ 9; *see also* www.FacebookDataBreach.com.

13  Further, the e-mail notice was staggered and sent in waves to avoid "volume triggers" on spam filters

14  that might otherwise stop class members from getting notice. *Id.* at ¶ 11. Accordingly, the Court

15  approved the notice plan as consistent with Rule 23(c)(2)(B).

16      In accordance with the Court's order preliminarily approving the Settlement and permitting

17  notice to the Class, the Settlement Administrator, Angeion Group, disseminated notice to

18  approximately 5,130,586 Settlement Class members between December 15 and 21, 2020. *Id.* at ¶ 11.

19  In this regard, potential Class Members have been: (1) provided with direct notice of the Settlement

20  Agreement; (2) fully informed of their rights and obligations under the Amended Settlement

21  Agreement; and (3) provided with the resources to ask questions and access important document

22  pertaining to the case (via the website). The Court should therefore (once again) find that the notice

23  plan and class notices are consistent with Rule 23, and that the plan has been fully and properly

24  implemented by the Parties and the class administrator.

25      Pursuant to the Settlement Agreement, Defendants mailed notice of the settlement to state

26  Attorneys General and the U.S. Attorney General, in accordance with the Class Action Fairness Act

27  of 2005, 28 U.S.C. §§ 1711-15. Ex. B at ¶¶ 4-5. To date, no Attorneys General have inquired into or

28  sought to intervene in this litigation. *Id.* at ¶ 6.

**V.     CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court enter the accompanying proposed order, included as Sub-Exhibit A-5, granting final approval of the Settlement.

DATED: February 1, 2021                        Respectfully submitted,

                                               By: /s/ Andrew N. Friedman
                                               Andrew N. Friedman (*pro hac vice*)
                                               **COHEN MILSTEIN SELLERS & TOLL PLLC**
                                               1100 New York Ave. NW, Fifth Floor
                                               Washington, DC 20005
                                               Telephone: (202) 408-4600
                                               Facsimile: (202) 408-4699
                                               afriedman@cohenmilstein.com

                                               John A. Yanchunis (*pro hac vice*)
                                               jyanchunis@forthepeople.com
                                               **MORGAN & MORGAN**
                                               **COMPLEX LITIGATION GROUP**
                                               201 N. Franklin St., 7th Floor
                                               Tampa, FL 33602
                                               Telephone: (813) 223-5505
                                               Facsimile: (813) 2223-5402

                                               Ariana J. Tadler (*pro hac vice*)
                                               atadler@tadlerlaw.com
                                               **TADLER LAW LLP**
                                               One Penn Plaza
                                               36th Floor
                                               New York, NY  10119
                                               Telephone: (212) 946-9453

                                               *Appointed Class Counsel*

21

1

**SIGNATURE ATTESTATION**

2

  I am the ECF User whose identification and password are being used to file Plaintiff's Motion

3

for Final Approval of Settlement. I, Andrew N. Friedman attest that service has been effectuated via

4

ECF.

5

6

 DATED: February 1, 2021

          */s/ Andrew N. Friedman*   

7

           Andrew N. Friedman

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR FINAL APPROVAL OF SETTLEMENT
No.  C 18-05982 WHA (JSC)