Ariana J. Tadler (*pro hac vice*)
atadler@tadlerlaw.com
TADLER LAW LLP
One Pennsylvania Plaza, 36th Floor
New York, NY  10119
Telephone: (212) 946-9300

John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
201 N. Franklin St., 7th Floor
Tampa, FL  33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402

*Appointed Class Counsel*

Andrew N. Friedman (*pro hac vice*)
afriedman@cohenmilstein.com
COHEN MILSTEIN SELLERS
& TOLL PLLC
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

# UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| STEPHEN ADKINS, an individual and Michigan resident, on behalf of himself and all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>FACEBOOK, INC.,<br><br>        Defendant. | No.  C 18-05982 WHA (JSC)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, LITIGATION COSTS, AND SERVICE AWARD**<br><br>Date:    April 8, 2021<br>Time:   11:00 am<br>Courtroom: TBD Under Court Safety Protocols<br>Hon. William H. Alsup |

## TABLE OF CONTENTS

**NOTICE OF MOTION AND MOTION**

I.      INTRODUCTION ..................................................................................................1

II.     PROCEDURAL HISTORY OF THE LITIGATION ........................................4

    A.   Brief Factual Background of the Breach............................................................4

    B.   The Complaints and Rule 12 Motion Practice ..................................................5

    C.   Brief Summary of Discovery .............................................................................6

    D.   Class Certification and *Daubert*........................................................................6

    E.   Settlement Negotiations .....................................................................................7

III.    Argument ..............................................................................................................8

    A.   Legal Standard ...................................................................................................8

    B.   Class Counsel's Request for Attorneys' Fees Is Reasonable...........................10

        1.   Class Counsel's lodestar is reasonable, justified, and adequately documented ........10

        2.   The results achieved, skill required, and quality of the legal representation..............16

        3.   The complexity and novel issues presented in this case support the requested attorneys' fees. ..............................................................................19

    C.   The Attorney Billing Rates Requested are Reasonable and Are Consistent with Rates in the District..................................................................................21

    D.   The Requested Expenses are Reasonable. ........................................................22

    E.   The Requested Service Award is Reasonable...................................................24

IV.    CONCLUSION .....................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Blair v. Rent-A-Center, Inc.*,
No. C 17-02335 WHA,
2020 U.S. Dist. LEXIS 12137 (N.D. Cal. Jan. 24, 2020) (J. Alsup) ................................26, 28

*Blum v. Stenson*,
465 U.S. 886 (1984) ...................................................................................................................13

*Briggs v. United States*,
No. C 07-05760 WHA, 2012 WL 476348 (N.D. Cal. Feb. 14, 2012) (J. Alsup) ....................25

*Castaneda v. Burger King Corp.*,
No. C 08-04262 WHA, 2010 WL 2735091 (N.D. Cal. July 12, 2010 (J. Alsup) ....................25

*Caudle v. Sprint/United Mgmt. Co.*,
No. C 17-06874-WHA, 2019 WL 6841239 (N.D. Cal. Dec. 16, 2019) (Alsup, J.) .....11, 12, 25

*Comacho v. Bridgeport Fin., Inc.*,
523 F.3d 973 (9th Cir. 2008) ....................................................................................................24

*Esparza v. Smartpay Leasing, Inc.*,
No. C 17-03421 WHA, 2020 WL 465865 (N.D. Cal. Jan. 28, 2020) (Alsup, J.) ....................28

*Etter v. Allstate Ins. Co.*,
No. C 17-00184 WHA, 2018 WL 5791883 (N.D. Cal. Nov. 4, 2018) (Alsup, J.) ..................28

*Ferland v. Conrad Credit Corp.*,
244 F.3d 1145 (9th Cir. 2001) ...................................................................................11, 12, 14

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ..........................................................................................6, 12, 13

*Harris v. Marhoefer*,
24 F.3d 16, 19 (9th Cir. 1994) .................................................................................................26

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ..............................................................................................................11, 19

*Il Fornaio (Am.) Corp. v. Lazzari Fuel Co. LLC*,
No. C 13-05197 WHA, 2015 WL 2406966 (N.D. Cal. May 20, 2015) (Alsup, J.) .................13

*In re Anthem, Inc. Data Breach Litig.*,
   No. 15-md-02617-LHK, 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ................................25

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935, 941 (9th Cir. 2011)..........................................................................12

*In re Capacitors Antitrust Litig.*,
   No. 14-cv-03264, 2018 WL 4790575 (N.D. Cal. Sept. 21, 2018) ............................26

*In re Cellphone Fee Termination Cases*,
   186 Cal. App. 4th 1380 (2010) ..............................................................................27

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
   No. 1:17-MD-2800-TWT, 2020 WL 256132 (N.D. Ga. Jan. 13, 2020)..................23

*In re Lenovo Adware Litig.*,
   No. 15-md-0624, 2019 WL 1791420 (N.D. Cal. Apr. 24, 2019).............................27

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..........................................................19, 26

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995)....................................................................................20

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
   No. 16-md-02752-LHK, 2020 WL 4212811 (N.D. Cal. July 22, 2020)...........25, 26

*Indirect Purchaser Class v. Erwin (In re Optical Disk Drive Prods. Antitrust Litig.)*,
   959 F.3d 922, 930 (9th Cir. 2020)..........................................................................24

*Kim v. Space Pencil, Inc.*,
   No. C 11-03796 LB, 2012 WL 5948951 (N.D. Cal. Nov. 28, 2012).......................21

*Lewis v. Silvertree Mohave Homeowners' Assoc., Inc.*,
   No. C 16-03581-WHA,
   2017 WL 5495816 (N.D. Cal. Nov. 16, 2017) (Alsup, J.)..................12, 13, 24, 25

*Littlejohn v. Copland*,
   819 F. App'x 49 (9th Cir. 2020) ....................................................................5, 11, 21

*Luna v. Marvell Tech. Grp.*,
   No. C 15-05447 WHA, 2018 WL 1900150 (N.D. Cal. Apr. 20, 2018) (Alsup, J.)...........11, 26

*Perdue v. Kenny A. ex rel. Winn*,
   559 U.S. 542 (2010)................................................................................................12

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009).................................................................19, 20, 27

*Schwarz v. Sec'y of Health & Human Servs.*,
    73 F.3d 895 (9th Cir. 1995)...................................................................................24

*Steiner v. Am. Broad Co.*,
    248 F. App'x 780 (9th Cir. 2007) ........................................................................23

