LATHAM & WATKINS LLP
Elizabeth L. Deeley (CA Bar No. 230798)
  elizabeth.deeley@lw.com
Michael H. Rubin (CA Bar No. 214636)
  michael.rubin@lw.com
Melanie M. Blunschi (CA Bar No. 234264)
  melanie.blunschi@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA  94111-6538
T: +1.415.391.0600/F: +1.415.395.8095

Andrew B. Clubok (*pro hac vice*)
  andrew.clubok@lw.com
Susan E. Engel (*pro hac vice*)
  susan.engel@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D.C.  20004-1304
T: +1.202.637.2200/F: +1.202.637.2201

Serrin Turner (*pro hac vice*)
  serrin.turner@lw.com
885 Third Avenue
New York, NY  10022-4834
T: +1.212.906.1200/F: +1.212.751.4864

*Attorneys for Defendant Facebook, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| STEPHEN ADKINS, an individual and Michigan resident, on behalf of himself and all others similarly situated,<br><br>     Plaintiff,<br><br>  v.<br><br>FACEBOOK, INC.,<br><br>     Defendant. | No. C 18-05982 WHA (JSC)<br> *Consolidated Cases:*<br>No. C 19-00117 WHA<br><br>**DEFENDANT FACEBOOK, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, LITIGATION COSTS, AND SERVICE AWARD**<br><br>Date: April 8, 2021<br>Time: 8:00 a.m.<br>Court: Courtroom 12, 19th Floor<br>Hon. William Alsup |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FACEBOOK'S OPP. TO MOT. FOR
ATTORNEYS' FEES AND COSTS
CASE NO. C 18-05982 WHA (JSC)

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .................................................................................................................1

II. BACKGROUND ................................................................................................................3

    A.    The Court's Dismissal of Claims and Plaintiffs .................................................3

    B.    Class Certification for Injunctive Class and *Daubert* Motions...............................4

    C.    Settlement .........................................................................................................5

III. LEGAL STANDARD.........................................................................................................5

IV. ARGUMENT ......................................................................................................................6

    A.    Class Counsel's Billing Records Are Inadequate to Support the Fee Request.............................................................................................................6

    B.    Class Counsel's Proposed Lodestar Is Much Too High .........................................9

        1.    Class Counsel's Top-Heavy Staffing Warrants a Reduction......................9

        2.    Class Counsel's Use of Too Many Timekeepers From Too Many Firms Warrants a Reduction .....................................................................12

        3.    Work That Did Not Benefit The Class Should Be Excluded....................14

    C.    There Is No Basis for a Bonus Multiplier.............................................................20

    D.    Class Counsel Seeks Impermissible Cost Reimbursements ................................22

        1.    Most Costs Should be Eliminated for Lack of Statutory Foundation........22

        2.    No Costs Should be Awarded for Expert Witnesses Regarding Identity Theft or Damages ....................................................................24

        3.    Class Counsel Fails to Provide Adequate Documentation for Costs Sought ...................................................................................................24

V.  CONCLUSION..................................................................................................................25

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

FACEBOOK'S OPP. TO MOT. FOR
ATTORNEYS' FEES AND COSTS
CASE NO. C 18-05982 WHA (JSC)

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re Adobe Sys., Inc. Privacy Litig.*,
66 F. Supp. 3d 1197 (N.D. Cal. 2014) ...................................................................21

*In re Anthem, Inc. Data Breach Litig.*,
No. 15-02617-LHK, 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018)...........................9, 11, 21

*Bain v. Oxford Health Ins. Inc.*,
No. 15-03305-EMC, 2020 WL 1332080 (N.D. Cal. Mar. 23, 2020) ....................................12

*Beastie Boys v. Monster Energy Co.*,
112 F. Supp. 3d 31 (S.D.N.Y. 2015)......................................................................12

*In re Bluetooth Headset Prod. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ...............................................................................20

*Branco v. Credit Collection Servs.*,
No. 10-01242-MCE, 2011 WL 6003877 (E.D. Cal. Dec. 1, 2011) ......................................18

*Carbonell v. INS*,
429 F.3d 894 (9th Cir. 2005) ...............................................................................22

*Caudle v. Sprint/United Mgmt. Co.*,
No. 17-06874-WHA, 2019 WL 6841239 (N.D. Cal. Dec. 16, 2019)...................................25

*Chalmers v. City of Los Angeles*,
796 F.2d 1205 (9th Cir. 1986), *as amended on denial of reh'g*, 808 F.2d 1373
(9th Cir. 1987)...............................................................................................23

*Chambers v. Whirlpool Corp.*,
980 F.3d 645 (9th Cir. 2020) ............................................................................2, 20

*Chang v. County of Santa Clara*,
No. 15-02502-RMW, 2016 WL 6162460 (N.D. Cal. Oct. 24, 2016), *aff'd sub
nom. Shiow-Huey Chang v. County of Santa Clara*, 726 F. App'x 565 (9th Cir.
2018) ..........................................................................................................14

*Crawford Fitting Co. v. J.T. Gibbons, Inc.*,
482 U.S. 437 (1987).......................................................................................22, 23

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
2020 WL 256132 (N.D. Ga. Mar. 17, 2020).............................................................21

*Etter v. Allstate Ins. Co.*,
No. 17-00184, Dkt. 141 (N.D. Cal. Aug. 28, 2018) ......................................................6

FACEBOOK'S OPP. TO MOT. FOR
ATTORNEYS' FEES AND COSTS
CASE NO. C 18-05982 WHA (JSC)

*Etter v. Allstate Ins. Co.*,
   No. 17-00184-WHA, 2018 WL 5791883 (N.D. Cal. Nov. 4, 2018) .........................................7

*Fair Hous. Ctr. of Sw. Michigan v. Hunt*,
   No. 09-593-JGS, 2013 WL 5719152 (W.D. Mich. Oct. 21, 2013)...........................................12

*Farrar v. Hobby*,
   506 U.S. 103 (1992).........................................................................................................14

*Ferland v. Conrad Credit Corp.*,
   244 F.3d 1145 (9th Cir. 2001) .........................................................................................13

*Fischer v. SJB–P.D. Inc.*,
   214 F.3d 1115 (9th Cir. 2000) ...........................................................................................8

*Gbotoe v. Jennings*,
   No. 17-06819-WHA, 2018 WL 5981951 (N.D. Cal. Nov. 14, 2018) .................................5, 14

*Gonzalez v. City of Maywood*,
   729 F.3d 1196 (9th Cir. 2013) ................................................................................ *passim*

*Grove v. Wells Fargo Fin. Cal., Inc.*,
   606 F.3d 577 (9th Cir. 2010) ...........................................................................................22

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ...........................................................................................5

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994) ...............................................................................................23

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)............................................................................................. *passim*

*Hernandez v. Grullense*,
   No. 12-03257-WHO, 2014 WL 1724356 (N.D. Cal. Apr. 30, 2014) .......................................9

*In re HP Printer Firmware Update Litig.*,
   No. 16-05820-EJD, 2019 WL 2716287 (N.D. Cal. June 28, 2019)...........................................9

*Il Fornaio (Am.) Corp. v. Lazarri Fuel Co., LLC*,
   No. 13-05197-WHA, 2015 WL 2406966 (N.D. Cal. May 20, 2015)........................... *passim*

*Johnson v. Metro-Goldwyn-Mayer Studios Inc.*,
   No. 17-541-RSM, 2018 WL 5013764 (W.D. Wash. Oct. 16, 2018), *aff'd sub
   nom. Johnson v. MGM Holdings, Inc*, 943 F.3d 1239 (9th Cir. 2019) ..................................25

*Johnson v. MGM Holdings, Inc*,
   943 F.3d 1239 (9th Cir. 2019) ...........................................................................................8

FACEBOOK'S OPP. TO MOT. FOR
ATTORNEYS' FEES AND COSTS
CASE NO. C 18-05982 WHA (JSC)

*Jordan v. Multnomah Cnty.*,
    815 F.2d 1258 (9th Cir. 1987) ...........................................................................................12

*Lahiri v. Universal Music and Video Distrib. Corp.*,
    606 F.3d 1216 (9th Cir. 2010) ...................................................................................6, 8, 25

*Lanard Toys Ltd. v. Dimple Child LLC*,
    No. 19-616-PA, 2020 WL 4032668 (C.D. Cal. May 4, 2020), *aff'd*, 2021 WL
    567773 (9th Cir. Feb. 16, 2021)..........................................................................................18

*Lewis v. Silvertree Mohave Homeowners' Assoc., Inc.*,
    No. 16-03581-WHA, 2017 WL 5495816 (N.D. Cal. Nov. 16, 2017) .....................................7

*Mahach-Watkins v. Depee*,
    593 F.3d 1054 (9th Cir. 2010) ............................................................................................18

*McCown v. City of Fontana*,
    565 F.3d 1097 (9th Cir. 2009) ........................................................................................5, 14

*McLaughlin v. Wells Fargo*,
    No. 15-02904-WHA, 2017 WL 994969 (N.D. Cal. Mar. 15, 2017).....................................6, 8

*Pelayo v. Platinum Limousine Servs., Inc.*,
    804 F. App'x 522 (9th Cir. 2020) .......................................................................................18

*Perdue v. Kenny A. ex rel. Winn*,
    559 U.S. 542 (2010)............................................................................................................5

*Red v. Kraft Foods Inc.*,
    680 F. App'x 597 (9th Cir. 2017) ..................................................................................15, 18

*Red v. Kraft Foods, Inc.*,
    No. 10-1028-GW, 2015 WL 12670201 (C.D. Cal. Apr. 29, 2015) .....................................15

*Robb v. Fitbit Inc.*,
    No. 16-00151-SI, 2018 WL 2371618 (N.D. Cal. May 3, 2018)...........................................12

*Rodriguez v. County of Los Angeles*,
    96 F. Supp. 3d 1012 (C.D. Cal. 2014), *aff'd*, 891 F.3d 776 (9th Cir. 2018)...........................8