*Vallabhapurapu v. Burger King Corp.*,
    No. C 11-0067 WHA, 2012 WL 5349389 (N.D. Cal. Oct. 26, 2012) (J. Alsup) ....................25

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002).................................................................................20

*Wren v. RGIS Inventory Specialists*,
    No. 06-cv-05778-JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011),
    *supplemented*, No. 06-cv-05778-JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011)............26

**Rules**

Fed. R. Civ. P. 12(b)(1) ....................................................................................................8

Fed. R. Civ. P. 12(b)(6) ....................................................................................................8

Fed. R. Civ. P. 16(a) .......................................................................................................14

Fed. R. Civ. P. 16(b) .......................................................................................................14

Fed. R. Civ. P. 23(b)(2) ................................................................................................9, 10

Fed. R. Civ. P. 23(b)(3) ....................................................................................................9

Fed. R. Civ. P. 23(c)(4) .....................................................................................................9

Fed. R. Civ. P. 23(h) .......................................................................................................11

Fed. R. Civ. P. 26(a) .......................................................................................................14

Fed. R. Civ. P. 26(a)(2) ...................................................................................................14

Fed. R. Civ. P. 26(f) .......................................................................................................14

Fed. R. Civ. P. 37(a) .......................................................................................................14

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on April 8, 2021, or as soon thereafter as he may be heard, Plaintiff Stephen Adkins will move the Court for an order awarding attorneys' fees and litigation costs to Class Counsel and a service award to the Class Representative. This motion is based upon the following memorandum of points and authorities and the contemporaneously filed declarations of Class Counsel, Class Representative Stephen Adkins, and Consulting Expert Randi Ellis.[1]

## I.   INTRODUCTION

This litigation arose out of a security flaw that exposed millions of individuals' personal information created and stored on Facebook, Inc.'s ("Facebook") worldwide social media platform. That flaw involved highly sought-after Access Tokens (the "keys" to authenticating users' access to Facebook's platform). The proposed Amended Settlement—reached after hard-fought litigation and an arms-length mediation spearheaded by Chief Magistrate Judge Spero—fully resolves the litigation by requiring Facebook to implement and maintain various Security Commitments that substantially improve the protection of users' personal information. Though the Class definition was limited to users within the United States, Class Counsel's efforts and the resulting relief directly impact most of Facebook's estimated 2.38 billion users against further security breaches.[2]

Moreover, Class Counsel secured five years of post-settlement oversight by an unbiased, independent expert to ensure the ongoing effectiveness and implementation of Facebook's Security Commitments. *See* ECF No. 297-7, Exhibit 1. This outcome therefore leaves an historic impact on Facebook's security measures, in large part due to Class

---

[1]   All capitalized terms herein are defined in the Amended Settlement Agreement and Release ("Amended Settlement") (ECF No. 297-7), unless otherwise noted.

[2]   *See, e.g.*, Andrew Hutchinson, *Facebook Reaches 2.38 Billion Users, Beats Revenue Estimates in Latest Update*, Social Media Today (Apr., 24, 2019), https://www.socialmediatoday.com/news/facebook-reaches-238-billion-users-beats-revenue-estimates-in-latest-upda/553403/.

Counsel's litigation and mediation efforts and strategies, Plaintiff Adkins's intimate involvement in the litigation, and this Court's careful management of the matter.

Class Counsel devoted significant time, expenses, and energy to litigate against Facebook (one of the largest and wealthiest companies in the world) and its skilled outside counsel (known for their aggressive litigation tactics). Without a team of nationally recognized class action litigators representing the Class, this momentous result would not have been possible. Class Counsel's efforts are set forth below and described in detail in the accompanying Joint Declaration of Class Counsel in Support of Motion for Final Approval of the Settlement and Award of Attorneys' Fees, Litigation Costs, and Service Award ("Jt. Decl."). Suffice it to say, Class Counsel assumed significant financial risks in prosecuting this case and worked diligently and relentlessly to achieve the substantial Security Commitment benefits for the Class. The team of skilled litigators pursued, analyzed, and digested complex information at every turn, and they quickly developed a deep understanding of the technology and security issues at play—all under a condensed pre-trial schedule.

The significant results achieved here—including five years of ongoing oversight and the substantial improvements to Facebook's security practices and procedures—merit an award of attorneys' fees in the amount of $10,700,000. This fee award reflects a modest multiplier of 1.253 and comports with this Circuit's long-standing practice to employ a lodestar calculation when valuable injunctive relief is secured.[3] *See* Jt. Decl. ¶¶ 125-157 and Exhibits 2, Tab B, Exh. 3, Tab B, Exh. 4, Tab B, and Exhs. 5-18 attached thereto. *See Littlejohn v. Copland*, 819 F. App'x 491, 493–94 (9th Cir. 2020) (attorneys' fees properly

---

[3]    The multiplier has been applied to Class Counsel's lodestar through December 31, 2020.  Ultimately, the multiplier will be reduced as additional time and effort have been and will continue to be expended by Class Counsel relating to Plaintiff's Motion for Final Approval of Settlement (inclusive of briefing and the anticipated hearing) and in connection with their prospective monitoring of Facebook's Security Commitments over the next 5 years.

awarded when court determines injunctive relief to valuable); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (*overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)) (courts employ lodestar analysis in injunctive relief class actions "because there is no way to gauge the net value of the settlement or any percentage thereof").

Co-Lead Counsel tracked and diligently reviewed all Class Counsel's time and expenses in accordance with the filed Time and Expense Reporting Protocol for Plaintiffs' Firms. *See* ECF No. 72-6. To the extent any entries were inconsistent with the Protocol or Co-Lead Counsel's expectations, Co-Lead Counsel required corrections or rejected certain entries that failed to meet the standards for specificity, authority, or reasonableness. *See* Jt. Decl. ¶¶ 103-112. Of particular importance, in preparation for the instant filing, Class Counsel retained Randi Ellis as a consulting expert to review Class Counsel's aggregate time and expenses to ensure the records conformed with Federal Rule of Civil Procedure 23 and relevant case law in the Northern District of California.[4] *See* Jt. Decl. ¶¶ 113-120.

Class Counsel also seek $1,210,900.75, in litigation costs that were reasonably expended during the litigation, plus a modest reserve of $15,000 for expert costs to monitor compliance with the Amended Settlement through the five-year period. As detailed herein, Class Counsel engaged in significant discovery efforts, including travel to depositions in both the United States and the United Kingdom, and retained leading experts to help prosecute the case. The costs sought herein are therefore well within the margin of reasonableness in a complex data breach class action.