*Rodriguez v. Disner*,
    688 F.3d 645 (9th Cir. 2012) ..............................................................................................23

*Ryan v. Editions Ltd. West*,
    786 F.3d 754 (9th Cir. 2015) ................................................................................................7

*San Francisco N.A.A.C.P. v. San Francisco Unified Sch. Dist.*,
    284 F.3d 1163 (9th Cir. 2002) ............................................................................................14

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Schwarz v. Sec'y of Health & Human Servs.*,
    73 F.3d 895 (9th Cir. 1995) ...................................................................................8

*Smith v. K-Mart Corp.*,
    899 F. Supp. 503 (E.D. Wash. 1995) ...................................................................20

*Thorne v. City of El Segundo*,
    802 F.2d 1131 (9th Cir. 1986) .............................................................................14

*United States v. Ne. Med. Servs., Inc.*,
    No. 10-1904-CW, 2016 WL 629019 (N.D. Cal. Feb. 17, 2016) ...........................12

*Ursic v. Bethlehem Mines*,
    719 F.2d 670 (3d Cir. 1983) ..................................................................................9

*Vargas v. Howell*,
    949 F.3d 1188 (9th Cir. 2020) .............................................................................14

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ...............................................................................9

*W. Va. Univ. Hosps., Inc. v. Casey*,
    499 U.S. 83 (1991) ..............................................................................................22

*Wakefield v. Wells Fargo & Co.*,
    No. 13-05053-LB, 2015 WL 3430240 (N.D. Cal. May 28, 2015) .........................24

*Welch v. Metro. Life Ins. Co.*,
    480 F.3d 942 (9th Cir. 2007) .............................................................................5, 8

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    No. 16-02752-LHK, 2020 WL 4212811 (N.D. Cal. July 22, 2020) ............... *passim*

## STATUTES

28 U.S.C. § 1920 ...................................................................................6, 22, 23

42 U.S.C. § 1988 ..............................................................................................23

## RULES

Fed. R. Civ. P. 23(h) .........................................................................5, 6, 22, 24

Fed. R. Civ. P. 54(d) ...........................................................................................22

N.D. Cal. L.R. 54-3 ............................................................................................22

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v

FACEBOOK'S OPP. TO MOT. FOR
ATTORNEYS' FEES AND COSTS
CASE NO. C 18-05982 WHA (JSC)

## I.   INTRODUCTION

Class Counsel's request for nearly $12 million in fees and costs—including a bonus of over $2.1 million—for a settlement that yielded no monetary recovery to the Class is not supported by law and runs contrary to the guidance provided by this Court when it appointed them.

To be sure, the Class obtained valuable relief following this litigation:  though Facebook promptly addressed the vulnerability that criminals had exploited to gather user information, and adopted on its own a variety of measures to prevent similar vulnerabilities in the future, the settlement goes a step further by confirming specific security commitments that will remain in place for at least the next five years.  Facebook also agreed to have its compliance with those security commitments assessed by an independent third-party vendor throughout that five-year period.  But the settlement does not provide for any money damages because the Court recognized that none were warranted:  there was ultimately no evidence that the class representative (or anyone else) suffered any cognizable harm from the attack that could be tried on a classwide basis.

Yet in just over 16 months, Class Counsel racked up a very sizeable bill pursuing damages theories that conferred no benefit on the Class.  And Class Counsel now asks that this bill be paid without scrutiny, refusing to provide project-level or even chronological time records.  The documentation deficiencies alone require a substantial reduction in recoverable fees.  But on top of that, even the high-level, block-billed figures they have submitted reveal that the matter was not handled efficiently:  ***Over 100 timekeepers*** from ***17 different firms*** billed to this matter, with partners billing more than half of the hours, even for tasks like "Document Management and QC."  This top-heavy staffing yields a blended hourly rate that is 35.8% higher than the average awarded in other recent data breach settlements, and stands in stark contrast to the Court's instructions:

> I'll give you my lecture on the plaintiffs' side.  I like streamlined.  One lawyer, one firm is the best.  Now, maybe you don't want to give me that.  Okay, I can maybe live with two, but what we can't have is a top-heavy structure that is going to rack up big fees, and I don't like that.  That's just a waste of money.  So you need to think of a good system, even for the interim counsel part, to avoid the problem of a top-heavy plaintiff counsel structure.  Please take that to heart.

Tr. of Jan. 9, 2019 Case Management Conf., at 114-15 (Dkt. 71).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

FACEBOOK'S OPP. TO MOT. FOR
ATTORNEYS' FEES AND COSTS
CASE NO. C 18-05982 WHA (JSC)

Class Counsel's refusal to provide sufficiently detailed billing records obfuscates how much time was spent on unnecessary projects, but there can be no doubt that substantial swaths of their litigation efforts were unsuccessful.  Named plaintiffs dwindled from 17 to one; only two of the 10 claims survived dismissal; Plaintiff's star "identity theft expert" was struck on *Daubert* grounds because his reports were "riddled with error" and he merely "sa[id] whatever [was] convenient to the case at hand" (Order on Motion for Class Certification and on Motions to Strike ("Class Cert. Order") (Dkt. 260) at 6-7); and, most critically, no damages class was certified (*id.* at 10).  Any award to Class Counsel should be commensurate with the reasonable level of effort necessary to secure the specific settlement achieved here—and should not reward wasteful efforts that did not benefit the Class.

Against this backdrop, Class Counsel's request for a $2.1 million **bonus**, using a multiplier of 1.253 on top of its already inflated lodestar, should be rejected.  There is a "strong presumption that the lodestar is sufficient," and an upward multiplier is warranted only in "rare and exceptional circumstances." *Chambers v. Whirlpool Corp.*, 980 F.3d 645, 665 (9th Cir. 2020) (citation omitted) (reversing upward multiplier).  The requested multiplier exceeds that awarded in other data breach suits that involved significant monetary recoveries in addition to security enhancements. *See, e.g.*, *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-02752-LHK, 2020 WL 4212811, at *37 (N.D. Cal. July 22, 2020).  Moreover, Class Counsel's argument that this case merits a multiplier because it is "novel" is belied by their approach to the litigation:  Class Counsel followed the same playbook they used in prior cases—even though it did not fit the facts of this case—right down to hiring their usual experts, one of whom this Court rejected for "recycl[ing] a conclusion from a different case" with the same counsel.  Class Cert. Order (Dkt. 260) at 6.  These are not tactics that merit a bonus.

Finally, Class Counsel's request for almost $1.2 million in costs is bloated with legally unrecoverable costs, including more than $500,000 in expert fees for excluded and irrelevant experts and extravagant travel.  For example, two attorneys charged $5,643.06 and $5,538.81 for their hotel stays to attend a half-day Case Management Conference.  They also seek to recover their costs for attending in-person "all hands" meetings around the country.

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

FACEBOOK'S OPP. TO MOT. FOR
ATTORNEYS' FEES AND COSTS
CASE NO. C 18-05982 WHA (JSC)

1    As detailed herein, Facebook respectfully requests that the Court reduce Class Counsel's

2    lodestar, decline the requested multiplier, and limit recoverable costs, as detailed below.

3    **II.    BACKGROUND**

4        **A.    The Court's Dismissal of Claims and Plaintiffs**

5        This case arose out of an attack on Facebook through which criminals exploited the

6    unforeseen interaction of three features that allowed them to generate access tokens for other users.

7    Specifically, if a person used Facebook's "View As" feature to view their own profile from the

8    perspective of a Facebook friend, at a time when the user's birthday appeared on their Timeline,

9    *and* three other users had already sent birthday wishes to the user, then that unintended confluence

10   of events allowed an access token to be generated for the friend in the HTML of the web page.

11   Those access tokens could be used to compromise other users' accounts.  In the United States, the

12   attack affected approximately 4 million users.  Facebook was not aware of the issue until the attack,

13   but upon discovery, it promptly patched the vulnerability, invalidated the access tokens for all

14   potentially affected accounts, and publicly disclosed the breach.

15       Facebook announced the breach on September 28, 2018.  That same day—before any

16   reasonable investigation into claims could possibly be conducted—Plaintiff Stephen Adkins and

17   others raced to the courthouse to file class action complaints.  *See, e.g.*, Dkt. 1.  The courts

18   transferred, related, and consolidated 11 actions brought by 17 plaintiffs.  Within a month, 12 of

19   the plaintiffs voluntarily abandoned their claims.  *See* Order re Voluntary Dismissals (Dkt. 95).

20   The five remaining plaintiffs filed the Consolidated Class Action Complaint (Dkt. 76) on February

21   7, 2019, seeking billions of dollars in classwide damages based on a laundry list of claimed harms

22   that were ultimately disproven.[1]  *See* Blunschi Decl., Ex. B (Initial Disclosures) at 20-25.

23       Knowing many of plaintiffs' allegations to be false—for example, most of the plaintiffs

24   were not even among the users whose access tokens were compromised—Facebook promptly

25   sought their depositions.  Class Counsel refused, until the Court ordered all plaintiffs to appear for

26

27   [1] All numbered exhibits were filed with the Joint Declaration of Class Counsel in support of
     Plaintiff's Motion ("Joint Decl."), Dkt. 318.  Unless otherwise specified, all lettered exhibits are
28   appended to the concurrently filed Declaration of Melanie Blunschi.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

FACEBOOK'S OPP. TO MOT. FOR
ATTORNEYS' FEES AND COSTS
CASE NO. C 18-05982 WHA (JSC)

1   deposition.  *See* Tr. of May, 2, 2019 Hrg. on Mot. to Dismiss, at 44 (Dkt. 120).  Two plaintiffs

2   dismissed their claims after depositions confirmed that they had suffered no harm.  A third, Jasper

3   Schmidt, backed out of the case on the eve of his scheduled deposition.[2]  A fourth, William Bass,

4   effectively admitted at his deposition that he had not been harmed but did not withdraw his claims.