---

[4]    Class Counsel retained Randi Ellis to serve in this capacity based on her experience serving as a Court-Appointed Liaison or Special Master in MDLs or mass tort litigation for common benefit fee allocations. *See* Jt. Decl., ¶ 159, Exhibit 20 (Declaration of Randi Ellis in Support of Class Counsel's Motion for Attorneys' Fees, Litigation Costs, and Service Award ("Ellis Decl.")).

Finally, Class Counsel seek a Service Award of $5,000 for Plaintiff Stephen Adkins. Plaintiff was intimately involved in all aspects of the litigation, responded to multiple sets of written discovery, permitted the forensic inspection of his cell phone, prepared and sat for *two* depositions, and used his vacation time to travel from Michigan to attend the mediation in San Francisco. As further evidence of his commitment to this litigation, Plaintiff remains in regular contact with Class Counsel. Despite this Court's reluctance to award a larger service award, Plaintiff here played a critical role in helping to achieve *meaningful injunctive relief* for most of Facebook's estimated 2.38 billion global users. Conservatively, Plaintiff spent in excess of 65 hours participating in discovery and in-person mediation—making a $5,000 award entirely appropriate. *See* Jt. Decl. ¶1 60, Exhibit 21 (Declaration of Stephen Adkins in Support of Plaintiff's Motion for Attorney's Fees, Litigation Costs, and Service Award) ¶¶ 1-17.

## II.   PROCEDURAL HISTORY OF THE LITIGATION

### A.   Brief Factual Background of the Breach

On September 28, 2018, Facebook disclosed a data breach (the "Breach") affecting the personal information of an estimated 29 million people. *See* First Amended Consolidated Complaint, ECF No. 263 ¶¶ 6, 93; ECF No. 97 (First Declaration of Facebook's Christopher Bream) ¶ 9. The compromised information included names, birthdates, current cities, hometowns, and various other data points. *See* ECF No. 263 ¶ 102; ECF No. 97 ¶ 11. Attackers exploited vulnerabilities in Facebook's software that allowed them to generate and use highly permissioned access tokens. ECF No. 263 ¶ 95; ECF No. 97 ¶ 9. Facebook's access tokens are digital credentials that can be used to query data from a user's account without reentering their username and password. ECF No. 263 ¶¶ 95, 97; ECF No. 97 ¶¶ 10, 17 n.8.

1

### B.       The Complaints and Rule 12 Motion Practice

After Facebook announced the Breach, several plaintiffs filed suit in this Court. On November 2, 2018, prior to consolidation of pending cases or the appointment of lead counsel, the Court issued a Notice Re Tutorial ordering counsel to conduct a public tutorial on the information related to the case, including data privacy and the technology used both to protect and attack it. The Tutorial proceeded on January 9, 2019. Jt. Decl. ¶ 12; *see* ECF Nos. 29, 38, 65. On January 10, 2019, the Court issued its Initial Case Management Order, consolidating over a dozen actions and setting forth the pre-trial schedule. ECF No. 67.

On February 7, 2019, Plaintiff and four other plaintiffs (through later-appointed interim lead and Class Counsel) filed the Consolidated Amended Complaint ("CAC"). ECF No. 76. The CAC alleged causes of action for breach of express contract, breach of implied contract, breach of the implied covenant of good faith and fair dealing, and a quasi-contract claim; negligence and negligence per se; violations of California's Unfair Competition Law and California Consumer Legal Remedies Act; breach of confidence; and declaratory judgment. *Id.* On March 14, 2019, Facebook filed a Motion to Dismiss under Rules 12(b)(1) and 12(b)(6). ECF No. 96. On June 21, 2019, the Court granted in part and denied in part Facebook's Motion to Dismiss, with leave to amend. ECF No. 153. Among other things, the Court held Plaintiff Adkins suffered an injury in fact and thus had standing through plausible allegations of the increased risk of future identity theft and his loss of time, ECF No. 153, at 9-12. The Court denied Facebook's Motion to Dismiss Plaintiff's claims for negligence and declaratory judgment. *Id.* at 16-17, 19.

On July 18, 2019, Plaintiff moved to amend and file a First Amended Consolidated Complaint ("FACC") to replead some of the claims rejected by the Court. ECF No. 160. On August 9, 2019, the Court granted in part and denied in part Plaintiff's Motion to Amend and file the FACC, again permitting the negligence and declaratory relief claims to move forward. ECF Nos. 185, 263.

### C.      Brief Summary of Discovery

Before, during and after the Rule 12 motion practice, Class Counsel engaged in an independent investigation, negotiated with Facebook as to the early production of certain core documents, and served extensive written discovery. Jt. Decl. ¶ 61. Plaintiffs' counsel reviewed tens of thousands of highly technical documents, many of which included source code and discussions related thereto. From March 2019 to January 2020, Class Counsel took depositions of 17 current and former Facebook employees and two Facebook experts. Class Counsel defended six depositions, Plaintiff Adkins (***twice***), and Plaintiff's three experts (one expert ***twice***), thus defending a total of 9 depositions. Jt. Decl. ¶¶ 71-83, 92. The depositions necessitated travel to Menlo Park, CA; Seattle, WA; Detroit, MI; New York, NY; Boston, MA; and London, UK. Class Counsel had retained four experts to assist with preparing for these offensive depositions and establishing liability and damages, whose efforts culminated in four declarations, three expert reports, and four depositions. Jt. Decl. ¶¶ 44-49. Both sides aggressively pursued discovery and brought disputes to Magistrate Judge Corley when necessary. Jt. Decl. ¶¶64-70; *see* ECF Nos. 151, 170, 178.

### D.      Class Certification and *Daubert*

Class Counsel developed and used their robust record of Facebook's security practices before and after the Breach to support the class certification motion. Plaintiff maintained that Facebook failed to correct coding vulnerabilities and security risks and did not react quickly enough once they became aware of the Breach. ECF No. 268. Plaintiff sought class certification pursuant to Rules 23(b)(3) (seeking a damages class for lost PII value and credit monitoring), 23(c)(4) (issue certification regarding common liability issues), and 23(b)(2) (regarding injunctive relief on a host of Facebook's security procedures and authentication infrastructure). ECF No. 268. Facebook opposed the motion for class certification in its entirety, disputing Plaintiff's factual assertions, revisiting its Article III standing argument, and moving to strike two damage experts (Messrs. Van Dyke and

Ratner). ECF Nos. 213-14, 242, 262, 264-67. Due to the sensitive and private nature of much of the evidence submitted in the class certification briefing, Plaintiff filed accompanying administrative motions to seal portions of the record. Following a November 6, 2019 oral argument on class certification and the *Daubert* motions, the Court granted Facebook's motion to exclude expert Van Dyke, denied the motion to exclude expert Ratner, and certified an injunctive relief class pursuant to Fed. R. Civ. P. 23(b)(2). Jt. Decl. ¶¶ 57-59. ECF Nos. 253, 260. On January 6, 2020, the Court granted the parties' motion to narrow the certified class to U.S. users only and alter the notice requirement to remove the requirement of first-class mail notification. Jt. Decl. ¶ 60; ECF No. 271.