5   The Court dismissed his claims for lack of standing, and he did not seek leave to amend.  *See* Order

6   on Motion to Dismiss ("MTD Order") (Dkt. 153) at 13.  Though the Court found that one plaintiff,

7   Stephen Adkins, had standing, his claims were narrowed significantly:  of the 10 claims alleged,

8   the Court dismissed seven and concluded an eighth did not exist, leaving only claims for

9   negligence and declaratory judgment.  *Id.* at 20.  Plaintiff Adkins sought leave to amend six of the

10  dismissed claims, but after considering the proposed amended pleading, this Court rejected the

11  request as futile.  *See* Order on Motion for Leave to File Amended Complaint (Dkt. 185) at 2, 7.

## B.    Class Certification for Injunctive Class and *Daubert* Motions

13  Plaintiff moved to certify a damages class under Rule 23(b)(3), an "issues" class under

14  Rule 23(c)(4), and an injunctive class under Rule 23(b)(2).  The Court denied certification of the

15  damages class (premised on the negligence claim) because none of Plaintiff's myriad damages

16  theories, including the alleged risk of identity theft, "present[ed] a cognizable injury" that could

17  be tried on a classwide basis.  Class Cert. Order (Dkt. 260) at 10-13.  The Court also denied

18  Plaintiff's request to certify a class under Rule 23(c)(4) based on damages claims for lost time,

19  agreeing with Facebook that "issue certification is not appropriate where the determination of

20  liability itself requires an individualized inquiry."  *Id*. at 13.  In the end, the Court only granted

21  Plaintiff's request to certify an injunctive class under Rule 23(b)(2), focused on preventing future

22  harm.  *Id*. at 15.

23  Additionally, the Court excluded the testimony of the purported identity theft expert, James

24  Van Dyke, who Plaintiff offered in support of certification of a damages class.  *Id.* at 8.  The Court

25  ―――――――――――――

26  [2] As a scheduling accommodation, Facebook agreed to take Dr. Schmidt's deposition on Mother's Day Sunday.  Only after Facebook's counsel flew across the country to depose Dr. Schmidt near his home did Class Counsel reveal that Dr. Schmidt refused to sit for deposition.  Class Counsel

27  did not reimburse Facebook for the wasted time preparing for that deposition, vendor cancellation fees, or travel costs.  Blunschi Decl., ¶ 3.  To now ask Facebook to pay for Class Counsel's time

28  related to that deposition would be beyond the pale.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

FACEBOOK'S OPP. TO MOT. FOR
ATTORNEYS' FEES AND COSTS
CASE NO. C 18-05982 WHA (JSC)

1   found that Van Dyke merely "recycled a conclusion from a different case." *Id.* at 6.  Further, his

2   opinions were "riddled with error." *Id.* at 7; *see also id.* at 8 ("[H]is report is too flawed.").  And

3   the testimony of Plaintiff's damages expert Ian Ratner turned out to be entirely irrelevant, as no

4   damages class was certified.  Facebook offered reports and testimony from two experts, Dr.

5   Catherine Tucker and Austin Berglas, to rebut the testimony of Mr. Van Dyke and Mr. Ratner.

6        **C.      Settlement**

7        On January 8, 2020—prior to merits expert discovery and dispositive motions, and long

8   before trial—the parties mediated the case with the assistance of Magistrate Judge Joseph Spero.

9   *See* Minute Entry for Settlement Conference (Dkt. 272).  Plaintiff later filed his Motion for

10  Preliminary Approval and, following a hearing and subsequent clarifications (Dkts. 281, 291), the

11  Court granted preliminary approval on November 15, 2020 (Dkt. 314).

12  **III.    LEGAL STANDARD**

13       Rule 23(h) authorizes an award of "reasonable attorney's fees and nontaxable costs" in

14  connection with a class action settlement.  Fed. R. Civ. P. 23(h).  To determine what fees are

15  "reasonable" in "injunctive relief class actions, courts often use a lodestar calculation." *Hanlon v.*

16  *Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).  The lodestar is calculated by "multiplying

17  the number of hours reasonably spent on the litigation by a reasonable hourly rate." *McCown v.*

18  *City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (citing *Hensley v. Eckerhart*, 461 U.S. 424,

19  433 (1983)).  Efforts spent on unsuccessful claims are ***not*** "reasonably expended in pursuit of the

20  ultimate result achieved."  *Gbotoe v. Jennings*, No. 17-06819-WHA, 2018 WL 5981951, at *4

21  (N.D. Cal. Nov. 14, 2018) (Alsup, J.) (quoting *Hensley*, 461 U.S. at 435).

22       Once calculated, the lodestar represents a "presumptively reasonable" fee.  *Gonzalez v.*

23  *City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013).  Only in "rare and exceptional cases"

24  should the lodestar be adjusted by a multiplier.  *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946

25  (9th Cir. 2007); *see also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010) (upward

26  multiplier should be applied only when the lodestar fee "would not have been adequate to attract

27  competent counsel" (citation omitted)).

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

FACEBOOK'S OPP. TO MOT. FOR
ATTORNEYS' FEES AND COSTS
CASE NO. C 18-05982 WHA (JSC)

1    Additionally, pursuant to 28 U.S.C. § 1920, a "judge or clerk of any Court of the United

2    States may tax as costs" certain expenses incurred by the prevailing party, *id.*, but "nontaxable

3    costs" may be awarded only as "authorized by law or by the parties' agreement," Fed. R. Civ. P.

4    23(h).   Federal courts should refuse to award costs, even in favor of the prevailing party, when

5    there is inadequate documentation.   *See Lahiri v. Universal Music and Video Distrib. Corp.*, 606

6    F.3d 1216, 1223 (9th Cir. 2010).

7    **IV.     ARGUMENT**

8          **A.     Class Counsel's Billing Records Are Inadequate to Support the Fee Request**

9          Class Counsel has not come close to meeting their burden to document the reasonableness

10   of hours spent by each firm on discrete projects relevant to the litigation, and significant reductions

11   to their fee request are required as a result.   *See Gonzalez*, 729 F.3d at 1202.   A motion for

12   attorneys' fees should be supported by "time records [that are organized] by both the project and

13   the individual(s) who worked on it."   *McLaughlin v. Wells Fargo*, No. 15-02904-WHA, 2017 WL

14   994969, at *3 (N.D. Cal. Mar. 15, 2017) (Alsup, J.).   That requires a "detailed description of the

15   work" for each project, *i.e.*, "a deposition, a motion, a witness interview, and so forth."   *Etter v.*

16   *Allstate Ins. Co.*, No. 17-00184 (N.D. Cal. Aug. 28, 2018) (Order re Attorney's Fees and Costs

17   (Dkt. 141)) (Alsup, J.).   Here, Class Counsel offers only block-billed totals across 23 extremely

18   high-level categories that span the life of the matter.   In these circumstances, a 30% reduction in

19   recoverable fees is justified.   *See Lahiri*, 606 F.3d at 1223 (affirming 30% reduction for block-

20   billing); *McLaughlin*, 2017 WL 994969, at *4 (reducing fee award by 30% to "account for other

21   unreasonable charges potentially hidden within class counsel's block-billed and approximately

22   described entries").

23         Far from project-level detail, Class Counsel's submissions reflect an extreme form of

24   block-billing:   They lump together, by timekeeper and task code, all time billed ***since November***

25   ***2018***.   The hourly totals provided offer no means for the Court, Class, or Facebook to tease apart

26   the time spent on any particular project.   *See, e.g.*, Joint Supplemental Decl. of Class Counsel, Ex.

27   A at 1.   So while it is apparent that, for example, one associate at Morgan & Morgan spent 771.1

28   hours over 10 months on non-expert depositions (*see* Ex. 4 at 12), there is no way to determine

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

FACEBOOK'S OPP. TO MOT. FOR
ATTORNEYS' FEES AND COSTS
CASE NO. C 18-05982 WHA (JSC)

1    how much total time he or others spent on the depositions of former plaintiffs who Class Counsel

2    should have known were not harmed and therefore were not even part of the proposed class.  Nor

3    can the Court isolate time spent on the legal claims that were dismissed, the report and depositions

4    of Class Counsel's excluded expert, or Class Counsel's overreaching discovery motion that

5    Magistrate Judge Jacqueline Corley rejected almost in its entirety.  *See Ryan v. Editions Ltd. West*,

6    786 F.3d 754, 765 (9th Cir. 2015) (courts may reduce fees request where block-billing makes it

7    difficult to ascertain whether the time per task is reasonable); *see also Lewis v. Silvertree Mohave*

8    *Homeowners' Assoc., Inc.*, No. 16-03581-WHA, 2017 WL 5495816 at *6 (N.D. Cal. Nov. 16,

9    2017) (Alsup, J.) (considering entries block-billed where they list "total time spent on all tasks in

10   *one day*," let alone the entire litigation, and finding block-billing is allowable only where the

11   "entries contain sufficient detail to determine whether billing for the *combined* tasks was

12   reasonable" (first emphasis added)).

13          Class Counsel's reliance on categorical task codes that "obscure their inefficiencies" and

14   their failure to organize their timesheets chronologically creates "layers of obfuscation."  *Il*

15   *Fornaio (Am.) Corp. v. Lazarri Fuel Co., LLC*, No. 13-05197-WHA, 2015 WL 2406966 at *4

16   (N.D. Cal. May 20, 2015) (Alsup, J.).  Class Counsel's 23 task codes are as high-level as they

17   come—*e.g.*, "Other Written Motions/Submissions," "Analysis/Strategy," and "Fact Investigation/

18   Development."  *See* Joint Supplemental Decl. of Class Counsel, Ex. A at 1.  Most codes contain

19   hundreds of hours—and one contains nearly ***2000 hours***, with no breakdown by date or project.