### E. Settlement Negotiations

The Court scheduled an initial mediation session for the parties with Chief Magistrate Judge Spero for December 11, 2019, which was rescheduled to January 8, 2020, to accommodate the Court and the parties' respective schedules. ECF Nos. 100, 258. With a class certified and trial scheduled to begin just four months later on May 18, 2020, the parties engaged in preliminary settlement discussions on behalf of the certified class and continued to press on in litigation. The parties submitted mediation briefs to Chief Magistrate Judge Spero and exchanged the briefs. On January 8, 2020, the parties, including Plaintiff Adkins, attended a settlement conference in San Francisco and discussed potential security commitments Facebook could make as part of a settlement resolution. Based on these discussions, and with the assistance of Plaintiff's expert, Mary Frantz, and Facebook's subject-matter experts, the parties negotiated a set of security commitments that comprehensively address the security risks exposed in the Breach, provide strong protection against the risk of any similar attack in the future, and offer flexibility with the rapid-changing nature of technology. Jt. Decl. ¶¶ 93-95.

On February 7, 2020, Plaintiff filed his Motion for Preliminary Approval and to Direct Notice of Settlement detailing the terms of the Settlement Agreement. ECF No. 281.

The Court held a hearing on March 5, 2020, to further review and discuss the Motion for
Preliminary Approval and to Direct Notice of Settlement and its attachments and ordered the
parties to clarify and amend certain aspects of the Settlement Agreement. ECF Nos. 289, 291.
On March 26, 2020, Plaintiff filed a Supplemental Brief in Support of Settlement and
Preliminary Approval, ECF No. 297, attaching the Amended Settlement Agreement and
Release. ECF No. 297-3. On November 4, 2020, the Court held a status conference and
further discussed the proposed Settlement. On November 15, 2020, the Court granted
preliminary approval of the Settlement. ECF No. 314. In accordance with the Order granting
preliminary approval, the notice to the class was completed by December 30, 2020. *See*
Declaration of Steven Weisbrot in Support of Motion for Final Approval of the Settlement
and Award of Attorneys' Fees, Litigation Costs and Service Award, ¶¶ 98-102.

## III.   ARGUMENT

### A.   Legal Standard

Rule 23(h) provides that parties may agree to an award of reasonable attorneys' fees
and nontaxable costs in a certified class action. Fed. R. Civ. P. 23(h). A district court must
ensure that the attorney's fees are "fair, adequate, and reasonable" even if the parties have
entered into a settlement agreement that provides for those fees. *Caudle v. Sprint/United
Mgmt. Co.*, No. C 17-06874-WHA, 2019 WL 6841239, at *4 (N.D. Cal. Dec. 16, 2019)
(Alsup, J.) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 963–64 (9th Cir. 2003)); *Luna v.
Marvell Tech. Grp.*, No. C 15-05447 WHA, 2018 WL 1900150, at *3 (N.D. Cal. Apr. 20,
2018) (Alsup, J.) (same). As the Ninth Circuit has affirmed, where injunctive relief is the sole
recovery sought for approval, attorneys' fees are properly awarded when the court
determines the injunctive relief is valuable. *Littlejohn*, 819 F. App'x at 493–94.

Each case requires a fact-sensitive analysis of the attorneys' fees, costs, and expenses
when employing the lodestar analysis. *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149
n.4 (9th Cir. 2001) (per curiam) (citations omitted); *Hensley v. Eckerhart*, 461 U.S. 424, 429

(1983). A "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (citing *Staton*, 327 F.3d at 965); *Ferland*, 244 F.3d at 1149 n.4. "Although in most cases, the lodestar figure is presumptively a reasonable fee award, the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it." *Ferland*, 244 F.3d at 1149 n.4.

This Court has recognized that those "additional considerations include 'the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.'" *Lewis v. Silvertree Mohave Homeowners' Assoc., Inc.*, No. C 16-03581-WHA, 2017 WL 5495816, *3 (N.D. Cal. Nov. 16, 2017) (Alsup, J.) (quoting *In re Bluetooth*, 654 F.3d at 941 (citations and quotations omitted in original)) (civil rights lawsuit where courts use lodestar method to calculate attorneys' fees). The examination of fees allows for an adjustment by an appropriate multiplier reflecting those considerations. *See Caudle*, 2019 WL 6841239, at *5 (recognizing that substantial risk of nonpayment in contingency case inures to the benefit of class counsel).

The reasonableness of an hourly rate should be determined based on the rates prevailing in the community for "lawyers of reasonably comparable skill, experience and reputation." *Lewis*, 2017 WL 5495816, at *3 (quoting *Blum v. Stenson*, 465 U.S. 886, n.11 (1984). Accordingly, the Northern District of California is the appropriate district for an analysis of attorneys' hourly rates in this litigation. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010); *see also Caudle*, 2019 WL 6841239, at *5 (finding rates approved in the district and those presented in the Laffey Matrix as acceptable).

### B.     Class Counsel's Request for Attorneys' Fees Is Reasonable

For injunctive relief class actions, "courts often use a lodestar calculation because there is no way to gauge the net value of the settlement or any percentage thereof." *Hanlon*, 150 F.3d at 1029. The lodestar calculation begins with the multiplication of the number of hours reasonably expended by a reasonable hourly rate. *Blum*, 465 U.S. at 897. The hours expended and the rate should be supported by adequate documentation and other evidence; thus, attorneys working on cases where a lodestar may be employed should keep records and time sheets documenting their work and time spent. The resulting figure may be adjusted upward or downward to account for several factors including "the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Hanlon*, 150 F.3d at 1029.