20   *Id.*  These are exactly the sort of overgeneralized categories this Court rejected in *Etter v. Allstate.*

21   *See* No. 17-00184-WHA, 2018 WL 5791883 at *4-*5 (N.D. Cal. Nov. 4, 2018) (Alsup, J.)

22   (excluding fees due to the use of similarly generalized descriptions like "Discovery – Plaintiff

23   Responses" and "Settlement/Mediation").

24          Facebook's counsel repeatedly requested more details from Class Counsel, including

25   project-level breakdowns and the "spreadsheets containing aggregate detailed time records" that

26   their "Settlement Consultant," Randi Ellis, relied on for her opinion on the reasonableness of their

27   fees and expenses.  *See* Blunschi Decl., Ex. C.  In response, Class Counsel merely repackaged

28   information contained in their original filing into a *less* detailed "supplemental" submission.  *See*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

FACEBOOK'S OPP. TO MOT. FOR
ATTORNEYS' FEES AND COSTS
CASE NO. C 18-05982 WHA (JSC)

1    Joint Supplemental Decl. of Class Counsel, Ex. A.  Class Counsel's position appears to be that

2    Ms. Ellis's assessment can stand in place of scrutiny by the Court, Class, or Facebook.  But the

3    Court should not allow a paid consultant to draw legal conclusions on its behalf at all, let alone

4    based on data Class Counsel refuses to disclose.  *See* Ex. 20, ¶ 15 (reflecting Ms. Ellis's conclusion

5    that Class Counsel's fees and expenses "are reasonable and appropriate under both Rule 23 and

6    applicable case law within this District and Circuit and the guidelines set by this Court").  This is

7    not proper expert testimony and should not be considered here.[3]  *See Rodriguez v. County of Los*

8    *Angeles*, 96 F. Supp. 3d 1012, 1026–27 (C.D. Cal. 2014), *aff'd*, 891 F.3d 776 (9th Cir. 2018)

9    (striking purported expert declaration on reasonableness of attorneys' fees as "not helpful to the

10   Court and [] not properly considered expert testimony").

11        As a result of the opacity in Class Counsel's submissions, "across-the-board percentage

12   cuts" to Class Counsel's lodestar figure are required to arrive at a reasonable fee award because

13   Class Counsel's "massive fee application" and lack of detailed records make it impossible for

14   Facebook or the Court to conduct an "hour-by-hour analysis of the fee request."  *Gonzalez*, 729

15   F.3d at 1203; *Fischer v. SJB–P.D. Inc*., 214 F.3d 1115, 1121 (9th Cir. 2000) (where "more detailed

16   records were readily available" but not provided, the court may "reduce[] the fee to a reasonable

17   amount").  The Ninth Circuit does not "view with sympathy any claim that a district court abused

18   its discretion in awarding unreasonably low attorney's fees in a suit in which plaintiffs were only

19   partially successful if counsel's records do not provide a proper basis for determining how much

20   time was spent on particular claims."  *Schwarz v. Sec'y of Health & Human Servs*., 73 F.3d 895,

21   906 (9th Cir. 1995) (quoting *Hensley*, 461 U.S. at 437 n.12).  The Ninth Circuit and this Court

22   have agreed that a 30% reduction for inadequate block-billing is appropriate, which Facebook

23   suggests would be appropriate here.  *See Lahiri*, 606 F.3d at 1223; *McLaughlin*, 2017 WL 994969,

24   at *3; *see also Johnson v. MGM Holdings, Inc*, 943 F.3d 1239, 1241 (9th Cir. 2019) (affirming

25   25% reduction); *Welch*, 480 F.3d at 948 (citing study on fees increase of 10-30% for block-billing);

26   *Il Fornaio*, 2015 WL 2406966 at *4 (reducing fee award by 43% due, in part, to block-billing).

27

28   ---
[3] Even if it were, Ms. Ellis's assessment is dubious in light of the issues discussed *infra* Part IV.B, and obvious errors such as Class Counsel's billing for "Expert Witnesses (Trial)" when no trial occurred.  *See* Joint Supplemental Decl. of Class Counsel, Ex. A at 1.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

FACEBOOK'S OPP. TO MOT. FOR
ATTORNEYS' FEES AND COSTS
CASE NO. C 18-05982 WHA (JSC)

**B.     Class Counsel's Proposed Lodestar Is Much Too High**

Lodestars must be closely scrutinized—otherwise they incentivize counsel to drive up fees by spending unreasonable hours on litigation.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 n.5 (9th Cir. 2002); *see also In re Anthem, Inc. Data Breach Litig.*, No. 15-02617-LHK, 2018 WL 3960068, at *5 (N.D. Cal. Aug. 17, 2018) ("[T]he lodestar method has sometimes been criticized because it encourages counsel to bill time and create opportunities to bill time.").  Close scrutiny is especially important in this case because the fee request cannot be cross-verified by an alternative approach, such as a percentage of recovery.  *See In re HP Printer Firmware Update Litig.*, No. 16-05820-EJD, 2019 WL 2716287, at *3 (N.D. Cal. June 28, 2019).

Here, Class Counsel's $8.5 million proposed lodestar (before the requested multiplier) is unreasonably inflated and should be substantially reduced.  *First*, contrary to the Court's express directive, Class Counsel adopted a staffing structure that is extraordinarily "top-heavy," resulting in a blended hourly rate that is much higher than rates awarded in other recent data breach cases. *Second*, Class Counsel structured its litigation team—which included 104 total timekeepers across 17 firms—in a manner that yielded significant redundancies and inefficiencies.  *Third*, Class Counsel spent thousands of hours on efforts directed towards dead-end arguments that yielded nothing of value for the class and were never abandoned, even when their futility became apparent. These efforts cannot justify the fees Class Counsel now seeks.

### 1.     Class Counsel's Top-Heavy Staffing Warrants a Reduction

The proposed lodestar is inflated by a disproportionate amount of work being completed by Class Counsel's most experienced, most expensive attorneys.  While more skilled and experienced attorneys justifiably command higher rates, this is premised on the assumption that they will only work on tasks that require their superior skills.  Put another way:  "A Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn." *Hernandez v. Grullense*, No. 12-03257-WHO, 2014 WL 1724356, at *5 (N.D. Cal. Apr. 30, 2014) (quoting *Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir. 1983)).  Anticipating the waste that results from this behavior, the Court expressly warned Class Counsel at the outset of this case "to avoid the problem of a top-

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

FACEBOOK'S OPP. TO MOT. FOR
ATTORNEYS' FEES AND COSTS
CASE NO. C 18-05982 WHA (JSC)

heavy plaintiff counsel structure."  Tr. of Jan. 9, 2019 Case Management Conf., at 114-15 (Dkt. 71).  But that guidance was not followed:

- 51% of Class Counsel's total attorney-hours were billed by partners.[4]  Blunschi Decl., ¶ 11.

- Partners' time predominated on nearly all tasks.  Among the 14 most time-intensive task codes (accounting for approximately 90% of Class Counsel's total attorney-hours), partners billed the majority of attorney-hours *on all but two*.  Blunschi Decl., ¶ 12.

- The lodestar includes many hundreds of hours spent by partners on tasks typically handled predominantly by more junior attorneys, including:

    o 62% of the 342 hours billed to "Document Management and QC";

    o 58% of the 1,199 hours billed to "Written Discovery/ESI/ Prot. Orders, Stips re Discovery"; and

    o 55% of the 398 hours billed to "Case Administration."

Blunschi Decl., ¶ 13.  *See Il Fornaio*, 2015 WL 2406966, at *5 ("It would be unjustified to charge the class senior-associate or partner-level rates for routine tasks.").[5]  Indeed, while Class Counsel consisted of 104 timekeepers, the 35 timekeepers with the highest billing rates (between $700 and $985) billed 67% of the total hours.  Blunschi Decl., Ex. D.  Class Counsel's top five most expensive timekeepers—billing at rates between $925 and $985 per hour—by themselves accounted for 21% of the total hours contributing to the lodestar.  *Id.*

Class Counsel's overreliance on senior attorneys also extended to the taking of fact depositions—the single-most heavily billed task code (nearly 2,000 hours).  While Class Counsel repeatedly asserts that it "staffed depositions and hearings with junior lawyers at lower billing rates when possible" (Mot. at 14; *see also* Joint Decl. ¶ 13 (same)), nearly all of Plaintiff's depositions of Facebook's employees were handled together by the same two lawyers:  a senior partner with 40 years' experience ($950 per hour) and another attorney with 11 years' experience ($742 per hour).  In fact, *none* of those 15 depositions was *attended* (much less taken) by an attorney from Class Counsel's team with less than 11 years' experience.  And only one of the nine attorneys from

---

[4]  Additional hours were billed by "Counsels," "Of Counsels," "Senior Attorneys," "Senior Counsels" or other attorneys with significant experience, but this figure focuses only on partners.

[5]  To be clear, Facebook does not suggest that the handful of lawyers (out of over 100 timekeepers, most of whom Facebook and its counsel did not meet) who actually presented arguments in court or took the lead in depositions are not of high quality—they clearly are.  The issue is simply that many tasks did not demand their seniority or commensurate billing rates.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

FACEBOOK'S OPP. TO MOT. FOR
ATTORNEYS' FEES AND COSTS
CASE NO. C 18-05982 WHA (JSC)

Class Counsel's team who attended the depositions of named plaintiffs had less than a decade's worth of experience.  Blunschi Decl., ¶ 4.