### 1.     Class Counsel's lodestar is reasonable, justified, and adequately documented.

Class Counsel and the other lawyers in the case have been diligent in their timekeeping, submitting time entries each month in accordance with a timekeeping protocol. ECF No. 72-6; Jt. Decl. ¶¶ 103-105. Consistent with this Court's concerns articulated in other class cases, Class Counsel were sensitive to overstaffing, redundancy, and excessive charges, and they provided reasonable, detailed time entries eschewing unnecessarily vague and inefficient time, *see, e.g., Il Fornaio (Am.) Corp. v. Lazzari Fuel Co. LLC*, No. C 13-05197 WHA, 2015 WL 2406966, at *4 (N.D. Cal. May 20, 2015) (Alsup, J.), and ensured that any "block billed" entries "contain sufficient detail to determine whether billing for the combined tasks was reasonable." *Lewis*, 2017 WL 5495816, at *4 (citing *Jackson v. City of Pittsburg*, No. C 09-01016 WHA, 2013 WL 3187326, at *3 (N.D. Cal. June 21, 2013) (Alsup, J.)). Jt. Decl. ¶¶ 106-112. Further, Class Counsel retained Randi Ellis as a consulting expert to review Plaintiffs' counsel's aggregate time and expenses in preparation for the final approval and fee application filings to ensure the records conformed with Federal Rule of

Civil Procedure 23 and the case law in the Northern District of California. *See* Jt. Decl. ¶159, Exhibit 20 (Ellis Decl., ¶¶1-15).

Due to the complexities of the legal issues, the unique and proprietary technology involved, the sensitive personal information at issue, and the accelerated pre-trial schedule set by the Court, each litigation step in the case had to be choreographed carefully and skillfully. Compliance with procedural requirements such as counsel meet-and-confer sessions, Fed. R. Civ. P. 16(b), ESI and written-discovery plan conferences, Fed. R. Civ. P. 26(f), scheduling conferences, Fed. R. Civ. P. 16(b), initial disclosure requirements, Fed. R. Civ. P. 26(a), multi-step processes for discovery disputes, Fed. R. Civ. P. 37(a), pretrial conferences, Fed. R. Civ. P. 16(a), and expert witness reports, Fed. R. Civ. P. 26(a)(2), all mandated careful fulfilment of the attorneys' responsibilities. *See Ferland*, 244 F.3d at 1150-51. Jt. Decl. ¶¶ 25, 37, 42, 67.

Class Counsel, complemented by other lawyers in the case, spent over 12,335.70 hours over the past two years litigating this case, calculating to $8,536.172.70 in lodestar. . The accompanying Joint Declaration reports in detail on the specifics of each of the work segments of the case—explaining the legal issues and work involved, the professionals needed to complete it, and the value added to the class because of the work done. Class Counsel's time in this case includes:

- Case Management (Inception to present)
- Case Investigation and Client Vetting (Pre-appointment (not included in lodestar) – Settlement)
  - o Early retention and consultation with Experts
  - o Preparation and Maintenance of the Wiki White Paper
  - o Ongoing Communications with Class Members
- Tutorial for the Court (November 2018 – January 9, 2019)
- Drafting Pleadings (December 2018 – July 2019)

- Initial Disclosures and coordination with Experts to comply with Court's Order
- Consolidated Amended Complaint
- First Amended Consolidated Complaint
- Electronic Discovery/Protective Order Negotiation (January 2019 – May 2019)
- ESI Protocol
- Protective Order/Confidentiality Agreement/Clawback
- Expert Work (Pre-Appointment – Present)
  - Retention, Preparation and Presentation for 1/09/19 Court Tutorial
  - Expert Coordination for Initial Disclosures
  - Expert Reports
  - Expert Depositions (offensive and defensive)
  - Expert Declarations for Class Certification
  - Expert Assistance throughout case for assistance with liability issues, source code inspections, and class-wide damages methodologies
- Dispositive Motion Practice (January 2019 – November 2019)
  - Motions to Dismiss (two rounds)
- Class Certification Motion (March 2019 – November 2019)
  - Rule 23(b)(2) Injunctive Class Certified
- *Daubert* Motion Practice (January 2019 – November 2019)
  - Briefed three *Daubert* challenges, two successfully
- Offensive Discovery (December 2018 – January 2020)
  - Written Discovery
  - Document Management, Review and Analysis
  - Discovery Motion Practice/Meet and Confer Steps
    - Hearing before Magistrate Judge Corley on July 1, 2019
  - Depositions – 18 fact witnesses and two expert witnesses

- Defensive Discovery (February 2019 – November 2019)
    - o Written Discovery
    - o Data collection review and productions
    - o Document review and productions
    - o Depositions and preparation
    - o Discovery Motion Practice/Meet and Confer Steps
        - ▪ Hearing before Magistrate Judge Corley on August 8, 2019
- Settlement Discussions/Mediation (November 2019 – March 2020)
    - o Mediation Briefing, In-Person Mediation, Follow Up discussions with Facebook and Magistrate Judge Spero
    - o Strategizing among Co-Lead Counsel and retained experts and negotiating with Facebook to reach Resolution
- Settlement Documentation (March 2020 – Present)
    - o Settlement Agreement
    - o Preliminary Approval Documentation
    - o Amended Settlement Agreement
- Notice and Website
- Final Approval Documentation

Jt. Decl. ¶¶ 125-157.

Consistent with the Time and Expense Protocol (ECF No. 72-6), interim Co-Lead Counsel (later appointed Class Counsel) exercised billing judgment and carefully reviewed and deducted time entries from all firms—including their own—related to work performed pre-appointment that did not contribute to the recovery. Jt. Decl. ¶¶ 103-105. Additionally, Class Counsel spent hundreds of attorney hours reviewing time entries, communicating with reporting counsel and deleting entries that were duplicative, vague, inefficient, or block-

billed without sufficient detail. *Id.* ¶¶ 106-110. Importantly, Class Counsel do *not* seek reimbursement for the attorney hours spent reviewing, clarifying and/or reducing time and ensuring descriptions and task codes provided sufficient detail for this Court's consideration. Nor do they seek reimbursement of the cost associated with the retention of consulting expert Ellis.

Class Counsel also operated as efficiently as possible throughout the entire litigation. Class Counsel staffed depositions with no more than two attorneys, often using the travel time to the depositions to further prepare for the depositions and using the return travel time to discuss the results of the depositions and how the testimony would advance the litigation.[5] Jt. Decl. ¶¶ 74, 77, 79. Further, Class Counsel appropriately staffed hearings and arguments with no more lawyers than Facebook—often fewer. *Id.* ¶¶ 70, 86. Plus, respectful to the Court's championing of involving junior lawyers in crucial litigation roles, Class Counsel staffed depositions and hearings with junior lawyers at lower billing rates when possible. These junior attorneys had prominent roles—including helming the January 9, 2019 Tutorial, often taking depositions, or arguing before the Court. Jt. Decl. ¶¶ 13, 30.