All told, Class Counsel's top-heavy staffing yields an aggregate blended billing rate of *$692 per hour* (*i.e.*, $8,536.172.70 lodestar divided by 12,335.70 hours).  This constitutes an enormous premium over the similar *Yahoo!* and *Anthem* cases, which Class Counsel cites favorably as justifying top billing rates of up to $900 and $970 per hour (respectively).  But counsel in *Yahoo!* made a much greater efforts to delegate tasks to more junior attorneys, avoiding a glut of billable hours at the highest rates, and counsel in *Anthem* saw their average rate slashed for failure to do so.  In *Yahoo!*, pursuant to a lodestar cross-check, the Court determined that counsel reasonably billed 40,085 hours in support of a lodestar of $19,794,471.90—which yields a blended rate of *$494 per hour*.  *Yahoo!*, 2020 WL 4212811, at *30.  And in *Anthem*, while counsel originally requested a lodestar that yielded a comparable blended rate to what counsel requested in *Yahoo!*, the court reduced the lodestar due to the same issues present here, *i.e.*, an "imbalance between partners and associates," suggesting "that Class Counsel did not assign tasks based on the skill requisite to perform the legal service," as well as "unnecessarily duplicative or inefficient work by virtue of the fact that so many billers needed to familiarize themselves with the case and keep abreast of case developments."  *Anthem*, 2018 WL 3960068, at *22, *22 n.8.  On these and other bases, the court lowered counsel's lodestar from $38 million to $31 million, thereby yielding a revised blended rate of *$393 per hour*.

The blended rates in *Anthem* and *Yahoo!* offer particularly helpful points of comparison for the present case because (1) they involved the same subject matter (*i.e.*, data breaches) and legal claims, (2) the applicants' ranges of billings rates were similar to those claimed by Class Counsel, (3) plaintiffs in those cases were also represented by a coalition of firms, (4) all three firms leading Class Counsel here were involved in *Anthem*, and two of the three were involved in *Yahoo!*, and (5) those cases were of comparable scale to the instant matter.  If anything, one would have expected Class Counsel to be *more* efficient in executing this case—including less work at the top—after it gained experience from those cases.  But the opposite occurred:  the blended rates

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

FACEBOOK'S OPP. TO MOT. FOR
ATTORNEYS' FEES AND COSTS
CASE NO. C 18-05982 WHA (JSC)

awarded in *Yahoo!* and *Anthem* were *29% and 43% lower* (respectively) than the $692 rate Class Counsel now seeks.

Applying a top-line discount to the lodestar would rebalance Class Counsel's staffing structure. A discount of 35.8% would align Class Counsel's blended rate with the average of the blended rates ($444) adopted in *Anthem* and *Yahoo!*. *See also Bain v. Oxford Health Ins. Inc.*, No. 15-03305-EMC, 2020 WL 1332080, at *5 (N.D. Cal. Mar. 23, 2020) (imposing 10% reduction where counsel's litigation team was "partner heavy in terms of staffing"); *see also Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 57 (S.D.N.Y. 2015) (30% reduction due largely to "the partner-intensive nature of the case staffing"); *Fair Hous. Ctr. of Sw. Michigan v. Hunt*, No. 09-593-JGS, 2013 WL 5719152, at *15 (W.D. Mich. Oct. 21, 2013) (50% reduction due in part to "over-utilization of partners," as "[v]irtually half the hours expended were billed by partners").

### 2.   Class Counsel's Use of Too Many Timekeepers From Too Many Firms Warrants a Reduction

Class Counsel's proffered lodestar is further inflated due to their reliance on a mindboggling 104 timekeepers across their coalition of 17 law firms. These inefficiencies were also exacerbated by Class Counsel's involvement of very large numbers of attorneys on particular tasks, which caused them to spend hundreds of hours coordinating work across firms. A 15% cut to the lodestar would reverse these inefficiencies.

Class Counsel must "show that the time spent was reasonably necessary and that [counsel] made 'a good faith effort to exclude from [the] fee request hours that are excessive, redundant, or otherwise unnecessary.'" *See United States v. Ne. Med. Servs., Inc.*, No. 10-1904-CW, 2016 WL 629019, at *2 (N.D. Cal. Feb. 17, 2016) (quoting *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1263 n.8 (9th Cir. 1987)); *see also Yahoo!*, 2020 WL 4212811, at *27 (attorneys' fees need not be awarded for work that is "duplicative"). This concern is heightened here because Class Counsel consisted of 17 firms, 15 of which continued to bill time through December 2019 (*i.e.*, when the parties began the process of reaching a settlement). Ex. 2-18; *see also Robb v. Fitbit Inc.*, No. 16-00151-SI, 2018 WL 2371618, at *2 (N.D. Cal. May 3, 2018) (warning that the involvement of just

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

FACEBOOK'S OPP. TO MOT. FOR
ATTORNEYS' FEES AND COSTS
CASE NO. C 18-05982 WHA (JSC)

two firms would cause it to "scrutinize any fee requests to ensure there were no duplication of efforts" (quotation marks omitted)).

Before it appointed Class Counsel, the Court expressly warned that their litigation team should be structured in an efficient manner: "One lawyer, one firm is the best. Now, maybe you don't want to give me that. Okay, I can maybe live with two, but what we can't have is a top-heavy structure that is going to rack up big fees, and I don't like that."  Tr. of Jan. 9, 2019 Case Management Conf., at 114-15 (Dkt. 71).  But here, many dozens of lawyers and over a dozen firms racked up big fees.  For example:

- 26 different attorneys across 12 firms worked on "Experts/Consultants and Expert Reports" to support Plaintiff's three experts and address Facebook's two rebuttal experts;

- 30 different attorneys across 11 firms worked on "Dispositive Motions," a category that only clearly included opposing one motion to dismiss but may also include time for requesting leave to amend the dismissed claims (the lack of project-level billing makes it impossible to know for sure);

- 41 different attorneys across 13 firms worked on the mysterious category of "Other Written Motions/ Submissions"; and

- 29 different attorneys across 12 firms worked on "Depositions - Non-Expert."

Blunschi Decl., ¶ 15.  This distribution of work across a smorgasbord of firms not only required a needlessly large number of attorneys to familiarize themselves with each task, but also apparently was coordinated via hundreds of inter-firm phone and in-person conferences.  *See* Joint Decl. ¶ 17; *see also id.* ¶ 142 (travel and lodging expenses so that Class Counsel could conduct "in-person strategy sessions"); *infra* Part IV.D.  This Court has previously expressed concern over the payment of fees for such activities.  *See Il Fornaio*, 2015 WL 2406966, at *5 ("It is hard to believe all of these meetings were justified.").  Here, Class Counsel's opaque submissions do not allow the Court (or Facebook) to determine how much time Class Counsel actually spent conferring with itself, but these are clear hallmarks of inefficient, duplicative, and unjustified time.

As noted above, percentage-based cuts to the lodestar are appropriate for large fee applications, like this one, where the documentation provided does not lend itself to a more granular accounting.  *See supra* Part IV.A; *Gonzalez*, 729 F.3d at 1203; *see also Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1150 (9th Cir. 2001) (recognizing that "where the underlying case is

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

FACEBOOK'S OPP. TO MOT. FOR
ATTORNEYS' FEES AND COSTS
CASE NO. C 18-05982 WHA (JSC)

complex, the billing records are likely to be voluminous, and the judicial time expended in detailing excessive hours can therefore be similarly great"). Lacking sufficiently detailed billing records to excise particular billing entries, Facebook suggests that 15% of the hours constituting the lodestar be excluded. *See Chang v. County of Santa Clara*, No. 15-02502-RMW, 2016 WL 6162460, at *10 (N.D. Cal. Oct. 24, 2016), *aff'd sub nom. Shiow-Huey Chang v. County of Santa Clara*, 726 F. App'x 565 (9th Cir. 2018) (applying 15% reduction to lodestar due to excessive internal conferencing among counsel team).

### 3. Work That Did Not Benefit The Class Should Be Excluded

Class Counsel's proposed lodestar seeks compensation in full for its performance in *all* aspects of this litigation, without regard to whether tactics were reasonable, much less conferred benefits on the class. This is not justified where, as here, the vast majority of the hours comprising the lodestar relate to Class Counsel's efforts to invent a classwide damages theory (including on behalf of former plaintiffs who were not even affected by the breach, using baseless legal theories) ***even after*** they had obtained discovery on the limited scope of user information stolen by the attackers. *See Gbotoe*, 2018 WL 5981951, at *4 (efforts on deficient claims are not "reasonably expended in pursuit of the ultimate result achieved" (quoting *Hensley*, 461 U.S. at 431)); *San Francisco N.A.A.C.P. v. San Francisco Unified Sch. Dist.*, 284 F.3d 1163, 1169 (9th Cir. 2002) (affirming district court's conclusion that "[i]n light of NAACP's lack of success, … it would be patently unfair to require the … defendants to … finance all sides of the litigation"). Even where successful and unsuccessful claims are related, the degree of overall success determines whether fees may be awarded for litigating the unsuccessful claims. *See Thorne v. City of El Segundo*, 802 F.2d 1131, 1141 (9th Cir. 1986). In gauging the degree of counsel's success, "a district court should give primary consideration to the amount of damages awarded ***as compared to the amount sought***.'" *McCown*, 565 F.3d at 1104 (emphasis added) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)); *see also Vargas v. Howell*, 949 F.3d 1188, 1200 (9th Cir. 2020) (same). Here, Class Counsel sought billions in damages and secured none, and though the injunctive relief it obtained was valuable, it never appeared to be the driver of Class Counsel's litigation strategy or efforts.

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

FACEBOOK'S OPP. TO MOT. FOR
ATTORNEYS' FEES AND COSTS
CASE NO. C 18-05982 WHA (JSC)

1    The Ninth Circuit's affirmance in *Red v. Kraft Foods* is instructive.  The district court had

2    rejected the plaintiffs' motion to certify a damages class, but they "prevailed on a minor point—

3    securing the injunction preventing Kraft from re-introducing certain challenged statements." *Red*

4    *v. Kraft Foods, Inc*., No. 10-1028-GW, 2015 WL 12670201, at *5 (C.D. Cal. Apr. 29, 2015).  On

5    this basis, the court awarded $100,000 in fees out of the $3.3 million requested.  *Id.*  The Ninth

6    Circuit rejected plaintiffs' counsel's challenge to the fee award, holding that the plaintiffs'

7    "success was very limited" because, as here, "they did not prevail on their primary claims," "most

8    of their claims failed as a matter of law," "there was no liability finding," and "[c]ompared to what

9    the putative class initially sought, it is hard to see how Plaintiffs could consider this case a practical

10   success." *Red v. Kraft Foods Inc*., 680 F. App'x 597, 599 (9th Cir. 2017).