Additionally, over the next five years, Class Counsel expect to spend additional time and effort monitoring the oversight and review of any modifications to the Facebook Security Commitments. The Amended Settlement provides that for five years from entry of final judgment, Facebook's Security Commitments will be assessed annually by an independent third-party vendor. Then, the results will be provided to Class Counsel, a third-party expert to verify Facebook's compliance with those Security Commitments, and the Court. ECF No. 297-7 §§ 2.1-2.5. If there are technological or industry developments, or intervening changes in law, which render any provision of the Amended Settlement Agreement obsolete or make its compliance unreasonable or technically impractical, Facebook will provide notice to Class

---

[5] Facebook often staffed the same depositions with as many as four attorneys.

Counsel and provide a modification thereof. *Id.* § 2.5. If the parties reach agreement, they will either jointly petition the Court to eliminate or modify such a provision or, if the parties fail to reach an agreement, Facebook may petition the Court and Class Counsel may oppose it. *Id.*

At present, there is no disagreement on the modernity of the Security Commitments. But the Amended Settlement contemplates Class Counsel will have an ongoing obligation to review and ensure the annual assessments confirm the Security Commitments are sufficient and that no technological, industry developments, or intervening changes render them obsolete. The continuing goal for this review is to ensure users' security is achieved.

In sum, Class Counsel met the challenges of this case with skilled and efficient resources and achieved an extraordinary outcome within less than two years from the initial filing, just one year after the Tutorial, and just four months before trial was set to begin. Class Counsel: filed two consolidated complaints, defeated an extensively briefed motion to dismiss (including supplemental briefing), advanced a motion to amend with further dismissal arguments, filed two discovery motions, conducted numerous meet-and-confer conferences, vigorously pursued complex discovery—including highly technical data and depositions and sophisticated experts, certified a contested injunctive class, delivered substantive data security changes, and secured five years of independent oversight of Facebook's Security Commitments.

Class Counsel also spent significant time and effort preparing for and mediating this matter with the assistance of Chief Magistrate Judge Spero. The January 2020 mediation sessions, in fact, resulted in an additional confirmatory deposition of Facebook's engineering manager in London, U.K. Class Counsel engaged in intense ongoing negotiations with Facebook, with the assistance of experts from both sides, to further bolster the settlement that was originally presented to the Court to achieve what has now been memorialized in the

Amended Settlement, which the Court ultimately preliminarily approved on November 15, 2020.

### 2. The results achieved, skill required, and quality of the legal representation.

Class Counsel request that the Court consider first the factors that assess how the injunctive relief in this Amended Settlement compares to the obstacles Class Counsel faced: the results achieved by Class Counsel, the complexity of the case, and the litigation risks assumed.

By any measure, the results achieved here are excellent. As set forth in the Order Granting Preliminary Settlement Approval, "[T]he proposed settlement imposes a battery of security commitments to prevent future similar attacks. Facebook will certify that the vulnerability exploited in the Breach has been eliminated, that it is no longer possible to generate access tokens in the manner that was done in the Breach, and that all access tokens generated through the vulnerability have been invalidated." ECF No. 314 at 3. These results were not easily achieved. Facebook was well represented, and its legal defenses were formidable. Yet Class Counsel secured important rulings at various stages of the case, through hard work and skill. This includes the first motion to dismiss, which addressed complex legal questions about standing and injury-in-fact (*See* ECF No. 153 at 8-12 (Order Granting in Part and Denying in Part Motion to Dismiss)), advancing the FACC (ECF No. 193), successfully defeating two of three *Daubert* challenges, and certifying a Rule 23(b)(2) injunctive relief class (ECF No. 260).

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (Conti, J); *see also Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (the "most critical factor" in considering the reasonableness of a fee request is the "degree of success obtained"). There is no "particular formula by which th[e] outcome [of litigation]

must be tested." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Rather, the Court's assessment of the likelihood of success is "nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Id.* (citations and quotations omitted). "Nonmonetary benefits conferred by the litigation are a relevant circumstance" for evaluating a fee award. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1049 (9th Cir. 2002) (citing *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 395 (1970); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995)).

Here, Facebook has agreed to meaningful injunctive relief because of Class Counsel's efforts. *This relief was not implemented by Facebook due to any prior legal order, including any prior regulatory or civil settlement.* ECF No. 300 (Second Declaration of Facebook's Christopher Bream) ¶ 3. Facebook has developed, voluntarily agreed to, and implemented the following Security Commitments:

1) running integrity checks on session updates for signs of account compromise;

2) monitoring for suspicious patterns of access token generation and use;

3) tools for promptly containing a security incident involving the improper issuance of access tokens;

4) automatic alerts for suspicious activity observable in user growth metrics;

5) limiting capabilities of applications that rely on access tokens;

6) eliminating the "NoConfidence authentication proofs" that permitted the Breach to occur;

7) expanding logging of generation and use of access tokens. ECF No. 300 ¶¶ 4, 10(a)-(g).

Additionally, Facebook has improved upon and agreed to continue the following Security Commitments:

8) undergoing annual security assessment; and

9) facilitating board oversight of cybersecurity, with at least one security executive employed by Facebook with direct reporting authority and obligations to Facebook's Board of Directors.

ECF No. 300 ¶¶ 4, 11(a)–(b).

Without doubt, Plaintiff's litigation prompted Facebook's significant and expeditious improvements to its security practices, and the Amended Settlement secures and guarantees these Security Commitments will continue for five years after final judgment is entered. The injunctive relief provides tangible relief for Facebook's users and impacts virtually every Facebook user worldwide—estimated to be over two billion users. Moreover, the Amended Settlement does not in any manner restrict or release Settlement Class Members' ability to pursue individual damage claims. *See Kim v. Space Pencil, Inc.*, No. C 11-03796 LB, 2012 WL 5948951, at *6 (N.D. Cal. Nov. 28, 2012) (Beeler, M.J.); *Littlejohn*, 819 F. App'x at 493 ("[w]hile this settlement does not include monetary relief for the class, it stops the allegedly unlawful practices, bars Defendant from similar practices in the future, and does not prevent the class members from seeking legal recourse.").