11   Similarly, Class Counsel directed the substantial majority of their time and energy toward

12   damages objectives wholly unrelated to the settlement they secured.  They (1) initially brought

13   claims on behalf of 17 plaintiffs, most of whom were not even among the users affected by the

14   breach, (2) asserted and briefed 10 different legal claims, (3) alleged a laundry list of theories of

15   harm, which they narrowed to five by the time of the class certification motion (Dkts. 153, 185),

16   and (4) pursued certification of three types of classes.  The Settlement Agreement stems from only

17   the small fraction of their case that survived:  *one* named plaintiff bringing *one* legal claim under

18   *one* theory of harm on behalf of the injunctive class only.  As explained below, because Class

19   Counsel's proffered lodestar includes thousands of hours spent on unrealized efforts, an 80%

20   reduction would be appropriate for the fees sought for many tasks.

21   ***Improper Plaintiffs***:  Class Counsel put forward more than a dozen potential plaintiffs who

22   eventually abandoned ship.  The "considerable time" Class Counsel spent on this endeavor,

23   including duplicative communications with the numerous potential plaintiffs (Joint Decl. ¶ 23),

24   was almost entirely wasted, as illustrated by the fact that 16 out of 17 plaintiffs dropped or were

25   dismissed from the case.  Indeed, Class Counsel prepared Rule 26 Initial Disclosures—which they

26   claim required "extensive telephone conferences," involved "extensive consultation" and "were

27   time consuming" (*id.* ¶¶ 26, 36)—for all 17 potential plaintiffs, yet somehow either did not

28   discover or chose to ignore that most of these plaintiffs were not even among the users whose

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

FACEBOOK'S OPP. TO MOT. FOR
ATTORNEYS' FEES AND COSTS
CASE NO. C 18-05982 WHA (JSC)

1    information was compromised.  Later, this group was narrowed to five Plaintiffs, on behalf of

2    whom Class Counsel spent significant time producing documents (*id.* ¶ 88) and defending

3    depositions (which were "time consuming and required significant preparation" (*id.* ¶ 89))—only

4    for two of them to later *voluntarily dismiss their claims* when depositions established they were

5    not harmed, a third to dismiss after refusing to sit for deposition, and a fourth to be dismissed by

6    the Court for lack of standing.  Class Counsel's vetting process was beyond deficient.

7         ***Baseless Claims and Motions***:  Class Counsel briefed 10 claims, but eight were incapable

8    of surviving a motion to dismiss.  The Court twice rejected the positions in the briefing that Class

9    Counsel professes was so "time-consuming" (*id.* ¶¶ 50-56).  *See* MTD & Leave Orders (Dkts. 153,

10   185); *see also Hensley*, 461 U.S. at 436 (recognizing that the failure of some of counsel's claims

11   can warrant a reduction in its lodestar even if the claims are "nonfrivolous" and "raised in good

12   faith").  Class Counsel exacerbated the hours stemming from these futile claims by continuing to

13   seek discovery relating to them even after they were dismissed by the Court.  For example, Class

14   Counsel forced the parties to waste substantial time and effort disputing discovery requests that

15   related to the dismissed claims—even after they were dismissed.  *See, e.g.*, Discovery Letter Brief

16   (Dkt. 170).  After lengthy meet-and-confers among counsel, formal briefing, and a hearing,

17   Magistrate Judge Corley rejected nearly all of their requests, repeatedly pointing out that they

18   could not obtain discovery relating to claims dismissed by the Court.  *See* Tr. of Aug. 8, 2019

19   Discovery Hearing, at 33-36 (Dkt. 186); *id.* at 38 (Magistrate Judge Corley quoting the Court's

20   order dismissing Plaintiff's claims).

21        ***Unsupportable Damages Theories and Unnecessary Expert Work***:  The Court should

22   similarly reject that portion of Class Counsel's fees and expenses stemming from its lengthy

23   pursuit of monetary damages to account for risk of identity theft and the purchase of credit

24   monitoring.  While the Court correctly disposed of these theories when it declined to certify a

25   damages class, that was only after Class Counsel mired the parties in time-consuming document

26   discovery, written discovery, witness depositions, expert reports, and expert depositions in support

27   of these futile arguments, which culminated in Facebook's successful *Daubert* challenge to their

28   identity theft expert, Mr. Van Dyke, and the Court's denial of certification of a damages class.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

FACEBOOK'S OPP. TO MOT. FOR
ATTORNEYS' FEES AND COSTS
CASE NO. C 18-05982 WHA (JSC)

Class Cert. Order (Dkt. 260) at 6, 9.  Nevertheless, Class Counsel now seeks, among other things, nearly $1 million for hours spent on expert depositions and expert reports—which should be reduced by at least 80%, since four of the five experts (*i.e.,* Plaintiff's experts, Mr. Van Dyke and Mr. Ratner, and the two experts who Facebook retained to respond to them) and five of the six depositions (since Mr. Van Dyke had to be deposed twice) related to Plaintiff's meritless identity theft and damages theories.[6]  Blunschi Decl., Ex. E.

These fees and expenses were not reasonably or prudently incurred.  From the very beginning of this litigation, Facebook disclosed to Class Counsel (and to the public at large) the exact types of user information that were compromised as a result of the attack (*e.g.*, names and email addresses for about half of affected users, and additional profile fields like hometowns, relationship statuses, and birthdates for others).  Consolidated Joint Case Management Statement at 5-6 (Dkt. 61).  While the Court emphasized that Plaintiffs had a right to verify this representation and based its pre-class certification decisions on the allegations in the complaint, it simultaneously recognized that if only non-sensitive data were disclosed—as Facebook represented at the time— then Plaintiffs would likely not be entitled to meaningful damages (if any).  *See* Tr. of Jan. 9, 2019 Case Management Conf., at 110 (Dkt. 71) ("[I]f it turns out there's milquetoast stuff and it doesn't matter much, then the case is not worth much.").  Critically, Class Counsel received this confirmation from the beginning of fact discovery, *i.e.*, when Facebook disclosed extensive details of its investigation of the breach that confirmed that the compromised data was non-sensitive in nature.  *See, e.g.*, Decl. of Christopher Bream (Dkt. 97) (submitted March 14, 2019).

Nevertheless, lacking any basis to challenge that factual representation, Class Counsel continued to pursue multiple theories of damages that were unsupported by the record.  This unreasonableness culminated in Class Counsel's reliance on Mr. Van Dyke, who copied and pasted from prior reports to opine that members of the class faced a heightened risk of identity theft as a result of the breach.  After Mr. Van Dyke lobbed in an impermissible supplemental report trying to cure the flaws revealed in his first deposition, Facebook had to seek Judge Corley's intercession

---

[6] Class Counsel also deposed Facebook's experts, Dr. Tucker and Mr. Berglas, who Facebook needed to retain to rebut Mr. Ratner's and Mr. Van Dyke's unfounded claims.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

FACEBOOK'S OPP. TO MOT. FOR
ATTORNEYS' FEES AND COSTS
CASE NO. C 18-05982 WHA (JSC)

1   to obtain a second deposition (Class Counsel refused Facebook's request for further questioning).

2   *See* Clerk's Notice Scheduling Telephonic Discovery Hearing (Dkt. 236).   That deposition

3   demonstrated that the supplemental report only dug his hole deeper:  Mr. Van Dyke had claimed

4   that the Class faced an inflated risk of identity theft by assuming that additional fields of data were

5   compromised that undisputedly *were not*.  *See* Class Cert. Order (Dkt. 260) at 8 ("Inexplicably, it

6   then came to light that he also generated this rating [of risk of identity theft] by *including*

7   *information that had not been compromised in the breach*." (emphasis in original)).  This Court

8   ultimately recognized that Mr. Van Dyke's "opinions and declarations were riddled with error,"

9   and that he merely "sa[id] whatever [was] convenient to the case at hand."  *Id.* at 7.  And Mr.

10   Ratner's (Class Counsel's damages expert) work was also needless as no damages class was

11   certified.  Facebook incurred the burden of disproving Class Counsel's unsupported arguments—

12   it should not also be saddled with the costs of making them in the first place.