This case required the highest level of litigation and trial experience, as well as keen case-management skills considering the complex data-breach security matters litigated against one of the largest and most influential technology companies in the world and in accordance with the rigorous schedule and expectations set by this Court. Class Counsel include attorneys recognized by the bench and bar nationally for their extensive experience in class actions and data breach cases in particular. Jt. Decl. ¶¶ 1-3. Consistent with this Court's mandate, Class Counsel strived to provide junior lawyers opportunities to serve, when and where practical. Supporting counsel outside of the appointed firms were also well-credentialed, as established in their respective declarations filed herewith. *See* Jt. Decl. ¶ 138 and Exhs. 5-18. Building on the entirety of the experience of Class Counsel, supported by

their talented colleagues, Plaintiff and the Settlement Class were represented by experienced and skilled attorneys comparable to Facebook's counsel in this case.

### 3. The complexity and novel issues presented in this case support the requested attorneys' fees.

At their core, the issues presented here were novel due to the *nature of* the Breach and the personal information at issue. Most data-breach cases tend to involve infiltration of systems and sub-systems, with exfiltration of uniform dataset(s)—*e.g.*, login credentials, payment card-related data, protected health information—among other uniform arrays. Here, the Breach resulted from three discrete vulnerabilities permitting access to user profiles and various amounts of personal information relatively inimitable to Facebook's platform. Further, the core issues of this litigation were inherently highly technical, including Facebook's cybersecurity and industry practices and the relevant data, which required significant work by experts whose fees and expenses Class Counsel advanced. Class Counsel engaged two industry experts to aid them in understanding and distilling the complex security information at the core of the Breach, and ultimately, at the core of the Amended Settlement. Very early in the litigation, before Class Counsel were appointed as interim Co-Lead counsel, Class Counsel worked with Plaintiff's experts, who testified at the January 9, 2019 Court-ordered Tutorial to inform the Court of the nature and scope of data breaches and what was known about Facebook's Breach at the time. These industry experts reviewed documents, assisted in preparation of deposing technical and specialized professionals, and ultimately supported class certification and persuasively detailed Facebook's liability for the Breach.

In determining the appropriateness of a fee award, courts consider the opposite side of the results—risk. The amount of the fee depends, in part, on whether and to what degree "class counsel ran the risk of not being paid at all." *Steiner v. Am. Broad Co.*, 248 F. App'x 780 n.2 (9th Cir. 2007). Almost all class actions involve high levels of cost, risk, and lengthy

duration without payment in the interim, and this litigation certainly is no exception. Overall, the case had considerable risk because the legal issues were complex and uncertain. "The law in data breach litigation remains uncertain and the applicable legal principles have continued to evolve. . . ." *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800-TWT, 2020 WL 256132, at *32 (N.D. Ga. Jan. 13, 2020) (Thrash, J.). Class Counsel litigated this matter diligently at all stages of litigation on an entirely contingent basis with a substantial risk of nonpayment since September 2018 and achieved the Amended Settlement within one year of appointment as interim Co-Lead Counsel and just four months before trial was scheduled to begin.

The Court has an established rule prohibiting attorneys in class actions from conducting settlement discussions until *after* the issue of class certification has been decided. Class Counsel engaged in the extensive and exhaustive pursuit of developing a detailed factual record sufficient to support—and ultimately certify—a contested class against one of the largest technology companies in the world represented by one of the most reputable law firms in the world. Class Counsel addressed the legal hurdles involved in litigation of this type—an emerging area of law with scant precedent litigated to and beyond class certification. They engaged experts, with distinct backgrounds, knowledge, and experience, to assist with reviewing and understanding the intricate and highly technical facets presented, including understanding source code, technical terminology, internet black markets, and myriad matters specific to technology and particular to data breaches of this magnitude. Class Counsel had to conduct all fact and expert discovery necessary to certify the class—all with no guarantee of any recovery for potentially years, *if at all*.

Class Counsel assumed extreme financial risks in prosecuting this case and worked diligently and relentlessly to achieve the substantial non-monetary Security Commitment benefits for the Class. The comprehensive security changes Facebook implemented as a result of the Amended Settlement required not only solid lawyering, but expeditious pursuit,

ingestion, analysis, and application of complex information and a deep understanding of technology, practices, and policies that impact social media, data security, and the novel nature of the Breach this case.

In all, these considerations support an attorney fee award upward from Class Counsel's lodestar.

### C.   The Attorney Billing Rates Requested are Reasonable and Are Consistent with Rates in the District.

An integral step in determining whether the attorneys' fee award sought is reasonable is to determine whether the hourly rates sought by counsel are reasonable. The "market rate for the particular field of law" is an important consideration. *Indirect Purchaser Class v. Erwin (In re Optical Disk Drive Prods. Antitrust Litig.*), 959 F.3d 922, 930 (9th Cir. 2020) (citing *Vizcaino*, 290 F.3d at 1048–50). "The reasonableness of an hourly rate should be determined based on the rates prevailing in the community for 'lawyers of reasonably compared skill, experience and reputation.'" *Lewis*, 2017 WL 5495816, at *4 (quoting *Blum*, 465 U.S. at n.11); *Comacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008); Manual For Complex Litigation, Fourth, § 14.122 ("The rate should reflect what the attorney would normally command in the relevant marketplace."). The relevant community is typically the community in which the district court sits. *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995).

This Court has recognized that attorneys seeking fee awards in complex litigation, like this case, "are not limited to [comparing] only the rates charged or awarded in [similar cases]. Instead, they are entitled to the rates charged by attorneys handling similarly complex federal cases in other fields as well, including, when appropriate, class actions." *Lewis*, 2017 WL 5495816, at *5 (quoting *Guerrero v. California Dep't of Corr. & Rehab.*, No. C 13-05671 WHA, 2016 WL 3360638, at *9 (N.D. Cal. June 16, 2016) (Alsup, J.)).

Here, Class Counsel request their 2019 rates ranging from $295 to $985 for lawyers and $150to $750 for law clerks, paralegals, and litigation support staff. Jt. Decl. ¶¶ 126, 131, 135. These hourly rates are set by counsel based on their own experience and on periodic reviews of the rates charged by other attorneys involved in complex litigation, and they fall within the range of rates prevailing in the relevant legal community. *See Caudle*, 2019 WL 6841239, at *5 ("In light of other rates approved in this district and those presented in the Laffey Matrix" found billable rates $350-$650 acceptable); *Vallabhapurapu v. Burger King Corp.*, No. C 11-0067 WHA, 2012 WL 5349389, at *3 (N.D. Cal. Oct. 26, 2012) (J. Alsup) (following *Castaneda v. Burger King Corp.*, No. C 08-04262 WHA, 2010 WL 2735091 (N.D. Cal. July 12, 2010 (J. Alsup), finding billable rates of $335 to $825 reasonable)); *Briggs v. United States*, No. C 07-05760 WHA, 2012 WL 476348 (N.D. Cal. Feb. 14, 2012) (J. Alsup) (order based its calculation on the actual billing rates purportedly used by counsel and supporting paralegals). *See also In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-md-02752-LHK, 2020 WL 4212811, at *26 (N.D. Cal. July 22, 2020) (approving attorney billing rates up to $900 per hour); *In re Anthem, Inc. Data Breach Litig.*, No. 15-md-02617-LHK, 2018 WL 3960068, at *17 (N.D. Cal. Aug. 17, 2018) (approving attorney billing rates up to $970).