13        To account for all of these fruitless litigation tactics, it would be appropriate, consistent

14   with *Kraft*, to apply 80% discounts to the task codes inflated by these unsuccessful efforts.[7]

15                                    *   *   *

16        To summarize, the following suggested discounts are applicable to all task codes:  30% for

17   Class Counsel's deficient documentation, 35.8% to reverse Class Counsel's top-heavy billing, and

18   another 15% to address inefficiencies stemming from its sprawling team structure (including

19   excessive internal coordination).  Certain specific task codes that were most affected by Class

20   Counsel's pursuit of fruitless claims and remedies should then be further discounted:

21

22

---

23   [7] *See Kraft*, 680 F. App'x at 599 (affirming 97% cut); *see also Pelayo v. Platinum Limousine*
24   *Servs., Inc.*, 804 F. App'x 522, 524 (9th Cir. 2020) (upholding 50% reduction to lodestar "after considering the limited relief Plaintiffs obtained in comparison to the scope of the litigation as a whole."); *Mahach-Watkins v. Depee*, 593 F.3d 1054, 1063 (9th Cir. 2010) (affirming 80% cut in
25   light of plaintiff's "limited success" on one federal claim and no success on state law claims);
26   *Lanard Toys Ltd. v. Dimple Child LLC*, No. 19-616-PA, 2020 WL 4032668, at *5 (C.D. Cal. May 4, 2020), *aff'd*, 2021 WL 567773 (9th Cir. Feb. 16, 2021) (reducing lodestar by 80% where
27   requesting party succeeded on only one of five claims and secured only $25,884 on proffered damages of more than $1 million); *Branco v. Credit Collection Servs.*, No. 10-01242-MCE, 2011 WL 6003877, at *4-5 (E.D. Cal. Dec. 1, 2011) (cutting fee award by 90% where plaintiff achieved
28   "minimal success").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

FACEBOOK'S OPP. TO MOT. FOR
ATTORNEYS' FEES AND COSTS
CASE NO. C 18-05982 WHA (JSC)

| Task | Requested Fees | Block-Billing (-30%) | Top-Heavy Billing (-35.8%) | Excessive Staffing (-15%) | Partial Success (-80%) |
|------|---------------|-----------|-----------|-----------|-----------|
| Case Administration | $294,121 | X | X | X | X |
| Fact Investigation/ Development | $154,472 | X | X | X | X |
| Client and Class Member Communications and Vetting | $171,017 | X | X | X | X |
| Analysis/Strategy | $515,051 | X | X | X | X |
| Experts/Consultants and Expert Reports | $576,593 | X | X | X | X |
| Settlement/Mediation | $303,248 | X | X | X | |
| Pleadings | $424,172 | X | X | X | X |
| Court Mandated Conferences/Hearings | $308,416 | X | X | X | X |
| Dispositive Motions | $390,318 | X | X | X | X |
| Other Written Motions/Submissions | $692,362 | X | X | X | X |
| Class Action Certification and Notice | $636,037 | X | X | X | X |
| Written Discovery/ESI/ Prot. Orders, Stips re Discovery | $863,736 | X | X | X | X |
| Document Production | $411,712 | X | X | X | X |
| Document Management and QC | $225,328 | X | X | X | X |
| Depositions - Non-Expert | $1,528,953 | X | X | X | X |
| Expert Discovery/Depositions | $395,212 | X | X | X | X |
| Discovery Motions | $105,629 | X | X | X | X |
| Other Discovery | $89,273 | X | X | X | X |
| Expert Witnesses (Trial) | $148 | X | X | X | X |
| Other Trial Preparation and Support | $1,128 | X | X | X | X |
| Trial and Hearing Attendance | $376 | X | X | X | X |
| Settlement Approval documents and hearings | $439,593 | X | X | X | |
| Settlement Administration | $9,279 | X | X | X | |

If these four reductions are applied sequentially,[8] they yield a revised lodestar of $881,988.53.

Blunschi Decl., Ex. F.

---

[8] Because each reduction addresses a different facet of Class Counsel's unreasonable request, they should not be "stacked," but applied sequentially. *See Gonzalez*, 729 F.3d at 1203 & n.2 (the associative properties of multiplication allow percentage reductions to be applied in any order). For example, the "L320 Document Production" task code should be reduced by each of 30%, 35.8%, 15%, and 80%.

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

FACEBOOK'S OPP. TO MOT. FOR
ATTORNEYS' FEES AND COSTS
CASE NO. C 18-05982 WHA (JSC)

C.      There Is No Basis for a Bonus Multiplier

Plaintiff's request for a multiplier of 1.253 should be rejected.  Because of the "strong presumption that the lodestar is sufficient," a multiplier is warranted only in "rare and exceptional circumstances." *Chambers*, 980 F.3d at 665 (reversing a 1.68 lodestar multiplier).  The Court may "adjust" the lodestar figures "upward or downward to account for several factors, including benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *In re Bluetooth Headset Prod. Liab. Litig*., 654 F.3d 935, 942 (9th Cir. 2011). "Foremost among these considerations, however, is the benefit obtained for the class." *Id.* (citing *Hensley*, 461 U.S. at 434-36).  None of these factors warrants an upward departure from the presumptively sufficient lodestar.

***Benefit Obtained***:  This settlement does not merit any multiplier.  From day one, Class Counsel presented this case as one about a data breach that created a risk of identity theft for which they sought *billions* of dollars in damages.  For example, Plaintiff's disclosures listed five different theories of damages, including up to $1,200 for "loss of value of PII" plus $1,900 to $2,900 ***per Class member*** for the "increased risk of future identity theft and stress associated with that risk." Blunschi Decl., Ex. B (Initial Disclosures) at 20, 25.  Yet Class Counsel fell far short of its own goals, failing to obtain any monetary benefits for the class.  In *Yahoo!*, the Court found that the results obtained were "unexceptional" despite the fact that, unlike here, counsel secured a $117.5 million settlement fund with credit monitoring services *in addition to* enhancements to Yahoo! security infrastructure. *Yahoo!*, 2020 WL 4212811, at *34 (substantially reducing multiplier where "the $117.5 million Settlement Fund is … unremarkable").  While the security commitments will undoubtedly benefit the injunctive class, Class Counsel cannot dispute that the thrust of their efforts was aimed at obtaining massive amounts of damages from Facebook.  And, in the end, this Court did not certify the damages class.  *See* Class Cert. Order (Dkt. 260) at 8.

***Complexity and Novelty of the Issues***:  Class Counsel's assertion that this case was "complex" is belied by the Court's ruling on the Motion to Dismiss, in which it narrowed the case to "a classic negligence claim," brought by a single plaintiff and governed by California law.  MTD Order (Dkt. 153) at 17; *Smith v. K-Mart Corp*., 899 F. Supp. 503, 506 (E.D. Wash. 1995) (rejecting

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

FACEBOOK'S OPP. TO MOT. FOR
ATTORNEYS' FEES AND COSTS
CASE NO. C 18-05982 WHA (JSC)

1    a multiplier because "[c]learly, negligence is not a novel or complex issue of State law").  And the

2    scope of the instant matter pales in comparison to other recent data breach cases.  *See, e.g.*, *Yahoo!*,

3    2020 WL 4212811, at *35 (substantially reducing multiplier where the complaint involved 12

4    named plaintiffs and 13 counts because of the "substantially limited" scope of work); *Anthem*,

5    2018 WL 3960068, at *13 (100 named plaintiffs, 43 defendants, and claims under all 50 states'

6    varying laws).

7          Nor is this case "novel."  For the most part, this case presents the same overarching legal

8    issues as other recent data breach cases, including ones litigated by these same Class Counsel.[9]

9    Thus, by the time this case was filed, Class Counsel were following their "playbook" for these

10   types of cases, right down to retaining many of the same experts who used "recycled" conclusions

11   from a prior case with the same counsel.  Class Cert. Order (Dkt. 260) at 6.  This is why Class

12   Counsel was standing ready to pounce, with complaints filed the *very same day* Facebook

13   announced the attack.[10]

14         ***Risk of Nonpayment***:  Class Counsel has not demonstrated that they need to be rewarded

15   for any supposed uncertainty related to whether this lawsuit would have been brought absent such

16   a reward.  Any ostensible risk Class Counsel claims to have faced is undercut by the fact that 17

17   different firms clambered to the courthouse to file suit, starting on the day that the breach was

18   announced, and that the firms involved in this case make a practice of suing large companies after

19   data breaches.  *See e.g., Anthem*, 2018 WL 3960068, at *27 (declining to add a multiplier where

20   there was little risk that the class would "otherwise be denied access to counsel").

21

22

---

23   [9]  *See Yahoo!*, 2020 WL 4212811 (finding legal theories were not "novel" when the court

24   "previously addressed several of the legal theories relied upon by plaintiffs in the *Adobe* and *Anthem* cases"); *Anthem*, 2018 WL 3960068; *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d

25   1197 (N.D. Cal. 2014); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020).

26   [10] Class Counsel's tactics undermine their argument that this case was novel because "most data breach cases tend to involve … login credentials, payment card-related data, and protected heath

27   information."  Mot. at 18.  The fact that such sensitive information was not compromised (as Facebook explained from the start, and promptly demonstrated with detailed evidence) only

28   highlighted the weakness of the case and contributed to the failure of the damages class.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

FACEBOOK'S OPP. TO MOT. FOR
ATTORNEYS' FEES AND COSTS
CASE NO. C 18-05982 WHA (JSC)

### D.     Class Counsel Seeks Impermissible Cost Reimbursements

Class Counsel seeks $1.2 million in litigation costs, which includes costs for travel, food, and "Common Benefit" telephone conferences.[11]  *See* Ex. 19 (Codes 2-5, 12, 14).  Cost-shifting for these categories of expenses is not permitted by statute, so the totals for each of those code categories should be subtracted from any cost award.  Additionally, the vast majority of the expert costs sought under Code 8 should be excluded because they are both unreasonable and stem from litigation tactics that Class Counsel should have abandoned.  Even if these costs are not cut, Exhibit 19 to the Motion (which purports to itemize the requested costs) provides woefully inadequate descriptions, so the total sums should alternatively be heavily discounted.  Class Counsel's submission does not justify the costs requested.

### 1.     Most Costs Should be Eliminated for Lack of Statutory Foundation

"Under the 'American rule,' litigants ordinarily are required to bear the expenses of their litigation unless a statute or private agreement provides otherwise."  *Carbonell v. INS*, 429 F.3d 894, 897-98 (9th Cir. 2005); *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-42 (1987) (costs may be awarded only where they are authorized by statute, and court should "refuse to tax costs in favor of the prevailing party" if they are not).  Because this case was resolved on a common law claim, there is no relevant cost-shifting statute other than the generally applicable "taxation of costs" provision found in 28 U.S.C. § 1920, which provides limited categories of expenses for all federal cases.  *See Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 579 (9th Cir. 2010) (Section 1920 "define[s] the full extent of a federal court's power to shift litigation costs absent express statutory authority" (quoting *W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 86 (1991)); *see also* N.D. Cal. L.R. 54-3.  The parties have not agreed to any other cost-shifting scheme.  *See* Fed. R. Civ. P. 23(h) ("nontaxable costs" may be awarded only as "authorized by law or by the parties' agreement" and following the procedures of Fed. R. Civ. P. 54(d)).