Class Counsel and reporting firms' resumes and declarations provide additional information on the attorneys' background and experience. Jt. Decl. ¶ 138, Exhs. 5-18. Class Counsel maintain that the submissions support the 2019 billing rates.

### D.     The Requested Expenses are Reasonable.

"Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2008); *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). An itemized list of expenses by category, providing the total amount advanced for each, permits the Court to assess whether the requested expenses are reasonable. *Wren v. RGIS Inventory*

*Specialists*, No. 06-cv-05778-JCS, 2011 WL 1230826, at *30 (N.D. Cal. Apr. 1, 2011), *supplemented*, No. 06-cv-05778-JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011).

Here, Class Counsel request that the Court approve the reimbursement of $ $1,086,287.60 in litigation costs. These expenses are reasonable and adequately documented. The Joint Declaration describes and details Class Counsel's costs, broken down by category. Jt. Decl. ¶¶ 125-157, Exs.5-18 (Summaries of expense categories). These expenditures, which were vetted both by Class Counsel and consulting expert Randi Ellis, were necessary to Class Counsel's prosecution of the action and are particularly reasonable given the highly technical subject matter involved, necessitating a team of experts and consultants. Such costs are regularly billed to clients in hourly fee cases and routinely awarded in contingency fee cases. *See Blair v. Rent-A-Center, Inc.*, No. C 17-02335 WHA, 2020 U.S. Dist. LEXIS 12137, at *8-9 (N.D. Cal. Jan. 24, 2020) (J. Alsup) (expenses were "reasonable and necessary part of the litigation" and "of a type customarily billed to a fee-paying client"); *Luna*, 2018 WL 1900150, at *3 (approving over $496,000 in expenses as reasonable and necessary). *See also In re Yahoo! Inc. Customer Data Breach Litig.*, 2020 WL 4212811, at *42 (approving reimbursement of expenses related to expert witness fees, case-related travel, transcript fees, document management, copying, mailing, and serving documents, operation of a call center to respond to Settlement Class Member inquiries, electronic research, and filing and court fees); *In re Capacitors Antitrust Litig.*, No. 14-cv-03264, 2018 WL 4790575, at *6 (N.D. Cal. Sept. 21, 2018) ("Reasonable reimbursable litigation expenses include: those for document production, experts and consultants, depositions, translation services, travel, mail and postage costs." (citations omitted)); *In re Lenovo Adware Litig.*, No. 15-md-0624, 2019 WL 1791420, at *9 (N.D. Cal. Apr. 24, 2019) (reimbursing counsel's "professional service fees (experts, investigators, accountants), travel fees, and discovery-related fees").

### E.     The Requested Service Award is Reasonable.

Courts have the discretion to award service payments to class representatives "to compensate [them] for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59 (citations omitted); *In re Cellphone Fee Termination Cases*, 186 Cal. App. 4th 1380, 1394 (2010) (quoting *Rodriguez*, 563 F.3d at 958–59).

Class Counsel seek a Service Award of $5,000 for Stephen Adkins, the Plaintiff and appointed Class Representative in this case. Mr. Adkins did substantial work on behalf of the Class, including sitting for two depositions, gathering and producing documents (including substantial information on private, intimate topics, online activity across multiple platforms and numerous electronic agreements he had entered into), having his cell phone forensically imaged and certain responsive data taken from the phone produced to Facebook, communicating with Class Counsel to stay apprised of the litigation, and participating in the settlement process, including attending the mediation with Chief Magistrate Judge Spero. Mr. Adkins had to take vacation days and fly from Michigan to San Francisco to attend the January 8, 2020 mediation (Class Counsel did pay for all of Mr. Adkins' travel expenses). Mr. Adkins spent in excess of 65 hours on the case, including preparing for and testifying at the two depositions and flying to San Francisco to attend mediation with Magistrate Judge Spero. *See* Jt. Decl., Exh. 21, (Adkins Decl.) ¶ 17.

While Class Counsel recognize that this Court generally disfavors service awards, we maintain that Plaintiff Adkins's role in this case is exceptional and merits a Service Award. In accordance with this Court's rulings, service awards are especially appropriate when the class representative forgoes financial opportunities to assist with litigation. *Esparza v. Smartpay Leasing, Inc.*, No. C 17-03421 WHA, 2020 WL 465865, *3 (N.D. Cal. Jan. 28,

2020) (Alsup, J.); *Blair*, 2020 U.S. Dist. LEXIS 12137, at *8-9; *Etter v. Allstate Ins. Co.*, No. C 17-00184 WHA, 2018 WL 5791883, at *4 (N.D. Cal. Nov. 4, 2018) (Alsup, J.).

Finally, because this Settlement provides for injunctive relief and does not impact any damage calculations, Plaintiff's Service Award would not impact any class recovery or subject him to any special treatment above other Settlement Class Members' recovery.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter the accompanying proposed order awarding Settlement Class Counsel their attorneys' fees, costs, and expenses, as well as granting the requested Service Award to Plaintiff.

DATED:  February 3, 2021                    Respectfully submitted,

By:  */s/ Ariana J. Tadler*

Ariana J. Tadler *(pro hac vice)*
**TADLER LAW LLP**
One Pennsylvania Plaza, 36th Fl.
New York, New York 10119
Telephone: (212) 946-9300
atadler@tadlerlaw.com

Andrew N. Friedman *(pro hac vice)*
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
afriedman@cohenmilstein.com

John A. Yanchunis *(pro hac vice)*
**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
201 N. Franklin St., 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 2223-5402

jyanchunis@forthepeople.com

**_Appointed Class Counsel_**

**SIGNATURE ATTESTATION**

I am the ECF User whose identification and password are being used to file Plaintiff's Motion for Attorneys' Fees, Costs, and Expenses and Service Award. I, Ariana J. Tadler attest that service has been effectuated via ECF.

DATED: February 3, 2021

_/s/ Ariana J. Tadler___