---

[11] Class Counsel offers two different figures in their fees motion, and a third in their Joint Decl., but none of these matches their documentation.  *See* Mot. at 3 (requesting "$1,210,900.75[] in litigation costs"); *id.* at 23 (requesting "$1,086,287.60 in litigation costs"); Joint Decl. ¶ 157 ("the total expenses incurred and sought for reimbursement in this litigation is $1,228,008.75").  If the costs requested in Plaintiff's Exhibit 19 are totaled, the final figure is $1,199,903.47.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22

FACEBOOK'S OPP. TO MOT. FOR
ATTORNEYS' FEES AND COSTS
CASE NO. C 18-05982 WHA (JSC)

1    Class Counsel's motion ignores their lack of statutory authority to seek costs outside of

2    those defined by Section 1920, and instead styles the exorbitant fee request of almost $1.2 million

3    as "reasonable" if viewed through the lens of the more deferential civil rights standard under 42

4    U.S.C. § 1988.  *See Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1216 n.7 (9th Cir. 1986), *as*

5    *amended on denial of reh'g*, 808 F.2d 1373 (9th Cir. 1987) (allowing reimbursement of

6    transportation costs because, "[e]ven though **not normally taxable as costs**, out-of-pocket

7    expenses incurred by an attorney which would normally be charged to a fee paying client are

8    recoverable as attorney's fees *under section 1988*" (emphasis added)); *see also* Mot. at 22 (citing

9    *Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994), a civil rights case that relies on *Chalmers* for the

10   same point).  The other cases cited in Class Counsel's one-page justification for their high costs

11   (Mot. at 22-23) involve the common fund doctrine, which allows for shifting of costs that are

12   "reasonable under the circumstances," but *only for* "a lawyer who recovers a common fund for the

13   benefit of persons other than himself."  *Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012).

14   This litigation did not result in a common fund, and is obviously not a civil rights case.

15   Class Counsel here was staffed to the hilt and, evidently, not shy about spending money.[12]  The

16   over-large team of attorneys spent more than $176,000 on hotels and air travel, $18,000 on food,

17   and $22,000 for ground transportation, in part so that their team could conduct regular in-person

18   meetings in different places around the country.  *See, e.g.*, Ex. 19 at 5 (noting hotel charges for

19   "every Morgan & Morgan attorney" to attend an all-hands meeting in Chicago where **none** of the

20   attorneys are based); *id.* at 16 ($390.06 meal charge for strategy meeting in NYC).

21   All of these activities fall outside of Section 1920.  *See* 28 U.S.C. § 1920.  The sums

22   expended under Codes 2 (Hotels), 3 (Meals), 4 (Mileage), 5 (Air Travel), 12 (Ground

23   Transportation), and 14 (Common Benefit), as identified in Plaintiff's Exhibit 19, are therefore

24   unfounded, and it is outside of the Court's authority to award them as costs.  *See Crawford*, 482

---

[12] *See, e.g.*, Ex. 19 at 10 (a single page of costs includes one attorney's $1,037.68 W Hotel bill, another attorney's $1,162.56 Westin hotel bill, and a third attorney's $1,644.62 Westin hotel bill, none of which state that they related to more than one night's stay or provide a reason for the high rates).  *Cf.* Joint Decl. ¶ 142 ("Details for hotel stays submitted as litigation costs include the date, length of stay, location, context of the relevant billing task, and, if applicable, special circumstances that would explain higher than usual rates . . . .").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23

FACEBOOK'S OPP. TO MOT. FOR
ATTORNEYS' FEES AND COSTS
CASE NO. C 18-05982 WHA (JSC)

U.S. at 440 (Section 1920 "embodies Congress' considered choice as to the kinds of expenses that a federal court may tax as costs against the losing party").  The costs requested for each of those categories (totaling $221,146.40) are not supported by law.

2.    No Costs Should be Awarded for Expert Witnesses Regarding Identity Theft or Damages

As discussed above, *supra* Part IV.B.3, Class Counsel's use of expert witnesses Mr. Van Dyke and Mr. Ratner yielded no benefit to the class.  In addition to excluding the attorneys' fees for working with these experts, the Court should exclude their costs.  *See* Ex. 19 at 75-76 (noting costs that all appear to be associated with expert witness companies).  Both Rule 23 and the parties' settlement agreement allow for recovery of "reasonable" costs only, and if the Court determines that Class Counsel's expert work was not useful, the attendant costs should also be excluded.  *See* Fed. R. Civ. P. 23(h); *Wakefield v. Wells Fargo & Co*., No. 13-05053-LB, 2015 WL 3430240, at *6 (N.D. Cal. May 28, 2015) ("Class counsel are entitled to reimbursement of *reasonable* out-of-pocket expenses." (emphasis added)).  A total of $538,775 of Class Counsel's Code 8 "Witness and Expert Expenses" are attributable to Mr. Van Dyke and Mr. Ratner.  *See* Ex. 19 at 75-76 (noting $413,703 in payments to GlassRatner, $93,109 in payments to Futurion Digital, Inc., and a $31,963-reimbursement for an unspecified expert fee).

3.    Class Counsel Fails to Provide Adequate Documentation for Costs Sought

Further, even if the Court considers awarding costs for the categories of charges identified above (*supra* Part IV.D.1-2), a large percentage of those line items also include inadequate descriptions to satisfy Class Counsel's documentation burden.  To provide just some examples:

- Many of counsel's travel-related charges (Codes 2-5 and 12) provide no point of reference regarding where the billing individual was travelling to or from, the purpose of the travel, what city the attorney was in, how many nights they stayed, or why certain costs were so high (*e.g.*, Ex. 19 at 9 (billing $1020.25 for a hotel in Detroit); *id.* at 6 (two attorneys charged $5,643.06 and $5,538.81, respectively, for their hotel stays to attend a half-day Case Management Conference[13])).

---

[13] Plaintiffs claim these excessive costs were necessary because "attorneys occasionally had to fly and stay in hotels on short notice or when rates were particularly high in the destination city," specifically citing "the NCAA National Championship between Alabama and Clemson" (Ex. 20, ¶ 11), which took place two days before the January 10, 2019, Case Management Conference ("CMC").  But that CMC was set with three months' notice (Dkt. 17), and Facebook's lead

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24

FACEBOOK'S OPP. TO MOT. FOR
ATTORNEYS' FEES AND COSTS
CASE NO. C 18-05982 WHA (JSC)

- There is no apparent exercise of reasonable oversight.  One partner's costs include 96 meals in a 10-month period for a total of $4,811.99.  *See* Ex. 19 at 20-35 (reflecting 96 meals expensed by one partner between April 1, 2019 and January 31, 2020, costing $4,811.99 after dividing evenly for shared meals).

- It is unclear what number of entries are attributable to Class Counsel's discretionary, in-person strategy meetings—including (1) an in-person meeting in Chicago, where no attorneys on the team appear to be based, and (2) more than $1,500 for an in-person meeting *to compile time records for this Motion*.  *See* Ex. 19 at 35, 110, 122.  These meetings are all the more unjustifiable given Counsel's innumerable telephone conferences.  Joint Decl. ¶ 17.

If the Court does not exclude costs for Codes 2-5 and 12 entirely, as suggested above, *supra* Part IV.D.1, it should either deny or reduce them for lack of documentation and reasonableness.[14]

## V.   CONCLUSION

For the foregoing reasons, Class Counsel's submission does not justify their requested fees and costs.  Facebook respectfully suggests that the Court reduce Class Counsel's lodestar for fees based on the principled reductions outlined above, deny the request for an upward multiplier, and limit recoverable costs.

DATED:  March 8, 2021

Respectfully submitted,

LATHAM & WATKINS LLP

By: /s/ *Andrew B. Clubok*

Andrew B. Clubok (*pro hac vice*)
andrew.clubok@lw.com
Susan E. Engel (*pro hac vice*)
susan.engel@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D.C.  20004-1304
T:  +1.202.637.2200/F:  +1.202.637.2201

---

counsel, who also attended the CMC, stayed at the Holiday Inn San Francisco Civic Center, at a cost of $629.98 (including a $19.78 meal charge).  Blunschi Decl., Ex. A (hotel receipt).

[14] *See Lahiri*, 606 F.3d at 1223 (reducing costs for inadequate documentation); *Caudle v. Sprint/United Mgmt. Co.*, No. 17-06874-WHA, 2019 WL 6841239, at *6 (N.D. Cal. Dec. 16, 2019) (Alsup, J.) (rejecting cost request that was "left unexplained and does not appear necessary"); *Johnson v. Metro-Goldwyn-Mayer Studios Inc.*, No. 17-541-RSM, 2018 WL 5013764, at *12 (W.D. Wash. Oct. 16, 2018), *aff'd sub nom. Johnson v. MGM Holdings, Inc*, 943 F.3d 1239 (9th Cir. 2019) (reducing fees and costs for "unreasonable amount of travel time" and where "conferences often appear duplicative and serving unclear purposes"); *Il Fornaio*, 2015 WL 2406966 at *5 (declining to award expenses that were "not adequately accounted for or justified").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Melanie M. Blunschi (CA Bar No. 234264)
 *melanie.blunschi@lw.com*
Elizabeth L. Deeley (CA Bar No. 230798)
 *elizabeth.deeley@lw.com*
Michael H. Rubin (CA Bar No. 214636)
 *michael.rubin@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, CA  94111-6538
T:  +1.415.391.0600/F:  +1.415.395.8095

Serrin Turner (*pro hac vice*)
 *serrin.turner@lw.com*
885 Third Avenue
New York, NY  10022-4834
T:  +1.212.906.1200/F:  +1.212.751.4864

*Attorneys for Defendant Facebook, Inc.*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

26

FACEBOOK'S OPP. TO MOT. FOR
ATTORNEYS' FEES AND COSTS
CASE NO. C 18-05982 WHA (JSC)